**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| MYA BATTON, AARON BOLTON, MICHAEL BRACE, DO YEON KIM, ANNA JAMES, JAMES MULLIS, THEODORE BISBICOS, and DANIEL PARSONS, individually and on Behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE NATIONAL ASSOCIATION OF REALTORS, REALOGY HOLDINGS CORP., HOMESERVICES OF AMERICA, INC., BHH AFFILIATES, LLC, HSF AFFILIATES, LLC, THE LONG & FOSTER COMPANIES, INC., RE/MAX, LLC, and KELLER WILLIAMS REALTY, INC.,<br><br>Defendants. | ) | Case No. 1:21-cv-00430<br><br>District Judge Andrea R. Wood |

**MEMORANDUM IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT PURSUANT TO**
**<u>RULES 12(b)(1) AND 12(b)(6)</u>**

# TABLE OF CONTENTS


INTRODUCTION ..... 1

BACKGROUND ..... 1

ARGUMENT ..... 2

I. While Not Necessary, Plaintiffs Plausibly Allege a Relevant Market Sufficient to Uphold Their Federal and State Antitrust Claims ..... 2

A. Plaintiffs Plausibly Plead a Per Se Antitrust Violation. ..... 3

B. Plaintiffs Plausibly Allege Facts Supporting the Quick-Look Analysis. ..... 5

C. Plaintiffs Plausibly Allege a Relevant Market Sufficient to Satisfy the Rule of Reason, and *American Express* Still Does Not Dispose of Their Claims. ..... 6

II. Plaintiffs Have Standing to Pursue Injunctive Relief Under the Clayton Act and the Sherman Act. ..... 8

III. The Amended Complaint Sufficiently Pleads State Law Claims. ..... 11

A. Plaintiffs Have Article III Standing to Represent All States Claims. ..... 11

B. Plaintiffs Claims are Timely. ..... 12

1. Plaintiffs' claims are tolled under the discovery rule. ..... 12

2. Alternatively, Plaintiffs' claims are tolled by fraudulent concealment. ..... 13

C. Plaintiffs Easily Satisfy Pleading Standards Under Rule 8. ..... 14

1. Plaintiffs plausibly plead causation. ..... 14

2. Plaintiffs plausibly plead state law claims and unjust enrichment claims. ..... 15

D. Plaintiffs Plausibly Plead Claims Under Tennessee Law. ..... 16

E. Plaintiffs State Claims Under North Carolina's Consumer Protection Law. ..... 17

F. Plaintiffs Plausibly Plead Violations of the Kansas Consumer Protection Act. ..... 18

G. Plaintiffs' Unjust Enrichment Claims Should Proceed. ..... 19

IV. If the Court Dismisses Plaintiffs' Claims, Plaintiffs Should Have Leave to Amend. ..... 19

CONCLUSION ..... 20

# TABLE OF AUTHORITIES

**Cases**

*Aceto Corp. v. TherapeuticsMD, Inc.*,
953 F. Supp. 2d 1269 (S.D. Fla. Jul. 17, 2013)....21

*Agnew v. Nat'l Collegiate Athletic Ass'n*,
683 F.3d 328 (7th Cir. 2012).... 3, 6, 7

*Amegy Bank, N.A. v. Deutsche Bank, Ag.*,
No. 4:12-cv-23, 2013 WL 12121328 (E.D. Tenn. Mar. 29, 2013)....19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....15

*Arizona v. Maricopa Cty. Med. Soc'y*,
457 U.S. 332, 349 (1982)....4

*Associated General Contractors of California, Inc. v. California State Council of Carpenters,*
459 U.S. 519 (1983).... 8, 9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).... 15, 17

*Blue Shield of Virginia v. McCready*,
457 U.S. 465 (1982)....9

*Catalano, Inc. v. Target Sales, Inc.*,
446 U.S. 643 (1980)....4

*City of Rockford v. Mallinckrodt ARD, Inc.*,
360 F. Supp. 3d 730 (N.D. Ill. 2019)....22

*Craft v. Forklift Sys., Inc.*,
No. M2002-00040-COA-R3CV, 2003 WL 21642767 (Tenn. Ct. App. July 14, 2003)....18

*D.R. Ward Const. Co. v. Rohm & Haas Co.*,
470 F. Supp. 2d 485 (E.D. Pa. 2006)....18

*PLS.com, LLC v. Nat'l Ass'n of Realtors,*
516 F. Supp. 3d 1047 (C.D. Cal. Feb. 3, 2021)....5

*Denny's Marina, Inc. v. Renfro Prods., Inc.*,
8 F.3d 1217 (7th Cir. 1993)....3

*Erickson v. Pardus*,
551 U.S. 89 (2007)....15

*Ferreira v. Sterling Jewelers, Inc.*,
130 F. Supp. 3d 471 (D. Mass. 2015)....................21

*Foman v. Davis*,
371 U.S. 178 (1962)....................22

*Freeman Indus., LLC v. Eastman Chemical Co.*,
172 S.W.3d 512 (Tenn. 2005)....................18

*G & S Holdings LLC v. Cont'l Cas. Co.*,
697 F.3d 534 (7th Cir. 2012)....................6

*Gen. Leaseways, Inc. v. Nat'l Truck Leasing Ass'n,*
744 F.2d 588 (7th Cir. 1984)....................5

*Gociman v. Loyola Univ. of Chi.*,
41 F.4th 873 (7th Cir. 2022)....................21

*Illinois Brick Co. v. Illinois,*
431 U.S. 720 (1977)....................2

*In re Aftermarket Filters Antitrust Litig.*,
No. 08 C 4883, 2009 WL 3754041 (N.D. Ill. Nov. 5, 2009)....................13

*In re Broiler Chicken Antitrust Litig.*,
290 F. Supp. 3d 772 (N.D. Ill. 2017)....................9, 11, 13, 14

*In re Chocolate Confectionary Antitrust Litig.*,
749 F. Supp. 2d 224 (M.D. Pa. 2010)....................19

*In re Copper Antitrust Litig.*,
436 F.3d 782 (7th Cir. 2006)....................13, 15

*In re Dairy Farmers of Am. Inc. Cheese Antitrust Litig.,*
767 F. Supp. 2d 880 (N.D. Ill. 2011)....................17, 18

*In re Dairy Farmers of Am. Inc. Cheese Antitrust Litig.,*,
No. 09CV3690, 2013 WL 4506000 (N.D. Ill. Aug. 23, 2013)....................12

*In re DDAVP Indirect Purchaser Antitrust Litig.*,
903 F. Supp. 2d 198 (S.D.N.Y. 2012)....................18

*In re Dealer Mgmt. Sys. Antitrust Litig.*,
360 F. Supp. 3d 788 (N.D. Ill. 2019)....................5

*In re Dealer Mgmt. Sys. Antitrust Litig.*,
362 F. Supp. 3d 510 (N.D. Ill. 2019)....................passim

*In re Delta Dental Antitrust Litig.*,
484 F. Supp. 3d 627 (N.D. Ill. 2020) .......... 3, 4, 6

*In re Interior Molded Doors Indirect Purchaser Antitrust Litig.,*
No. 3:18-CV-00850-JAG, 2020 WL 2110931 (E.D. Va. May 4, 2020) .......... 22

