**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MYA BATTON, et al., individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | No. 21-cv-00430 |
| v. | ) ) | Judge Andrea R. Wood |
| THE NATIONAL ASSOCIATION OF REALTORS, et al., | ) ) ) | |
| Defendants. | ) ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiffs each bought a home listed on a local database of properties for sale known as a Multiple Listing Service ("MLS") with the assistance of a real estate broker. Like all sellers of homes listed on an MLS, the person selling each Plaintiff's home was required to include in the listing a single, set offer of compensation to the buyer's broker. According to Plaintiffs, restricting MLS access only to home sellers who make a set commission offer to the successful buyer-broker is anticompetitive and results in artificially inflated, supracompetitive commission rates being incorporated into purchase prices for homes. In their Amended Class Action Complaint ("ACAC"), Plaintiffs allege that Defendants National Association of Realtors ("NAR"), Realogy Holdings Corp., HomeServices of America, Inc., HSF Affiliates, LLC, Long & Foster Companies, Inc., BHH Affiliates, LLC, RE/MAX LLC, and Keller Williams Realty, Inc. engaged in a conspiracy in restraint of trade in violation of § 1 of the Sherman Act, 15 U.S.C. § 1, and seek to enjoin Defendants' antitrust violations. Further, Plaintiffs seek damages under various states' antitrust and consumer protection statutes and common law. Before the Court are Defendants' motion to dismiss the ACAC pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Dkt. No. 92) and Defendants HomeServices of America, Inc., HSF

Affiliates, LLC, Long & Foster Companies, Inc., and BHH Affiliates, LLC's (collectively, "HomeServices Defendants") motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). (Dkt. No. 93.) For the reasons that follow, Defendants' motion pursuant to Rules 12(b)(1) and 12(b)(6) is granted in part and denied in part, and HomeServices Defendants' motion pursuant to Rule 12(b)(2) is granted.

## BACKGROUND

This lawsuit was initiated by Judah Leeder, the sole named plaintiff in the original Class Action Complaint ("CAC"). The CAC alleged that the NAR, a 1.4 million member trade association that advocates for the interests of real estate brokers, conspired with the brokerage-firm Defendants and other co-conspirators to adopt and enforce anticompetitive rules applicable to the vast majority of real estate brokers, resulting in homebuyers like Leeder paying supracompetitive rates of commission to the brokers they retained to assist with their home purchases. Claiming that Defendants were engaged in a continuing contract, combination, or conspiracy to restrain price competition among real estate brokers unreasonably, Leeder asserted a claim against Defendants under § 1 of the Sherman Act, 15 U.S.C. § 1, on behalf of himself and a putative class of similarly situated homebuyers, along with a state-law claim for unjust enrichment.

At issue in the CAC (as well as the now-operative ACAC) are the NAR's rules and policies governing MLSs, which are enforced by the local realtor associations that own the MLSs. Effectively, real estate brokers and individual realtors' access to the MLSs is conditioned on their compliance with the NAR's rules, and given the commercial necessity of MLS access, the brokers have little choice but to comply. Summarized briefly,[1] the central rule in the alleged

---

[1] Because the ACAC essentially repeats the allegations of the CAC with only a few procedural additions, the Court will not provide a detailed recitation of the alleged conspiracy. A more fulsome summary of

antitrust conspiracy requires any broker listing a property for sale on an MLS to make a blanket unilateral offer of compensation to any broker who finds a buyer for the home ("Commission Rule"). In practice, the Commission Rule means that a homeowner's listing agreement will typically set a total commission to be paid to the seller-broker, with a portion of that commission designated to be paid to the buyer-broker. Meanwhile, the buyer's contract with their buyer-broker will provide that the buyer-broker's compensation will come from the total commission paid by the seller. Consequently, in the typical home sale, the buyer-broker's compensation will come from the total commissions paid by the home seller to the seller-broker. Operating in tandem with the Commission Rule are several other NAR rules that serve to restrain negotiations over the broker commissions and create a system of one-sided transparency whereby buyers are prevented from knowing about their brokers' commission offers, even as buyer-brokers can easily view and compare the full universe of compensation offers.

Together, the Commission Rule and related NAR rules allegedly result in substantial uniformity in the compensation paid to buyer-brokers, with total commissions usually paid at between 5% and 6% of the home's sale price. By contrast, in comparable international markets where buyer-brokers are paid directly by the homebuyer, total commission rates are between 1% and 3% of the sale price. While the commission is ostensibly borne by the home seller, Leeder contended that a portion of the supracompetitive commission rates is incorporated into a home's sale price such that homebuyers pay artificially inflated prices for residential real estate.

Defendants moved to dismiss Leeder's CAC. Their principal contention was that, because Leeder and the putative class are only indirect purchasers of buyer-broker services, they

---

Plaintiffs' allegations can be found in the Court's previous ruling dismissing the CAC. (May 2, 2022 Mem. Op. and Order, Dkt. No. 81; *Leeder v. The Nat'l Ass'n of Realtors*, 601 F. Supp. 3d 301 (N.D. Ill. 2022).)

are barred from seeking damages under federal antitrust law by the Supreme Court's decision in *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 729 (1977). Specifically, *Illinois Brick* held that only "the overcharged direct purchaser, and not others in the chain of manufacture or distribution, is the party 'injured in his business or property'" entitled to recover damages from antitrust violators. *Id.* In granting the motion to dismiss, this Court found that homebuyers are indirect purchasers of their brokers' services because it is the home seller that pays the buyer-broker and any cost borne by the homebuyer is only by virtue of the fact that the buyer-broker's commission rate is "baked into" the home's purchase price. (May 2, 2022 Mem. Op. and Order at 8–9, Dkt. No. 81.) And such a "pass on theory of damages" is squarely foreclosed by *Illinois Brick*. *See Fontana Aviation, Inc. v. Cessna Aircraft Co.*, 617 F.2d 478, 480 (7th Cir. 1980).

Although *Illinois Brick* does not preclude indirect purchasers like Leeder and the putative homebuyer class from pursuing claims for injunctive relief under the Sherman Act, the Court also dismissed the CAC's claim for such relief because the more directly injured home sellers are challenging the same rules and seeking the same injunction in a separate, related case before this Court, *Moehrl v. The National Association of Realtors*, No. 19-cv-01610 (N.D. Ill.). Finally, the Court dismissed the CAC's unjust enrichment claim because, under the relevant state law, an antitrust claim barred by *Illinois Brick* cannot be repackaged as a claim for unjust enrichment. Shortly after the Court dismissed the CAC, it granted Leeder leave to file the ACAC. (Dkt. No. 84.)

