UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| MYA BATTON, AARON BOLTON, MICHAEL BRACE, DO YEON IRENE KIM, ANNA JAMES, JAMES MULLIS, THEODORE BISBICOS, and DANIEL PARSONS, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) ) ) | Case No. 1:21-cv-00430<br>Honorable Andrea R. Wood |
| Plaintiffs, | ) ) |  |
| v. | ) ) |  |
| THE NATIONAL ASSOCIATION OF REALTORS, REALOGY HOLDINGS CORP., RE/MAX LLC, and KELLER WILLIAMS REALTY, INC., | ) ) ) ) ) |  |
| Defendants. | ) ) |  |

**MOTION FOR TEMPORARY RESTRAINING ORDER AND
<u>PRELIMINARY INJUNCTION</u>**

Plaintiffs Mya Batton, Aaron Bolton, Michael Brace, Do Yeon Irene Kim, Anna James, James Mullis, Theodore Bisbicos, and Daniel Parsons (collectively, "Plaintiffs") respectfully move for a temporary restraining order and preliminary injunction: (1) prohibiting Defendants Realogy Holdings Corp., RE/MAX LLC, and Keller Williams Realty, Inc. ("Settling Defendants") from seeking entry of their Proposed Order Granting Final Approval of the Settlements (Ex. 15) ("Proposed Order")[1] in *Joshua Burnett v. The National Association of Realtors,* No. 4:19-cv-00332 (W.D. Mo.); and (2) expressly permitting Plaintiffs and the putative homebuyer classes to continue litigating their claims in this Court.

---

[1] "Ex." refers to exhibits attached to the Declaration of Randall Ewing ("Ewing Declaration"), attached hereto.

## INTRODUCTION

A temporary restraining order is urgently needed to prevent the Settling Defendants from entering the Proposed Order. The Proposed Order, if entered, will irreparably harm homebuyer Plaintiffs and putative class members who both bought and sold homes in two ways: (1) it improperly enjoins them from continuing to litigate their claims in this case before this Court; and (2) releases their claims without additional compensation, let alone adequate notice and representation for the unique claims held by homebuyers.

Despite multiple opportunities to do so, the Settling Defendants did not reveal their intent to release homebuyer claims until May 3, 2024, six days before the May 9, 2024 fairness hearing regarding the Settlements.[2] Ewing Decl., ¶¶ 13, 19-20. They did not reveal their intent to specifically enjoin Plaintiffs and putative class members from pursuing their claims in this Court until the *Burnett* plaintiffs and Settling Defendants (together, "Settling Parties") submitted their Proposed Order on May 7, 2024. *Id.*, ¶ 22.

Defendants' revelations came as a surprise to Plaintiffs for the following reasons:

1. The *Burnett* and *Moehrl* complaints contain no allegations about harm to homebuyers, and there is no evidence that the extent of harms to homebuyers was ever litigated (e.g., Ex. 2);

2. When the Settlements were first announced and subsequently discussed during a status conference in this case in September 2023, this Court stated its understanding that the *Moehrl* and *Burnett* settlements had no impact on this litigation, to which one Settling Defendant agreed and no others contradicted (Ex. 5);

---

[2] "Settlements" refers to the settlements between Settling Defendants and plaintiffs' counsel in *Burnett* and *Moehrl*. *See Burnett* 1192-4; 1192-3; 1371-1.

3. The Settlement agreement release language does not identify *Batton* or homebuyer claims as being released (*See* Ex. 7 at 6; Ex. 8 at 6.).

4. The Settlement class definitions do not identify *Batton* or homebuyers (*see Burnett* 1192-4 ¶ 18 ; 1192-3 at ¶ 18; 1371-1 at ¶ 19);

5. The notices to class members do not mention *Batton* specifically or homebuyer claims generally, despite identifying other settled cases by name and containing a section that specifically addresses other cases (Ewing Decl., ¶ 11);

6. The settlement website instructs class members to submit claims based solely on their home sales (*see* Claim Form, https://secure.realestatecommissionlitigation.com/) ("Claim Form"));

7. When Plaintiffs, in an abundance of caution, reached out to Defendants to seek their position in mid-April 2024, Defendants did not respond to Plaintiffs' question and instead told Plaintiffs to file an objection (*Id*., ¶ 14).

