**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MYA BATTON, AARON BOLTON, MICHAEL BRACE, DO YEON KIM, ANNA JAMES, JAMES MULLIS, THEODORE BISBICOS, and DANIEL PARSONS, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>THE NATIONAL ASSOCIATION OF REALTORS, ANYWHERE REAL ESTATE, INC. (f/k/a REALOGY HOLDINGS CORP.), RE/MAX, LLC, and KELLER WILLIAMS REALTY, INC.,<br><br>        Defendants. | Case No. 1:21-cv-00430<br><br>Judge LaShonda A. Hunt<br><br>Magistrate Judge M. David Weisman |

**DEFENDANTS' JOINT OPPOSITION TO PLAINTIFFS' MOTION
FOR LEAVE TO FILE SECOND AMENDED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

**Page**

BACKGROUND AND PROCEDURAL HISTORY ................................................................. 1

ARGUMENT ........................................................................................................................ 5

I.    LEGAL STANDARD ................................................................................................. 5

II.   PLAINTIFFS' MOTION FOR LEAVE TO AMEND SHOULD BE DENIED. ............. 6

    A.    Plaintiffs' Motion Is Untimely. ........................................................................ 6

    B.    Adding New Claims and New Plaintiffs Would Also Be Unfairly
          Prejudicial. ..................................................................................................... 9

III.  IF THE COURT PERMITS PLAINTIFFS' AMENDMENT, IT SHOULD FOR
     EFFICIENCY REASONS HEAR DEFENSES AS TO ALL PLAINTIFFS. ................. 13

CONCLUSION .................................................................................................................... 15

The Court should reject Plaintiffs' belated attempt to amend their complaint and substantially expand Plaintiffs' claims by adding eighteen new causes of action and twenty-four new plaintiffs from twenty new states. Although leave to amend is often granted, Plaintiffs' motion should not be because: (1) Plaintiffs seek this untimely amendment after ***nearly four years*** of litigation; (2) Plaintiffs have previously represented to the Court there would be ***no further amendments*** to the complaint; and (3) the Court entered ***a scheduling order in reliance on Plaintiffs' representations*** that there would be no further amendments to their complaint.

While Plaintiffs sat on their hands, Defendants have been working to complete document discovery, unaware that Plaintiffs had secret plans to inject a multitude of new claims and add a slew of new named Plaintiffs from multiple new states. If Plaintiffs' request is granted—and it should not be—the amendment will necessitate another round of dispositive motion briefing and additional discovery. The Court previously relied on Plaintiffs' representations and should continue to hold them to those and reject their unjustifiably belated attempt (made moments before the deadline for the parties substantially to complete their document productions, and after Defendants had done so) to greatly expand the scope of the case and take it back to square one.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs' motion omits key background and procedural context that underscores the impropriety of Plaintiffs' motion seeking leave to file the proposed Second Amended Class Action Complaint ("SAC").

Plaintiffs filed their initial complaint nearly ***four years ago***, on January 25, 2021. ECF No. 1. Judge Wood granted Defendants' motion to dismiss, and allowed Plaintiffs until July 6, 2022[1] to file an amended complaint. ECF No. 82. Plaintiffs timely filed their Amended Class

---

[1] Plaintiffs' motion incorrectly lists the date as September 7, 2022. *See* Mot. at 3.

Action Complaint.  ECF No. 84 ("Operative Complaint").  Defendants again moved to dismiss. The second round of motions to dismiss were granted in part and denied in part on February 20, 2024, and the HomeServices Defendants were dismissed entirely.  ECF No. 125.

Following the Court's February 20, 2024 Order on the second round of motions to dismiss, the Parties met and conferred in advance of submitting a joint status report on February 23, 2024.  During those discussions, Defendants inquired whether Plaintiffs intended to amend the Operative Complaint.  Plaintiffs stated that they did "not believe any amendment is necessary."  *See* Ex. A (R. Ewing Email (Feb. 23, 2024)).  Consistent with that commitment, in the February 23, 2024 status report submitted to the Court, Plaintiffs did not even propose a deadline for any further amendment, because no deadline was needed since they had no intention of amending again.  ECF No. 126, at 6-7.

