IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MYA BATTON, AARON BOLTON, MICHAEL BRACE, DO YEON IRENE KIM, ANNA JAMES, JAMES MULLIS, THEODORE BISBICOS, and DANIEL PARSONS, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>THE NATIONAL ASSOCIATION OF REALTORS, ANYWHERE REAL ESTATE, INC. (f/k/a REALOGY HOLDINGS CORP.), RE/MAX, LLC, and KELLER WILLIAMS REALTY, INC.,<br><br>　　　　　Defendants. | Case No. 1:21-cv-00430<br><br>Judge LaShonda A. Hunt<br><br>Magistrate Judge M. David Weisman |

### DECLARATION OF RANDALL P. EWING, JR.

I, Randall P. Ewing, Jr., declare as follows:

1.　I am an attorney with the law firm of Korein Tillery, LLC and I serve as counsel for Plaintiffs in the above-captioned case. I am admitted to practice in Illinois and the United States District Court for the Northern District of Illinois. I have personal knowledge of the facts below and, if called as a witness, I could and would competently testify thereto.

2.　This case was brought on behalf of homebuyers alleging misconduct with respect to the most MLSs in the country, and Plaintiffs' theory of harm is based on the pass-through of anticompetitive commissions to homebuyers through higher home prices.

3.　Plaintiffs, believing that Defendants would quickly re-produce relevant documents from the other cases and that Defendants would possess or have access to the

1

necessary MLS listings and transaction information, and desiring to move the case to resolution as quickly as possible, requested their class certification motion be due in June 2025.

4. In January 2025, Plaintiffs discovered that Defendants did not in fact possess the necessary data and that numerous third-party subpoenas would be required.

5. Plaintiffs have received over 40 GB worth of data from 46 MLSs.

6. Plaintiffs' experts have been working continuously to merge that data with the home characteristic database, which exceeds 1 terabyte in size, and 24 GB of Defendants' own data.

7. Plaintiffs have recently encountered unexpected and unavoidable complications receiving and processing that data. As a result, Plaintiffs' experts require an additional month to prepare their reports.

8. Critically, Plaintiffs' experts intend to demonstrate their methodologies and analyses in their opening class certification expert reports by applying them to the MLSs involving the five named Plaintiffs and those potential class representatives whose claims are not currently stayed.

9. For three of the five named plaintiffs, however, unexpected complications have delayed their receipt of the data from those MLSs more than two months later than Plaintiffs were led to expect when they filed their motion in May.

10. First, Southwest MLS, the MLS on which the home that Plaintiff Daniel Parsons purchased was listed, was issued a subpoena on March 10, 2025.

11. Following negotiations over the scope of the subpoena with SWMLS, Plaintiffs anticipated receiving the necessary data in early June. When Plaintiffs received the subpoena

response on June 13th, however, SWMLS only provided credentials for an Application Programming Interface (API) rather than excel files. As a result, Plaintiffs and their experts had to spend two weeks to develop a program to extract the relevant data into a useable format.

12. Once they extracted the data, Plaintiffs discovered that SWMLS did not produce transaction prices or the offered buyer-broker commissions (because SWMLS deleted all commission information while this lawsuit was pending).

13. Plaintiffs thus had to engage in an additional two weeks of discussion with SWMLS in order to agree to privacy guarantees that would permit SWMLS to share transaction prices and for SWMLS to work with its vendor in order to restore the necessary commission information.

14. SWMLS has now tentatively agreed to provide the transaction prices and commission offers, but has stated that production may not occur until its board of directors can vote in September.

15. Plaintiffs and SWMLS are currently engaged in discussions about alternative methods of production and privacy guarantees to obtain the information in the next few weeks instead of waiting for board approval in September.

16. As a result of these unexpected complications, Plaintiffs will not receive the necessary data from SWMLS for another two weeks, at best, or two months, at worst. This is at least two months later than expected when Plaintiffs filed their prior motion.

17. Second, Stellar MLS, the MLS on which the homes purchased by Plaintiffs Aaron Bolton and Do Yeon Irene Kim were listed, was issued a subpoena on March 5, 2025.

18. Following several meet-and-confers, Stellar MLS told Plaintiffs on June 13th that the data would be produced within 7-10 days. But Stellar MLS did not actually produce the data until July 21, 2025, more than 5 weeks later. And when Stellar MLS made its production on July 21, 2025, its data was protected and unable to be accessed by Plaintiffs or their experts.

19. Plaintiffs immediately followed up with Stellar MLS and only received usable data on July 30, 2025, more than 6 weeks later than Plaintiffs expected to receive it.

20. Plaintiffs' experts have also experienced unexpected complications in processing data from other MLSs, such as needing to extract commission information from freeform text fields and standardizing mismatched address fields that have presented greater difficulty than anticipated by Plaintiffs' experts two month ago.

21. In addition, several other MLSs delayed their production or are still in the process of making their productions because of various technical reasons and other logistical challenges, but Plaintiffs highlight the two above because they relate to the Plaintiffs and putative class representatives specifically and are the most important MLSs for assessing class certification.

22. Plaintiffs have been extraordinarily diligent in litigating this case since a schedule was entered in May 2024, including by obtaining hundreds of thousands of documents, more than 80 deposition transcripts, and more than a terabyte of data from Defendants and third parties; by issuing subpoenas to and negotiating productions from more than 50 third-parties; and by preserving and clarifying the rights of class members' homebuying claims through three different appeals concerning the scope of releases involved in the *Burnett* home-seller settlements.

23. Plaintiffs have been actively engaged in seeking and obtaining the required discovery nearly every day since the case schedule was entered, and they are prepared to brief class certification except for these lingering issues with respect to a few MLSs.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 1, 2025 in Fort Lauderdale, FL.

/s/ *Randall P. Ewing, Jr.*
Counsel for Plaintiffs and the Proposed Class