# Exhibit 11

```
                                                              Page 1
 1
 2            IN THE UNITED STATES DISTRICT COURT
              FOR THE WESTERN DISTRICT OF MISSOURI
 3
 4    _____
                                    )
 5    SCOTT AND RHONDA BURNETT,     )
      RYAN HENDRICKSON, JEROD BREIT,)
 6    SCOTT TRUPIANO, and           )
      JEREMY KEEL, on behalf of     )
 7    themselves and all others     )
      similarly situated            )
 8       Plaintiffs                 )Case No.
      vs.                           )4:19-cv-00332SRB
 9    THE NATIONAL ASSOCIATION OF   )
      REALTORS, REALOGY HOLDINGS    )
10    CORP., HOMESERVICES OF        )
      AMERICA INC., BHH AFFILIATES, )
11    LLC, HSF AFFILIATES, LLC,     )
      RE/MAX LLC, and KELLER        )
12    WILLIAMS REALTY, INC.         )
         Defendants                 )
13                                  )
      _____)
14
15
16
17            VIDEOTAPED DEPOSITION OF
18              ROBERT A. GOLDBERG
19              November 22, 2021
20                 9:13 a.m.
21
22    Reported by:
      Bonnie L. Russo, Court Reporter
```

Veritext Legal Solutions
www.veritext.com                                    888-391-3376

CONFIDENTIAL                                    NAR_BattonI00930855

Page 36

1  THE WITNESS:  Will you repeat the
2  question, please.
3  BY MR. KETCHMARK:
4  Q.  Sure.  Will you admit to the jury
5  that you're aware of the fact that trade
6  associations are common venues for hatching
7  unlawful antitrust conspiracies?
8  MR. BIERIG:  Object to the form of
9  the question.  Lack of foundation.  Calls for a
10  legal conclusion.
11  THE WITNESS:  My response is
12  absolutely not.
13  BY MR. KETCHMARK:
14  Q.  Absolutely not is your response?
15  A.  Yes.
16  Q.  You know by the very nature, trade
17  associations involve collective actions by
18  competitors who are members of the
19  organization, correct?
20  A.  I am not clear what you mean
21  "collective actions."
22  Q.  Let's break my question down.

CONFIDENTIAL  NAR_BattonI00930890

Page 37

1    NAR, you know is a trade
2    association.  Fair statement?
3        A.    Yes.
4        Q.    You know that it's pulling together
5    competitors in the real estate industry.  Fair
6    statement?
7            MR. BIERIG:  Object to the form of
8    the question.
9            MS. MAHONEY:  Objection.
10           THE WITNESS:  I would not
11   characterize it as pulled together.
12           BY MR. KETCHMARK:
13       Q.    You have a meeting of competitors
14   when the NAR gets together.
15       A.    I would submit that every member
16   that is involved in the organization is a
17   competitor to one another.
18       Q.    That's what I'm talking about.  You
19   are getting, by your very nature, NAR, you are
20   an association where you are pulling
21   competitors together to do things as a group.
22           MR. BIERIG:  Object to the form of

```
                                                    Page 50
 1              MS. MAHONEY:  Mischaracterizes the
 2    document.
 3              THE WITNESS:  I think that was
 4    guidance, from a legal perspective, that was a
 5    general statement.
 6              BY MR. KETCHMARK:
 7       Q.    And the reason that that guidance
 8    was being made is, you know that NAR, by its
 9    very nature, involves collective action by
10    competitors who are members of the
11    organization.  I mean, you know that, don't
12    you?
13       A.    When you stated the question, I
14    think you were putting words in my mouth saying
15    that I agreed it was something I said.
16       Q.    I am asking you the question.
17              Do you agree that the National
18    Association of Realtors, by its very nature,
19    involves collective actions by competitors who
20    are members of the organization?
21              MR. BIERIG:  Object to the form of
22    the question.  Calls for a legal conclusion.
```

CONFIDENTIAL                          NAR_BattonI00930904

Page 51

1     THE WITNESS:  As I stated before,
2  with the majority of our members as independent
3  contractors by nature, they are competitors
4  with one another, and by virtue of their
5  membership and working together, they are
6  competitors that are working together.
7     BY MR. KETCHMARK:
8     Q.   Is it true that one of the things
9  you know as the CEO of NAR is that there is a
10 long-standing dual tradition of competition and
11 cooperation between selling brokers and agents
12 and buyers' brokers and agents; isn't that
13 true?
14    A.   If you could please repeat, you have
15 many points you were making in that statement.
16    Q.   Do you know what -- when I talk
17 about it, and I have seen this in written
18 materials, do you know what dual tradition of
19 competition and cooperation means?
20    MR. BIERIG:  Did you say dual?
21    MR. KETCHMARK:  Dual, D-U-A-L.
22    THE WITNESS:  Yes.

