IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MYA BATTON, AARON BOLTON, MICHAEL BRACE, DO YEON IRENE KIM, ANNA JAMES, JAMES MULLIS, THEODORE BISBICOS, and DANIEL PARSONS, individually and on behalf of other persons similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> THE NATIONAL ASSOCIATION OF REALTORS, ANYWHERE REAL ESTATE, INC., f/k/a/ REALOGY HOLDINGS, CORP., RE/MAX LLC, and KELLER WILLIAMS, REALTY, INC., <br><br> Defendants. | Case No. 1:21-cv-00430 <br><br> Judge LaShonda A. Hunt <br><br> Magistrate Judge M. David Weisman |

## OPPOSED MOTION TO STRIKE, OR ALTERNATIVELY TO STAY, PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Defendant Anywhere Real Estate Inc. ("Anywhere") brings this motion because Plaintiffs' proposed class would violate a federal injunction barring the claims of as much as 79% (by Plaintiffs' own admission) of the putative class. There are multiple potential procedural avenues for addressing this problem, including but not limited to striking the class certification motion or entering a temporary stay of class certification proceedings, so Anywhere seeks the Court's guidance on how it would like to proceed.

Defendants Anywhere, RE/MAX LLC, and Keller Williams Realty, Inc. have each settled antitrust claims with a nationwide class of people who sold homes (the "Settlements"), and those settlements have been finally approved by the U.S. District Court for the Western District of Missouri. *See Burnett v. NAR*, 4:19-CV-00332-SRB ("*Burnett*"), Dkt. 1487 (W.D. Mo. May 9, 2024). The *Burnett* court has also granted final approval to a nationwide class

settlement with Defendant National Association of Realtors. (*Burnett* Dkt. 1622.) In the Settlements, Settlement Class Members expressly settled ***all*** of their claims arising out of the alleged real-estate brokerage commission antitrust conspiracy, including claims they had as home sellers ***and*** as home buyers. (*See e.g.*, *Burnett* Dkt. 1192-3 (Anywhere settlement definition of Released Claims).)

In view of the release, the *Burnett* Court, in approving the Settlements, expressly "***enjoined***" all Settlement Class Members from "filing, commencing, prosecuting, intervening in, or pursuing ***as a*** plaintiff or ***class member*** any Released Claims against any of the Released Parties" including all "claims arising from or relating to transactions where Settlement Class Members ***either sold or purchased a home*** on any multiple listing services nationwide." (*Burnett* Dkt. 1487 ¶ 63 (emphases added), *Burnett* Dkt. 1622 ¶ 168.) Anywhere is a Released Party. The *Burnett* Final Approval Orders were issued over the objection of James Mullis, a named Plaintiff in this case, who has appealed the denial of his objection to the Eighth Circuit. *See Burnett v. Mullis*, No. 24-2143 (8th Cir.) (the "Mullis Appeals"). Because the Final Approval Orders and accompanying injunction are "final judgments," they were immediately effective, notwithstanding the filing of an appeal. *Amcast Indus. Corp. v. Detrex Corp.*, 45 F.3d 155, 160 (7th Cir. 1995). The only exception would be if the district court had stayed the order "during the pendency of the appeal," *Duncan v. Farm Credit Bank of St. Louis*, 920 F.2d 1099, 1003 (7th Cir. 1991), but that did not happen. Thus, the *Burnett* injunction is binding. *See In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 333 F.3d 763, 768 (7th Cir. 2003).

In response to the *Burnett* injunction entered on May 9, 2024 as part of the Final Approval Order pertaining to Anywhere, on June 18, 2024, Plaintiffs in this case stipulated to a stay of this case as to all class representatives who are Settlement Class Members, including

Mullis. (Dkt. 162.) Judge Wood then entered the stay "pending final resolution of all appeals from the Final Approval Order." (Dkt. 180.) In compliance with that stay, no discovery has proceeded as to named Plaintiffs like Mullis who both bought and sold homes where the sale occurred in the *Burnett* release period, i.e., Settlement Class Members.

