IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MYA BATTON, AARON BOLTON, MICHAEL BRACE, DO YEON IRENE KIM, ANNA JAMES, JAMES MULLIS, THEODORE BISBICOS, and DANIEL PARSONS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE NATIONAL ASSOCIATION OF REALTORS, ANYWHERE REAL ESTATE, INC. FORMERLY KNOWN AS REALOGY HOLDINGS CORP., RE/MAX LLC, and KELLER WILLIAMS REALTY, INC.,<br><br>Defendants. | Case No. 1:21-cv-00430<br><br>Judge LaShonda A. Hunt<br><br>Magistrate Judge M. David Weisman |

**P LAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

## **INTRODUCTION**

Plaintiffs[1] in this case are about to be stripped of their due process right to be represented by adequate counsel—the counsel that has zealously represented them and their fellow class members' interests before this Court for the past five years—and risk being plagued by inefficient and inadequate settlements going forward. Instead, they will have the *Tuccori* plaintiffs' counsel foisted upon them, who are colluding with Anywhere Real Estate Inc. ("Anywhere") to settle Plaintiffs' valuable claims for a fraction of their worth. *See Tuccori, et al. v. At World Properties, LLC, et al.*, 24-cv-00150 (N.D. Ill.), ECF No. 98. In an effort to protect the class, yesterday Plaintiffs filed a motion to reassign *Tuccori* to this Court (ECF No. 272) and a motion to intervene in *Tuccori*. *Id.* ECF No. 100. Today, the *Tuccori* court entered an order stating that in light of this long-running case, the court is unlikely to grant preliminary approval of Anywhere's *Tuccori* settlement and setting a hearing for **March 4, 2026 at 9:15 am** to hear why *Tuccori* counsel did not disclose Anywhere's involvement in *Batton*. *Id.* ECF No. 103 (Ex. A).

In Counsel's experience, in most class actions both sides zealously advocate for their clients within the bounds of the law and the relevant procedural rules and achieve a fair outcome that benefits class members. But there *are* exceptions, and what has happened over the past few days with Anywhere in *Tuccori* is the most egregious one that the undersigned Counsel has ever seen. The *Tuccori* plaintiffs sold a release to Anywhere, a party they never sued, of claims they never litigated, belonging to clients they never represented, for a sum untethered to the claims' actual value, all the while knowing that those same claims were being prosecuted by different counsel before a different judge in the same courthouse. *Tuccori* class counsel gets fees for virtually nonexistent work, Anywhere pays a pittance to evade potentially crushing liability, and

---

[1] "Plaintiffs" here refers to Plaintiffs and members of the proposed class.

Plaintiffs are deprived of their most effective counsel.

Therefore, out of an abundance of caution under these extraordinary circumstances impacting their rights, Plaintiffs move for a preliminary injunction to maintain the status quo until at least the time that each of Plaintiffs' motions to reassign *Tuccori* to this Court, and, to the extent necessary, competing applications to be appointed as interim class counsel for the homebuyer claims against Defendant Anywhere[2] are resolved.

## **BACKGROUND**

This Court has been presiding over this action against Defendant Anywhere for over five years. Plaintiffs filed the first case alleging homebuyers were harmed by a decades-long conspiracy among Anywhere and its co-conspirators to inflate broker commissions, which in turn inflated home prices. Thereafter, Plaintiffs briefed (and defeated) multiple motions to dismiss, engaged in extensive and voluminous discovery, answered discovery, sat for depositions, engaged world-class experts to examine the impact and damages caused by Defendants, including Anywhere's conduct, and moved for class certification. Plaintiffs continue to engage in discovery. Plaintiffs' efforts also extend beyond this Court. Plaintiffs have objected to and appealed the final approval of settlements with home sellers that purport to release their claims. After these hard-fought years of litigation, Plaintiffs recently reached a $20 million settlement with Keller Williams Realty, Inc. ("Keller Williams") (28.5% of the settlement with home sellers in *Burnett, et al. v. Nat'l Ass'n of REALTORS®, et al.*, 4:19-cv-00332 (W.D. Mo.) ("*Burnett*")), which this Court preliminarily approved. ECF No. 269. In connection with that settlement, the Court entered an order appointing

---

[2] Lowey Dannenberg and Korein Tillery have been counsel litigating putative class claims against Anywhere for 5 years and, in the absence of any other set of attorneys seeking to bring a class action against Anywhere that would necessitate appointment of interim class counsel until two days ago, have been *de facto* interim class counsel for litigating claims against Anywhere the entire time ("Class Counsel").

