# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| MYA BATTON, AARON BOLTON, MICHAEL BRACE, DO YEON KIM, ANNA JAMES, JAMES MULLIS, THEODORE BISBICOS, and DANIEL PARSONS, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>       v.<br><br>THE NATIONAL ASSOCIATION OF REALTORS, ANYWHERE REAL ESTATE, INC. FORMERLY KNOWN AS REALOGY HOLDINGS CORP., RE/MAX LLC, and KELLER WILLIAMS REALTY, INC.,<br><br>          Defendants. | Case No. 1:21-cv-00430 (LAH)<br><br>Judge LaShonda A. Hunt |

## ANYWHERE REAL ESTATE INC.'S RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND MOTION TO REASSIGN CASE

**INTRODUCTION**

For the second time, Plaintiffs are asking this Court to enjoin defendant Anywhere Real Estate Inc. from participating in a settlement approval process overseen by another, co-equal U.S. District Court. The first time, Judge Wood denied their motion for an injunction *sua sponte*, calling it "neither necessary nor appropriate." (Dkt. 154 at 2.) This time is no different.

As before, Plaintiffs' grievance is that other parties negotiated a class settlement that they think is inadequate. But the way to raise this concern is to object to the settlement's approval under Rule 23 in the court reviewing it. As Judge Wood previously explained, the "very purpose" of the Rule 23 approval process "is for the district court to consider and address challenges to the fairness of the proposed class action settlement." (*Id.* at 1.) No step other than an objection is required. The Supreme Court rejected the need for intervention in *Devlin v. Scardelletti*, 536 U.S. 1 (2002). And because a Rule 23 objection provides a legal remedy, there is no need for an injunction.

The settlement at issue was reached in *Tuccori v. At World Properties, LLC*, No. 1:24-cv-00150 (N.D. Ill.), one of seven related cases pending before Judge Jenkins. Judge Jenkins preliminarily approved ten indirect-purchaser (home buyer) class settlements in those cases last October and authorized a mediation process through which additional, potential defendants could opt in to the settlements. Plaintiffs call this procedure "bizarre." (Dkt. 271 at 1.) But the same procedure was approved by the federal court overseeing the previous direct-purchaser (home seller) class actions and was successfully used for a large number of settlements. (*See Burnett, et al. v. Nat'l Ass'n of Realtors, et al.*, No. 4:19-cv-00332-SRB (W.D. Mo.) Dkt. 1460.) Plaintiffs did not object to the procedure then. And here, Judge Jenkins approved the procedure and appointed former Northern District of Illinois Chief Judge James Holderman, now a mediator, to oversee it.

1

Anywhere participated in the court-approved *Tuccori* mediation process after it was acquired by Compass Real Estate. The acquisition made Anywhere a sister company to At World Properties—one of the ten *Tuccori* defendants whose settlements were preliminarily approved in October. Anywhere had previously been subpoenaed by the *Tuccori* plaintiffs as an unnamed co-conspirator but had not yet been named a defendant. Unlike the Plaintiffs here, who are trying to represent indirect-purchaser home buyers who already released their claims in the direct-purchaser litigation (an attempt this Court rejected), the *Tuccori* plaintiffs represent homebuyers not already covered by a release. In an arm's length mediation overseen by former Chief Judge Holderman, Anywhere and plaintiffs reached a final agreement, and plaintiffs presented the settlement (along with three others) to Judge Jenkins for preliminary approval on February 23.

Plaintiffs now argue that this Court should enjoin that preliminary approval process and reassign all the *Tuccori* cases to this Court. As before, the Court should deny the injunction. On reassignment, Anywhere expects that your Honor and Judge Jenkins will confer on who should handle the *Tuccori* cases. Given that Judge Jenkins already addressed the first ten settlements in October, and these new settlements would be added to the same fund and claims process, it is difficult to see how reassignment would "result in a substantial savings of judicial time and effort." L.R. 40.4(b). Instead, it would create unnecessary work for this Court.