*In re Loc. TV Advert. Antitrust Litig.*,
No. 18 C 6785, 2020 WL 6557665 (N.D. Ill. Nov. 6, 2020) .......... 17

*In re Namenda Indirect Purchaser Antitrust Litig.*,
338 F.R.D. 527 (S.D.N.Y. 2021) .......... 20

*In re Opana ER Antritrust Litig.*,
162 F. Supp. 3d 704 (N.D. Ill. 2016) .......... 13

*In re Plasma-Derivative Protein Therapies Antitrust Litig.*,
764 F. Supp. 2d 991 (N.D. Ill. 2011) .......... 15

*In re Plasma–Derivative Protein Therapies Antitrust Litig.*,
No. MDL 2109, 09 C 7666, 2012 WL 39766 (N.D. Ill. Jan. 9, 2012) .......... 12

*In re Se. Milk Antitrust Litig.*,
739 F.3d 262 (6th Cir. 2014) .......... 6

*In re Sulfuric Acid Antitrust Litig.,*
743 F. Supp. 2d 827 (N.D. Ill. 2010) .......... 15

*In re TFT-LCD (Flat Panel Antitrust Litig.*,
599 F. Supp. 2d 1179 (N.D. Cal. 2009) .......... 19

*In re Universal Serv. Fund Tel. Billing Practices Litig.*,
300 F. Supp. 2d 1107 (D. Kan. 2003) .......... 20

*In re Zetia (Ezetimibe) Antitrust* Litig.,
No. CV 2:18-MD-2836, 2019 WL 1397228 (E.D. Va. Feb. 6, 2019) .......... 17

*Koch Agronomic Servs., LLC v. Exo Agro Res. LLC*,
No. 1:14CV679, 2015 WL 5712640 (M.D.N.C. Sept. 29, 2015) .......... 20

*Leegin Creative Leather Prod., Inc. v. PSKS, Inc.*,
551 U.S. 877 (2007) .......... 3

*Loeb Indus., Inc. v. Sumitomo Corp.*,
306 F.3d 469 (7th Cir. 2002) .......... 8

*McLamb v. T.P. Inc.*,
619 S.E.2d 577 (N.C. Ct. App. 2005) .......... 20

*Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Oklahoma,*
468 U.S. 85 (1984) .......... 5, 6

*Nat'l Soc'y of Prof'l Eng'rs v. United* States,
435 U.S. 679 (1978) .......... 4

*Ohio v. American Express Co.*,
138 S. Ct. 2274 (2018) .......... 7, 8

*Ploss v. Kraft Foods Grp., Inc.,*
197 F. Supp. 3d 1037 (N.D. Ill. 2016) .......... 8, 15

*PLS.Com, LLC v. Nat'l Ass'n of Realtors*,
32 F.4th 824 (9th Cir. 2022) .......... 5

*Reiser v. Residential Funding Corp.*,
380 F.3d 1027 (7th Cir. 2004) .......... 13

*Right Field Rooftops, LLC v. Chicago Baseball Holdings, LLC*,
87 F. Supp. 3d 874 (N.D. Ill. 2015) .......... 4

*Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*,
786 F.3d 510 (7th Cir. 2015) .......... 21, 22

*Sandee's Catering v. Agri Stats, Inc.*,
No. 20 C 2295, 2020 WL 6273477 (N.D. Ill. Oct. 26, 2020) .......... 12, 13, 15

*Sandee's Catering v. Agri Stats, Inc.*,
No. 20 C 2295, 2021 WL 963812 (N.D. Ill. Mar. 15, 2021) .......... 18, 21

*Sidney Hillman Health Center of Rochester v. Abbott Labs, Inc.*,
782 F.3d 922 (7th Cir. 2015) .......... 13

*Silicon Knights, Inc. v. Epic Games, Inc.*,
No. 5:07-cv-275-D, 2011 WL 1134453 (E.D.N.C. Jan. 25, 2011) .......... 20

*Smith-Brown v. Ulta Beauty, Inc.*,
No. 18 C 610, 2019 WL 932022 (N.D. Ill. Feb. 26, 2019) .......... 21

*Staley v. Gilead Scis., Inc.,*
446 F. Supp. 3d 578 (N.D. Cal. 2020) .......... 17

*State Oil Co. v. Khan*,
522 U.S. 3 (1997) .......... 2

*Supreme Auto Transp., LLC v. Arcelor Mittal USA, Inc.,*
902 F.3d 735 (7th Cir. 2018) .......... 16

*Teague v. Bayer AG.*,
671 S.E.2d 550 (N.C. Ct. App. 2009) ....................19

*Topshelf Mgmt., Inc. v. Campbell-Ewald Co.*,
117 F. Supp. 3d 722 (M.D.N.C. 2015)....................19

*U.S. v. Andreas*,
216 F.3d 645 (7th Cir. 2000) ....................4

*U.S. v. Soccony-Vaccum Oil Co.*,
310 U.S. 150, 222 (1940)....................4

*United States v. Gasoline Retailers Ass'n*,
285 F.2d 688 (7th Cir. 1961) ....................4

*United States v. Realty Multi-List, Inc.*,
629 F.2d 1351 (5th Cir. 1980) ....................5

*US Airways, Inc. v. Sabre Holdings Corp.*,
938 F.3d 43 (2d Cir. 2019)....................7

*Walker v. Fleetwood Homes of N.C ., Inc.*,
653 S.E.2d 393 (N.C. 2007)....................19

*Williams Elecs. Games, Inc. v. Garrity*,
366 F.3d 569 (7th Cir. 2004) ....................18

*Woodman's Food Market, Inc. v. Clorox Co.*,
833 F.3d 743 (7th Cir. 2016) .................... 12, 13

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
395 U.S. 100 (1969) ....................11

**Statutes**

15 U.S.C. § 1 ....................2, 4, 5, 6

K.S.A. 50–626....................20

**Rules**

Fed. R. Civ. P. 8(a)(2) ....................15

## INTRODUCTION

The Court should deny Defendants'[1] joint motion to dismiss (Dkt No. 92-1) ("MTD II") Plaintiffs'[2] Amended Class Action Complaint. Dkt No. 84.[3] Instead of challenging the merits of Plaintiffs' claims, Defendants attempt to persuade the Court to dismiss Plaintiffs' case on a series of inapposite arguments, including that (1) Plaintiffs' federal injunctive relief claim should be dismissed merely because the Court dismissed it once before (Memorandum Opinion and Order, Dkt. No. 81 ("Order")); (2) Plaintiffs' antitrust claims must be analyzed under the stringent rule of reason because courts are purportedly unfamiliar with the real estate industry; (3) statutes of limitations preclude plaintiffs' claims, despite applicable tolling doctrines; and (4) when read in piecemeal, Plaintiffs' claims for relief do not meet the requisite pleading standards.

But none of these arguments respond to Plaintiffs' core contention or change the fact that Defendants are horizontal competitors whose agreement to follow rules and policies created and promulgated by NAR resulted in inflated home prices and reduced quality of services. Or that Plaintiffs have adequately pleaded causation, a relevant market, and a tolling of the statutes of limitation. Defendants' motion should be denied in its entirety or, in the alternative, Plaintiffs should be granted leave to amend.