The ACAC is essentially identical to the CAC with respect to its allegations regarding the alleged antitrust conspiracy. While the ACAC asserts a claim under § 1 of the Sherman Act, it does not attempt to revive the dismissed claim for damages but seeks only to enjoin Defendants' purported violations of the Sherman Act pursuant to § 16 of the Clayton Act, 15 U.S.C. § 26.

However, the ACAC's claim for damages is now presented as 43 causes of action under the antitrust or consumer protection laws of a total of 35 states.[2] The ACAC also asserts unjust enrichment claims under the common law of those 35 states. Finally, the ACAC replaces Leeder with 8 new named Plaintiffs. (ACAC ¶¶ 20–27.) Those new Plaintiffs seek to represent both a nationwide injunctive relief class and a damages class limited to individuals who purchased homes in one of the 35 states whose law gives rise to a claim for damages.

## DISCUSSION

Defendants move to dismiss the ACAC in its entirety, raising arguments under Rules 12(b)(1), 12(b)(2), and 12(b)(6). Defendants argue under Rule 12(b)(1) that Plaintiffs lack standing to assert those state-law claims that arise under the laws of states in which no Plaintiff resides or purchased a home. They further assert that the remaining state-law claims and the claim for injunctive relief based on the alleged violation of § 1 of the Sherman Act fail to state a claim and thus should be dismissed under Rule 12(b)(6). Finally, HomeServices Defendants contend that, if the federal antitrust claim is dismissed, there is no basis for the Court to exercise personal jurisdiction over them and thus they must dismissed under Rule 12(b)(2). Since HomeServices Defendants' basis for dismissal is largely contingent on the dismissal of the federal antitrust claim, the Court will begin with the arguments applicable to all Defendants before turning to HomeServices Defendants' motion.

### I.      Article III Standing

Standing is an essential component of Article III's limitation of federal courts' judicial power only to cases or controversies. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

---

[2] For simplicity, the Court treats a claim brought under the laws of Puerto Rico as one of the 35 state-law claims.

"The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). There are three elements that constitute the "irreducible constitutional minimum" of standing. *Lujan*, 504 U.S. at 560. A "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338 (internal quotation marks omitted). Where a plaintiff does not have Article III standing, a federal district court lacks subject-matter jurisdiction to hear their claims. *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017).

Under Rule 12(b)(1), a party may make either a factual or facial challenge to subject-matter jurisdiction. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). A factual challenge occurs where "the complaint is formally sufficient but the contention is that there is ***in fact*** no subject[-]matter jurisdiction" such that the Court may look beyond the complaint and consider evidence as to whether subject-matter jurisdiction exists. *Apex Digit., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (internal quotation marks omitted). Here, Defendants raise a facial challenge, which requires "only that the court look to the complaint and see if the plaintiff has sufficiently ***alleged*** a basis of subject[-]matter jurisdiction." *Id.* at 443. The standard for facial challenges under Rule 12(b)(1) is the same as that used to evaluate motions under Rule 12(b)(6). *Silha*, 807 F.3d at 174. Thus, the Court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Scanlan v. Eisenberg*, 669 F.3d 838, 841 (7th Cir. 2012).

According to Defendants, Plaintiffs reside and purchased their homes in one of seven states: Florida, Kansas, Massachusetts, Nevada, New Mexico, North Carolina, and Tennessee. Yet Plaintiffs' state-law claims in the ACAC are not limited to those 7 states but also invoke the

antitrust or consumer protection laws of 28 other states. And Defendants contend that Plaintiffs do not have standing to assert claims under the laws of those 28 states because no Plaintiff could have suffered an injury-in-fact from any violation of the laws of a state in which they do not reside.

To have standing, "even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)). Some courts in this District have held that a named plaintiff does not allege an injury-in-fact sufficient to plead Article III standing with respect to state-law antitrust claims "for states in which they do not reside and/or did not purchase the products at issue." *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 09 CV 3690, 2013 WL 4506000, at *8 (N.D. Ill. Aug. 23, 2013) (Dow, J.); *see also In re Plasma-Derivative Protein Therapies Antitrust Litig.*, No. 09 C 7666, 2012 WL 39766, at *6 (N.D. Ill. Jan. 9, 2012) (concluding that the plaintiff lacked standing to assert claims under the laws of states in which the plaintiff made no relevant purchases because it did not "suffer its own personalized injury by virtue of the defendants' alleged violations of" those states' laws). However, the same district court that decided *In re Dairy Farmers* later reversed course, noting that the more recent "trend has been to treat the issue as one of statutory standing that can be deferred until class certification." *In re Dealer Mgmt. Sys. Antitrust Litig.*, 362 F. Supp. 3d 510, 548 (N.D. Ill. 2019) (Dow, J.). It observed that the "trend is consistent with recent Seventh Circuit caselaw holding that 'the question of who is authorized to bring an action under a statute is one of statutory interpretation;

it does not implicate Article III or jurisdiction.'" *Id.* (quoting *Woodman's Food Mkt., Inc. v. Clorox Co.*, 833 F.3d 743, 750 (7th Cir. 2016)).

Those courts that have found named plaintiffs have Article III standing to assert non-resident state-law claims have deemed it sufficient that the named plaintiffs generally alleged "an injury in fact by alleging that they paid inflated prices, which can be fairly traced to Defendants' [antitrust violations], and which can be redressed by a favorable judicial decision." *In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 810 (N.D. Ill. 2017); *see also Sandee's Catering v. Agri Stats, Inc.* (*Sandee's I*), No. 20 C 2295, 2020 WL 6273477, at *5 (N.D. Ill. Oct. 26, 2020) (adopting the analysis set forth in *In re Broiler Chicken*). At least "at the pleading stage and prior to analysis of the class allegations under Rule 23," such an injury was found sufficient "to establish the named plaintiffs' standing to assert the claims of class members in other states." *In re Broiler Chicken*, 290 F. Supp. 3d at 810. Many of those courts noted that "[t]he question of what legal theories [a named plaintiff] may advance as bases for recovering damages for his injury does not implicate Article III; the availability of any particular legal theory presents a question of substantive law." *Liston v. King.com, Ltd.*, 254 F. Supp. 3d 989, 1000 (N.D. Ill. 2017). Thus, that a named plaintiff asserts state-law claims from a state with which they have no relevant relationship is really a challenge to the named plaintiffs' ability to represent adequately the unnamed class members in their state-law antitrust claims. *City of Rockford v. Mallinckrodt ARD, Inc.*, 360 F. Supp. 3d 730, 758 (N.D. Ill. 2019). Such a challenge is "best deferred to the class certification stage." *In re Herbal Supplements Mktg. & Sales Pracs. Litig.*, No. 15-cv-5070, 2017 WL 2215025, at *6 (N.D. Ill. May 19, 2017) (internal quotation marks omitted).