Again to be cautious, Plaintiff Mullis filed an objection to the Settlements in the Western District of Missouri seeking to clarify that the releases did not apply to the claims that have been litigated before this Court (*Id*., ¶ 15; Ex. 11). Only then, safe from the April 13, 2024 opt out deadline (Ex. 7 at 3; Ex. 8 at 3), did the Settling Defendants file motions making clear what they had previously kept clandestine: their intent to settle as much of the *Batton* homebuyer claims as possible with class counsel representing homesellers, for no additional consideration, while simultaneously claiming they have only limited funds available (Ex. 11-14). Only yesterday, Defendants revealed that they are actively seeking to enjoin Plaintiffs and the putative classes from pursuing their claims in this Court (Ex. 15).

The fairness hearing for the Settlements at issue is in one day. Accordingly, an immediate injunction is necessary. Plaintiffs easily meet the requirements of a temporary restraining order ("TRO") and preliminary injunction. First, Plaintiffs are likely to succeed on the merits of their antitrust claims. They have already defeated two rounds of motions to dismiss in this case. Second, Plaintiffs and putative class members who both bought and sold homes will suffer irreparable harm if an injunction is not granted because they will be enjoined from pursuing their claims in this Court and their claims will be unfairly released. And even if this Court later concludes that the releases do not apply, Plaintiffs and putative class members would nonetheless risk violating an injunction. In light of the pending harm to Plaintiffs and putative class members and Defendants' misleading conduct, the balance of harms heavily favors Plaintiffs.

Plaintiffs therefore respectfully request that this Court enjoin Defendants from seeking entry of the Settling Parties' Proposed Order in *Burnett*.

## BACKGROUND

Plaintiffs have been litigating this class action case against the Settling Defendants for over three years, prosecuting unique claims on behalf of homebuyers. *See* Class Action Complaint, ECF No. 1 (Jan. 25, 2021); ECF No. 84 (Amended Class Action Complaint). Defendants too have actively litigated this case before this Court, appearing to submit to its adjudication of these homebuyer claims. To date, Defendants have filed six motions to dismiss, appeared at nine status conferences, negotiated scheduling orders, filed answers, and have begun negotiating discovery.

At the same time, Defendants were litigating a number of cases brought on behalf of homesellers, including *Burnett* and *Moehrl*. The *Burnett* and *Moehrl* complaints focused solely on harms incurred by homesellers and make no mention of any harm to homebuyers. The Settling Defendants ultimately settled with the homeseller plaintiffs in *Burnett* and *Moehrl*.

4

Neither the release language, the class definitions, the notice documents, nor the claim form mention homebuyer claims. *See*, pp. 2-3, *supra.* Further, a plan of allocation has not been made available and the claim form only requests information about home sales. Ex. 11 at 26; *see also* Claim Form.

Plaintiffs' counsel had no reason to expect the Settlement documents to discuss homebuyers because Defendants have had multiple opportunities to state their intent to release homebuyer claims through the Settlements, but did not. First, on September 21, 2023 at a status conference attended by Plaintiffs and Settling Defendants, this Court stated that it did not believe the Settlements were "intended to resolve this case which deals with similar issues from the buyer side." Ewing Decl., ¶ 7; Ex. 5. RE/MAX agreed and no other Settling Defendant stated otherwise. *Id.*

Plaintiffs' counsel did not think any reasonable interpretation of the release would make it applicable to homebuyers, especially in light of the Settling Parties' conduct during the litigation of the homeseller cases and certain Defendants' representations in the *Batton I* case (Ewing Decl. ¶¶ 2, 7, 13-14, 18-22), but out of an abundance of caution in April 2024, Plaintiffs' counsel sought defendants' position on the matter. Ewing Decl., ¶ 13. Even though they were directly asked whether the Settling Defendants intended to release homebuyer claims, Settling Defendants did not provide their position; they simply told Plaintiffs to file an objection. *Id.*, ¶ 14.

Again, in an abundance of caution, Plaintiff James Mullis filed his objection ("Objection") on April 13, 2024. *Id.* ¶ 15. Mr. Mullis requested a "modification of the Release's language to ensure that the only claims released by class members are those related to

5

transactions in which the class member was a homeseller, and that the releases have no impact on their homebuyer-based claims." Objection at 2-3.