Five days later, at a status conference, Judge Wood asked Plaintiffs whether they intended to amend their complaint, and counsel for Plaintiffs unequivocally confirmed to the Court that "[t]here will be no amendment in *Batton I*."  *See* ECF 127 at 26:21-28:23.  Incredibly, Plaintiffs' motion omits these representations to the Court and to Defendants.

Now, over two years after the July 6, 2022 deadline for Plaintiffs to amend their complaint, Plaintiffs, downplaying the disruption and prejudice it would cause, seek to substantially expand the scope of the case and trigger a new round of dispositive motion briefing and additional discovery, despite the fact that Plaintiffs' counsel have argued in other courts, including to the *Burnett* court[2] and the Judicial Panel on Multidistrict Litigation tribunals, that Plaintiffs' counsel have been actively litigating this case for many years.  Ex. B (*Burnett* Final Approval Tr. (May 9, 2024)), at 21:17-19; *see also* Ex. C (JPML Tr. (Mar. 28, 2024)), at 9:16-

---

[2] *Burnett v. The Nat'l Assn. of Realtors*, Case No. 19-cv-00332 (W.D. Mo.).

10:20.  Plaintiffs made the same representation to this Court when seeking to prevent Defendants from receiving final approval of their settlements in *Burnett*.  *See* ECF No. 152 at 10 (representing that "HomeBuyers' claims are live claims being actively litigated before this Court").

Plaintiffs try to justify their decision to renege on their prior commitment to the Court and the Defendants by suggesting that their amendment was prompted by them learning that the settlements in *Burnett* might release the claims of some Plaintiffs and class members in this case. *See* Mot. at 4-5.  But Plaintiffs knew or should have known about the impact of the *Burnett* settlements for over a year.  The proposed release language was first filed on the *Burnett* docket in October 2023.[3]  But even crediting Plaintiffs' contention that they did not realize the potential issue until later on, Plaintiffs' delay is significant.  At the absolute latest, as set forth in Plaintiffs' counsel's own declaration, Plaintiffs' counsel spoke with counsel for Anywhere on April 8 and April 11 regarding the applicability of the *Burnett* settlements to certain purported class members' claims in this case, and Plaintiffs' counsel objected to those settlements on behalf of Plaintiff James Mullis on those grounds on April 13, 2024.  ECF No. 151 at 4.[4]

Yet, Plaintiffs did not alert the Court nor the Defendants of their intention to amend their complaint at that time.  Instead, on April 26, 2024, Plaintiffs and Defendants submitted another joint status report, this time with a jointly proposed case schedule that again did not set a deadline for any further amendment to the Operative Complaint.  *See* ECF No. 147.

On May 7, 2024, this Court held another status hearing.  At no point did Plaintiffs indicate they intended to amend their complaint.  *See* ECF 153.  On May 7, this Court relied on

---

[3] *See* Settlement Agreement, *Burnett*, ECF No. 1192-3.
[4] Plaintiffs' counsel also argued in opposition to the *Burnett* settlement on May 9.  *See* Ex. B (*Burnett* Final Approval Tr. (May 9, 2024), at 20:25-26:23).

Plaintiffs' representations to the Court that there would be no further amendment and entered the case schedule proposed by the parties at ECF No. 147 that did not provide a deadline or leave to file an amended complaint. *See* ECF No. 155.

Plaintiffs did not raise the possibility of an amendment in the July 2, 2024 joint status report either. *See* ECF No. 165. And in further reliance that the Operative Complaint would not be further amended, during June of 2024, Defendants negotiated discovery compromises with Plaintiffs, as reflected in that joint status report. *Id* at 2-3. It was only after this case was reassigned to the Hon. LaShonda A. Hunt, and after discovery was well underway, that Plaintiffs raised in the September 25, 2024 joint status report their intention of reneging on their prior representations and seeking leave to amend their complaint. *See* ECF No. 177 at 7. Even then, Plaintiffs did not alert the Court or Defendants of their plan to add new substantive claims. Rather, Plaintiffs represented only that they intended to "add additional plaintiffs and alleged class representatives." *Id*. Plaintiffs also did not raise the possibility of additional state law claims at the October 8, 2024 status hearing or in the November 15, 2024 joint status report. *See* Ex. D (Status Conf. Tr. (October 8, 2024)); ECF No. 182.