Page 210

1  of the world.
2      Do you see that?
3   A.  Yes.
4   Q.  Do you agree with that statement
5  which is on your website?
6   A.  Again, I think it represents a view
7  of when the writers put this together.  I will
8  stand by my comment.  I personally don't know
9  what is occurring everywhere in the world.
10  Q.  But you will acknowledge and admit
11  to the jury that as I have represented to you
12  this is on your website?
13  A.  Yes.
14      (Deposition Exhibit 232 was marked
15  for identification.)
16      BY MR. KETCHMARK:
17  Q.  Now, do you see here Exhibit 232, an
18  e-mail that you would have received from the
19  then CEO of NAR, Mr. Dale Stinton?
20  A.  Yes, I see it.
21  Q.  And there is a question here, it
22  says:  "Any reason why MRIS is partnering with

```
                                               Page 211
 1    Zillow?"
 2             Do you see where that question is
 3    being raised?
 4        A.   I do.
 5        Q.   And Mr. Stinton responds:  "Lots of
 6    MLSs are making deals to go direct to Z,"
 7    meaning Zillow.  "Same thing with brokers.  We
 8    can't save an industry that doesn't want to be
 9    saved."
10             Do you see that?
11        A.   I do.
12        Q.   Were you involved in encouraging or
13    suggesting that members should not -- or the
14    MLSs should not do deals directly with Zillow?
15             MS. MAHONEY:  Objection.  Vague.
16             MR. BIERIG:  Object to the form of
17    the question.  Mischaracterization of what this
18    says.
19             THE WITNESS:  I believe I was part
20    of conversations that talked about the
21    importance of putting your listings on
22    Realtor.com and the protections that they
```

Page 212

1    provide that others like Zillow may not
2    provide.
3            BY MR. KETCHMARK:
4        Q.    What protections do Realtor.com
5    provide that Zillow or others do not?
6        A.    As I stated earlier in my testimony
7    that the operating agreement with RIN and Real
8    Select talked about what they are allowed to do
9    with that listing which is to put it up for
10   free and allow the members to make sure that on
11   behalf of their sellers that that listing is
12   unfettered, there is no other what I call
13   interlopers in the middle of trying to create a
14   toll booth in front of it and we were not
15   certain what the intentions of others were
16   trying to do with the intellectual property of
17   that broker who signed that agreement with
18   their consumers.
19           (Deposition Exhibit 234 was marked
20   for identification.)
21           BY MR. KETCHMARK:
22       Q.    I want to shift gears now and visit

```
                                                     Page 327
 1              BY MR. BRAUN:
 2       Q.    I am not asking you about a rule.  I
 3   am asking you whether it is one of the
 4   established business models in the real estate
 5   industry involves the following:  A seller
 6   agrees on a commission with a listing broker
 7   and then the listing broker makes a blanket
 8   offer of compensation to buyer brokers in order
 9   to induce cooperation?
10              MS. MAHONEY:  Objection.  Vague.
11              MR. BIERIG:  Object to the form.
12              THE WITNESS:  That is an element of
13   it if you are putting it in MLS.
14              BY MR. BRAUN:
15       Q.    Is it fair to say that the majority
16   of homes that are listed for sale in the United
17   States are put into the MLS?
18       A.    By choice of --
19              MS. MAHONEY:  Objection.  Vague.
20   Foundation.
21              THE WITNESS:  By choice of the
22   seller with their selling agent.
```