Despite the *Burnett* injunction and the Court's stay Order in this case, Plaintiffs' current motion for class certification improperly asks this Court to certify a class where 79% of the proposed class members' claims were settled in *Burnett* and are therefore enjoined. (Dkt. 243.) Plaintiffs' class-certification motion acknowledges the Settlements and the Final Approval Orders and expressly recognizes that they "purport to release claims related to both selling and buying homes, including homebuying claims in this case." (*Id.* at 2 n.5.) In compliance with those applicable and governing Orders, Plaintiffs could and should have limited their proposed class to people who only bought homes but did not also sell them within the *Burnett* release period. Instead, they seek certification of an impermissibly broader class that includes people who both bought and sold homes, and who therefore are currently enjoined from pursuing such released claims. Plaintiffs' motion even admits that had Plaintiffs sought to certify a class that complied with the injunction, the putative class would need to be "limited to first-time home buyers, people who opted out of those settlements, and people whose only sale of a home was outside of the settlement class period in that case." (*Id.* at 2-3 n.5.) Plaintiffs' economic expert, Dr. Abrantes-Metz, estimates that as many as 79% of the improperly proposed class members are enjoined from pursuing these claims. (Dkt. 243-4 ¶ 341.)

Because much of the above history occurred before the case was reassigned from Judge Wood to this Court, Anywhere believes it prudent to raise this issue with the Court now. There are at least three alternative paths forward, including: (1) striking Plaintiffs' current motion for

3

class certification, but allowing Plaintiffs to refile with a proposed class, and supporting analysis, that would not violate the *Burnett* Final Approval Orders; (2) temporarily staying class certification proceedings until resolution of the Mullis Appeals; or (3) continuing forward with scheduled oppositions to Plaintiffs' current motion with the understanding that the proposed class cannot be certified consistent with the *Burnett* Order. Anywhere seeks the Court's guidance on which path the Court prefers. Under any circumstance, Anywhere respectfully submits that Defendants should not be required to address substantively a narrowed class comprising buyers-only (i.e., a class that complies with the *Burnett* injunction) unless and until Plaintiffs present a specific methodology for identifying that class and assessing antitrust injury and impact as to that class, none of which their current motion does.

## ARGUMENT

I. **Plaintiffs' Motion for Class Certification Should be Stricken Because It Seeks Certification of a Class that Cannot Be Certified Consistent with the *Burnett* Injunction.**

The most efficient path forward would be for the Court to strike Plaintiffs' proposed class because it is facially defective. Civil Rule 23(c)(1)(A) "permits the Court to strike a class allegation" at any time, "even before the plaintiff files a motion requesting certification." *Dowding v. Nationwide Mut. Ins. Co.*, 490 F. Supp. 3d 1291, 1298 (N.D. Ill. 2020) (quoting *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011)). When class allegations "fail as a matter of law," for example, a court may strike them as "facially and inherently deficient." *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 295-96 (N.D. Ill. 2014) (striking "overbroad" TCPA class that "fail[ed] to satisfy Rule 23(a)(3)'s typicality requirement"); *accord Daly v. Glanbia Performance Nutrition, Inc.*, 2023 WL 5647232, at *2-4 (N.D. Ill. Aug. 31, 2023) (striking nationwide class allegations because a nationwide class was

uncertifiable as a matter of law); *Kubilius v. Barilla Am., Inc.*, 2019 WL 2861886, at *2 (N.D. Ill. July 2, 2019) (same).[1]

The same logic applies here. Plaintiffs' proposed class would violate the *Burnett* injunction if certified. The proposed class claims here improperly include released and enjoined "claims arising from or relating to transactions where Settlement Class Members . . . **purchased a home** on any multiple listing service nationwide." (*Burnett* Dkt. 1487 ¶ 63 (emphasis added); *Burnett* Dkt. 1622 ¶ 168 (emphasis added).) Therefore, Plaintiffs' proposed class cannot be certified as currently defined consistent with the *Burnett* injunction. *See In re RC2 Corp. Toy Lead Paint Prods. Liab. Litig.*, 2008 WL 548772, at *5 (N.D. Ill. Feb. 20, 2008) ("If [an overlapping class] settlement is approved, then some or all of the claims of Plaintiffs who do not opt out will be barred by res judicata."). Plaintiffs' expert estimates that as much as 79% of the proposed class is currently enjoined from litigating their claims. (Dkt. 243-4 ¶ 341.)