2

the undersigned Class Counsel for homebuyers for purposes of the settlement. *Id.* at ¶ 7 ("The Court hereby appoints Lowey and Korein Tillery as Class Counsel of the Settlement Class for purposes of the Settlement, having determined that the requirements of Rule 23(g) of the Federal Rules of Civil Procedure are fully satisfied by this appointment.").

On the other side of the "v" for the entirety of this case has been co-conspirator and Defendant Anywhere.[3] Anywhere has appeared numerous times before the Court, briefed motions to dismiss, produced discovery, and deposed Plaintiffs. Anywhere also, without its co-Defendants, moved to stay class certification proceedings and was successful. Anywhere's motion to stay class certification proceedings was explicitly premised on the contention that a stay would make it easier for the Parties and this Court to assess the merits of class certification. ECF No. 246 at 8-9 ("a stay would advance judicial economy by allowing the parties to conform the proposed class to the finally adjudicated scope of the Settlement releases before fully briefing class certification issues."). But then, Anywhere used the time granted to it by the stay to try and opt-in to a settlement with *Tuccori* plaintiffs for a fraction of Plaintiffs' settlement with Keller Williams in this case. *Tuccori*, ECF No. 98 at 4.

A brief background of *Tuccori* puts these extraordinary circumstances into light. With two years' notice of *Batton*'s claims, named defendants, theories, and arguments, *Tuccori* plaintiffs filed their copycat case in 2023 in state court naming only At World Properties, LLC. *James Tuccori v. At World Properties*, No. 2023CH09928 (Ck. Cty.), a defendant Plaintiffs chose not to

---

[3] Anywhere is jointly and severally liable for damages caused by acts of the alleged conspiracy, including those of settling defendant Keller Williams. *In re Uranium Antitrust Litig.*, 552 F. Supp. 518, 522 (N.D. Ill. 1982) ("it has long been the law that an antitrust defendant is jointly and severally liable for the acts of its co-conspirators").

sue in this case. The case was then removed to the Northern District of Illinois in January 2024. *Tuccori*, ECF No. 1. Thereafter, several other cases were related to *Tuccori*, all naming regional brokerages with small market share comparative to the defendants named in *Batton*. Three months later, *Tuccori* was stayed to allow the parties to engage in mediation. *Id.* ECF No. 18. Six months after that, prior to any motions to dismiss or discovery, the parties announced their first set of settlements for a total of $3,202,000. *Id.*, ECF No. 58. As part of its motion for preliminary approval of those settlements, *Tuccori* plaintiffs outlined an opt-in procedure pursuant to which any brokerage could opt-in to the settlement and either mediate or pay 25% of any settlement in *Burnett*. *Id.* Anywhere was not mentioned in any of these proceedings.

Four months later, without notice to the Court or to Plaintiffs, the *Tuccori* plaintiffs revealed on February 23, 2026, that they had a reached a settlement with Anywhere. *Tuccori*, ECF No. 98. According to their papers, Anywhere chose to mediate and, together with all the other opt-ins, agreed to pay $10,787,500 (charitably assuming that most of that money is attributable to Anywhere, it amounts to about 10% of its settlement in *Burnett*). *Id.* The settlement explicitly seeks to release the claims in this case. *Tuccori* counsel also seeks to be appointed class counsel and to amend the complaint in the case to add Anywhere as a defendant for the first time.

In the wake of this news, and within 24 hours of its revelation, counsel for Batton filed "emergency" applications on February 24, 2026 to intervene in *Tuccori* to correct what Plaintiffs' counsel viewed as an attempt to end-run Fed. R. Civ. P. 23, L.R. 40, and this Court. *Tuccori*, ECF No. 100. Plaintiffs, later that same day, filed a motion to relate and reassign *Tuccori* to this Court. ECF No. 271. Now, in an abundance of caution under these extraordinary circumstances, Plaintiffs bring the instant motion to preliminarily enjoin Anywhere from proceeding with its *Tuccori* settlement to prevent irreparable injury to the *Batton* plaintiffs and the

4

putative homebuyer class.

## LEGAL STANDARD

To obtain a preliminary injunction, a movant must show that it is likely to win on the merits and will suffer irreparable harm. *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 539 (7th Cir. 2021); *BBL, Inc. v. City of Angola*, 809 F.3d 317, 323–24 (7th Cir. 2015). If the movant makes this showing, the court weighs the harm of denying an injunction to the plaintiff against the harm to the defendant of granting one. *Id*. The Court adopts a sliding-scale approach in weighing these factors (i.e., if plaintiff is likely to win on the merits, the balance of harms need not weigh so heavily in his favor). *Valencia v. City of Springfield*, 883 F.3d 959, 966 (7th Cir. 2018). Here, each of these factors weigh heavily in favor of granting Plaintiffs' motion.