Regardless, Anywhere has no qualms about any court overseeing the settlement approval process. The settlement Anywhere negotiated is fair, reasonable, and adequate, and the Rule 23 review process will show it to be so. As is typical, objecting counsel claim they could get a better deal. But in fact, the settlement they negotiated with Keller Williams obtains almost exactly the same amount for the unreleased claims as the *Tuccori* plaintiffs' settlement with Anywhere—$10

million versus $9.602 million. The extra money in the Keller Williams settlements is for claims that were already released.

In sum, Plaintiffs' procedural emergency is baseless. No one should be enjoined. Plaintiffs should raise their objection in *Tuccori*. Judge Jenkins should probably keep *Tuccori*, but this Court will decide, and Anywhere will defer to its decision.

## FACTUAL AND PROCEDURAL BACKGROUND

**Real-estate broker antitrust litigation.** This action is one of many antitrust actions raising allegations of price fixing against essentially the entire U.S. real estate brokerage industry. The claim is that rules promulgated by the National Associations of Realtors (NAR) and implemented by multiple listing services increased the commissions paid to brokerages when homes are sold.

The direct-purchaser cases (brought by home sellers, who directly paid the commissions) were filed first. *See Burnett v. Nat'l Ass'n of Realtors, et al.*, No. 4:19-cv-00332-SRB (W.D. Mo. 2019); *Moehrl v. Nat'l Ass'n of Realtors, et al.*, No. 1:19-cv-01610-ARW (N.D. Ill. 2019).

The indirect-purchaser cases (brought by home buyers, who allege that higher commissions increased the home prices they paid), including this case, were copycat claims filed years later. (*See, e.g.*, Dkt. 1 (Complaint, filed Jan. 25, 2021); *Tuccori*, No. 1:24-cv-00150 (N.D. Ill.).)

In the fall of 2023, shortly before trial in the direct-purchaser litigation, Anywhere reached the first nationwide settlement, in which it agreed to pay $83,500,000 to settle the direct-purchaser claims, plus the indirect-purchaser claims of people who had both. (*See Burnett* Dkt. 1192; *Burnett* Dkt. 1469 at 5.) RE/MAX soon followed with its own settlement. Trial proceeded against other defendants, including NAR and Keller Williams, and those defendants lost. Keller Williams settled after the trial loss. (*Burnett* Dkt. 1372.) So did NAR. (*Burnett* Dkt. 1460.) The NAR settlement included an opt-in procedure to allow alleged co-conspirator brokerages not named as parties to

3

join the settlement after preliminary approval. (*Burnett* Dkt. 1540.) More than two dozen unnamed brokerages used the opt-in procedure and joined the settlement. The *Batton* Plaintiffs did not object to that procedure. (*See Burnett* Dkt. 1561.)

**The *Batton* Plaintiffs' prior attempt to enjoin a settlement approval process.** The *Batton* Plaintiffs did, however, object to another aspect of Anywhere's settlement. In that settlement (and all other direct-purchaser settlements), class members who had both direct-purchaser and indirect-purchaser claims expressly released *all* their claims. Just like now, the *Batton* Plaintiffs claimed an "emergency." They asked this Court to temporarily restrain Anywhere from proceeding with the final approval hearing in the Western District of Missouri, arguing that relief was "urgently needed" because the settlement would "irreparably harm homebuyer Plaintiffs." (Dkt. 152 at 2.) They claimed that the release of indirect-purchaser claims "came as a surprise to Plaintiffs" and that they had assumed the "settlements had no impact on this litigation." (*Id.*) They claimed a lack of "adequate representation," compared to their "years" of work. (*Id.* at 4, 10.)

Judge Wood had none of it. She denied the TRO *sua sponte* the same day it was filed. (Dkt. 154.) Her Order said Plaintiffs' motion was "neither necessary nor appropriate," including because Plaintiffs could "present their concerns about the proposed settlement" as part of the ordinary approval process "before the *Burnett* court." (*Id.* at 2.) Judge Wood explained that the Court will continue to "operate on the basis of the assumption that all federal judges follow the law and protect the rights of the class members in accordance with Rule 23 of the Federal Rules of Civil Procedure." (*Id.* (quotation omitted).)