## BACKGROUND

The Court's May 2, 2022 Order sets forth the relevant facts. Order at 1–6. On January 25, 2021, Plaintiff Judah Leeder filed the initial complaint ( Dkt. No. 1), which Defendants subsequently moved to dismiss (Dkt. No. 61, "MTD I"). After the parties briefed that motion ( Dkt. Nos. 65

---

[1] "Defendants" refers, collectively, to The National Association of Realtors, Realogy Holdings Corp., Homeservices of America, Inc., BHH Affiliates, LLC, HSF Affiliates, LLC, The Long & Foster Companies, Inc., Re/Max, LLC, and Keller Williams Realty, Inc.

[2] "Plaintiffs" refers, collectively, to named plaintiffs Mya Batton, Aaron Bolton, Michael Brace, Do Yeon Kim, James Mullis, Theodore Bisbicos, and Daniel Parsons and putative class members.

[3] Hereinafter, citations to "¶" refer to paragraphs in Plaintiffs' Amended Complaint.

("Opposition") and 67 (Defendants' reply)), the Court dismissed Plaintiff Leeder's complaint without prejudice. Order. The Court found that Plaintiff Leeder and putative class members were indirect purchasers barred from bringing federal antitrust claims for damages by *Illinois Brick Co. v. Illinois,* 431 U.S. 720*,* 729-30 (1977). Order at 13. Having dismissed the damages claim, the Court also dismissed Plaintiff Leeder's federal claim for injunctive relief. Order at 17. The Court did not rule on the plausibility of Plaintiff Leeder's Sherman Act claim or his unjust enrichment claim.

On July 7, 2022, Plaintiffs filed their Amended Complaint, which removed Plaintiff Leeder, added Plaintiffs in seven states, revised the class definition, and asserted claims for damages under various state laws. ¶¶ 20-27; 136-37; 160, 166. On September 7, 2022, Defendants filed motions to dismiss Plaintiffs' Amended Complaint for failure to state a claim (Dkt No. 92) and for lack of jurisdiction (Dkt No. 93).[4] For the reasons set forth herein, each of Defendants' arguments should be rejected.

## ARGUMENT

### I. While Not Necessary, Plaintiffs Plausibly Allege a Relevant Market Sufficient to Uphold Their Federal and State Antitrust Claims.

Plaintiffs bring a federal antitrust claim for injunctive relief and claims for damages under various state antitrust laws. Am. Complaint, Claims I–III. Defendants concede that the relevant state antitrust laws are construed in harmony with or interpreted with reference to federal antitrust law. MTD II at 9-10. Accordingly, Plaintiffs analyze their claims below in line Section 1 of the Sherman Act, which prohibits "[e]very contract, combination . . ., or conspiracy in restraint of trade", 15 U.S.C. § 1, focusing on "unreasonable" restraints. *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997). Whether a restraint is "unreasonable" is determined by one of three tests: (1) the per se rule, (2) the quick-look analysis, or (3) the rule of reason. *In re Delta Dental Antitrust Litig.*, 484 F. Supp. 3d 627, 633 (N.D. Ill.

[4] Plaintiffs oppose Defendants' motion to dismiss for lack of jurisdiction in a separate opposition filed contemporaneously.

2020). Only the rule of reason requires Plaintiffs to define a relevant market. *Id.*; *see also Denny's Marina, Inc. v. Renfro Prods., Inc.*, 8 F.3d 1217, 1221 (7th Cir. 1993) ("As far back as 1940, it has been clear that horizontal price-fixing is illegal per se without requiring a showing of actual or likely impact on a market.").

For the second time, Defendants argue that Plaintiffs must meet the rule of reason's requirements while failing to address the quick-look analysis at all. MTD II at 6–10. This gap dooms their motion. In any event, Plaintiffs' allegations satisfy all three tests for the reasons below.

### A. Plaintiffs Plausibly Plead a Per Se Antitrust Violation.

The per se rule applies to restraints that "facially appear[] to . . . always or almost always tend to restrict competition . . . ." *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 336 (7th Cir. 2012). It eliminates inquiry into the market context, the relevant market, market power, or the absence of pro-competitive effects. *Id.* "Horizontal price-fixing and output limitations are classic examples of behavior that is considered anticompetitive per se." *Id* at 336; *Leegin Creative Leather Prod., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886 (2007) ("Restraints that are per se unlawful include horizontal agreements among competitors to fix prices[.]") (citations omitted); *In re Delta Dental Antitrust Litig.*, 484 F. Supp. 3d 627, 635 (N.D. Ill. 2020) ("The Supreme Court and the Seventh Circuit have reiterated … price-fixing among competitors generally remain subject to per se analysis.").

Plaintiffs allege Defendants are horizontal competitors (¶¶ 4, 9, 21–24) that agreed to contractual restraints (¶¶ 84-88) with the effect of raising and stabilizing agent commissions (¶¶ 11–12, 54). Restraints, like those alleged here, that "impede[] the ordinary give and take of the marketplace" and effectively stabilize prices have long been held to be per se violations of Section 1. *Nat'l Soc'y of Prof'l Eng'rs v. United* States, 435 U.S. 679, 692 (1978); *United States v. Gasoline Retailers Ass'n*, 285 F.2d 688, 691 (7th Cir. 1961) (agreement to limit competition was per se illegal where "aimed . . . at affecting the market price"). Thus, this is exactly the kind of case to which courts historically apply

the per se rule. Defendants argue that per se treatment would be in appropriate here because courts do not have enough "experience" with the alleged restraint. MTD II at 6–7. Not so. Horizontal agreements among competitors to restrain trade, like the one alleged here, have long been found per se unlawful regardless of the industry involved as there is no special experience required. *See Arizona v. Maricopa Cty. Med. Soc'y*, 457 U.S. 332, 349 (1982) ("We are equally unpersuaded by the argument that we should not apply the per se rule in this case because the judiciary has little antitrust experience in the health care industry); *U.S. v. Soccony-Vacuum Oil Co.*, 310 U.S. 150, 222 (1940) ("[w]hatever may be its peculiar problems and characteristics, the Sherman Act, so far as price-fixing agreements are concerned, establishes one uniform rule applicable to all industries alike."). Defendants' argument that courts are unfamiliar with this type of restraint is belied by their citations to cases analyzing restraints by trade associations and on multiple listing services. (MTD II at 7 (*O'Riordan v. Long Island Bd. of Realtors, Inc.*, 707 F. Supp. 111, 115 (E.D.N.Y. 1988)). Most importantly, Defendants misstate the law.[5] Idiosyncratic characteristics of an alleged restraint do not preclude Defendants' conduct from the per se analysis. *See United States v. Andreas*, 216 F.3d 645, 667 (7th Cir. 2000) ("clever characteristics" of defendants' customer-choice allocation scheme did not "distinguish their plot from more common per se prohibited practices").

Defendants next argue that the per se rule cannot apply because multiple listing services and trade associations have procompetitive benefits. MTD II at 7. Even under the rule of reason, "whether challenged conduct has a procompetitive effect … presents a factual issue that cannot be resolved at this stage of the case." *In re Dealer Mgmt. Sys.*, 360 F. Supp. 3d 788, 803 (N.D. Ill. Jan. 25, 2019). Further,

[5] This District has pointed out that *Broad. Music, Inc. v. Columbia Broad. Sys., Inc.* was "decided after lengthy trial[], and the Court's decision not to apply the per se rule … was based on highly fact-specific analyses that addressed unique features of the markets at issue and the products resulting from the defendants' collaboration." *Delta Dental*, 484 F. Supp. 3d at 634–35. And in *Right Field Rooftops, LLC v. Chicago Baseball Holdings, LLC*, plaintiffs failed to plausibly allege a relevant market because, unlike here, their market comprised a single-brand product. 87 F. Supp. 3d 874, 886–87 (N.D. Ill. 2015).