This Court agrees that, because Plaintiffs here have pleaded that they were injured by Defendants' alleged anticompetitive conduct, they have Article III standing to assert claims

under the laws of states other than those states in which Plaintiffs reside or purchased a home. While Defendants claim that the Seventh Circuit's decision in *Marion Diagnostic Center, LLC v. Becton Dickinson & Co.*, 29 F.4th 337, 346–47 (7th Cir. 2022), abrogates those earlier decisions that have determined that named plaintiffs have standing to assert the claims of unnamed class members in other states, the Court finds the Seventh Circuit's analysis in that case to have little relevance here. Indeed, *Marion Diagnostic* did not even address whether a named plaintiff can represent unnamed out-of-state class members. Moreover, the Seventh Circuit found that the plaintiffs had adequately alleged an injury-in-fact, just not one that was fairly traceable to the defendant's purported anticompetitive conduct. *Id.* at 346. The Court fails to see how *Marion Diagnostic* has any impact on the standing analysis here.

In sum, the Court finds that the fact that Plaintiffs assert claims under the laws of states in which they do not reside is not a matter of Article III standing. For that reason, the Court declines to dismiss any state-law claim pursuant to Rule 12(b)(1).

## II.    Rule 12(b)(6)

The Court next turns to Defendants' contention that the ACAC fails to state a claim. To survive a motion under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

According to Defendants, both the federal and state-law antitrust claims fail as a matter of law because Plaintiffs have not plausibly pleaded the relevant market. They also attack all the state-law claims for improperly repackaging the CAC's dismissed federal antitrust damages claim, being untimely, and failing to allege proximate causation adequately. In addition, Defendants challenge certain state-law claims as insufficient for reasons specific to those claims. And finally, given the identity between the allegations in the ACAC and CAC, Defendants argue that the federal antitrust claim for injunctive relief must be dismissed for the same reasons as before.

### A.    Antitrust Market

Defendants argue that both the federal and state-law antitrust claims must be dismissed because Plaintiffs fail to allege properly a relevant market. Specifically, Defendants fault the ACAC for defining the relevant market as "the market for buyer-agent services." (ACAC ¶ 52.) In contrast to the ACAC's allegation of a single-sided market, Defendants claim that the allegations plainly depict a two-sided market. And where an alleged anticompetitive restraint affects a two-sided market, that market's definition must include both sides of the platform. *See Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2285–86 (2018). Consequently, Defendants assert that Plaintiffs failure to do so requires dismissal.

As Plaintiffs note, defining a relevant market only comes into play under the Rule of Reason analysis. The Rule of Reason is one of the three methods of analysis that courts use to determine whether a restraint of trade is unreasonable; the *per se* and quick look methods are the other two. *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 335 (7th Cir. 2012). All three methods "are meant to answer the same question: 'whether or not the challenged restraint enhances competition.'" *Id.* (quoting *Cal. Dental Ass'n v. FTC*, 526 U.S. 756, 780 (1999)). However, only the Rule of Reason method requires, as a threshold matter, "the showing of a

precise market definition in order to demonstrate that a defendant wields market power." *Id.* at 337; *see also Am. Express*, 138 S. Ct. at 2285 ("[C]ourts usually cannot properly apply the rule of reason without an accurate definition of the relevant market."). While Plaintiffs contend that their allegations satisfy all three methods of analysis, the Court does not believe it appropriate to decide conclusively at this early stage which mode of analysis applies.[3]

In any case, "[c]ourts are generally hesitant to dismiss a Sherman Act claim for failure to allege a relevant product [market] because market definition is a deeply fact-intensive inquiry." *Int'l Equip. Trading, Ltd. v. AB SCIEX LLC*, No. 13 C 1129, 2013 WL 4599903, at *3 (N.D. Ill. Aug. 29, 2013) (internal quotation marks omitted). "Motions to dismiss based on a failure to define the market may be granted only if the alleged market makes no economic sense under any set of facts." *Force Partners, LLC v. KSA Lighting & Controls, Inc.*, No. 19-cv-07776, 2022 WL 580808, at *14 (N.D. Ill. Feb. 25, 2022) (internal quotation marks omitted). The Court cannot make such a judgment at this time. Even assuming that Defendants are correct that the market for brokerage services is two-sided, "it is not always necessary to consider both sides of a two-sided platform." *Am. Express*, 138 S. Ct. at 2286. Rather, some ostensibly two-sided markets "behave[] much like a one-sided market and should be analyzed as such." *Id.* Whether this Court should apply a two-sided analysis requires more factual development than is possible at the motion to dismiss stage. *In re Delta Dental Antitrust Litig.*, 484 F. Supp. 3d 627, 640 (N.D. Ill. 2020); *see also Deslandes v. McDonald's USA, LLC*, Nos. 22-2333, 22-2334, 2023 WL 5496957, at *3 (7th Cir. Aug. 25, 2023) (publication forthcoming) ("Some language in the district court's opinions

---

[3] Indeed, in the related *Moehrl* case, the Court still has declined to take a position on the proper mode of analysis at a more advanced stage of the litigation than here. *Moehrl v. Nat'l Ass'n of Realtors*, No. 19-cv-01610, 2023 WL 2683199, at *41 (N.D. Ill. Mar. 29, 2023) ("The Court expresses no view on the proper mode of analysis at [the class certification] stage.").

suggests that a complaint must contain enough to *win*, but that is not so. It suffices . . . to make out a plausible claim . . . . Once a complaint has identified a plausible antitrust claim, further development requires discovery, economic analysis, and potentially a trial."). Thus, the Court cannot conclude at this stage that Plaintiffs' proposed market definition is implausible and will not dismiss the antitrust claims for that reason.

### B. Repleading Dismissed Federal Antitrust Claim as State-Law Claims

As already noted, the ACAC relies on the same substantive allegations as the CAC. Instead of trying to plead around *Illinois Brick*'s rule precluding indirect purchasers from recovering damages for Sherman Act violations, the ACAC alleges that Defendants' anticompetitive conduct entitles Plaintiffs to damages under various states' antitrust[4] and consumer protection laws or for unjust enrichment. Defendants contend that Plaintiffs' attempt to repackage their dismissed federal claim as state-law claims fails to meet the federal pleading standards.

There is out-of-Circuit authority for Defendants' assertion that it is improper for a plaintiff to recast the same factual allegations supporting a federal antitrust claim as also actionable under a multitude of state-laws. *E.g.*, *In re Aggrenox Antitrust Litig.*, 94 F. Supp. 3d 224, 255 (D. Conn. 2015) (dismissing state-law claims where the plaintiffs "pleaded federal antitrust claims and the factual foundation for them . . . and [then] merely allege[d] that those claims are also actionable under general consumer-protection laws and as unjust enrichment").