Finally—after the opt-out deadline (Ex. 11-14) and publicly faced with the issue—the Settling Parties disclosed that they intended to release the claims of homebuyers who also sold homes all along. Ex. 11 at 58-59 ("the settlement language means what it says . . . Homebuyer claims asserted by homesellers class members indisputably arise out of the same alleged conspiracy and the same factual predicates as the seller claims."); *see also* ECF Nos. 1471 (May 3, 2024) (wherein Keller Williams did not assert any alternative interpretation of the Settlement release); 1473 (May 3, 2024) at 8-10 (wherein RE/MAX specifically agreed that the scope of their Settlements, as interpreted by Settlement Class Counsel, is proper); 1478 (May 6, 2024) at 25 (wherein Anywhere stated that it "refused to settle only part of the antitrust claims with people who both bought and sold homes"). This announcement came a mere seven days before the fairness hearing scheduled for May 9, 2024. ECF No. 1480.

Plaintiffs' counsel was and are prepared to object to Settlement Class Counsel's interpretation of the Settlement releases on May 9. But yesterday—a mere two days before the fairness hearing—the Settling Parties submitted the Proposed Order that, if entered, would specifically enjoin homebuyers who also sold a home from continuing to litigate their claims in this Court and release those homebuyers' claims without adequate notice, adequate representation, or any additional compensation. Ex. 15 at 30-31

Accordingly, Plaintiffs bring this motion to prevent Defendants from seeking entry of the Proposed Order in *Burnett* to the detriment of Plaintiffs and putative class members.

6

**LEGAL STANDARD**

A motion for a TRO and preliminary injunction require the same showing. *Bernina of Am., Inc. v. Fashion Fabrics Int'l, Inc.,* No. 01 C 585, 2001 WL 128164, at *1 (N.D. Ill. Feb. 9, 2001); *Merritte v. Kessel*, 561 Fed. Appx. 546, 548 (7th Cir. 2014). To obtain a preliminary injunction or TRO, a movant must show that it is likely to win on the merits and will suffer irreparable harm. *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 539 (7th Cir. 2021). If the plaintiff makes this showing, the court weighs the harm of denying an injunction to the plaintiff against the harm to the defendant of granting one. *Id.* The Court adopts a sliding-scale approach in weighing these factors (*i.e.*, if plaintiff is likely to win on the merits, the balance of harms need not weigh so heavily in his favor). *Valencia v. City of Springfield, Illinois*, 883 F.3d 959, 966 (7th Cir. 2018). Here, these factors weigh heavily in favor of granting Plaintiffs' motion.

**ARGUMENT**

**I.  Plaintiffs Are Likely to Succeed on the Merits**

The first step in the test for a TRO or preliminary injunction requires a plaintiff to "demonstrate that its claim has some likelihood of success on the merits." *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 539 (7th Cir. 2021). At this early stage, the movant "need not show that it definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). Instead, the party seeking the TRO or preliminary injunction must demonstrate, "how it proposes to prove the key elements of its case." *Grubhub Inc. v. Relish Labs LLC*, 80 F.4th 835, 844 (7th Cir. 2023). "A plausible claim on the merits" will suffice. *Hoosier Energy Rural Elec. Co-op., Inc. v. John Hancock Life Ins. Co.*, 582 F.3d 721, 725 (7th Cir. 2009); *see also Gray v. Orr*, 4 F. Supp. 3d 984, 993 (N.D. Ill. 2013) ("plausibility is all that is required at this stage."). This Court has already held that Plaintiffs' and putative class

members' claims are plausible. *See Batton v. Nat'l Ass'n of Realtors*, No. 21-CV-00430, 2024 WL 689989, at *6 (N.D. Ill. Feb. 20, 2024) (upholding Plaintiffs' amended complaint).

## II. Plaintiffs Will Suffer Irreparable Harm Absent an Injunction

The elements of "irreparable harm" and "inadequate remedy at law" are inter-related; if a party is able to show irreparable harm, it likely has no adequate remedy at law. *Jennings Water Inc. v. N. Vernon,* 895 F.2d 311, 318 n. 6 (7th Cir. 1989). "Inadequate does not mean wholly ineffectual; rather, the remedy must be seriously deficient as compared to the harm suffered." *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 545 (7th Cir. 2021) (cleaned up). Homebuyers who both bought and sold a home will be irreparably harmed if the Proposed Order is entered.