It was not until the eve of the deadline for the completion of the parties' document productions—and after the Defendants had complied with that deadline—that Plaintiffs proposed the SAC, which purports to add *eighteen* new causes of action (three new antitrust claims, and fifteen new state-law consumer protection claims), in addition to adding *twenty-four* new plaintiffs to the prior eight. *See* ECF No. 186-2. Plaintiffs' motion should be denied in its entirety.

## ARGUMENT

### I.    LEGAL STANDARD

Where a party represents that there will be no further amended pleadings, and a court subsequently enters a scheduling order that does not include any deadline to amend, the "good cause" standard of Federal Rule of Civil Procedure 16 applies to any subsequent request to amend. *See, e.g.*, *Point 4 Data Corp. v. Tri-State Surgical Supply & Equip., Ltd.*, No. 11-CV-726, 2012 WL 2458060, at *6 (E.D.N.Y. June 27, 2012) (collecting cases).  Rule 16 also applies when the amendment would require revisiting already completed discovery.  *See Anand v. Lexington L. LLC*, No. 17-C-7085, 2018 WL 6045204, at *1 (N.D. Ill. Nov. 19, 2018) (explaining that even where no formal deadline exists for amending pleadings, a request to amend that requires reopening discovery must satisfy Rule 16's good cause requirement) (citing *Point 4 Data*).

Plaintiffs are therefore incorrect that the liberal standard of Rule 15(a)(2) pertaining to amending pleadings controls here.  Here, the last deadline to amend set by the Court was July 6, 2022, by which deadline Plaintiffs did amend their complaint.  No additional deadline for amending pleadings was subsequently set by the Court in a later scheduling order because Plaintiffs represented unequivocally that "[t]here will be no amendment."  ECF 127 at 28:10-23. During the ten months between Plaintiffs' February commitment to the Court not to amend and their December motion, Defendants substantially completed their document productions.  As correctly recognized in *Anand*, "Rule 16 will apply, even absent a specific deadline in a scheduling order, where the record contains some indication that the court and the parties understood that the pleadings would not be further amended."  2018 WL 6045204, at *1 (quoting *Point 4 Data*).  Here, the Court and the Defendants clearly concluded that Plaintiffs had no

intention to amend their complaint because Plaintiffs repeatedly said so. As a result, the "good cause" Rule 16 requirements must be met.

Further, as discussed below, Plaintiffs' SAC will require additional document discovery from the proposed new plaintiffs, as well as motion practice and discovery regarding the new claims proposed in the SAC. As of the filing of Plaintiffs' motion to amend on December 2, 2024, the deadline to substantially complete document discovery was December 20, 2024.[5] As a result, allowing Plaintiffs' SAC would result in this Court having to extend the existing discovery schedule, further mandating that Plaintiffs' motion must satisfy the Rule 16 "good cause" requirement if it were to be granted. *See Anand*, 2018 WL 6045204, at *1.

Accordingly, the "good cause" requirements of Rule 16 apply, not the more lenient Rule 15 requirements. Irrespective of whether the Court considers Plaintiffs' motion to amend under Federal Rule of Civil Procedure 15 or 16, Plaintiffs' motion should be denied because it is untimely, unfairly prejudicial, and made in bad faith.

## II. <u>PLAINTIFFS' MOTION FOR LEAVE TO AMEND SHOULD BE DENIED.</u>

### A. <u>Plaintiffs' Motion Is Untimely.</u>

Plaintiffs' belated request for leave to amend is untimely whether analyzed under Rule 16 or under Rule 15. Under Rule 16, Plaintiffs must show "good cause" for the need to amend at this time in the litigation, and the inquiry "focuses on the diligence of the party seeking amendment." *In re Broiler Chicken Antitrust Litig.*, No. 16-C-637, 2020 WL 13228717, at *1 (N.D. Ill. May 13, 2020) (citing *Peters v. Wal-Mart Stores East, LP*, 512 F. App'x 622, 627-28 (7th Cir. 2013)). Under Rule 15, undue delay, coupled with prejudice, also provides grounds to deny leave to amend; Rule 15(a) does not provide "a license for carelessness or gamesmanship."

---

[5] At Plaintiffs' request, the Court recently issued a modest extension of this deadline from December 20, 2024 until January 22, 2025. ECF No. 191.