CONFIDENTIAL                                     NAR_Battonl00931181

```
 1              IN THE UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF MISSOURI
 2                       WESTERN DIVISION

 3   SCOTT AND RHONDA BURNETT,            )
     RYAN HENDRICKSON, JEROD BREIT,       )
 4   SCOTT TRUPIANO, and JEREMY KEEL,     )
     on behalf of themselves and all      )
 5   others similarly situated,           )
                         Plaintiffs,      )Case No.
 6               vs.                      )19-CV-00332-SRB
                                          )
 7   THE NATIONAL ASSOCIATION OF          )Kansas City, Missouri
     REALTORS, et al.,                    )October 17, 2023
 8                       Defendants.      )

 9                  .........................
           TRANSCRIPT OF JURY TRIAL - VOLUME 1 OF 11
10          BEFORE THE HONORABLE STEPHEN R. BOUGH
             UNITED STATES DISTRICT COURT JUDGE
11

12       Proceedings recorded by electronic stenography
                Transcript produced by computer
13

14                         APPEARANCES

15   For the Plaintiffs:      MR. MICHAEL S. KETCHMARK
                              MR. BENJAMIN H. FADLER
16                            MR. SCOTT A. McCREIGHT
                              Ketchmark & McCreight PC
17                            Two Hallbrook Place
                              11161 Overbrook Road, Suite 210
18                            Leawood, Kansas 66211

19                            MR. BRANDON J.B. BOULWARE
                              Boulware Law LLC
20                            1600 Genessee Street, Suite 416
                              Kansas City, Missouri 64102
21

22

23

24

25
                                  1
                   Gayle M. Wambolt, CCR No. 462
                      Registered Merit Reporter
```

```
                           INDEX
                        JURY TRIAL
                     OCTOBER 17, 2023

EVENT                                                PAGE

Proceedings in Courtroom                              5

Instructions Read                                    13

Plaintiffs' Opening Statement                        13

Defendant NAR Opening Statement                      81

Defendant HomeServices Opening Statement            115

Defendant Keller Williams Opening Statement         149

Proceedings in Courtroom                            173

Gary Keller by Videotaped Deposition                181

Gino Blefari by Videotaped Deposition               182

Robert Goldberg by Videotaped Deposition            183

Proceedings in Courtroom                            184
```

4

Gayle M. Wambolt, CCR No. 462
Registered Merit Reporter

```
 1   the presence of the jury after this was done.  I wasn't going
 2   to take up the court's time to do that.
 3           THE COURT:  Your objection is preserved.  You can
 4   have a continuing objection.
 5           MR. RAY:  Thank you.
 6      (The proceedings returned to open court.)
 7           MR. KETCHMARK:  Call Mr. Blefari to the stand.
 8           (Video played.)
 9           (Counsel approached the bench and the following
10   proceedings were had:)
11           THE COURT:  I'm assuming you don't have a 30-minute
12   witness.
13           MR. KETCHMARK:  We timed it to have a 30-minute
14   witness, Your Honor.
15           THE COURT:  Okay.  You've got all your objections
16   preserved.
17           MR. MacGILL:  That's what I was going to ask.  And
18   the motion to strike will be preserved as well?
19           THE COURT:  Sure.
20           MR. MacGILL:  Okay.  Thank you.
21      (The proceedings returned to open court.)
22           MR. KETCHMARK:  We timed it to have a 30-minute
23   witness, Your Honor.  We will call our last witness for the
24   day to the stand.  Counsel is ready.
25           Plaintiffs call Robert Goldberg to the stand.  His
```
182

```
 1   videotaped deposition was taken on November 22nd, 2021, in the
 2   presence of the defense counsel in this case as well as the
 3   defense attorneys for RE/MAX and the defense attorneys for
 4   Anywhere.
 5              (Video played.)
 6              (Counsel approached the bench and the following
 7   proceedings were had:)
 8              MR. KETCHMARK:  We have about eight minutes.  I want
 9   to be respectful of the court and the jury's time.  Do you
10   want us to finish this witness or start tomorrow?
11         (The proceedings returned to open court.)
12              THE COURT:  Eight minutes.  Keep going?
13              A JUROR:  Okay.
14              THE COURT:  All right.  Let's play.
15                   (Video played.)
16              THE COURT:  Ladies and gentlemen of the jury, I'm
17   going to remind you on this recess and every other recess do
18   not discuss this case among yourselves or with anyone else,
19   including your family and friends.  Do not allow anyone to
20   discuss this case with you or within your hearing.
21              Do not discuss also means do not email, send text
22   messages, blog, or engage in any other form of written, oral,
23   or electronic communication, as I've instructed you before.
24   Leave your notes in your chair, and we'll see you back at 8:30
25   tomorrow.
                                183
```