Because the proposed class cannot be certified consistent the *Burnett* injunction, the Court should strike Plaintiffs' motion now, rather than forcing Defendants to undergo a full analysis of this improperly proposed class, particularly because Plaintiffs know that their proposed class does not comply with the *Burnett* Order. *See, e.g.*, Dkts. 162, 180 (joint motion to stay all of the claims of the three named Plaintiffs whose claims are released and enjoined, and Order granting same); Dkt. 154 (Order denying Plaintiffs' motion for a temporary restraining order and preliminary injunction precluding the Western District of Missouri from conducting the Final Approval Hearing regarding the settlements that resulted in the issuance of the Final Approval Orders containing the applicable injunction, and holding that "Plaintiffs

---

[1] *Cf. Moehrl v. NAR*, No. 19-cv-01610, Sept. 15, 2022 Tr. at 15-16 (N.D. Ill.) (Wood, J.) (noting that a motion to strike would be a proper procedural remedy for defendants to have challenged plaintiffs for exceeding the scope in a class certification expert rebuttal report).

and putative class members in this case who are also class members in *Burnett* are represented by Class Counsel there [in the Final Approval Hearing and] [t]hat proceeding is deemed to provide an adequate remedy at law"). Defendants negotiated for a full release of ***all claims*** held by Settlement Class Members precisely so that they would not need to bear the burden of continuing to litigate against people with whom they had already settled. Striking Plaintiffs' class certification motion, therefore, not only respects the *Burnett* Order but also gives Defendants the full benefit of their Settlement bargain.

If the Court strikes the current motion, Plaintiffs could file a motion for class certification with a proposed class, and supporting expert analysis, that properly excludes all individuals subject to the *Burnett* release and injunction. As part of such a revised motion, Plaintiffs would need to set forth a methodology for (1) identifying individuals who both sold and bought homes and then (2) removing them from the proposed class. Plaintiffs' current motion offers nothing meaningful on this front; in a single conclusory footnote, Plaintiffs vaguely assert that, if required to do so, they *could* use data from a generalized housing database ("ATTOM") to sort home buyers who only bought homes from home buyers who also sold homes. (Dkt. 243 at 38 n.114.) That is not enough. To certify a class, Plaintiffs must "proffer a viable method of" sorting class members subject to an affirmative defense like release from other class members, i.e., a methodology that does "not require individualized, fact-based mini-trials for each potential class member." *Gorss Motels, Inc. v. Brigadoon Fitness, Inc.*, 29 F.4th 839, 845 (7th Cir. 2022). Only after Plaintiffs disclose their methodology supporting a potentially certifiable class could Defendants reasonably be expected to respond to it.

**II.      Alternatively, The Class Certification Process Should Be Temporarily Stayed Pending Resolution of the Mullis Appeals in the Eighth Circuit.**

"The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). Docket management "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936). Factors courts consider in deciding whether to issue a stay include "(1) whether a stay will simplify the issues in question and streamline the trial; (2) whether a stay will reduce the burden of litigation on the parties and on the court; and (3) whether a stay will unduly prejudice or tactically disadvantage the non-moving party." *Wilcosky v. Amazon.com., Inc*., 2023 WL 11824850, at *2 (N.D. Ill. July 21, 2023). These principles of docket management apply in the class-certification context the same as in any other. *Id*. Indeed, Federal Rule of Civil Procedure 23 expressly affords district courts the authority to "issue orders that . . . determine the course of proceedings or prescribe measures to prevent undue repetition or complication in presenting evidence or argument" or that "deal with similar procedural matters." Fed. R. Civ. P. 23(d)(1)(A), (D).