## ARGUMENT

### I. Plaintiffs Are Highly Likely to Succeed on the Merits

First, the moving party must "demonstrate that its claim has some likelihood of success on the merits." *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 539 (7th Cir. 2021). The moving party "need not show that it definitely will win the case." *Republican Party v. Pritzker*, 973 F.3d 760, 762 (7th Cir. 2020). Plaintiffs easily satisfy this "low threshold." *Valencia*, 883 F.3d at 966.

As Plaintiffs' motion to reassign sets forth in detail, Plaintiffs meet all the necessary criteria to have *Tuccori* reassigned to this Court. Moreover, the *Tuccori* court's acknowledgement of Plaintiffs' motion to transfer and quick action to set a hearing regarding Plaintiffs' motion to intervene indicates that Plaintiffs have made meritorious arguments with some likelihood of success.

As to the merits of their claims, Plaintiffs' claims have been repeatedly upheld by this Court. No. 21-CV-00430, 2024 WL 689989, at *1 (N.D. Ill. Feb. 20, 2024); 2024 WL 4871366,

at *1 (N.D. Ill. Nov. 22, 2024). Second, the same claims against Defendants' alleged co-conspirator Hanna Holdings, Inc. have been upheld by the Eastern District of Pennsylvania. *Davis v. Hanna Holdings, Inc.*, 787 F. Supp. 3d 42, 50 (E.D. Pa. 2025). Third, Plaintiffs' industry and economic experts have conducted in-depth analyses of antitrust impact and damages. ECF Nos. 243-4 & 243-34. Benchmark models, like the one they developed, are widely accepted and approved in antitrust cases. *See, e.g., Kleen Prods. LLC v. Int'l Paper*, 831 F.3d 919, 929 (7th Cir. 2016) (affirming finding of predominance where damages were calculated classwide using a benchmark analysis); *In re Ranbaxy Generic Drug Application Antitrust Litig.*, 338 F.R.D. 294, 305 (D. Mass. 2021) ("'yardstick' methodology" is a "widely accepted method[] of proving antitrust injury and damages on a classwide basis"). And fourth, plaintiffs bringing home selling claims based on the same conspiracy Plaintiffs allege here have successfully certified their classes, defeated summary judgement, and obtained a $1.8 billion jury verdict for home sellers in just the State of Missouri, which Anywhere settled for $83.5 million. *Burnett*, ECF No. 1469 at 2-3. Plaintiffs here have a strong likelihood of success on the merits.

## II. Plaintiffs Will Suffer Irreparable Harm Absent an Injunction

Harm is considered "irreparable if legal remedies are inadequate to cure it." *Life Spine*, 8 F.4th at 545. In other words, irreparable harm is harm that "cannot be repaired" and for which money compensation is inadequate. *Orr v. Shicker*, 953 F.3d 490, 502 (7th Cir. 2020). Legal remedies must be "seriously deficient" but need not be "wholly ineffectual." *Life Spine*, 8 F.4th at 545; *Moss Holding Co. v. Fuller*, No. 20-CV-01043, 2020 WL 1081730, at *9 (N.D. Ill. Mar. 6, 2020) (citing *Foodcomm Int'l v. Barry*, 328 F.3d 300, 304 (7th Cir. 2003)).

First, absent an injunction, Plaintiffs are at imminent risk of being deprived of their essential due process rights under Fed. R. Civ P 23. Procedural due process violations are a long-

recognized category of irreparable harm. *Cooper v. Salazar*, 196 F.3d 809 (7th Cir. 1999) (discrimination claimants challenging administrative procedures "established irreparable harm sufficient to obtain preliminary injunction" because "retroactive relief would not be available if procedural due process violation was found, and deferential appellate review was not adequate remedy for alleged defects in the process").