**The *Batton* Plaintiffs' ongoing attempt to relitigate released claims.** *Batton* Plaintiff James Mullis pressed forward with his objection to the release of both direct-purchaser (home

4

seller) and indirect-purchaser (home buyer) claims by *Burnett* class members who had them. (*Burnett* Dkt. 1447.) As now, *Batton*'s counsel claimed lack of adequate representation by settling counsel. (*Id.* at 8-11.) The *Burnett* court flatly overruled the objection, finding it baseless; the court granted final approval to Anywhere's settlement and release and entered an injunction prohibiting the settling class members from litigating the released claims elsewhere. (*Burnett* Dkt. 1487 ¶¶ 55-60; *Burnett* Dkt. 1622 ¶¶ 127-146.)

Despite the final approval order and injunction, when the *Batton* Plaintiffs moved here to certify a class and be appointed as class counsel, they included home buyers who had released their indirect-purchaser claims. (Dkt. 243.) Their expert estimated that up to **79%** of claims in their proposed class had been released. (Dkt. 246 at 3.) Anywhere objected to the improper, overbroad class. (*Id.* at 6.) The Court agreed, struck Plaintiffs' motion, and stayed all further class certification proceedings pending resolution of Mullis's Eighth Circuit appeal from the denial of his objection. (Dkt. 257.) That appeal was argued on January 14, 2026. *Burnett v. Mullis*, No. 24-2143 (8th Cir.). Thus, Plaintiffs have never been certified to represent any class against Anywhere.

**The *Tuccori* litigation, icebreaker indirect-purchaser settlements, and opt-in mediation procedure.** The *Tuccori* indirect-purchaser plaintiffs filed suit in state court in December 2023, suing @properties. (Dkt. 271 at 3.) @properties removed the case to this District, where it was assigned to Judge Jenkins in early January 2024. (*Tuccori* Dkt. 1.) The *Batton* Plaintiffs knew about *Tuccori* from the outset. They told the JPML in February 2024 that it "contained virtually identical factual allegations" to their suit. (*In re: Real Estate Commission Antitrust Litigation*, MDL No. 3100 (Jud. Panel. Multidist. Litig. 2023), Dkt. 387 at 1 n.1.) Yet they did not seek to reassign *Tuccori* to this Court under Local Rule 40.4(b) (including when they moved to relate and reassign *Batton, et al. v. Compass, Inc., et al.*, No. 1:23-cv-15618-EEC (N.D.

Ill. 2023) to Judge Wood in late January) nor did they seek to be appointed interim class counsel under Rule 23(g)(3). Another year down the road, in May 2025, a motion was filed to consolidate five additional home buyer actions with *Tuccori*. (*Tuccori* Dkt. 41 at 2.) Again, the *Batton* Plaintiffs did not ask to have those cases reassigned here, and Judge Jenkins consolidated them with *Tuccori* "because no opposition was filed." (*Tuccori* Dkt. 43.)

On October 13, 2025, plaintiffs in *Tuccori* broke through with the first indirect-purchaser, home buyer class settlements in the nation. They filed a motion for preliminary approval of related settlements with ten defendants: @properties (At World Properties), Baird & Warner, Inc. ("Baird & Warner"), Real Estate One, Inc. ("Real Estate One"), Silvercreek Realty Group LLC ("Silvercreek"), Equity Realtors, L.L.C. d/b/a Equity Real Estate ("Equity Realtors"), NextHome, Inc. ("NextHome"), Realty Executives Intl. Svcs. LLC ("Realty Executives"), Shorewest Realtors, Inc. ("Shorewest"), Side, Inc. ("Side"), and Engel & Völkers Americas, Inc. and Engel & Völkers GmbH (together, the "E&V Entities"). (*Tuccori* Dkt. 58-1 ¶ 18.) The settlement class was limited to those who had not already released their claims. The settlement amounts averaged approximately 10% of the settlers' corresponding direct-purchaser settlements.[1] Because the indirect-purchaser settlements covered only about 1/8 (or 12.5%) of the transactions released in the direct-purchaser settlements, the 10% settlement value represented only a slight discount off