Defendants' cited authority (MTD II at 8 (citing *PLS.com, LLC v. Nat'l Ass'n of Realtors,* 516 F. Supp. 3d 1042 (C.D. Cal. Feb. 3, 2021)) has been overruled. The Ninth Circuit reversed and remanded *PLS*, holding that the plaintiff adequately alleged a per se group boycott. *PLS.Com, LLC v. Nat'l Ass'n of Realtors*, 32 F.4th 824, 837 (9th Cir. 2022). It also explained that in order to qualify as procompetitive benefits, NAR's policies must *enhance competition*, not merely benefit its agents. *PLS.Com, LLC v. Nat'l Ass'n of Realtors*, 32 F.4th 824, 836 (9th Cir. 2022) (emphasis added) (NAR's Clear Cooperation Policy "benefits buyers' agents" by "allow[ing] them to see more listings on the MLSs and to avoid the need to consult competing services," but is not procompetitive because it does not enhance competition). Defendants failure to explain how the restraints they imposed enhance competition in the buyer-agent market here is fatal to their argument, as it was in *PLS*.

Defendants' additional authority is similarly unavailing and not on point. *United States v. Realty Multi-List, Inc.*, 629 F.2d 1351, 1354 (5th Cir. 1980) merely confirms that there are efficiencies to multiple listing services. And the *Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Oklahoma,* 468 U.S. 85 (1984) Court declined to apply the per se rule "because of the inherent characteristics of competitive athletics and the justifiable role of the NCAA in regulating college athletics." *Id.* at 126. Defendants' arguments against application of the per se rule should be rejected.

**B. Plaintiffs Plausibly Allege Facts Supporting the Quick-Look Analysis.**

The quick-look analysis also demonstrates the plausibility of Plaintiffs' Section 1 claim. The abbreviated "quick-look" analysis applies where "no elaborate industry analysis is required to demonstrate the anticompetitive character" of the alleged conduct. *Delta Dental*, 484 F. Supp. 3d at 633; *National Collegiate Athletics*, 468 U.S. at 109–10 n. 42 ("[W]here the anticompetitive effects of conduct can be ascertained through means short of extensive market analysis, and where no countervailing competitive virtues are evident, a lengthy analysis of market power is not necessary.").

Under the quick-look analysis, there is no need to demonstrate "market power, and thus a specific definition of the relevant market." *Agnew*, 683 F. 3d at 337.

For the same reasons set forth in Plaintiffs' Opposition (at p. 11), the contractual restraints on buyer-agent commissions at issue in this action support application of the quick-look analysis. Defendants' agreement to create and implement NAR's rules constitutes an "agreement between [] horizontal competitors for the express purpose of limiting competition between them." *In re Se. Milk Antitrust Litig.*, 739 F.3d 262, 275 (6th Cir. 2014) (reversing summary judgment for defendants)."[A]n observer with even a rudimentary understanding of economics could," *Agnew*, 683 F.3d at 335, easily conclude that an agreement not to negotiate commissions, to disclose commissions on listings but not to buyers, and to convince buyers that buyer-agent services are free "would have an anticompetitive effect," *id.* at 336, on the market for buyer-agent services—namely, artificially high prices.

Plaintiffs' allegations are therefore "sufficient to shift the burden to [Defendants] to present some procompetitive benefits of the alleged conduct." *Milk*, 739 F.3d at 275. But Defendants offer only perfunctory citations to cases generally discussing multiple listing services and trade organizations. *See* pp. 6–7, *supra*. Because Defendants lack legitimate justification for "facially anticompetitive behavior," the antitrust claim is plausible "without resort to analysis of market power." *Agnew*, 683 F.3d at 336.

### C. Plaintiffs Plausibly Allege a Relevant Market Sufficient to Satisfy the Rule of Reason, and *American Express* Still Does Not Dispose of Their Claims.

Even if this Court applies the rule of reason, Defendants' arguments fail. To satisfy the rule of reason at the pleading stage Plaintiffs need only allege: (1) the boundaries of the relevant market; and (2) Defendants' market power; and (3) that the challenged conduct adversely impacted competition in that market. *Agnew*, 683 F.3d at 335, 337; *In re Dealer Mgmt. Sys. Antitrust Litig.*, 362 F. Supp. 3d 510, 538-39 (N.D. Ill. 2019). Plaintiffs meet these requirements by pleading: (1) the contours

of the market for buyer-agent services (¶¶ 52–57); (2) Defendants' market power (¶¶ 54–57); and (3) anticompetitive effects, including artificially inflated buyer-agent commissions (¶¶ 114–126).

Defendants attack Plaintiffs' market allegations on the grounds that *Ohio v. American Express Co.*, 138 S. Ct. 2274 (2018) requires Plaintiffs to "plausibly define both sides of the market." MTD II at 8-10. But as Plaintiffs previously explained (Opposition at 11–14), this case does not allege a "two-sided transaction platform" like the one analyzed in *American Express*. which is limited to platforms that "facilitate a single, simultaneous transaction between participants." 138 S. Ct. at 2286.. Such platforms "(1) offer different products or services, (2) to different groups of customers, (3) whom the 'platform' connects, (4) in simultaneous transactions." *Id.* at 2298 (Breyer, J., dissenting); *see also US Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43, 58 (2d Cir. 2019). The market for buyer-agent services alleged in the Amended Complaint fails these requirements as it offers one product (buyer-agent services) to *one* group of consumers (buyers). Defendants assert that "the sale to the buyer, the payment by the seller, and the payment of commissions all occur simultaneously." MTD II at 9. But they offer no support for this highly (counter)factual assertion which directly contradicts the Amended Complaint's allegations that the transaction is not simultaneous. ¶ 50 (alleging the buyer pays the purchase prices into an escrow account and *then* the escrow agent pays the seller and the brokers).[6] Because —these allegations must be taken as true at the pleading stage (*Ploss*, 197 F. Supp. 3d at 1051) the Court must reject Defendants' argument.—

[6] In arguing that the relevant market is a two-sided market, Defendants refer repeatedly to an undefined market for "real estate brokerage services." MTD II at 8. They do not address why this market is the same or different from the market Plaintiffs actually alleged—the market for *buyer*-agent services. ¶¶ 52–57. Nor do they explain how "real estate brokerage services" are substitutable for "the bundle of services provided to home buyers by residential real estate brokers with access to the NAR MLSs" (¶ 52), as alleged in the Amended Complaint. *See Ploss*, 197 F.Supp.3d at 1070 ("Courts should dismiss antitrust claims based on a market argument only when it is certain that the alleged relevant market clearly does not encompass all interchangeable substitute products").