---

[4] Although indirect purchasers cannot maintain a claim for damages under federal antitrust law, the Supreme Court has held that *Illinois Brick* does not preclude states from allowing indirect purchasers to recover damages under their own antitrust laws. *California v. ARC Am. Corp.*, 490 U.S. 93, 103 (1989) ("[N]othing in *Illinois Brick* suggests that it would be contrary to congressional purposes for States to allow indirect purchasers to recover under their own antitrust laws."). Thus, many states have passed so-called "*Illinois Brick* repealer statutes" permitting indirect purchasers to recover damages. *In re Opana ER Antitrust Litig.*, 162 F. Supp. 3d 704, 722 (N.D. Ill. 2016).

Nonetheless, the Court believes that Defendants demand too much of Plaintiffs at the pleading stage. Under the federal notice pleading system, a "complaint need contain only factual allegations that give the defendant fair notice of the claim for relief and show the claim has 'substantive plausibility.'" *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 517 (7th Cir. 2015) (quoting *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) (per curiam)). Here, Plaintiffs have set forth detailed factual allegations regarding the purported antitrust conspiracy and, "[h]aving informed [Defendants] of the factual basis for their complaint, they were required to do no more to stave off threshold dismissal for want of an adequate statement of their claim." *Johnson*, 574 U.S. at 12.

In arguing that Plaintiffs fail to plead their state-law claims adequately, Defendants implicitly suggest that the complaint be evaluated under the standards of code pleading such that Plaintiffs should have "plead[ed] the elements of a cause of action along with facts supporting each element." *Runnion*, 786 F.3d at 517. But the notice pleading system established by the Federal Rules of Civil Procedure does not require such level of detail. *Deslandes*, 2023 WL 5496957, at *3 ("Nor need a complaint plead law or match facts to elements of legal theories."). Indeed, a complaint need not even plead legal theories. *Auto Driveaway Franchise Sys., LLC v. Auto Driveaway Richmond, LLC*, 928 F.3d 670, 675 (7th Cir. 2019). Consequently, Defendants' contention that all the state-law claims must be dismissed as inadequately pleaded is unavailing.

### C. Timeliness

Next, Defendants seek to dismiss all the state-law claims as barred by the applicable statutes of limitations. Normally, a plaintiff's complaint need not anticipate an affirmative defense such as the statute of limitations to survive a motion to dismiss. *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). It is therefore "irregular to dismiss a claim as untimely under Rule 12(b)(6)." *Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006) (internal quotation

marks omitted). Dismissal on statute of limitations grounds at the pleading stage may be warranted, however, when a plaintiff pleads facts that effectively establish the defense. *Id.*

According to Defendants, the allegations in the ACAC show that Defendants' conspiracy to engage in anticompetitive conduct began in 1996, and therefore the state-law claims, brought decades later, are untimely under all of the applicable state-law statutes of limitations. For federal antitrust claims, the "continuing violation" doctrine regularly serves to toll the statute of limitations. *In re Opana ER Antitrust Litig.*, 162 F. Supp. 3d 704, 725 (N.D. Ill. 2016). "This doctrine advises that 'each time a plaintiff is injured by an act of the defendants a cause of action accrues to him to recover the damages caused by that act,' and as to those damages, 'the statute of limitations runs from the commission of the act.'" *Id.* (quoting *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 338 (1971)). However, "the doctrine has received mixed treatment by state courts deciding antitrust claims." *Id.*

While it appears at least some of Plaintiffs' state-law claims may be subject to the continuing violation doctrine, Plaintiffs do not rely on that doctrine to defeat Defendants' timeliness arguments. Instead, Plaintiffs attempt to show that the statute of limitations for each of their state-law claims may be tolled by either the discovery rule or the doctrine of fraudulent concealment. Although subject to variation depending on the governing state law, where applicable, the discovery rule generally operates to start the statute of limitations running "only when the plaintiff learns that he's been injured, and by whom." *United States v. Norwood*, 602 F.3d 830, 837 (7th Cir. 2010). The doctrine of fraudulent concealment applies to toll the running of the statute of limitations when the defendants "take affirmative steps after the original wrongdoing to divert attention, mislead, or prevent discovery" of their misconduct. *In re Sulfuric Acid Antitrust Litig.*, 743 F. Supp. 2d 827, 854 (N.D. Ill. 2010). In Appendix A to their response

to Defendants' motion to dismiss, Plaintiffs sets out authority from each state under whose laws they assert a claim to show that all recognize one or both of the tolling rules. (Pl.'s Opp'n to Defs.' Mot. to Dismiss, App. A, Dkt. No. 98-1.)

Because Plaintiffs have established the availability of some tolling mechanism for each of their state-law claims, the Court is satisfied that, at this stage, they have done enough to clear the statute of limitations hurdle. Defendants' assertion that "[i]t is Plaintiffs' burden to demonstrate that their claims are timely under each state's jurisprudence," (Defs.' Mem. in Supp. of Mot. to Dismiss at 15, Dkt. No. 92-1), is directly contrary to well-established law. To reiterate, Plaintiffs have no burden to plead around an affirmative defense such as the statute of limitations. Certainly, there are no allegations in the ACAC that conclusively establish the inapplicability of either the discovery rule or the doctrine of fraudulent concealment. For that reason, Defendants' attempt to defeat the state-law claims on statute of limitations grounds is premature.

### D. Proximate Causation

Defendants also contend that Plaintiffs' state-law claims fail because the ACAC does not sufficiently allege that Defendants proximately caused Plaintiffs' injuries. In particular, Defendants assert that the ACAC is devoid of facts supporting Plaintiffs' assumption that the buyer-broker commissions are incorporated into a home's purchase price and thus passed onto the homebuyer.

To show that Plaintiffs fail to plead proximate causation, Defendants rely on *Supreme Auto Transport, LLC v. Arcelor Mittal USA, Inc.*, 902 F.3d 735 (7th Cir. 2018). There, the plaintiffs alleged that the defendant steel producers conspired to drive up the price of steel by slashing output and, as a result, "they overpaid for end-use consumer goods, such as vehicles, washing machines, and refrigerators, that were manufactured by third parties using steel." *Id.* at 737. The Seventh Circuit dismissed the indirect purchasers' claims brought under *Illinois Brick-*

repealer statutes because the plaintiffs' alleged injury from the overcharge was too remote from the pleaded antitrust conspiracy. The Seventh Circuit explained that it could not "imagine . . . how one might tackle the task of tracing the effect of an alleged overcharge on steel through the complex supply and production chains that gave rise to the consumer products at issue" in that case. *Id.* at 744. Similarly, here, Defendants argue that Plaintiffs' claimed injury of inflated home prices is too attenuated from the purportedly anticompetitive conduct because there are multiple factors that impact the price of a home. Further, Defendants note that homebuyers like Plaintiffs are two steps removed from the supposed overcharge—before reaching homebuyers, the buyer-broker commission must first be passed on from the seller-broker to the seller and then from the seller to the buyer.