First, the Proposed Order, if entered would enjoin Plaintiffs and putative class members who both bought and sold homes from litigating their claims before this Court, where they have been proceeding for over three years. And if such homebuyers later try to challenge the Settlement releases, they may risk violating an injunction.

Second, the Proposed order, if entered, releases these homebuyers' claims against the Settling Defendants without additional compensation, adequate notice, or adequate representation. The Settlements do not provide a plan of allocation, do not request information regarding home purchases, or otherwise provide any additional compensation to homebuyers in exchange for the release of their claims. *See* pp. 2-3, 5, *supra*. It is virtually black letter law that settlements cannot release claims for zero consideration. *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 283–84 (7th Cir. 2002) (reversing approval of a class settlement where counsel in one case negotiated a release that covered other "potentially substantial claims" but provided "no consideration"); *see also In re Auction Houses Antitrust Litig.,* 42 F. App'x 511, 519 (2d Cir. 2002) (affirming lower court's rejection of settlement where settlement impaired class members' foreign auction claims without compensation.). Indeed, the effect of releasing homebuyer claims

is to allow Defendants to cut their own costs at the expense of Plaintiffs and class members in this action. *Reynolds*, 288 F.3d at 284 (the only effect of the settlement was to cut defendant's "own expense of the settlement in half.").

Additionally, the Settlements fail to provide adequate notice as required by Fed. R. Civ. P. 23(b)(3). Notice to the class is inadequate where "the Notice fails to notify Class members of the scope of the claims to be released." *Kaufman v. Am. Exp. Travel Related Servs. Co.*, 264 F.R.D. 438, 445 (N.D. Ill. 2009) (identifying this as one of the failures with the notice at issue). As outlined above, the Settlement releases, notices, and claim form fail to reference homebuyer claims generally or this case specifically. *See* p. 3, *supra*. Under the Settling Defendants' position, the Settlements' class definitions are improperly vague as well. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 660 (7th Cir. 2015) (vagueness or confusion in a class definition, "is a problem because a court needs to be able to identify who will receive notice, who will share in any recovery, and who will be bound by a judgment."). Here, the Settlements' plain language cover the claims of those harmed in one "particular way" (i.e., through selling a home), but the Settling Parties now assert that the Settlements also cover the claims of those harmed in the opposite way (i.e., buying a home). *Mullins*, 795 F.3d at 660 (class definition should specify the "particular way" that class members were harmed).

The inadequacy of the Settlement documents is even more obvious when they are compared with other adequate releases. For example, in the settlements reached between various state attorneys general and UBS AG, the settlement release identified by name and case caption the specific actions whose claims the settlement released. *See* Ex. 16 at 63. Here, homebuyer claims are not even referenced.

There is simply nothing from which a class member could discern that the Settlements release homebuyer claims. Indeed, even the undersigned counsel did not read the Settlements release to such claims. *See* pp. 2-3, 5, *supra*. If sophisticated counsel experienced in class action litigation did not read the Settlements to include homebuyer claims, it defies credulity that an average class member would understand such claims to be included.

Finally, the Settlements purport to release homebuyer claims, but were negotiated without adequate representation for homebuyers. Such representation is required by Rule 23(a)(4). Fed. R. Civ. P. 23(a)(4) (requiring that "the representative parties will fairly and adequately protect the interests of the class."). Settlement negotiations, like these, conducted without the presence of all counsel "create a substantial doubt about whether the interests of the class" are adequately represented during the settlement negotiations and "unjustifiably prejudice[] the rights of individual members of the class." *In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1125, 1133 (7th Cir. 1979) (reversing preliminary approval of class action settlement, explaining "settlement negotiations with less than all class counsel weaken the class' tactical position."); *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 785-86 (7th Cir.2004) (reversing approval of proposed settlement where subclass did not have separate counsel).

Homebuyers' claims are live claims being actively litigated before this Court. The Proposed Order's injunction and release of these meritorious claims without regard to Rule 23's procedural safeguards clearly constitute irreparable harm. *See Cooper v. Salazar*, 196 F.3d 809, 817 (7th Cir. 1999) (finding irreparable harm where "plaintiffs would have no redress if their meritorious . . . claims were erroneously dismissed during the pendency of this litigation" based on inadequate procedures); *see also Chalian v. CVS Pharmacy, Inc.*, No. 2:16-CV-8979-AB-

AGR, 2020 WL 7347866, at *3 (C.D. Cal. Oct. 30, 2020) (finding irreparable harm where settlement class members were being provided with "misleading and biased information" because "[i]t is critical that class members receive accurate and impartial information regarding the status, purposes and effects of the class action.") (cleaned up). Defendants must be prohibited from seeking entry of the Proposed Order.