*Hinton v. Advoc. Health & Hosps. Corp.*, No. 21-C-1681, 2023 WL 2726015, at *2 (N.D. Ill. Mar. 30, 2023) (denying leave to amend under Rule 15 where the request was not justified by any "recently discovered" information but rather "appear[ed] to have been a strategic choice or possibly an oversight").

    Here, there is no justifiable reason why Plaintiffs could not have sought leave to add additional Plaintiffs and state law claims much earlier, indeed years earlier. As discussed above, this case was filed in 2021. After filing the Operative Complaint, Plaintiffs held steadfast to the position that they were not going to seek to amend. This was the case after the Anywhere and RE/MAX settlements were preliminarily approved in November of 2023. At the latest, Plaintiffs' claimed "aha" moment occurred in April 2024, but they still did not move to amend their complaint until December. In the meantime, the parties negotiated, and Defendants substantially completed, document productions consistent with those representations. Plaintiffs offer no satisfactory explanation for why they waited until December of 2024 to seek leave to amend. *See Broiler Chicken*, 2020 WL 13228717, at *1-2 (denying request four years into the litigation to add new class representatives for additional state law claims when plaintiffs offered no good reason why they could not identify additional buyers of chicken earlier).

    Plaintiffs' argument that these newly proposed class representatives will "address[] certain arguments Defendants made in their motion to dismiss concerning Article III standing" (Mot. at 6) only further underscores the untimeliness of Plaintiffs' request. That motion to dismiss was filed in ***September 2022***, wherein Defendants pointed out that twenty-eight of the thirty-three state law claims in the Operative Complaint lacked a named plaintiff. ECF No. 92-1

at 13.  Even if Plaintiffs' flimsy excuse should be credited, Plaintiffs offer no explanation for why it has taken them more than two years to identify these new named plaintiffs.[6]

The same untimeliness also infects Plaintiffs' request to add additional state law claims. Plaintiffs' SAC adds three new state antitrust law claims and fifteen new state consumer protection claims.  Plaintiffs should have been aware of these claims for years.  Indeed, Plaintiffs assert that these new claims are based on "the same conduct and allegations underpinning their currently pleaded claims" (Mot. at 6) in the Operative Complaint—which was filed more than two years ago.  As discussed above, Plaintiffs inappropriately justify the addition of new plaintiffs based on arguments connected to the *Burnett* settlements, but do not (because they cannot) claim that the new state law claims have any connection to the settlements.  Plaintiffs also do not suggest, as they have no basis to do so, that their new state law claims arose from information they learned only through discovery in this case.  Plaintiffs also cannot justify their delay in asserting their new state law claims based on the residences or home purchases of the proposed new plaintiffs when they seek to assert claims (one new state antitrust law claim and six state consumer protection claims) under the laws of states with which the proposed new plaintiffs have no connection.  Plaintiffs instead try to argue that they decided that the "most efficient" process would be to wait on the JPML decision and this Court's motion to dismiss decision, but rather than share that intention with the Court (or Defendants), they instead made a strategic choice to mislead the Court with regard to their amendment strategy.  In any event, Plaintiffs' after-the-fact "efficiency" rationale is transparently contrived—neither the MDL

---

[6] It is at best ironic that when appearing before other courts, Plaintiffs' counsel argues that they have been very actively and assiduously representing the class in this case for four years (*see* Ex. B (*Burnett* Final Approval Tr. (May 9, 2024)), at 21:17-19; Ex. C (JPML Tr. (Mar. 28, 2024)), at 10:16-20) but before this Court, that same counsel argues that not much has occurred in this four-year-old case such that Defendants will not be prejudiced if Plaintiffs' motion to amend is granted. *See* Mot. at 9-11.

proceeding nor the pendency of a personal jurisdictional motion to dismiss interfered in any way with Plaintiffs' ability to raise new state-law claims or new named plaintiffs in a timely manner.

Accordingly, Plaintiffs motion for leave to amend should be denied as untimely.