Courts "routinely" stay putative class actions when "a pending nationwide settlement could impact the claims in the case before them." *Hennessey v. The Gap Inc*., 2021 WL 2665910, at *1 (E.D. Mo. June 29, 2021); *In re RC2*, 2008 WL 548772, at *5 (staying litigation in view of pending settlement in another action). This is particularly so when the release in the related settlement is subject to litigation, the outcome of which could "modif[y] drastically" how the parties litigate the pending case. *In re Credit Default Swaps Auctions Litig*., 2024 WL 264035, at *4-6 (D.N.M. Jan. 24, 2024) (staying antitrust case because dispute over scope of related settlement release was pending in New York federal court); *see also New Mexico State Inv. Council v. Bank of Am. Corp*., 2024 WL 1990362, at *2 (D.N.M. May 6, 2024) (extending

7

stay while parties continued to litigate release before the Second Circuit); *accord Rego v. Am. Honda Motor Co.*, 2012 WL 12953740, at *4 (C.D. Cal. Sept. 20, 2012) (staying class action pending named plaintiffs' appeal of their objections to a related class settlement).

To resolve the issues raised by Plaintiffs' motion, and consistent with both the *Burnett* injunction and this Court's prior stay Order, the appropriate course—if the Court elects not to strike the motion outright—is to stay class-certification proceedings pending the Eighth Circuit's resolution of the Mullis Appeals. Any such stay would be of short duration. The Eighth Circuit has already screened the first Mullis appeal—addressing the Anywhere, RE/MAX, and Keller Williams settlements—for oral argument. The case will likely be argued in the court's December 2025 or January 2026 sitting. Mullis's appeal from the NAR settlement will either be joined with the first appeal or argued shortly thereafter. And even while the proposed stay is in effect, discovery on other issues, such as class representative depositions for the non-stayed Plaintiffs and third party discovery, will continue forward as currently scheduled. The parties could resume work on the remaining class certification issues after the Eighth Circuit issues its decision and provides definitive guidance on the contested scope of the Settlement releases.

A stay would advance judicial economy by allowing the parties to conform the proposed class to the finally adjudicated scope of the Settlement releases before fully briefing class certification issues. For example, if class certification continues with the current proposed overbroad class, the Court will need to resolve a dispute regarding whether the non-stayed class members can satisfy Rule 23's adequacy and typicality requirements with respect to the 79% of the proposed class who are subject to a Court Order releasing their claims and enjoining their prosecution. *See* Fed. R. Civ. P. 23(a)(3)-(4); *see, e.g.*, *Carr v. Walmart, Inc.*, 2023 WL

8

9420846, at *1 (C.D. Cal. Nov. 27, 2023) (named plaintiffs could not "meet the demands of typicality and adequacy" where they had opted out of a release that applied to the remainder of the class); *Javine v. San Luis Ambulance Serv., Inc.*, 2015 WL 12672090, at *11 (C.D. Cal. Jan. 13, 2015) (named plaintiff who had *not* released claims was "not sufficiently typical" because "the majority of the putative class" *had* signed a release); *Rawat v. Navistar Int'l Corp.*, 2011 WL 222131, at *8 (N.D. Ill. Jan. 20, 2011) (named plaintiffs who have not signed releases cannot adequately represent class members who have signed releases). These issues will be entirely avoided by entering a stay and then conforming the class, and the class representatives, to the Eighth Circuit's decision on the scope of the release.

A stay also would not "unduly prejudice or tactically disadvantage" Plaintiffs. *Wilcosky*, 2023 WL 11824850, at *2. The current situation is a problem of Plaintiffs' own making. *Cf. id.* (holding that a stay was not "unduly prejudicial" where it was plaintiffs' litigation conduct that created the need for a stay). And Plaintiffs created this problem knowingly. Indeed, the *Burnett* injunction was entered over their objection and after they unsuccessfully asked this Court to issue a temporary restraining order blocking the *Burnett* settlement approval process. (Dkts. 152, 154.) Anywhere would not be seeking a stay had Plaintiffs moved to certify a class that complied with the *Burnett* injunction and this Court's earlier stay Order. Therefore, a modest delay to avoid the inefficiencies caused by Plaintiffs' failure to proceed in accordance with the *Burnett* injunction will not unduly prejudice Plaintiffs. *See, e.g.*, *Credit Default Swaps*, 2024 WL 264035, at *3 (staying case three years into litigation, after deciding a motion to dismiss, due to dispute over scope of release in related case); *Pieterson v. Wells Fargo Bank, N.A.*, 2019 WL 1466963, at *2-3 (N.D. Cal. Feb. 14, 2019) (staying case two years into litigation, mid-