Adequate representation is a crucial due process requirement in class action litigation and settlement. *Gomez v. Illinois State Bd. of Educ.*, 117 F.R.D. 394 (N.D. Ill. 1987) ("due process requires that absent class members be adequately represented in order to prevent a collateral attack on the judgment"); *Helfand v. Cenco, Inc*., 80 F.R.D. 1 (N.D. Ill. 1977) ("adequate representation embodies a crucial due process requirement in a class action suit"). Adequate representation demands class counsel vigorously protect class interests throughout litigation and settlement. And "representation of the class [i]s almost certainly inadequate" in the context of a "'reverse auction,' the practice whereby the defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a settlement with in the hope that the district court will approve a weak settlement that will preclude other claims against the defendant." *Reynolds v. Ben. Nat'l Bank*, 288 F.3d 277, 282, 284 (7th Cir. 2002). "The Court must have confidence that counsel will prosecute the case in the interest of the class, of which they are fiduciaries." *Van v. Ford Motor Co.*, 332 F.R.D. 249, 286 (N.D. Ill. 2019). Adequate representation also requires the court to consider, among other things, "counsel's work on the case to date." *Id*; *accord* FED. R. CIV. P. 23(g).

When classes are not adequately represented, class members face numerous harms including inadequate litigation, settlement without sufficient evidence, collusive settlements that favor counsel at the expense of the class, and reverse auctions where a defendant pits groups of plaintiffs' counsel against each other and settles with the lowest bidder. *See*, *e.g.*, *Douglas v.*

7

*Western Union Company*, 328 F.R.D. 204, 216 (N.D. Ill. 2018) (judges must be "vigilant in uncovering any collusion in class action settlements" because class counsel and defendants sometimes "exploit these dynamics to generate a settlement that extinguishes the claims against the defendant and enriches class counsel … but that does not provide commensurate or adequate benefit for the class"); *Reynolds*, 288 F.3d 277 (same). This is exactly the harm Plaintiffs face here: a settlement negotiated by counsel that has never prosecuted claims against Anywhere for which counsel will collect fees and through which Anywhere is able to settle cheaply for a fraction of the benchmark settlement of $20 million in this case.

Moreover, Anywhere's *Tuccori* settlement seeks to appoint *Tuccori* counsel as class counsel for homebuyers' claims against Anywhere. When there is more than one set of counsel vying to represent a class, the court must appoint the settlement class counsel that is "best able to represent the interests of the class." Fed. R. Civ. P. 23(g)(2). Plaintiffs' counsel here clearly fit the bill. In fact, they have already been appointed Class Counsel for purposes of their settlement with Anywhere's co-conspirator Keller Williams in part based upon their vigorous advocacy of Plaintiffs' claims over five years. In contrast, *Tuccori* counsel has done almost no work on behalf of the settlement class, apart from reviewing documents. And this minimal amount of work resulted in a group settlement that is barely *half* of what counsel here negotiated with one Defendant. If no injunction issues and Anywhere proceeds with its *Tuccori* settlement as things currently stand, Plaintiffs will be deprived of their right to the counsel best able to represent their interests against Anywhere.

Plaintiffs also face the irreparable harm of woefully inadequate settlements going forward. As one court explained, the first settlements, "regardless of [their] inadequacies, set[] the standard for settlement." *In re Managed Care Litig.*, 236 F. Supp. 2d 1336, 1344 (S.D. Fla. 2002). In that

8

case, the plaintiffs in a later-filed action attempted to settle claims that had been vigorously pursued by plaintiffs in an earlier-filed lawsuit. Just as here, the settlement involved one defendant in industry-wide litigation. The district court agreed with the earlier-filed plaintiffs that they would suffer irreparable harm because "[o]ther Defendants will doubtless argue that the . . . settlement, regardless of its inadequacies, sets the standard for settlement . . . [and] will have the practical effect of limiting and hindering settlement of the encompassing issues before this Court . . . ." *Id.* at 1344. So too here. Although the Keller Williams settlement should have set the benchmark in this case (and was negotiated with that particular fact in mind), Anywhere's fast-tracked, fractional *Tuccori* settlement will set the *sub*-standard if it is allowed to proceed. In addition, it is a matter of careful litigation strategy which defendant plaintiffs choose to settle with first in order to, for example, ensure that they have available for trial the defendant with the greatest ability to withstand judgment or against whom they have the best evidence. By settling with *Tuccori* plaintiffs, Anywhere has deprived Plaintiffs of this litigation judgment.

And, just as in *Managed Care*, if the Court were to let Anywhere "proceed in this manner, nothing would stop every other Defendant from following suit." *Id.* This type of harm cannot be repaired. *See In re Checking Account Overdraft Litig.*, 859 F. Supp. 2d 1313, 1323 (S.D. Fla. 2012) (granting similar injunction over defendant's argument that "Plaintiff [could still] pursue his *individual* claims in this action" and finding the plaintiff's "briefed class certification motion . . . is procedurally important because the [tagalong] class has been certified for settlement purposes only.").