---

[1] The collective value of the original *Tuccori* settlement is $3,202,000. (*Tuccori* Dkt. 58 at 2.) In comparison, the same group of ten defendants settled with home sellers for more than $30 million. (*See Burnett,* Order Approving Plaintiffs' Motion for Final Approval of Settlements (Dkt. 1622) at 7) (Silvercreek ($350,000); Shorewest ($6,923,000)); *Gibson, et al. v. The Nat'l Ass'n of Realtors, et al.*, No. 4:23-cv-00788 (W.D. Mo.), Plaintiffs' Motion for Final Approval of Settlements (Dkt. 762) at 5 (Baird & Warner ($2,200,000); Real Estate One ($1,500,000); NextHome ($600,000); Side ($5,500,000)); *Gibson,* Plaintiffs' Motion for Final Approval of Settlements (Dkt. 521) at 4-5 (@properties ($6,500,000); E&V Entities ($6,900,000).). The value of any settlement contributions made by Equity Realtors and Realty Executives LLC are unknown, but the total value of known contributions from the originally settling defendants is $30,473,000 even without their participation.

the direct-purchaser settlements on a per-transaction basis. The direct-purchaser settlements in *Burnett* resolved 100% of all direct-purchaser (home seller) claims, **plus** approximately 79% of all indirect-purchaser (home buyer) claims, because most people had both types of claims. The *Tuccori* settlements then resolved the remaining approximately 21% of indirect-purchaser (home buyer) claims. Those settlements were an excellent result for the settlement class, representing almost no merits discount despite the material differences between direct- and indirect-purchaser claims. Judge Jenkins preliminarily approved the *Tuccori* settlements and appointed *Tuccori* counsel as Settlement Counsel. (*Tuccori* Dkt. 65.)

In addition to the individual settlements, the *Tuccori* settlement included a plan, modeled after the NAR direct-purchaser settlement that had been finally approved a year earlier (*Burnett* Dkt. 1622), to allow additional non-party real estate brokerages, franchisors, or real estate companies to opt into the settlement through mediation before a designated Special Master, retired Northern District of Illinois Chief Judge James Holderman. (*Tuccori* Dkt. 58-1 ¶ 35.) All opt-in settlements must be completed by April 14, 2026. (*See id.* ¶ 8.) The *Tuccori* settlement also required that all contributions collectively exceed a confidential "Threshold Amount" to become effective. (*Id*. ¶ 9.) With Judge Jenkins' preliminary approval (*Tuccori* Dkt. 65), the *Tuccori* plaintiffs undertook, on behalf of the settlement class, to seek non-defendant opt-in settlers to join the settlement.

**Anywhere's participation in the opt-in mediation procedure after being acquired.** On January 9, 2026, Compass, Inc. completed its acquisition of Anywhere, an acquisition that had been announced September 22, 2025, subject to regulatory review. (A. Van Oort Decl. ¶ 5.) The acquisition made Anywhere a corporate affiliate of @properties, one of the original settling

defendants in *Tuccori*. After the acquisition, a mediation with Judge Holderman was scheduled to be held on February 4, 2026. (*Id.* ¶¶ 6-7.)

On February 2, 2026, the *Batton* Plaintiffs moved for preliminary approval of their first settlement, with Keller Williams. (Dkt. 262.) Their first settlement came four months after the ten settlements negotiated by the *Tuccori* plaintiffs. The *Batton* Plaintiffs' settlement with Keller Williams expressly included all home buyers, including the approximately 79% of home buyers who had released their claims in the direct-purchaser settlements. (*Id.* at 15.) Keller Williams agreed to pay $20 million, which represents approximately 28% of its corresponding home seller settlement ($70 million). (*Burnett* Dkt. 1469 at 5.) The settlement did not state how the money would be allocated between released claims (79%) and unreleased claims (21%) in the class.