In any event, even if this case did involve a "two sided" market, "it is not always necessary to consider both sides of a two-sided platform." *American Express*, 138 S. Ct. at 2886. *American Express* dealt only with vertical restraints of trade in the credit card market. *See* 138 S. Ct. at 2284. This District has thus held, "[e]ven assuming… a two-side market, *AmEx* does not necessarily foreclose plaintiffs' claim that defendants' agreement to eliminate . . . competition . . . is anticompetitive per se." Thus, a per se violation on either side of the market would establish an antitrust claim even if this case involved a two-sided platform. Here, Defendants' conduct has resulted in artificially high commissions for both seller and buyer brokers. Accordingly, should the Court choose to apply rule of reason, Plaintiffs' have alleged a relevant market sufficient to uphold both their federal and state law claims.

## II. Plaintiffs Have Standing to Pursue Injunctive Relief Under the Clayton Act and the Sherman Act.

The Supreme Court has set forth six factors to consider when evaluating whether a plaintiff has antitrust standing. *Loeb Indus., Inc. v. Sumitomo Corp.*, 306 F.3d 469, 484 (7th Cir. 2002) (citing *Associated General Contractors of California, Inc. v. California State Council of Carpenters* ("*AGC*"), 459 U.S. 519, 537–45 (1983). Four of these apply where, as here, plaintiffs seek only injunctive relief: "(1) the causal connection between the violation and the harm; (2) the presence of improper motive; (3) the type of injury and whether it was one Congress sought to redress; (4) the directness of the injury[.]" *Dealer Mgmt. Sys.*, 362 F. Supp. 3d at 532 ("For injunctive relief, the 'speculative nature of the damages' and 'risk of duplicate recoveries' factors drop out of the analysis."). Defendants challenge only Plaintiffs' ability to establish directness of the injury. MTD II at 3–4.

The directness inquiry turns on whether the plaintiff purchased in the market targeted by Defendants' anticompetitive conduct. Under *AGC*, "a consumer … in the market in which trade was restrained" generally has antitrust standing. *AGC*, 459 U.S. 519, 539 (1983); *Broiler Chicken*, 290 F. Supp. 3d at 814 (same). The *AGC* court distinguished between the facts in that case, where the plaintiff union was "neither a consumer nor a competitor in the market," *id.*, and the court's previous

decision in *Blue Shield of Virginia v. McCready*, 457 U.S. 465, 474 (1982), where the plaintiff suffered a direct injury that "was inextricably intertwined with the injury the conspirators sought to inflict," on the relevant market. *AGC*, 459 U.S. at 538–39 (internal quotation marks omitted). In the latter, plaintiffs were direct and thus had standing "even though [they] never purchased . . . from any of the defendants." *Broiler Chicken*, 290 F. Supp. 3d at 814.

Plaintiffs here have adequately alleged they suffered a direct injury caused by Defendants. Like the plaintiffs in *McCready* and *Broiler Chicken*, Plaintiffs are consumers targeted specifically by the Defendants' illegal antitrust scheme in the relevant market for buyer-agent services. In addition to the Buyer-Agent Commission Rule, which affects both buyers and sellers equally by fixing commissions paid by both, the remaining anticompetitive policies target buyers more directly than sellers because they allow buyer-agents to (1) hide from buyers the commission rate known to seller ( ¶¶ 83–85); (2) misrepresent to buyers that their services are free ( ¶¶ 86–88); (3) filter out homes with lower commissions to prevent buyers from viewing them (¶¶ 89–91); (4) restrain buyers from negotiating commissions (¶¶ 92–96); and (5) restrict the supply of homes shown to buyers by denying lockbox access to nonparticipating agents (¶¶ 97–99). Moreover, Defendants' conspiracy would be completely ineffectual without Plaintiffs, as home buyers provide *all of the funds* for the sale, the broker commission, and the buyer commission. ¶ 50. This is sufficient to confer standing because "Plaintiffs' injury [] was a necessary step in furthering the ends of the conspiracy in the relevant markets." *Dealer Mgmt. Sys.*, 362 F. Supp. 3d at 534.

Plaintiffs' Amended Complaint satisfies this Court's concerns expressed in its prior ruling. *Contra* MTD II At 3. That order dismissed Leeder's injunctive relief claim for three reasons: because (1) the "injured home seller plaintiffs in *Moehrl* are seeking the same injunction as Leeder"; (2) "Leeder's damages claims have been dismissed"; and (3) it determined Leeder was unlikely to suffer

another injury due to the antitrust conspiracy because it was unlikely he would purchase another home. MTD Order at 16–17. Plaintiffs' Amended Complaint addresses each concern.

*First*, Plaintiffs' injunctive relief would not duplicate relief sought in *Moehrl*. Plaintiffs allege violations tied to the Commission Concealment Rule, Filter Rules, and Lockbox Policy. Dkt. 84 ¶¶ 83–85; 89–91; 97–99. These rules are either absent from the *Moehrl* lawsuit or are discussed only as particular problems in local markets. The rules not only target buyers (rather than sellers) by hiding information from them and denying them access to the full market of available houses, they also ultimately benefit the seller plaintiffs in *Moehrl* by restricting the supply of housing shown to buyers and thus raising prices that sellers receive. Because of this, the *Moehrl* plaintiffs' interests conflict with the Plaintiffs' interests here in proper injunctive relief. Moreover, the injunction Plaintiffs seek would prevent future violations of Plaintiffs' state antitrust and consumer protection claims, which are not alleged in the *Moehrl* case and which cover additional conduct. The *Moehrl* plaintiffs thus cannot adequately vindicate Plaintiffs' rights. In any event, where plaintiffs "do not seek damages for their Sherman Act claim, it is inconsequential that there are more 'immediate victims' of the scheme." *Broiler Chicken*, 290 F. Supp. 3d at 814.

*Second*, because Plaintiffs have pleaded valid antitrust claims under state law (*see* pp. 11–20, *infra*) their damages claims "will proceed regardless," MTD Order at 16, exactly as the other cases cited in the Order survived. *Third*, Plaintiffs face the substantial likelihood that they will suffer another injury as a result of the antitrust conspiracy. The median duration of homeownership in the U.S. is 13 years. Nadia Evangelou, *How Long Do Homeowners Stay in their Homes?*, Nat'l Ass'n of Realtors (Jan. 8, 2020).[7] The conspiracy has already existed twice that long with no indication of unwinding. ¶ 147. Plaintiffs therefore face "a significant threat of injury" that this violation of the Sherman Act is "likely to

[7] https://www.nar.realtor/blogs/economists-outlook/how-long-do-homeowners-stay-in-their-homes.

continue" through the time they purchase their next home. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 130 (1969). Plaintiffs' injunctive claim should thus proceed.

## III. The Amended Complaint Sufficiently Pleads State Law Claims.

### A. Plaintiffs Have Article III Standing to Represent All States Claims.

Defendants assert that Plaintiffs lack Article III standing for those states where Plaintiffs have not alleged a named Plaintiff resides or has purchased a home. MTD II at 13–14. Courts in the Seventh Circuit disagree. *See Sandee's Catering v. Agri Stats, Inc.*, No. 20 C 2295, 2020 WL 6273477, at *4-5 (N.D. Ill. Oct. 26, 2020) (acknowledging split among district courts in the Seventh Circuit, concluding that plaintiffs sufficiently pleaded standing in states where they did not allege residency or purchase of the product).