The Court does not agree that Plaintiffs' claimed injury is too remote to support their state-law claims. Unlike in *Supreme Auto Transport*, where the "plaintiffs purchased steel only insofar as it was one of among many components of other more complex products, all of which have gone through numerous manufacturing alterations and lines of distribution," *id.* at 744, here, it is not difficult to trace the path of the overcharge. Indeed, the Court finds Plaintiffs' theory of injury relatively simple. A home seller pays a total commission meant to compensate both the buyer- and seller-brokers. Then, the MLS listing for the seller's home informs potential buyer-brokers of the set rate at which they will be compensated if they find a buyer for the home. While a home seller may be content to bear the costs associated with the services provided to them by their own seller-broker, they will be less willing to pay for the buyer-broker's services, which, of course, are rendered to the buyer rather than the seller. It would therefore be economically rational for a home seller to try and offset the costs they incur for services provided to the buyer by raising the price of the home they are selling by an amount commensurate with

the portion of the total commission earmarked for the buyer-broker. Thus, as alleged, there is a single, straight-line path by which the commission is passed through to the homebuyer. For that reason, the Court cannot conclude that the ACAC fails to plead proximate causation as to any state-law claim.

### E.    Individual State-Law Claims

Insofar as all state-law claims do not fall together, Defendants contend that certain of the state-law claims nonetheless fail on their individual merits. The Court addresses Defendants' contentions for each of the separately challenged state-law claims in turn.

#### 1.    Tennessee Law Claims

First, Defendants argue that Plaintiffs cannot state any of their three claims under Tennessee law. Apparently, Plaintiffs agree with Defendants that they do not have viable claims under Tennessee's antitrust and consumer protection laws, as they voluntarily dismiss those claims in their response brief. Accordingly, the Court grants Defendants' motion to dismiss as to those Tennessee state-law claims. Nonetheless, Plaintiffs contend that they still may assert their claim for unjust enrichment under Tennessee law. The Court agrees with Plaintiffs that indirect purchasers may bring a standalone unjust enrichment claim under Tennessee law. *See Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 524–26 (Tenn. 2005) ("[W]e conclude that to recover for unjust enrichment, a plaintiff need not establish that the defendant received a direct benefit from the plaintiff."); *see also D.R. Ward Constr. Co. v. Rohm & Haas Co.*, 470 F. Supp. 2d 485, 506 (E.D. Pa. 2006) ("[T]he Tennessee Supreme Court expressly permits independent unjust enrichment claims by indirect purchasers . . . ."). Defendants cite no authority suggesting otherwise.

2.       *North Carolina Consumer Protection Law Claim*

Defendants contend that Plaintiffs' unfair and deceptive trade practices claim under N.C.

Gen. Stat. § 75-1.1, fails because they do not sufficiently allege an unfair or deceptive practice

that proximately caused Plaintiffs' injury. To state such a claim under North Carolina law, a

plaintiff must plead: "(1) an unfair or deceptive act or practice, (2) in or affecting commerce, and

(3) which proximately caused injury to plaintiffs." *Walker v. Fleetwood Homes of N.C., Inc.*, 653

S.E.2d 393, 399 (N.C. 2007). Courts have found that conduct that plausibly violates antitrust law

suffices to state a North Carolina unfair and deceptive trade practices claim. *E.g.*, *Koch*

*Agronomic Servs., LLC v. Eco Agro Res. LLC*, No. 1:14CV679, 2015 WL 5712640, at *14

(M.D.N.C. Sept. 29, 2015); *Teague v. Bayer AG*, 671 S.E.2d 550, 558 (N.C. Ct. App. 2009)

("The injury that [indirect purchaser] Plaintiff alleges appears to be within the type of injury that

the General Assembly intended to address through our state's antitrust and consumer fraud

law."); *ITCO Corp. v. Michelin Tire Corp., Com. Div.*, 722 F.2d 42, 48 (4th Cir.1983)

("We . . . hold that proof of conduct violative of the Sherman Act is proof sufficient to establish a

violation of the North Carolina Unfair Trade Practices Act."). And Defendants' claim that

Plaintiffs fail to allege proximate causation is unavailing for the reasons discussed above. The

Court therefore will not dismiss Plaintiffs' North Carolina unfair and deceptive trade practices

claim at the pleadings stage.

3.       *Kansas Consumer Protection Law Claim*

While Defendants contend that allegations of anticompetitive conduct are insufficient to

state a claim under Kansas's Consumer Protection Act ("KCPA"), Kan. Stat. Ann. § 50-623 *et*

*seq.*, in support of this proposition they rely on a single case from a federal district court outside

of Kansas. *See In re Photochromic Lens Antitrust Litig.*, No. 8:10-md-2173-T-27EAJ, 2011 WL

13141933, at *7 (M.D. Fla. Oct. 26, 2011) (finding that "anticompetitive conduct is not

actionable under Kansas' unfair trade law"). That case, in turn, cites the Kansas Supreme Court's conclusion that Kansas's antitrust statute "does not include the practices prohibited by the KCPA." *Equitable Life Leasing Corp. v. Abbick*, 757 P.2d 304, 307 (Kan. 1988). As another district court observed, "the Supreme Court of Kansas has distinguished between consumer harms redressable [by the KCPA] and pricing harms governed by the Kansas antitrust statute," which led the district court to conclude that the KCPA was "inapplicable to price-fixing claims." *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 584 (M.D. Pa. 2009); *see also In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-md-01819 CW, 2010 WL 5094291, at *9 (N.D. Cal. Dec. 8, 2010) ("The [KCPA] appears to require misconduct above and beyond price fixing.").

Plaintiffs assert that the KCPA applies to anticompetitive conduct that involves a form of fraud or deception. And here, Plaintiffs claim that it was deceptive for buyer-brokers to advertise their services as free when, in fact, their commissions are passed through to buyers because the commissions are incorporated into home prices. Setting aside whether that additional allegation is enough to plead a KCPA claim, the ACAC does not allege that such a representation was made to any Plaintiff. Indeed, all the ACAC alleges is that the NAR adopted a rule under which a buyer-broker "***may*** represent their services as 'free' or without cost even if they expect to receive compensation from a source other than their client." (ACAC ¶ 87 (emphasis added) (internal quotation marks omitted).) It does not follow from the fact that buyer-brokers were permitted to make this arguable misrepresentation that such misrepresentation must have been made to Plaintiffs here. Thus, Plaintiffs allege the type of standard anticompetitive conduct that does not separately give rise to a claim under the KCPA. Plaintiffs' KCPA claim is dismissed.