### III. The Balance of Harms Favors the Emergency Relief Plaintiffs Seek

Once plaintiffs establish a likelihood of success and irreparable harm, the Court balances the harm to the moving party against the harm to the non-moving party and further considers the public interest. *Gray v. Orr*, 4 F. Supp. 3d 984, 989 (N.D. Ill. 2013). This balancing occurs on a "sliding scale," with the Court "weighting harm to a party by the merit of [her] case." *Id.*

The balance of harms analysis favors the issuance of a temporary restraining order here. As outlined above, if Defendants' Proposed Order is issued, Plaintiffs and putative class members will suffer the extraordinary harm of being deprived of a forum to litigate their dispute. Their claims will be effectively extinguished without any additional compensation. *See Cooper v. Salazar*, 196 F.3d 809, 817 (7th Cir. 1999) (irreparable harm exists where "plaintiffs would have no redress if their meritorious . . . claims were erroneously dismissed during the pendency of this litigation"); *see also Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 283–84 (7th Cir. 2002) (release of "potentially substantial claims" for "no consideration" was improper).

In contrast, Defendants will suffer little harm, if any. Defendants will still be able to settle the homeseller claims. Moreover, Settling Defendants had multiple opportunities to notify Plaintiffs and putative homebuyer class members that the Settling Defendants intended to release their claims, but instead negotiated to release homebuyer claims without additional compensation and to withhold notice until the eleventh hour. The balance of harms surely cannot favor a

defendant that knowingly misleads the Court and opposing counsel and attempts to circumvent Rule 23 in order to cap its liability at the expense of consumers. *See Pub. Serv. Co. of Colorado v. Andrus*, 825 F. Supp. 1483, 1509 (D. Idaho 1993), modified, No. CIV. 91-0035-S-HLR, 1993 WL 388312 (D. Idaho Sept. 21, 1993) (holding the opponent's "lack of candor with the court" weighed in favor of granting the preliminary injunction).

And neither can the public interest. Class actions serve an "important public interest in securing remedies for consumers." *See In re Cap. One Consumer Data Sec. Breach Litig.*, No. 119MD2915AJTJFA, 2022 WL 17176495, at *5 (E.D. Va. Nov. 17, 2022). Settling Defendants' efforts to extinguish Plaintiffs' and putative class members' claims without additional compensation go directly against the public interest in securing relief for individuals like the homebuyers in this case. Therefore, the public interest factor also supports enjoining Defendants from seeking to enter their Proposed Order.

## CONCLUSION

For all the reasons herein, Plaintiffs respectfully request that this Court enter an order temporarily restraining and enjoining Defendants from seeking entry of the Proposed Order and expressly permitting homebuyer Plaintiffs who also sold a home to continue to litigate their claims in this Court.

Respectfully submitted,

Dated: May 8, 2024

*/s/ Vincent Briganti*
Vincent Briganti (*pro hac vice*)
Christian Levis (*pro hac vice*)
Noelle Forde (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
vbriganti@lowey.com
clevis@lowey.com
nforde@lowey.com

12

George A. Zelcs (Ill. Bar No. 3123738)
Randall P. Ewing, Jr. (Ill. Bar No. 6294238)
Ryan Z. Cortazar (Ill. Bar No. 6323766)
**KOREIN TILLERY, LLC**
205 North Michigan Avenue, Suite 1950
Chicago, IL 60601
Telephone: 312-641-9750
gzelcs@koreintillery.com
rewing@koreintillery.com
rcortazar@koreintillery.com

Michael E. Klenov (Ill. Bar No. 6300228)
Carol O'Keefe (Ill. Bar No. 6335218)
**KOREIN TILLERY, LLC**
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Telephone: 314-241-4844
mklenov@koreintillery.com
cokeefe@koreintillery.com

*Attorneys for Plaintiff and the Proposed Class*

**CERTIFICATE OF SERVICE**

  I hereby certify that on May 8, 2024, I caused a true and correct copy of the foregoing to be served upon counsel of record via e-mail.

| | |
|---|---|
| Dated: May 8, 2024 | /s/ *Noelle Forde*<br>Noelle Forde |