### B.       Adding New Claims and New Plaintiffs Would Also Be Unfairly Prejudicial.

Because the "good cause" requirements of Rule 16 apply to Plaintiffs' motion, the primary consideration is the moving party's diligence, "***not*** the prejudice to the nonmoving party." *Broiler Chicken*, 2020 WL 13228717, at *1 (emphasis added) (citation omitted). As discussed above, Plaintiffs have not diligently pursued amendment. But even under the more liberal Rule 15 standard, where "[t]he party seeking to amend has the burden of showing that undue prejudice will not result to the non-moving party," *Jones v. DuPage Cnty. Sheriff's Off.*, 2018 WL 6398925, at *3 (N.D. Ill. Dec. 6, 2018) (citing *King v. Cooke*, 26 F.3d 720, 724 (7th Cir. 1994)), Plaintiffs cannot carry their burden. Amending a complaint prejudices defendants when, as here, "the amendment brings entirely new and separate claims, adds new parties, . . . and where the amendment would require expensive and time-consuming additional discovery." *Ocean Atl. Woodland Corp. v. DRH Cambridge Homes, Inc.*, No. 02-C-2523, 2003 WL 22848968, at *2 (N.D. Ill. Dec. 1, 2003) (denying leave to amend). When a plaintiff waits until discovery is well under way to file an amendment that will require the opposing party to undertake additional discovery, courts routinely deny leave to amend.[7]

---

[7] *See Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009) (upholding the district court's denial of a motion for leave to amend when the plaintiff waited until three days before the close of fact discovery to make a request to add eleven new causes of action and an additional defendant); *Campania Mgmt. Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 850 (7th Cir. 2002) (upholding the district court's denial of a motion for leave to amend that raised "additional, complex issues" and was filed six days prior to the discovery deadline); *Ocean Atl. Woodland*, 2003 WL 22848968, at *2 (holding there was undue prejudice where extensive additional discovery was necessary and fact discovery was essentially closed).

Plaintiffs seek to add twenty-four new named plaintiffs from twenty new states and eighteen new state law claims less than three weeks before the original deadline for substantial completion of document discovery, and after Defendants had met that deadline.[8]  Tellingly, Plaintiffs' motion never once mentions the substantial completion deadline or Defendants' compliance with it, instead focusing on the later, post-class certification date for the close of all fact discovery.  *See* Mot. at 10-11.  But the Court's schedule makes clear that the period following the substantial completion deadline is intended to focus on class certification proceedings.  *See* ECF No. 155 (five separate deadlines relating to class certification in the period between the substantial completion deadline and the close of fact discovery).  The deadline for the close of fact discovery is irrelevant for the purpose of deciding this motion (even under Rule 15) because it would be impossible to argue about the sufficiency of Plaintiffs' proposed class without being able to obtain complete discovery from the newly proposed named Plaintiffs.  Indeed, it was the parties' recognition of the need for completion of document discovery prior to class certification briefing that led them to include a substantial completion deadline when negotiating the case schedule.

Plaintiffs seek to sidestep this issue by asserting that "virtually no discovery of any Plaintiffs ha[s] occurred" (Mot. at 10), but Plaintiffs cannot use their own dilatory discovery efforts to support their belated motion to amend.  Between July 29 and August 3, 2024, Defendants produced 470,000 documents to Plaintiffs.  On the other hand, Plaintiffs have produced only 10 documents to date—all of which are publicly available.  Defendants have already been prejudiced by Plaintiffs' failure to undertake timely discovery and should not be

---

[8] The recent extension until January 22 of the time for Plaintiffs' to substantially complete their document productions does not ameliorate the prejudice Plaintiffs' proposed SAC would cause—briefing on Plaintiffs' motion for leave to amend will not even be complete until January 21, 2025, with discovery from the new proposed plaintiffs to follow if the Court permits Plaintiffs' amendment.  ECF No. 188.

further prejudiced by Plaintiffs adding twenty-four new plaintiffs, thereby trebling the discovery Defendants must try to obtain from Plaintiffs.

Even more troubling than Plaintiffs' misleading recitation of facts and procedure is their representation that the addition of "certain" state-law claims would not unduly prejudice Defendants because the legal issues across state antitrust and consumer protections laws are "largely" similar. *See* Mot. at 11. Yet Plaintiffs' motion is scant on any specifics as to how and why these claims are "largely" similar, likely because specifics only illustrate how different each of these state law claims are.

***First***, and most obvious, granting any such amendment will result in yet another round of motion to dismiss practice.