9

class certification briefing). This failure is likely not accidental, because it will be more difficult for the Plaintiffs to satisfy the Rule 23 requirements for a properly defined class.

**III.     If the Court Prefers to Proceed with the Current Opposition Schedule, Defendants Should Not Be Required to Oppose the Narrower Buyer-Only Class that Plaintiffs Failed to Propose or Analyze.**

While striking Plaintiffs' motion for class certification or temporarily staying class certification proceedings to allow the Eighth Circuit to rule would be more efficient paths, a third option is proceeding with the current briefing schedule. Defendants' deadline to oppose is currently set for December 23, 2025, (Dkt. 232), though the parties have agreed to extend this deadline until January 5, 2026 due to Plaintiffs' failure timely to provide the data undergirding their expert analysis. Defendants could oppose the current broad class on this date, arguing both (1) that the proposed class cannot be certified consistent with the *Burnett* injunction and (2) that the proposed class fails for other reasons. The burden of conducting the full class analysis is substantial, however, and will be a wasted exercise if the Eighth Circuit affirms *Burnett*.

If the Court elects to keep the current schedule, Defendants should not be required to oppose a narrower class of buyers-only (i.e., individuals not enjoined by the *Burnett* Final Approval Orders), because Plaintiffs have offered no analysis to support such a class. As set forth above, it is Plaintiffs' burden to provide and support a methodology to identify non-released class members. There current motion does not even attempt to do so. The issues related to the identification of buyer-only class members based on available class-wide proof would require very significant data analytic work (as Defendants and their experts learned in conjunction with the *Burnett* litigation); it would not merely be (as Plaintiffs suggest in their brief) a mathematical reduction of their current damages calculation. (Dkt. 243 at 2-3 n.5, 38

n.114.) Defendants should not be required to oppose this methodology for identifying class members before Plaintiffs have even met their burden by proposing such a method.[2]

In addition, there will be several important issues specific to first-time home buyers who would comprise a significant percentage of a proposed buyer-only class that would materially change the fact of injury analyses and the Plaintiffs' yardstick approach, and would not just be impactful to Plaintiffs' damages calculations. For example, the discrepancy between average purchase prices in Dr. Abrantes-Metz's three benchmark countries (Australia, Denmark, and the Netherlands) and a class of American first-time buyers, who, according to NAR, have a median purchase price of 15–30% lower than that for repeat buyers,[3] would be expected to widen substantially, calling into question the applicability of her analysis to the non-enjoined class claims. (Dkt. 243-4 ¶ 138.)

As a further example, Dr. Abrantes-Metz recognizes that first-time home buyers experience broker commissions differently than other home buyers and that this difference can affect her damages calculation. (*Id.* ¶ 329.) She then dismisses this concern because "I would expect the fraction of home buyers subject to these reduced rates to be relatively small – as discussed previously, first time home buyers represent roughly one-third of home buyers." (*Id.*) This sort of hand waving would not be possible for the narrowed almost entirely first-time home buyers class.

---

[2] Nor should Plaintiffs be permitted to offer such a methodology for the first time in their Reply, thus giving themselves an effective extension of time on their class certification motion, ***and*** unfairly sandbagging the Defendants and putting the Defendants through the unwarranted effort and expense of responding to two alternative class proposals – once in their Response and then another time in their Sur-Reply.

[3] *See, e.g.*, RMLLC-Batton_00301872, at '898 (2014 NAR Profile of Home Buyers and Sellers) ("The median price repeat buyers paid for their home was $240,000 compared to a median price of $169,000 for first-time buyers").