Indeed, there is no adequate remedy at law for any of these types of harms. They are exactly the type of "real but hard-to-quantify loss" that "is a standard form of irreparable injury." *In re Lewis*, 212 F.3d 980, 984 (7th Cir. 2000); *cf. Reynolds*, 288 F.3d at 282, 284 (finding inadequate

9

Rule 23 representation in reverse-auction context). Plaintiffs will undoubtedly suffer irreparable harm in the absence of an injunction.

### III. The Balance of Harms Favors the Relief Plaintiffs Seek

If likelihood of success on the merits and irreparable harm are satisfied, the court then "weighs the balance of harm to the parties if the injunction is granted or denied and also evaluates the effect of an injunction on the public interest." *Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012). The balancing of harms is a sliding scale: "the greater a party's likelihood of success on the merits, the less the balance of harms need weigh in that party's favor, and vice versa." *Su v. Fensler*, No. 22-CV-01030, 2023 WL 5152640, at *3 (N.D. Ill. Aug. 10, 2023), on reconsideration in part, No. 22-CV-01030, 2023 WL 8446380 (N.D. Ill. Nov. 28, 2023). In this case, the balance of harms weighs strongly in favor of the *Batton* Plaintiffs.

As set forth above, if Anywhere is permitted to participate in the Opt-In Settlement and it is preliminarily approved, Plaintiffs will suffer the irreparable harms above. In addition to these harms, Anywhere's actions have unnecessary delayed and needlessly increased the cost of litigation. Indeed, Plaintiffs' counsel have spent a massive number of attorney hours over the course of days in order to file motions necessary to protect the class. The equities cannot possibly favor a party who attempts to end-run due process, the Court before whom it had been defending the class claims against for five years, LR 40.4 and Rule 23.

In contrast, Anywhere will suffer little harm, if any. Anywhere has had five years to settle the claims against it in *Batton*, and is still free to do so. Therefore, it has at most lost whatever minimal time it spent mediating the *Tuccori* settlement. Given its motion to stay in this case, Anywhere cannot credibly argue that it is unfairly prejudiced by delay.

10

Granting this motion is also in the public interest. Permitting Anywhere to opt-in to the settlement under these circumstances sets a dangerous precedent that encourages forum and judge shopping in class action litigation. It also encourages a perverse race to the bottom where class members are victim to whichever law firm from a different case decides to settle their claims out from underneath them for peanuts. And by depriving the class of adequate counsel best able to represent it, Anywhere's *Tuccori* settlement also compromises the public trust in the judiciary. *In re Managed Care Litig.*, 236 F. Supp. 2d at 1344. ("It is of the greatest public interest to ensure public trust in the judiciary. This trust comes from rendering *just* proceedings.").

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enjoin Anywhere from proceeding with the *Tuccori* settlement until at least the time that each of Plaintiffs' motions to reassign *Tuccori* to this Court, and, to the extent necessary, competing applications to be appointed as interim class counsel for the homebuyer claims against Defendant Anywhere are resolved.

11

Dated: February 25, 2026

Respectfully submitted,

*/s/ Vincent Briganti*
Vincent Briganti (pro hac vice)
Margaret MacLean (pro hac vice)
Noelle Forde (pro hac vice)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
(914) 997-0500
vbriganti@lowey.com
mmclean@lowey.com
nforde@lowey.com

George A. Zelcs (Ill. Bar No. 3123738)
Randall P. Ewing, Jr. (Ill. Bar No. 6294238)
Ryan Z. Cortazar (Ill. Bar No. 6323766)
**KOREIN TILLERY, LLC**
205 North Michigan Avenue, Suite 1950
Chicago, IL 60601
(312) 641-9750
gzelcs@koreintillery.com
rewing@koreintillery.com
rcortazar@koreintillery.com

Steven M. Berezney (N.D. Ill. Bar No. 56091)
**KOREIN TILLERY, LLC**
505 North 7th Street, Suite 3600
St. Louis, MO 63101
(314) 241-4844
sberezney@koreintillery.com

*Counsel for Plaintiffs and the Proposed Class*

**CERTIFICATE OF SERVICE**

      I hereby certify that on February 25, 2026, a true and correct copy of the foregoing was filed electronically through the Court's CM/ECF system, which will send notification of the same to all counsel of record in this matter.

                                                                    */s/ Noelle Forde*
                                                                     Noelle Forde