On February 4, 2026, Anywhere and the *Tuccori* plaintiffs mediated before Judge Holderman as scheduled. They reached an agreement for Anywhere to pay $9,602,500 **just for the unreleased indirect-purchaser claims**. (A. Van Oort Decl. ¶ 8.) This amount represents 11.5% of Anywhere's corresponding direct-purchaser settlement, more than the approximately 10% the original *Tuccori* settlers agreed to pay.

The *Tuccori* plaintiffs moved for preliminary approval of the Anywhere opt-in settlement, together with three other opt-in settlers, on February 23, 2026. (*Tuccori* Dkt. 98). Concurrently, the *Tuccori* plaintiffs moved for leave to add the opt-in settlers to their complaint. (*Tuccori* Dkt. 97.)

Instead of simply objecting to the Anywhere settlement, as Judge Wood had previously instructed them was the proper procedure, the *Batton* Plaintiffs repeated their prior improper, unnecessary set of emergency filings, moving here to consolidate (Dkt. 271) and for a preliminary injunction (Dkt. 273), and in *Tuccori* to intervene (*Tuccori* Dkt. 100).

8

## LEGAL STANDARD

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Muzurek v. Armstrong*, 520 U.S., 968, 972 (1997). The movant must demonstrate: (1) a likelihood of success on the merits; (2) irreparable harm absent an injunction; (3) that the balance of harms favors relief; and (4) that the injunction is in the public interest. *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 762 (7th Cir. 2020). Failure to satisfy any element is fatal.

Local Rule 40.4 controls whether cases should be related and reassigned. Cases are related when they (1) involve the same property, (2) involve some of the same issues of fact or law, (3) grow out of the same transaction or occurrence, or (4) involve the same classes, in a class action. L.R. 40.4(a). The reassignment factors are decidedly "more stringent," and the moving party bears the burden of establishing them. *Williams v. Walsh Const.*, 2007 WL 178309, at *2 (N.D. Ill. Jan. 16, 2007). The factors are: (1) both cases are pending in this Court, (2) consolidation is "likely to result in a substantial savings of judicial time and effort," (3) "the earlier case has not progressed to the point where designating a later filed case as related would be likely to delay the proceedings," and (4) the cases are susceptible of disposition in a single proceeding. L.R. 40.4(b). Ultimately, the Court has discretion whether to reassign. *Williams*, 2007 WL 178309, at *1.

## ARGUMENT

### A. The Court should deny the motion for a preliminary injunction.

Anywhere will not spend much time addressing the motion for a preliminary injunction, because it is hard to fathom this Court ever enjoining proceedings before a Northern District of Illinois colleague. When Plaintiffs asked the Court to temporarily restrain class settlement approval proceedings in the direct-purchaser cases in the Western District of Missouri, Judge Wood denied the motion *sua sponte*, calling it "neither necessary nor appropriate." (Dkt. 154 at 2.) Plaintiffs'

new motion is even less appropriate and more unnecessary now that its target is another judge in this same District. In their memorandum, Plaintiffs argue that they have a likelihood of success on the merits of their antitrust claims. (Dkt. 273 at 5-6.) But that is the wrong issue. What they need is a likelihood of success in getting an injunction against settlement approval proceedings, and on that issue, their likelihood of success is zero. They claim to be "at imminent risk of being deprived of their essential due process rights under Fed. R. Civ P 23." (*Id.* at 6.) To the contrary, Rule 23 gives them the full right to object. They should just exercise that right, as Judge Wood directed last time. (Dkt. 154 at 2.) The Court should deny the injunction and once again direct Plaintiffs to follow the Rule 23 settlement approval process.

### B. At this late stage in the *Tuccori* cases, it would be more efficient to leave them with Judge Jenkins.

The question then is which judge should oversee the *Tuccori* settlement approval process. Because the process is so far advanced, it would be more efficient to leave it with Judge Jenkins rather than requiring this Court to step in and retrace what she has done. But ultimately, Anywhere expects that your Honor and Judge Jenkins will decide what is most efficient.