Unlike Defendants' cited cases (*see* MTD II at 14), *Sandee's* is an in-circuit decision in keeping with more recent cases in this District and should be followed here. 2020 WL 6273477, at *4–5 (acknowledging trend in case law and finding indirect purchasers' allegations sufficient to plead Article III standing); *Dealer Mgmt. Sys.*, 362 F. Supp. 3d at 547–48). ("Although courts (including this Court) have held that claims 'brought under the laws of the states in which no named [plaintiff] purchased goods' must be dismissed for lack of Article III standing ... the trend has been to treat the issue as one of statutory standing that can be deferred until class certification."). This trend is consistent with recent Seventh Circuit case law holding that 'the question of who is authorized to bring an action under a statute is one of statutory interpretation; it does not implicate Article III or jurisdiction."' *Dealer Mgmt. Sys.*, 362 F. Supp. 3d at 548 (quoting *Woodman's Food Market, Inc. v. Clorox Co.*, 833 F.3d 743, 750 (7th Cir. 2016) (citing cases)).

Further, Defendants do not contend that the named plaintiffs lack Article III standing. As in *Sandee's*, "the [i]ndirect [p]laintiffs plausibly alleged Article III standing as to themselves" and "that

analysis suffices to establish the named plaintiffs' standing to assert the claims of class members in other states." *Id.* (quoting *Broiler Chicken*, 290 F. Supp.3d at 810).

**B. Plaintiffs Claims are Timely.**

Plaintiffs' claims should not be dismissed based on the statutes of limitation. MTD II at 14–16. "Because the period of limitations is an affirmative defense, it is rarely a good reason to dismiss under Rule 12(b)(6)." *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1030 (7th Cir. 2004). Nevertheless, each of Plaintiffs' state claims are tolled under either the discovery rule or by fraudulent concealment.

**1. Plaintiffs' claims are tolled under the discovery rule.**

Plaintiffs adequately allege the state statutes of limitation are tolled under the discovery rule, which has been adopted in nearly every relevant state (*See* Exhibit A) and which Defendants ignore altogether.[8] Under the discovery rule, the statute does not begin to run until "the date when [the plaintiff] discovers he has been injured." *In re Copper Antitrust Litig.*, 436 F.3d 782, 789 (7th Cir. 2006) (holding discovery rule applies in the antitrust context). "[I]n states that apply the discovery rule, the question is whether a reasonable person in plaintiff's position would have discovered the injury if they had exercised due diligence." *See Sidney Hillman Health Center of Rochester v. Abbott Labs, Inc.*, 782 F.3d 922, 930 (7th Cir. 2015); *Sandee's*, 2020 WL 6273477, at *13.

Plaintiffs explicitly allege that they could not have discovered Defendants' conspiracy until, at the earliest, November 19, 2020, the date the DOJ announced the settlement of its antitrust claims against NAR. ¶ 130. Contrary to Defendants' argument, the existence of a single article is insufficient

[8] Defendants instead argue against application of the continuing violation doctrine in 10 states. MTD II at 15 (claiming "10 states have not recognized the 'continuing violation'") *Id.* Plaintiffs need not rely on the continuing violation doctrine, which has been qualified by the discovery rule. *In re Aftermarket Filters Antitrust Litig.*, No. 08 C 4883, 2009 WL 3754041, at *4 (N.D. Ill. Nov. 5, 2009) ("As in other areas of the law . . . the [continuing violation] rule is qualified by the discovery rule."). Even if they did, the statute of limitations is tolled under the discovery rule (*see* Exhibit A) or the doctrine of fraudulent concealment in the relevant 10 states.

to enable a reasonable individual to discover he or she overpaid broker commissions as a result of Defendants' conspiracy. *Broiler Chicken*, 290 F. Supp. 3d at 808 (two publications insufficient to discover injury, even where one raised possibility of collusion). And certainly not at this stage of the litigation. Plaintiffs allege a web of rules and regulations that multiple Defendants use to maintain inflated broker commissions. "This is not a simple case of obvious injury with obvious defendants. Rather, many dots need to be connected in context to draw a picture of conspiracy." *Broiler Chicken*, 290 F. Supp. 3d at 808 (finding plaintiffs pleaded sufficient facts to apply the discovery rule). At the very least, whether a plaintiff could discover their injury from such an article is a question of fact, inappropriate for resolution on a motion to dismiss. *Id.* ("[T]here is a question of fact as to what conclusion Plaintiffs could draw from "public company statements."). Accordingly, as Plaintiffs allege they could not have discovered their injuries until 2020—less than two years ago—Plaintiffs' claims are not time-barred under any of the relevant statutes.

**2. Alternatively, Plaintiffs' claims are tolled by fraudulent concealment.**

Even if the discovery rule does not apply, Plaintiffs' claims are tolled by fraudulent concealment. When a defendant's wrongdoing has been fraudulently concealed, the limitations period begins to run only after the plaintiff discovers the wrongdoing. Plaintiffs must allege Defendants took "affirmative steps" to conceal their wrongdoing, or it must be self-concealing. *See In re Sulfuric Acid Antitrust Litig.,* 743 F. Supp. 2d 827, 854 (N.D. Ill. 2010) ("The doctrine requires Defendants to take affirmative steps after the original wrongdoing to divert attention, mislead, or prevent discovery."). Defendants argue Plaintiffs have not pleaded fraudulent concealment with sufficient specificity (MTD II at 15). They are wrong.

Plaintiffs allege that Defendants "actively concealed the conspiracy" by "prohibiting disclosure of total commissions to home buyers and encouraging brokers to represent to home buyers that their services are free of charge" (¶ 134) and that the conspiracy was "inherently self-concealing because

NAR tightly controls its regulated MLSs, agents, and brokers" such that "a reasonable buyer under the circumstance would not have reason to suspect" they were being charged, let alone the victim of anticompetitive conduct. ¶ 135. This District has found that alternative, false explanations from defendants—in this case representing buyer broker services are free—suffice to raise an issue of fact. *See Copper Antitrust,* 436 F.3d at 792 (evidence that defendant offered "innocent alternative explanations to explain away events related to the price-fixing conspiracy, knowing that they were misleading," among others, demonstrated a dispute of material fact as to defendant's fraudulent concealment). *Sulfuric Acid Antitrust Litig.,* 743 F. Supp. 2d at 54 (same); *see also Sandee*'s 2020 WL 6273477, at *13 (denying dismissal on statute of limitations grounds where defendants engaged in a secret information exchange). Plaintiffs' allegations should not be dismissed as untimely.

### C. Plaintiffs Easily Satisfy Pleading Standards Under Rule 8.

It is well-established that there is no "heightened pleading requirement for antitrust cases." *In re Plasma-Derivative Protein Therapies Antitrust Litig.*, 764 F. Supp. 2d 991, 999 (N.D. Ill. 2011) (citing *Twombly,* 550 U.S. at 569 n.14). Fed. R. Civ. P. 8(a)(2) governs and provides that a plaintiff's complaint need only make "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement is intended to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "When ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Ploss v. Kraft Foods Grp., Inc.*, 197 F. Supp. 3d 1037, 1051 (N.D. Ill. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). The factual allegations must, when accepted as true, be sufficient to "'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

#### 1. Plaintiffs plausibly plead causation.

The Amended Complaint plainly pleads causation. ¶¶ 4, 12, 114. The causal chain here is simple: Defendants fix commissions and buyers pay those commissions. "Because the causal link between the alleged misconduct and Plaintiffs' claimed harm is short, these allegations are sufficient to state a claim at the pleading stage." *Dealer Mgmt. Sys.*, 362 F. Supp. 3d at 545.