4.      *Unjust Enrichment—Six States*

Defendants' last state-specific challenges are directed to the unjust enrichment claims asserted under Florida, Kansas, Massachusetts, Nevada, New Mexico, and North Carolina law. In each state, an unjust enrichment claim is unavailable where a plaintiff has a potential remedy available at law. *E.g.*, *Korte Constr. Co. v. State on Rel. of Bd. of Regents of the Nev. Sys. of Higher Educ.*, 492 P.3d 540, 541 (Nev. 2021); *Doral Collision Ctr., Inc. v. Daimler Tr.*, 341 So.3d 424, 430 (Fl. Dist. Ct. App. 2022); *Deeds v. Waddell & Reed Inv. Mgmt. Co.*, 280 P.3d 786, 795 (Kan. Ct. App. 2012); *Santagate v. Tower*, 833 N.E.2d 171, 176 (Mass. App. Ct. 2005); *Hinson v. United Fin. Servs., Inc.*, 473 S.E.2d 382, 385 (N.C. Ct. App. 1996); *Abraham v. WPX Energy Prod., LLC*, 20 F. Supp. 3d 1244, 1266 (D.N.M. 2014) (citing *Gen. Tel. Co. of the Sw. v. State Tax Comm'n*, 367 P.2d 711, 715 (N.M. 1962)). And Defendants claim that since such a remedy is available under the respective states' antitrust or consumer protection laws, the unjust enrichment claims necessarily fail. While that may be true, Plaintiffs correctly note that an unjust enrichment claim may nonetheless be pleaded in the alternative. *E.g.*, *Sandee's Catering v. Agri Stats, Inc.*, No. 20 C 2295, 2021 WL 963812, at *7 (N.D. Ill. Mar. 15, 2021) (declining to dismiss state-law unjust enrichment claims for failure to allege an adequate remedy at law because "Rule 8(d)(2)'s permissiveness allows for pleading in the alternative"); *Aceto Corp. v. TherapeuticsMD, Inc.*, 953 F. Supp. 2d 1269, 1289 (S.D. Fla. 2013) ("[W]hile [a plaintiff] may not recover under both legal and equitable theories, there is no basis for dispensing with Plaintiffs [*sic*] unjust enrichment claim at the motion to dismiss stage"). For that reason, the Court declines to dismiss the unjust enrichment claims at this time.

## F.      **Injunctive Relief Under § 16 of the Clayton Act**

The ACAC once again seeks injunctive relief for violations of § 1 of the Sherman Act through § 16 of the Clayton Act, even though this Court previously dismissed the CAC's claim

for such relief based on nearly identical facts. Plaintiffs contend that circumstances have changed because now they have pleaded viable state-law claims. They note that the Court's dismissal of the CAC's claim for injunctive relief was predicated, in part, on the fact that the CAC pleaded no viable damages claim. In its ruling, the Court observed that, in two cases where the district court allowed indirect purchasers' claims for injunctive relief under the Clayton Act to proceed, the plaintiffs had successfully pleaded at least one antitrust damages claim that was not barred by *Illinois Brick*. *See In re Dealer Mgmt. Sys.*, 362 F. Supp. 3d at 532; *In re Broiler Chicken*, 290 F. Supp. 3d at 814, 819–21. Of course, the damages claims that were proceeding in those cases arose under federal antitrust law. *In re Dealer Mgmt. Sys.*, 362 F. Supp. 3d at 531; *In re Broiler Chicken*, 290 F. Supp. 3d at 787–88. This Court did not suggest that Plaintiffs would be entitled to seek injunctive relief under § 16 of the Clayton Act so long as they could successfully state a damages claim under one or more states' antitrust laws.

To determine whether a plaintiff seeking only injunctive relief under § 16 of the Clayton Act can proceed with their claim, courts focus on "the presence of improper motive, the causal connection between the violation and the harm, and the directness of the injury." *In re Plasma-Derivative Protein Therapies*, 2012 WL 39766, at *9. Given that the ACAC's allegations essentially mirror the allegations in the CAC, the Court's prior analysis as to those considerations applies equally here. Moreover, in dismissing the CAC's claim for injunctive relief, the Court determined that the home sellers rather than the homebuyers were better suited to seek injunctive relief. Since the Court's ruling dismissing the CAC, a jury in the Western District of Missouri has returned a verdict in favor of the plaintiffs in the antitrust case brought by home sellers in *Burnett v. National Association of Realtors*, 4:19-cv-00332-SRB (W.D. Mo.). Meanwhile, the *Moehrl* case brought in this District continues to advance. As the Court noted,

those home seller plaintiffs are better suited to seek the injunctive relief that Plaintiffs seek here. In response to this point, Plaintiffs note that their requested injunctive relief encompasses a few additional NAR rules not challenged in the home sellers' cases.

The Court does not find it material that Plaintiffs' requested injunction is slightly broader than what was requested by the home seller plaintiffs. Ultimately, both the home sellers and the homebuyers are attacking the entire system of real-estate broker compensation and both seek to enjoin the core NAR rules underpinning that system. To the extent that the home sellers successfully enjoin those foundational NAR rules, ancillary rules like those additional rules that Plaintiffs seek to enjoin will, in all likelihood, fall as well. Plaintiffs do not suggest that only its injunction will suffice to restrain Defendants' alleged anticompetitive conduct.

Further, in dismissing the CAC's claim for injunctive relief, the Court noted that, because people typically buy homes only a few times in their life, the CAC failed to show that homebuyers faced "a significant threat of injury from an impending violation of the antitrust laws or from a contemporary violation likely to continue or recur." *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 130 (1969). That still remains the case. Moreover, since the proposed injunctive relief class would consist of persons who have already purchased a home (ACAC ¶ 136), many if not most putative class members that do reenter the market for residential real estate would simultaneously be looking to sell their current homes. To the extent a putative class member faces a significant threat of injury from Defendants' alleged antitrust violations in their capacity as a buyer, they would likely be simultaneously exposed to injury as a seller too—*i.e.*, they would be threatened with the same injury as that suffered by the home seller class certified in *Moehrl* and *Burnett*. This circumstance further underscores that the home sellers

22

are best situated to seek injunctive relief. For these reasons, the Court dismisses Plaintiffs' claim for injunctive relief under § 16 of the Clayton Act.