***Second***, the eighteen new claims that Plaintiffs now belatedly seek to add will each require extensive discovery to determine when the alleged injury first manifested and when the statute of limitations began running. Plaintiffs seek to almost double the number of state consumer protection claims, adding claims under the laws of Arizona, Colorado, Connecticut, District of Columbia, Iowa, Michigan, Montana, Nebraska, Nevada, North Dakota, New Jersey, New York, Pennsylvania, Rhode Island, and Wisconsin. This is particularly burdensome for Defendants because those state law claims contain significant procedural and substantive differences. These differences are evidenced, for example, by the Court's prior dismissal of Plaintiffs' claim under Kansas' Consumer Protection Act ("KCPA"), finding that the purportedly anticompetitive conduct Plaintiffs alleged did not give rise to a claim under the KCPA. *See* ECF No. 125 at 18-19.

The variance in law creates a divergence between the various state consumer protection claims that Plaintiffs have pled. For example, statutes, and the associated state common law,

vary regarding whether actual injury, or reliance, is required for a private plaintiff to pursue a consumer protection claim.[9]  Furthermore, while in some states "unfair or deceptive acts or practices . . . are unlawful" (*see e.g.*, Ark. Code §§ 4-88-101; 5 Me. Rev. Stat. §§ 207), some states enumerate lists of unlawful conduct, and those lists differ.  *See* Idaho Code §§ 48-601; Or. Rev. Stat. §§ 646.605; CO Rev Stat § 6-1-105; D.C. Code §§ 28-3901; Mich. Comp. Laws Ann. § 445.903; Nev. Rev. Stat. §§ 598.0903.  For instance, one of the enumerated practices that Michigan's consumer protection law identifies as unlawful is "[c]ausing coercion and duress as the result of the time and nature of a sales presentation."  Mich. Comp. Laws Ann. § 445.903(aa).  Neither Idaho nor Oregon has identified a similar requirement.[10]  The fifteen new state consumer protection claims are replete with these types of differences, both amongst themselves and with the sixteen already pleaded state consumer protection claims in the Operative Complaint.  Thus, it is a gross oversimplification for Plaintiffs to state that their claims are "largely" similar, when almost doubling the number of state consumer protection claims greatly complicates discovery at this advanced stage of the litigation.

The burden to the judicial system separately justifies a denial of Plaintiffs' motion to amend "even if the amendment would cause no hardship at all to the opposing party."  *Tamari v. Bache & Co. (Lebanon) S.A.L.*, 838 F.2d 904, 909 (7th Cir. 1988).  Courts recognize that "the

---

[9] *Compare, e.g.*, *Odom v. Fairbanks Mem'l Hosp.*, 999 P.2d 123, 132 (Alaska 2000) (establishing that for a private plaintiff to state a consumer protection claim, "[a]n act or practice is deceptive or unfair if it has the capacity or tendency to deceive.  Actual injury . . . is not required.") *with Hoffman v. Stamper*, 843 A.2d 153, 191 (Md. Ct. Spec. App. 2004), *rev'd on other grounds*, 867 A.2d 276 (2005) (holding that "[u]pon a showing of reasonable reliance, the [private] plaintiff may recover any actual losses"), *and Zeeman v. Black*, 156 Ga. App. 82, 86-87 (1980) (mandating actual injury and reliance because Georgia Code § 10-1-399 requires that a plaintiff describe "the unfair or deceptive practice relied upon").

[10] As further example, Idaho's consumer protection statute enumerates only nineteen types of conduct as unfair methods and practices, while Colorado's enumerates over eighty-six different types of conduct, including failures to comply with other sections of Colorado's statutes.  *Compare* Idaho Code §§ 48-603 *with* Colo. Rev. Stat. § 6-1-105.

interests of justice go beyond the interests of the parties to the particular suit" as delay "impair[s] the public interest in the prompt resolution of legal disputes." *Id*. Therefore, "a trial court can deny amendment when concerned with the costs that protracted litigation places on the courts." *Fort Howard Paper Co. v. Standard Havens, Inc.*, 901 F.2d 1373, 1380 (7th Cir. 1990); *see also J.P. Morgan Chase Bank, N.A. v. Drywall Serv. & Supply Co.*, 265 F.R.D. 341, 356 (N.D. Ind. 2010) (holding that amendment that would "protract the litigation in this court . . . militates towards a finding that leave should not be granted").