As a third example, Dr. Abrantes-Metz assumes that in the so-called "but-for" world (i.e., the imaginary world that would exist absent the challenged conduct), home buyers pay their buyer brokers out of pocket at the time of closing, unlike the current situation where the listing brokers pay the buyer broker commissions. (*Id.* ¶ 78.) But first-time home buyers tend to be cash poor.[4] Faced with increased cash requirements in the but-for world, first-time home buyers may be forced to either (1) forego a purchase altogether or (2) finance a greater portion of the purchase price at higher costs, i.e., supported by expensive private mortgage insurance (due to less cash being available for a down payment). Either way, Plaintiffs' expert analysis would need to account for issues related to the fact of injury as applied to the class members whose claims are not enjoined, many of whom may not, in fact, be injured, or who may be worse off in Dr. Abrantes-Metz's but-for world.

## **CONCLUSION**

For the reasons set forth above, Anywhere respectfully requests that the Court strike Plaintiffs' current motion for class certification or, alternatively, stay all class certification proceedings pending the Eighth Circuit's decision in *Burnett*. If the Court prefers to proceed under the current schedule, then Defendants should be required to oppose only the broad class currently proposed by Plaintiffs, approximately 79% of which is enjoined from pursing its

---

[4] "First-time buyers had a median household income of $97,000, up from $95,900, while repeat buyers had a median household income of $114,300, up from $111,700." https://www.lirealtor.com/docs/default-source/default-document-library/2024_profile_of_home_buyers_and_sellers_report_final.pdf?sfvrsn=9f1ff3ce_3#:~:text=The%20housing%20market%20appears%20bifurcated,highest%20downpayment%20seen%20since%202003 (last visited Oct. 21, 2025). First time buyers more often rely on small down payments (3–10%), and many use FHA, VA, or other low-down-payment programs. https://www.nar.realtor/blogs/economists-outlook/tackling-home-financing-and-down-payment-misconceptions (last visited Oct. 21, 2025). And, unlike repeat buyers, first-time buyers don't have proceeds from a prior home sale to apply toward a new purchase. https://www.nar.realtor/magazine/real-estate-news/9-buyer-seller-trends-driving-home-sales (last visited Oct. 21, 2025).

claims. If the *Burnett* decision is subsequently affirmed, the parties would need to engage in a whole new class certification process for a narrower class not currently proffered and analyzed by Plaintiffs or their experts.

Dated: October 22, 2025

Respectfully Submitted,

*/s/ Kenneth M. Kliebard*
Kenneth M. Kliebard
Jason L. Chrestionson
**MORGAN, LEWIS & BOCKIUS LLP**
110 N. Wacker Drive, Suite 2800
Chicago, IL 60606
Tel: 312.324.1000
Fax: 312.324.1001
kenneth.kliebard@morganlewis.com
jason.chrestionson@morganlewis.com

Stacey Anne Mahoney (*pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, NY 10178
Tel: 212.309.6000
Fax: 212.309.6001
stacey.mahoney@morganlewis.com

William T. McEnroe (*pro hac vice*)
Dennie B. Zastrow (*pro hac vice forthcoming*)
**MORGAN, LEWIS & BOCKIUS LLP**
2222 Market Street
Philadelphia, PA 19103
Tel: 215.963.5000
Fax: 215.963.5001
william.mcenroe@morganlewis.com
dennie.zastrow@morganlewis.com

***Counsel for Defendant Anywhere Real Estate Inc.***

**MEET & CONFER CERTIFICATION**

The undersigned hereby certifies that counsel for Anywhere conferred with counsel for Plaintiffs and were unable to resolve the issues presented in this Motion. Anywhere and Plaintiffs propose that Plaintiffs' response will be due on or before October 27, 2025 and any reply thereto will be filed on or before November 3, 2025.

*/s/ Kenneth M. Kliebard*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 22nd day of October, 2025, a true and correct copy of the foregoing was filed and served via the ECF/CM system with the Clerk of the Court and which will serve Notice of Electronic Filing upon counsel of record via electronic mail.

*/s/ Kenneth M. Kliebard*