The Rule gives the Court discretion, based on whether reassignment would serve the policies of efficiency and consistency underlying Local Rule 40.4(b). *See Williams*, 2007 WL 178309, at *1. Typically, reassignment is sought as soon as a later case is filed, rather than after it has progressed to an advanced stage such as settlement approval. *Cf. Medline Indus., Inc. v. C.R. Bard, Inc.*, 2020 WL 10486064, at *2-3 (N.D. Ill. Aug. 10, 2020) (denying reassignment near the summary judgment stage and suggesting it might have been granted earlier); *In re Antibiotic Drugs*, 320 F. Supp. 586, 591 (Jud. Panel. Multidist. Litig. 1970) (declining to transfer 66 settled actions and 28 actions "in the process of being settled," while reassigning 58 cases that were not near settlement).

10

Another federal district court has previously denied reassignment in the exact posture of this case, where a class action plaintiff sought reassignment after a settlement had been announced in another case. *See Margolis v. Hydroxatone, LLC*, 2013 WL 875987 (D.N.J. Mar. 6, 2013). The moving plaintiff argued that consolidation was necessary to "protect her and a putative class's claims from being rendered moot." *Id.* at *2. The court declined to consolidate because "the more appropriate forum for Margolis to address her claims of collusion and a reverse auction is in objections to the settlement." *Id.* at *4. The court found that "consolidation would prejudice the parties . . . who have negotiated a settlement through mediation and . . . would delay the preliminary approval process." *Id.* at *3. Moreover, there was no efficiency to be gained because "[b]oth actions ha[d] been proceeding separately for over a year and a half such that duplication of judicial resources has already occurred." *Id.* at *4.

So too here. As the Seventh Circuit commented in another case, the *Batton* Plaintiffs' belated request "strongly suggests that [they are] not interested in intervening in the *litigation* but in blocking a settlement." *Sokaogon Chippewa Community v. Babbitt*, 214 F.3d 941, 948 (7th Cir. 2000) (emphasis in original). As recounted above, Plaintiffs have known about *Tuccori* since it was filed years ago. They chose not to request reassignment then. In addition, they admit that they learned last fall of the opt-in procedure Judge Jenkins authorized when she preliminarily approved the first ten indirect-purchaser class settlements and confess they "did not seek a transfer of the *Tuccori* action to this Court" then. (Dkt. 271 at 1.) It is clear that Plaintiffs are not concerned about efficiency.

### C. In the settlement approval process in *Tuccori*, Anywhere will demonstrate that its settlement is fair, reasonable, and adequate.

The fairness of Anywhere's settlement is not presently before the Court in *Batton*, nor is it presented by these motions (for a preliminary injunction and reassignment). The fairness and

11

adequacy will be decided by the presiding court in *Tuccori* on motions for preliminary and final approval under Fed. R. Civ. P. 23(e)(2). (*See Tuccori* Dkt. 98.) But given the inflammatory rhetoric in Plaintiffs' motions, Anywhere will make two brief points here.

**First**, Plaintiffs suggest or outright contend that something improper or collusive occurred, with absolutely no proof of it. Anywhere participated in a mediation process in *Tuccori* that was approved by a sitting Northern District of Illinois judge and overseen by a former chief judge of this District. The same process was previously authorized by the courts and successfully used in the direct-purchaser litigation of these same real estate antitrust claims. Moreover, Anywhere participated in mediation only after its acquisition by Compass closed on January 9 and it became a sister company to @properties, the original defendant in *Tuccori* and one of the ice-breaker settlers.

Plaintiffs throw around the term "reverse auction," but that term refers to improper behavior playing off one set of plaintiffs' demands against the others' demands. And that absolutely did not happen. "The best evidence of a truly adversarial bargaining process is the presence of a neutral third-party mediator." *T.K. Through Leshore v. Bytedance Tech. Co., Ltd.*, 2022 WL 888943, at *11 (N.D. Ill. Mar. 25, 2022) (quotations omitted). Anywhere's negotiations in *Tuccori* were overseen by retired Chief Judge Holderman, who knew of this case and would not have tolerated improper behavior. Simply settling in one of multiple overlapping class actions is not improper. That argument has been rejected many times, with courts commenting that "if the mere existence of multiple classes were sufficient to prove collusion, the reverse auction argument would lead to the conclusion that no settlement could ever occur in the circumstances of parallel or multiple class actions." *Gallucci v. Gonzales*, 603 Fed. Appx. 533, 535 (9th Cir. 2015) (cleaned up); *see also, e.g.*, *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1189 (10th Cir. 2002)