*Supreme Auto Transp., LLC v. Arcelor Mittal USA, Inc.,* 902 F.3d 735, 744 (7th Cir. 2018), cited by Defendants (MTD II at 5), is distinguishable. The *Supreme Auto* complaint alleged that "plaintiffs purchased steel only insofar as it was one among many components of other more complex products, all of which have gone through numerous manufacturing alterations and lines of distribution." *Supreme Auto,* 902 F.3d at 744. In likening this case to *Supreme Auto*, Defendants incorrectly equate the home price with the commission price, arguing that there are many factors that go into a price of the home. MTD II at 5. But Plaintiffs paid inflated *commissions*. These commissions are set at a fixed percentage of the sale price. ¶¶ 47, 64, 49, 74. Far from being one of many factors having gone through a long line of distribution, broker commissions are fixed and can easily be parsed out from the sale price. In any event, even in *Supreme Auto* the plaintiffs "satisfy[ied] ordinary principles of proximate causation." *Supreme Auto,* 902 F.3d at 744 (explaining plaintiffs' complaint pleaded proximate causation, but was barred under *Illinois Brick*.). Defendants' arguments regarding causation should be rejected.

**2. Plaintiffs plausibly plead state law claims and unjust enrichment claims.**

Defendants claim that Plaintiffs' state law claims are not pleaded with sufficient particularity. MTD II at 11. But Plaintiffs meet their burden by alleging the specific NAR rules at issue (¶¶ 8-99), that brokers followed those rules, including misrepresenting their services as free (*id.*), and that this conduct inflated commissions, which buyers then paid (¶¶ 114-126). These allegations are more than enough to put Defendants on notice of Plaintiffs' claims (*Twombly*, 550 U.S. at 555). To the extent Defendants take issue with Plaintiffs' state law allegations, "the Court must read the Complaint as a whole." *In re Local TV Advert. Antitrust Litig.*, No. 18 C 6785, 2020 WL 6557665, at *9 (N.D. Ill. Nov.

6, 2020) (citing cases). The allegations in the Amended Complaint, taken together, provide the factual basis for Plaintiffs' state law claims. Courts routinely uphold similarly pleaded complaints. *See*, *e.g., Staley v. Gilead Scis., Inc.,* 446 F. Supp. 3d 578, 633 (N.D. Cal. 2020).

Plaintiffs' unjust enrichment claims are similarly well-pleaded. Contrary to Defendants' assertions (MTD II at 12), Plaintiffs do not need to plead their unjust enrichment claims on a state-by-state basis. First, the elements of an unjust enrichment claim are generally the same throughout the United States. *See Dairy Farmers*, 767 F. Supp. 2d at 909 ("Though state law varies, a claim for unjust enrichment generally must state that the defendant has been unjustly enriched at the expense of the plaintiff."). Here, Plaintiffs plead the three elements: Defendants received a benefit (inflated commissions and funds to continue NAR's operations (¶¶ 4, 169)) at Plaintiffs' expense (artificially inflated prices for buyer broker services and decreased quality of services (¶¶ 12, 114)) under circumstances in which it would be unjust for Defendants' to retain the benefit (it would be unjust for Defendants to retain the gains from their anticompetitive conduct ( ¶¶ 169-71)). Indeed, Defendants fail to specify any material differences in the relevant state laws.

Second, while there is "conflicting case law on the question of whether it is appropriate to address the specific requirements of individual state law at this stage," this District has held that is not. *Dairy Farmers*, 767 F. Supp. 2d at 909 (declining to address defendants' state-specific unjust enrichment arguments at the pleading stage). Defendants fail to cite a single controlling case to the contrary. Plaintiffs' unjust enrichment claims are adequately pleaded.

### D. Plaintiffs Plausibly Plead Claims Under Tennessee Law.

Plaintiffs voluntarily dismiss their Tennessee antitrust and consumer protection claims, but continue to assert their Tennessee unjust enrichment claim. Plaintiffs may bring an autonomous claim for unjust enrichment under Tennessee law. Defendants' authority, *Freeman Indus., LLC v. Eastman Chemical Co.*, 172 S.W.3d 512, 526 (Tenn. 2005); confirms this. *See D.R. Ward Const. Co. v. Rohm &*

*Haas Co.*, 470 F. Supp. 2d 485, 506 (E.D. Pa. 2006) (citing *Freeman*, holding "the Tennessee Supreme Court expressly permits independent unjust enrichment claims by indirect purchasers"); *see also In re DDAVP Indirect Purchaser Antitrust Litig.*, 903 F. Supp. 2d 198, 237 (S.D.N.Y. 2012) (discussing *Freeman* and declining to dismiss unjust enrichment claim in conjunction with dismissal of Tennessee consumer protection claim); *Williams Elecs. Games, Inc. v. Garrity*, 366 F.3d 569, 576 (7th Cir. 2004)("Restitution is available in any intentional-tort case in which the tortfeasor has made a profit that exceeds the victim's damages").[9]

*Freeman* also confirms that "a plaintiff is not required to exhaust all remedies against the party with whom the plaintiff is in privity if the pursuit of the remedies would be futile." *Freeman*, 172 S.W.3d at 526. Here, Plaintiffs would not have a remedy against home sellers or buyer-agents with whom Plaintiffs contracted because Plaintiffs' injuries are the result of Defendants' illegal conduct, not sellers and individual agents. *See In re Chocolate Confectionary Antitrust Litig.*, 749 F. Supp. 2d 224, 242 (M.D. Pa. 2010) (denying motion to dismiss because the indirect purchaser plaintiffs "simply lack a cognizable remedy against the direct purchasers"). Moreover, the question of whether the pursuit of those remedies would be futile is a factual one, inappropriate for resolution at this stage. *See Amegy Bank, N.A. v. Deutsche Bank, Ag.*, No. 4:12-cv-23, 2013 WL 12121328, at *9 (E.D. Tenn. Mar. 29, 2013) (declining to consider exhaustion of remedies on a motion to dismiss).

### E. Plaintiffs State Claims Under North Carolina's Consumer Protection Law.

Under the North Carolina Unfair and Deceptive Trade Practices Act, N.C.G.S. § 75.1–1(a), Plaintiffs must plead (1) "an unfair or deceptive act;" (2) "the act or practice was in or affecting commerce;" and (3) causation. *Homes of N.C., Inc.*, 362 N.C. 63, 72, 653 S.E.2d 393, 399 (2007).

[9] *Craft v. Forklift Sys., Inc.*, No. M2002-00040-COA-R3CV, 2003 WL 21642767, at *3 (Tenn. Ct. App. July 14, 2003), also cited by Defendants (MTD II at 16-17) is distinguishable on both legal and procedural grounds. *Craft* reversed and remanded a trial court judgment that granted equitable relief in a "pure contract action" in which the judgment did "not make *any* findings relative to any of the elements of a breach of contract action." 2003 WL 21642767, at *3 (emphasis added).

Defendants argue that the Amended Complaint fails to plead an unfair or deceptive act and causation. MTD II at 17. Neither contention has merit.