### III.    Personal Jurisdiction over HomeServices Defendants

HomeServices Defendants argue that they are not subject to personal jurisdiction in Illinois because none of the constituent entities are Illinois-based companies and the ACAC fails to include any allegations connecting them to Illinois. A motion to dismiss under Rule 12(b)(2) "tests whether a federal court has personal jurisdiction over a defendant." *United Airlines, Inc. v. Zaman*, 152 F. Supp. 3d 1041, 1045 (N.D. Ill. 2015). "The plaintiff need not include facts alleging personal jurisdiction in the complaint, but once the defendant moves to dismiss the complaint . . . for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 392 (7th Cir. 2020) (internal quotation marks omitted). When a court rules on a Rule 12(b)(2) motion based on the parties' submission of written materials without holding an evidentiary hearing, "the plaintiff need only make out a *prima facie* case of personal jurisdiction." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014) (internal quotation marks omitted). In considering the motion, any well-pleaded facts alleged in the complaint are taken as true and any factual disputes in the affidavits are resolved in the plaintiff's favor. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). Still, where the defendant "submits affidavits or other evidence in opposition, 'the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction.'" *ABN AMRO, Inc. v. Cap. Int'l Ltd.*, 595 F. Supp. 2d 805, 818 (N.D. Ill. 2008) (quoting *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 787 (7th Cir. 2003)). If the plaintiff fails to refute a fact contained in the defendant's affidavit, that fact is accepted as true. *Id.*

The Clayton Act authorizes nationwide service of process and thus nationwide personal jurisdiction. 15 U.S.C. § 22; *see also KM Enters., Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 724 (7th Cir. 2013). Consequently, the presence of Plaintiffs' claim for injunctive relief under § 16 of the Clayton Act would have allowed the Court to exercise pendent personal jurisdiction over their state-law claims. *Sandee's I*, 2020 WL 6273477, at *5 ("The Seventh Circuit has recognized the doctrine of pendent personal jurisdiction, which permits a court that has specific personal jurisdiction over a defendant for one claim to exercise personal jurisdiction over that defendant as to another claim for which personal jurisdiction may otherwise be lacking if those claims arise out of a common nucleus of facts." (citing *Robinson Eng'g Co. Pension Plan & Tr. v. George*, 223 F.3d 445, 449 (7th Cir. 2000))).

However, now that the Court has dismissed Plaintiffs' claim for injunctive relief, there is no longer any claim under which nationwide jurisdiction is authorized. Consequently, the Clayton Act's jurisdictional basis "drop[s] out of the case" and is not considered in the personal jurisdiction analysis. *Tamburo*, 601 F.3d at 700 & n.6. That means that the Court cannot exercise personal jurisdiction over HomeServices Defendants with respect to the state-law claims simply by virtue of the presence of a claim over which it can exercise nationwide jurisdiction. *3DGS, LLC v. Chai Tr. Co., LLC*, No. 19 CV 7524, 2020 WL 7353406, at *8 (N.D. Ill. Dec. 15, 2020) ("When a court's personal jurisdiction derives from a federal statute authorizing nationwide service of process, the court also has personal jurisdiction over the state-law claims arising from the same facts under the doctrine of pendent personal jurisdiction. But since [the plaintiff] 'failed to adequately plead a federal claim, these jurisdictional options drop out of the case.'" (citation omitted) (quoting *Tamburo*, 601 F.3d at 700 n.6)); *see also Menzies v. N. Tr. Corp.*, No. 15-cv-3403, 2021 WL 170738, at *5 (N.D. Ill. Jan. 19, 2021) (recognizing that the district court's

initial exercise of pendent personal jurisdiction over the state-law claims was proper given the presence of federal claims authorizing nationwide service of process but finding the subsequent dismissal of the federal claims created a "jurisdictional flaw" as to the remaining state-law claims).

In the absence of a statute authorizing nationwide service of process, the Court must look to Illinois's long-arm statute to determine whether HomeServices Defendants are subject to personal jurisdiction in Illinois. *Tamburo*, 601 F.3d at 700. The long-arm statute allows for the exercise of jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process Clause. 735 ILCS 5/2-209(c); *Tamburo*, 601 F.3d at 700. Thus, the question before the Court is whether each HomeServices Defendant has "sufficient 'minimum contacts' with Illinois such that the maintenance of the suit 'does not offend traditional notions of fair play and substantial justice.'" *Tamburo*, 601 F.3d at 700–01 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Personal jurisdiction can be general or specific. However, Plaintiffs do not contend that this Court has general jurisdiction over any HomeServices Defendant, so the present inquiry will be limited to whether Plaintiffs have shown that this Court may exercise specific jurisdiction over each HomeServices Defendant. That inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). Specifically, "the defendant's contacts with the forum state must directly relate to the challenged conduct or transaction." *Tamburo*, 601 F.3d at 702. Thus, there is specific jurisdiction where "(1) the defendant has purposefully directed [its] activities at the forum state or purposefully availed [itself] of the privilege of conducting business in that state, and (2) the alleged injury arises out

of the defendant's forum-related activities." *Id.* In addition, the exercise of jurisdiction "must also comport with traditional notions of fair play and substantial justice." *Id.*

To argue that they are not subject to specific personal jurisdiction in Illinois, HomeServices Defendants introduce declarations showing that none of the HomeServices Defendants are incorporated or have their principal place of business in Illinois, none are members of the NAR, and none played any role in the enactment, enforcement, or implementation of any of the NAR rules challenged in this case. (HomeServices Defs.' Mot. to Dismiss, Exs. A–D, Dkt. Nos. 93-2–93-5.) Before discussing whether the Court can exercise specific personal jurisdiction over HomeServices Defendants, the Court first addresses Plaintiffs' contention that HomeServices Defendants have waived their ability to challenge personal jurisdiction.

## A. Waiver

Plaintiffs argue that HomeServices Defendants waived their personal jurisdiction defense by failing to raise it in connection with Defendants' previous efforts to dismiss the CAC. Under Rule 12(g)(2), subject to exceptions not relevant here, a party that makes a motion under Rule 12 "must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). And Rule 12(h)(1) provides that a party waives a personal jurisdiction defense by "omitting it from a motion in the circumstances described in Rule 12(g)(2)." Fed. R. Civ. P. 12(h)(1)(A).