Adding twenty-four new class representatives and eighteen new state law claims would further delay a case that has been pending for almost four years. Plaintiffs themselves acknowledge that their new claims will likely necessitate further motions to dismiss by Defendants (Mot. at 3, 11), and would therefore also result in an extension of all of the current court deadlines. The Court should not permit Plaintiffs unfairly to surprise Defendants by greatly expanding the scope of their case—tripling the number of class representatives, and almost doubling the number of state law consumer protection claims—on the eve of the substantial completion deadline. Granting Plaintiffs' requested amendment will further protract litigation that is already dragging into its fourth year by requiring a further round of dispositive briefing to address the SAC and additional discovery if those new motions to dismiss are not granted in their entirety.

## III. IF THE COURT PERMITS PLAINTIFFS' AMENDMENT, IT SHOULD FOR EFFICIENCY REASONS HEAR DEFENSES AS TO ALL PLAINTIFFS.

Were this Court to grant Plaintiffs' leave to amend, Defendants respectfully request that it revisit its prior waiver ruling (ECF No. 185), and allow Anywhere, Keller Williams, and RE/MAX to challenge personal jurisdiction over all Plaintiffs—not just new ones.

*First*, Plaintiffs' amendment eliminates the efficiency rationale for finding that Anywhere, Keller Williams, and RE/MAX waived personal jurisdiction defenses as to claims asserted by the existing Plaintiffs. The same three Defendants will be moving to dismiss the claims of the proposed new plaintiffs because, among other reasons, twenty-two of the proposed new named plaintiffs never bought a home in Illinois and never suffered any injury in this District based on the alleged impact of Defendants' conduct. Because the proposed SAC lacks any allegations connecting these plaintiffs or their alleged injuries to this District, the Court lacks personal jurisdiction over them. *See Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 265 (2017) ("What is needed—and what is missing here—is a connection between the forum and the specific claims at issue."). These are arguments Defendants could not have made (and thus could not have waived) unless and until those new plaintiffs are permitted to file their SAC. *See BK Trucking Co v. PACCAR, Inc.*, Case No. 15-cv-2282, 2018 WL 11446903, at *4 (D.N.J. Mar. 29, 2018) ("The Court holds that Defendants have not waived the defense of lack of personal jurisdiction as to the claims of the Proposed New Plaintiffs who were not previously parties to this litigation and whose claims were not previously asserted in this action."); *Sloan v. General Motors LLC*, 287 F. Supp. 3d 840, 853-54 (N.D. Cal. 2018) ("[T]his is Defendant's first opportunity to challenge personal jurisdiction with respect to five named plaintiffs who were added to the case in the Second Amended Complaint.").

Because this Court would be considering the merits of personal jurisdiction arguments against the proposed new plaintiffs if the Court were to grant Plaintiffs' motion to amend, it would be efficient to consider those alongside the equivalent arguments against the existing named Plaintiffs—which, if successful, would end this case against the moving Defendants. After all, the Court based its waiver decision in part on the purposes of Rule 12(g)(2), which is

"to prevent piecemeal litigation in which a defendant moves to dismiss on one ground, loses, then files a second motion on another ground." ECF No. 185 at 6-7 (quoting *Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012)). If Plaintiffs are allowed to amend, these efficiency objectives—the benefits of considering dismissal arguments all at once—will cut against the finding of waiver.

*Second*, unless this Court rescinds the finding of waiver, Plaintiffs' amendment will precipitate piecemeal litigation: New plaintiffs would need to re-file their claims where jurisdiction exists (as they already have done for their claims against HomeServices), while the existing Plaintiffs would remain before this Court. This materially changes the practical implications of waiver and offers sound grounds for this Court to rescind it. *See, e.g.*, *Krinsk v. SunTrust Banks, Inc.,* 654 F.3d 1194, 1204 (11th Cir. 2011) (finding that the "vast augmentation of the putative class so altered the shape of litigation" that rescission of waiver of assertion of right to arbitration was warranted).

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Plaintiffs' Motion for Leave to File the Second Amended Class Action Complaint. If, however, this Court were to grant Plaintiffs leave to amend, it should allow Anywhere, Keller Williams, and RE/MAX to move to dismiss all Plaintiffs (not just newly added ones) for lack of personal jurisdiction.