(rejecting same argument); *Swinton v. SquareTrade, Inc.*, 454 F. Supp. 3d 848, 877-78 (S.D. Iowa 2020) (same); *In re Celexa and Lexapro Mktg. & Sales Practices Litig.*, MDL No. 09-2067-NMG, 2014 WL 2547543, at *2-3 (D. Mass. June 3, 2014) (same). Plaintiffs' burden is to present "concrete evidence" of improper conduct, *Rutter*, 314 F.3d at 1189, or "underhanded activity," *Negrete v. Allianz Life Ins. Co. of North America*, 523 F.3d 1091, 1099 (9th Cir. 2008). They have none.

**Second**, Plaintiffs are completely unfounded in suggesting that the *Tuccori* plaintiffs sold out the class for a deficient settlement and that they, the *Batton* Plaintiffs, would have done much better. Consider two benchmarks. One benchmark is the first set of ten settlements that the *Tuccori* plaintiffs negotiated, and that not even the *Batton* Plaintiffs claim were affected by any deficiency. As described above, those settlement amounts averaged approximately 10% of the settlers' corresponding direct-purchaser settlements, a fair amount for the indirect-purchaser claims given that their settlement classes were only approximately 12.5% of the size of the direct-purchaser settlements, and the indirect-purchaser claims are weaker on the merits. Judge Jenkins preliminarily approved those settlements as adequate in October. Then, in the negotiations with Anywhere in February that the *Batton* Plaintiffs claim were deficient, the *Tuccori* plaintiffs secured **more** from Anywhere—approximately 11.5% of its direct-purchaser settlement amount.[2] Nothing was collusive or ineffective about their Judge Holderman-overseen negotiations.

The second benchmark is the settlement *Batton* Plaintiffs negotiated with Keller Williams. They tout the top-line number of $20 million, but according to the allocation plan they filed on February 26 (Dkt. 276), only half of that amount will go to home buyers with unreleased claims. The other half will go to claims that were already released because there are four times as many of

---

[2] Anywhere paid $83,500,000 to settle the direct-purchaser claims, plus the indirect-purchaser claims of people who had both. (*Burnett* Dkt. 1469 at 5.) Here, it is paying $9,602,500 to settle the unreleased indirect-purchaser claims.

those claims (Dkt. 246 at 3), and they are all being paid at one-quarter value. Hence, the $10 million that the *Batton* Plaintiffs got for unreleased claims is only negligibly different than the $9,602,500 the *Tuccori* plaintiffs got for unreleased claims.

All these issues will be addressed in greater depth in the *Tuccori* settlement approval proceedings. But suffice to say, Plaintiffs' inferences of impropriety are baseless.

## CONCLUSION

For the foregoing reasons, Anywhere respectfully requests that the Court deny the *Batton* Plaintiffs' motions for a preliminary injunction and reassignment, and that the Court stay all remaining proceedings and deadlines that have not already been stayed as to Anywhere pending a decision from the *Tuccori* court on settlement approval.

Dated:  February 28, 2026

Respectfully submitted,

/s/ Kenneth M. Kliebard

Kenneth Michael Kliebard
**MORGAN, LEWIS & BOCKIUS LLP**
110 North Wacker Drive
Chicago, IL 60606
Telephone: (312) 324-1000
kenneth.kliebard@morganlewis.com

Stacey Anne Mahoney (*pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, NY 10178
Telephone: (212) 309-6000
stacey.mahoney@morganlewis.com

William T. McEnroe (*pro hac vice*)
Dennie B. Zastrow (*pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
2222 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-5000
william.mcenroe@morganlewis.com
dennie.zastrow@morganlewis.com

*Counsel for Defendant Anywhere Real Estate Inc.*
*(f/k/a Realogy Holdings Corp.)*

15