The Amended Complaint describes the rules and policies that inflated buyer-agent commissions. ¶¶ 58–99; *see also* Section II, *supra*. To the extent that Defendants argue that North Carolina's consumer protection statute imposes a heightened standard for unfairness, they are incorrect. *See Topshelf Mgmt., Inc. v. Campbell-Ewald Co.*, 117 F. Supp. 3d 722 (M.D.N.C. 2015) ("North Carolina's [consumer protection] statute is based on section 5 [of the FTC Act], and North Carolina courts consider federal interpretations of section 5 in construing section 75-1.1."); *Silicon Knights, Inc. v. Epic Games, Inc.*, No. 5:07-cv-275-D, 2011 WL 1134453, at *16 (E.D.N.C. Jan. 25, 2011) ("The standard for violation of the UDTPA and common law unfair competition are not appreciably different") (quotation omitted); *In re Namenda Indirect Purchaser Antitrust Litig.*, 338 F.R.D. 527, 574–75 (S.D.N.Y. 2021) (explaining that North Carolina's definition of "unfair" does not differ from that of other state statutes or the federal FTC Act).

As for causation, Plaintiffs have alleged that Defendants' anticompetitive policies inflated buyer-agent commissions, and that Plaintiffs paid supracompetitive prices when they purchased homes. ¶¶ 4, 12, 20–27, 148, 150; *see also* pp. 14–15, *supra*. Nothing more is required.[10] *See, e.g.*, *Teague v. Bayer AG*, 671 S.E.2d 550, 558 (N.C. Ct. App. 2009) (reversing dismissal of indirect purchasers' price fixing claims); *Koch Agronomic Servs., LLC v. Exo Agro Res. LLC*, No. 1:14CV679, 2015 WL 5712640, at *14 (M.D.N.C. Sept. 29, 2015) (declining to dismiss North Carolina claim because plaintiffs stated a claim under federal antitrust law). Plaintiffs' North Carolina claim should be upheld.

### F. Plaintiffs Plausibly Plead Violations of the Kansas Consumer Protection Act.

[10] Defendants' sole case regarding causation involved a defendant who did not engage in any unfair practice until *after* the plaintiffs had paid them money, and accordingly, those plaintiffs could not allege that defendants' unfair practice caused their injury. *McLamb v. T.P. Inc.*, 619 S.E.2d 577, 593 (N.C. Ct. App. 2005).

Citing a single case from Florida, Defendants make claim that the Kansas Consumer Protection Act, K.S.A. 50–626 ("KCPA"), has no application to anticompetitive conduct. *See* MTD at 18. But the KCPA applies to anticompetitive conduct that also involves a form of deception or fraud. *See, e.g.*, *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 300 F. Supp. 2d 1107, 1149–50 (D. Kan. 2003) (declining to dismiss federal antitrust claims and KCPA claims where plaintiffs alleged a willful misrepresentation). Here, Plaintiffs have alleged the required misrepresentation, namely, that buyer-agent services were free. *See, e.g.*, Am. Complaint ¶¶ 4, 51, 86–88. Accordingly, the Court should deny the Defendants' motion to dismiss the KCPA claim.

### G. Plaintiffs' Unjust Enrichment Claims Should Proceed.

Defendants argue that under the laws of Florida, Kansas, Massachusetts, Nevada, New Mexico, and North Carolina, unjust enrichment is unavailable where the plaintiff lacks an adequate remedy at law. *See* MTD II at 18–19. But it is well-settled that Plaintiffs may plead their claims in the alternative. *See, e.g.*, *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 886 (7th Cir. 2022) ("[A] party may plead … in the alternative."). To dismiss the unjust enrichment claims at this juncture would be premature, as one case cited by Defendants acknowledges.[11] *See Aceto Corp. v. TherapeuticsMD, Inc.*, 953 F. Supp. 2d 1269, 1289 (S.D. Fla. Jul. 17, 2013) ("[T[here is no basis for dispensing with [sic] Plaintiffs unjust enrichment claim at the motion to dismiss stage."). And courts in this District have repeatedly rejected the exact argument advanced by Defendants. *See, e.g.*, *Sandee's*, 2021 WL 963812, at *7 (declining to dismiss unjust enrichment claims under Kansas and Nevada law); *Smith-Brown v. Ulta Beauty, Inc.*, No. 18 C 610, 2019 WL 932022, at *10 (N.D. Ill. Feb. 26, 2019) (declining to dismiss unjust enrichment claims under Florida and Nevada law). This Court should do the same.

## IV. If the Court Dismisses Plaintiffs' Claims, Plaintiffs Should Have Leave to Amend.

[11] Defendants' other cited authority are primarily cases involving different procedural postures. *See, e.g.*, *Ferreira v. Sterling Jewelers, Inc.*, 130 F. Supp. 3d 471, 487 (D. Mass. 2015) (granting summary judgment on unjust enrichment claim where plaintiff "offer[ed] no argument").

"The court should freely give leave [to amend] when justice so requires." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 519 (7th Cir. 2015) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "When a district court denies a plaintiff such an opportunity, its decision will be reviewed rigorously on appeal." *Id.* "Unless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss." *Id.* (cleaned up).

Defendants identify no purported defect that would be futile to attempt to amend. Contrary to Defendants' argument, Plaintiffs' Complaint does not repeat deficiencies (Def. Mem at 19-20), but rather pleads a new class definition (¶ 137) and brings numerous new claims for damages under a brand new indirect purchaser theory of liability. *See* ¶¶ 160, 166. The inclusion of these allegations distinguishes Plaintiffs' Complaint from those dismissed in Defendants' cited cases. MTD II at 19-20. More importantly, as the Court has not yet ruled on these allegations, leave to amend is warranted. *See City of Rockford v. Mallinckrodt ARD, Inc.*, 360 F. Supp. 3d at 753 (permitting plaintiffs to replead for a third time where Court had not yet ruled on a 12(b) motion). At the very least, Plaintiffs could amend to add new plaintiffs from additional states. *See In re Interior Molded Doors Indirect Purchaser Antitrust Litig.*, No. 3:18-CV-00850-JAG, 2020 WL 2110931, at *5 (E.D. Va. May 4, 2020) ("[T]he Court [previously] granted the plaintiffs leave to amend their complaint to add new plaintiffs to revive some of the previously dismissed claims.").

Accordingly, for the reasons explained herein, Plaintiff's claims should be upheld. But if they are not, the Court should follow the general rule and grant Plaintiff leave to amend.

## CONCLUSION

For all the reasons set forth above, Defendants' motion should be denied.

Respectfully submitted,

Dated: October 21, 2021

Vincent Briganti (pro hac vice)
Christian Levis (pro hac vice)
Noelle Feigenbaum (pro hac vice)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
vbriganti@lowey.com
clevis@lowey.com
nfeigenbaum@lowey.com

George A. Zelcs (Ill. Bar No. 3123738)
Randall P. Ewing, Jr. (Ill. Bar No. 6294238)
Jonathon D. Byrer (Ill. Bar No. 6292491)
Ryan Z. Cortazar (Ill. Bar No. 6323766)
**KOREIN TILLERY, LLC**
205 North Michigan Avenue, Suite 1950
Chicago, IL 60601
Telephone: 312-641-9750
gzelcs@koreintillery.com
rewing@koreintillery.com
jbyrer@koreintillery.com
rcortazar@koreintillery.com

*Attorneys for Plaintiffs and the Proposed Classes*