The problem with Plaintiffs' claim that HomeServices Defendants have waived their personal jurisdiction defense by failing to assert it earlier is that the ACAC has replaced the single Plaintiff named in the CAC with an entirely new group of Plaintiffs. And in a putative class action, the specific jurisdiction inquiry is evaluated with respect to the named plaintiffs. *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 445, 448 (7th Cir. 2020); *see also Greene v. Mizuho Bank,*

26

*Ltd.*, 169 F. Supp. 3d 855, 866 (N.D. Ill. 2016) ("Specific personal jurisdiction can arise only from the claims of the named plaintiffs, not those of absent class members."). As a result, the personal jurisdiction defense HomeServices Defendants now raise against Plaintiffs was not "available" to them within the meaning of Rule 12(g)(2) when they challenged the CAC brought by Leeder, who is no longer a named Plaintiff. *See Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 856 (N.D. Cal. 2018) (finding that the defendant waived its ability to challenge personal jurisdiction as to the original named plaintiffs but because the defendant's motion was its "first opportunity to challenge personal jurisdiction with respect to the plaintiffs **newly** named in the [amended complaint] that challenge must be considered on the merits"). Accordingly, the Court finds that HomeServices Defendants did not waive their personal jurisdiction defense.

### B. Service on the NAR's Board

Turning to the merits, the Court first considers Plaintiffs' assertion that HomeServices Defendants' service on the board of directors of the NAR[5] subjects them to personal jurisdiction in Illinois. Under Illinois's long-arm statute, a defendant may be subject to personal jurisdiction in Illinois with respect to a cause of action arising from "[t]he performance of duties as a director or officer of a corporation organized under the laws of this State or having its principal place of business within this State." 735 ILCS 5/2-209(a)(12). Plaintiffs contend that HomeServices Defendants are subject to personal jurisdiction in Illinois under this provision of the long-arm statute because HomeServices Defendants' executives have served on the NAR's board.

While HomeServices Defendants deny many details of Plaintiffs' claims regarding their executives' participation in the NAR's governance, even if individual executives of

---

[5] The NAR is a non-profit corporation incorporated and maintaining its principal place of business in Illinois. (ACAC ¶ 28; Pls.' Opp'n to HomeServices Defs.' Mot. to Dismiss, Ex. 1, Dkt. No. 97-2.)

HomeServices Defendants' served on the NAR's board, that fact, by itself, would not establish personal jurisdiction over any HomeServices Defendant. It was the individual executives who served on the board of the NAR, a separately incorporated company, not any HomeServices Defendant. To find that a HomeServices Defendant can be subject to personal jurisdiction based on the acts of an individual executive serving on the board of another company would erase the well-recognized distinction between the corporation and its officers. *Main Bank of Chi. v. Baker*, 427 N.E.2d 94, 101 (Ill. 1981) ("It is a well-established principle that a corporation is separate and distinct as a legal entity from its shareholders, directors and officers and, generally, from other corporations with which it may be affiliated."). Those individual executives may, themselves, be subject to personal jurisdiction in Illinois based on their service on the NAR's board but it does not necessarily follow that their performance of their duties as directors of the NAR can be deemed as acts taken on behalf of the separate companies for which they served as executives. For that reason, the Court finds that it cannot exercise personal jurisdiction over HomeServices Defendants pursuant to 735 ILCS 5/2-209(a)(12).

### C. Conspiracy Theory of Personal Jurisdiction

Alternatively, Plaintiffs contend that this Court can exercise personal jurisdiction over HomeServices Defendants based on the conspiracy theory of personal jurisdiction. At one point, the Seventh Circuit understood Illinois's long-arm statute to "permit[] the exercise of personal jurisdiction over a party to a civil conspiracy if a co-conspirator acts within Illinois as the party's agent." *Davis v. A&J Elecs.*, 792 F.2d 74, 76 (7th Cir. 1986). Exercise of such jurisdiction was based on the theory that the "co-conspirators are each others' agents; thus . . . when a conspirator commits a tortious act within Illinois he does so as agent for his co-conspirators, who thereby also become subject to this State's jurisdiction." *Green v. Advance Ross Elecs. Corp.*, 427

N.E.2d 1203, 1208 (Ill. 1981).[6] Thus, Plaintiffs contend that HomeServices Defendants'
involvement in a conspiracy that caused harm in Illinois is sufficient to subject them to personal
jurisdiction in the State.

However, the Seventh Circuit has recently questioned whether that theory of personal
jurisdiction remains valid in Illinois, albeit in an unpublished opinion. *Smith v. Jefferson Cnty.
Bd. of Educ.*, 378 F. App'x 582, 585 (7th Cir. 2010). Its skepticism was based on two Illinois
Appellate Court decisions. One decision concluded that the Illinois Supreme Court had
"scuttle[ed] 'the theory of jurisdiction' (stated in *Green* merely for the sake of description)
whereby a coconspirator commits a tortious act in Illinois 'as agent for his coconspirators.'"
*Ploense v. Electrolux Home Prods., Inc.*, 882 N.E.2d 653, 666 (Ill. App. Ct. 2007) (quoting
*Green*, 427 N.E.2d at 1208). The other decision rejected the theory "based upon the articulated
hesitancy of our supreme court in *Green* to adopt the conspiracy theory of jurisdiction in Illinois,
which is amplified by [several] authorities among other jurisdictions and commentators." *Knaus
v. Guidry*, 906 N.E.2d 644, 657–661 (Ill. App. Ct. 2009). Notwithstanding its nonprecedential
status, since *Smith*, courts in this District have almost uniformly rejected the viability of
conspiracy theory of personal jurisdiction. *E.g.*, *Menzies*, 2021 WL 170738, at *4; *Bovinett v.
HomeAdvisor, Inc.*, No. 17 C 6229, 2018 WL 1234963, at *3 (N.D. Ill. Mar. 9, 2018); *In re
Honey Transshipping Litig.*, 87 F. Supp. 3d 855, 873 (N.D. Ill. 2015). Likewise, this Court
declines to find that it can exercise personal jurisdiction under that theory. And because Plaintiffs

---

[6] Notably, in *Green*, the Illinois Supreme Court did not actually recognize the conspiracy theory of
personal jurisdiction and, in fact, acknowledged that the theory "ha[d] been questioned." *Green*, 427
N.E.2d at 1208. Instead, it found that, to the extent that theory was viable, it had no application in that
case. *Id.*

have failed to satisfy their burden of demonstrating this Court's personal jurisdiction over HomeServices Defendants, HomeServices Defendants' Rule 12(b)(2) motion is granted.

## CONCLUSION

For the foregoing reasons, Defendants' Rule 12(b)(1) and Rule 12(b)(6) motion to dismiss (Dkt. No. 92) is granted in part and denied in part. The ACAC's Tennessee antitrust and consumer protection law claims, the KCPA claim, and Count I's claim seeking injunctive relief for violations of § 1 of the Sherman Act are all dismissed without prejudice. In addition, HomeServices Defendants' motion to dismiss for lack of personal jurisdiction (Dkt. No. 93) is granted and HomeServices Defendants are dismissed without prejudice.

ENTERED:

Dated:  February 20, 2024

_____
Andrea R. Wood
United States District Judge