Dated: January 6, 2025          Respectfully submitted,

*/s/ Kenneth M. Kliebard*
Kenneth M. Kliebard (ARDC #6201479)
Jason L. Chrestionson (ARDC #6326714)
**MORGAN, LEWIS & BOCKIUS LLP**
110 N. Wacker Drive, Suite 2800
Chicago, IL 60606
Tel: 312.324.1000
Fax: 312.324.1001
kenneth.kliebard@morganlewis.com
jason.chrestionson@morganlewis.com

Stacey Anne Mahoney (*pro hac vice*)
Heather J. Nelson (ARDC #6327873)
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, NY 10178
Tel: 212.309.6000
Fax: 212.309.6001
stacey.mahoney@morganlewis.com
heather.nelson@morganlewis.com

William T. McEnroe (*pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
2222 Market Street
Philadelphia, PA 19103
Tel: 215.963.5000
Fax: 215.963.5001

***Counsel for Defendant Anywhere Real Estate Inc.***

*/s/ Jeffrey A. LeVee*
Jeffrey A. LeVee (*pro hac vice*)
**JONES DAY**
555 S. Flower Street, 50th Floor
Los Angeles, CA 90071
Tel: 213.489.3939
Fax: 213.243.2539
jlevee@jonesday.com

Eddie Hasdoo (ARDC #6317518)
**JONES DAY**
110 N. Wacker Drive

Chicago, IL 60606
Tel: 312.782.3939
Fax: 312.782.8585
ehasdoo@jonesday.com

**Counsel for Defendant RE/MAX, LLC**

*/s/ Timothy Ray*
Timothy Ray (ARDC #6230099)
**HOLLAND & KNIGHT LLP**
150 N. Riverside Plaza, Suite 2700
Chicago, IL 60603
Tel: 312.263.3600
Timothy.Ray@hklaw.com

David C. Kully *(pro hac vice)*
Anna P. Hayes *(pro hac vice)*
**HOLLAND & KNIGHT LLP**
800 17th Street NW, Suite 1100
Washington, DC 20530
Tel: 202.469.5415
david.kully@hklaw.com
anna.hayes@hklaw.com

Jennifer Lada *(pro hac vice)*
**HOLLAND & KNIGHT LLP**
787 Seventh Avenue, 31st Floor
Tel: 212.513.3200
jennifer.lada@hklaw.com

**Counsel for Defendant Keller Williams
Realty, Inc**

*/s/ Ethan Glass*
Ethan Glass (N.D. Ill. Bar #1034207)
Deepti Bansal (*pro hac vice*)
Georgina Inglis (*pro hac vice*)
**COOLEY LLP**
1299 Pennsylvania Ave NW, Ste 700
Washington, DC 20004-2400
Tel: 202.776.2244
eglass@cooley.com
dbansal@cooley.com
ginglis@cooley.com

Samantha Strauss (*pro hac vice*)
**COOLEY LLP**
110 N. Wacker Dr., Suite 4200
Chicago, IL 60606
Tel: 312.881.6500
sastrauss@cooley.com

Beatriz Meija (*pro hac vice*)
**COOLEY LLP**
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Tel: 415.693.2000
mejiab@cooley.com

Sarah M. Topol (*pro hac vice*)
**COOLEY LLP**
55 Hudson Yards
New York, NY 10001
Tel: 212.479.6000
stopol@cooley.com

Elizabeth Wright (*pro hac vice)*
**COOLEY LLP**
500 Boylston Street, 14th Floor
Boston, MA 02116
Tel: 617.937.2300
ewright@cooley.com

Michael Bonanno (*pro hac vice*)
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
1300 I Street NW, Ste 900
Washington, DC 20005
Tel: 202.538.8225
mikebonanno@quinnemanuel.com

Jack R. Bierig (ARDC #0207039)
Adam J. Diederich (ARDC #6305743)
**ARENT FOX SCHIFF, LLP**
233 South Wacker Drive, Suite 7100
Chicago, IL 60606
Tel: 312.258.5500
jack.bierig@afslaw.com

adam.diederich@afslaw.com

***Counsel for Defendant National
Association of REALTORS®***