# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| MYA BATTON, AARON BOLTON, MICHAEL BRACE, DO YEON KIM, ANNA JAMES, JAMES MULLIS, THEODORE BISBICOS, and DANIEL PARSONS, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) | |
|  | ) | No. 1:21-cv-00430 |
| *Plaintiffs*, | ) ) | Hon. LaShonda A. Hunt |
|  | ) | |
| v. | ) ) | |
| THE NATIONAL ASSOCIATION OF REALTORS, ANYWHERE REAL ESTATE, INC. FORMERLY KNOWN AS REALOGY HOLDINGS CORP., RE/MAX LLC, and KELLER WILLIAMS REALTY, INC., | ) ) ) ) ) ) ) | |
|  | ) | |
| *Defendants.* | ) ) | |

## *TUCCORI* PLAINTIFFS' MEMORANDUM IN OPPOSITION TO *BATTON* PLAINTIFFS' MOTION TO APPOINT INTERIM CO-LEAD CLASS COUNSEL

Plaintiffs James Tuccori, Courtney Foregger, Kevin Cwynar, Dawid Zawislak, Michael D'Acquisto, and Alejandro Lopez a/k/a Aleandro Lopez, the named Plaintiffs and Class Representatives in *Tuccori et al. v. At World Properties, LLC, et al.*, No. 24-cv-00150 (N.D. Ill.) ("*Tuccori*") pending before the Honorable Lindsay C. Jenkins, state as follows in opposition to the *Batton* Plaintiffs' Motion to Appoint Interim Co-Lead Class Counsel (Dkt. 292, hereinafter the "Motion to Appoint" or "Motion").

## I.    <u>INTRODUCTION</u>

The *Tuccori* Plaintiffs' counsel are serving as Class Counsel in a landmark homebuyer antitrust settlement pending before Judge Lindsay C. Jenkins. As the Court is aware from prior filings (Dkt. Nos. 286, 288), the *Tuccori* Settlement includes a court-approved opt-in procedure by which non-party co-conspirators can negotiate their participation in the Settlement through a mediation overseen by former Northern District of Illinois Chief Judge James F. Holderman (Ret.), who has been appointed by Judge Jenkins as the Special Master for Mediation in *Tuccori*. As of this filing, more than fifteen brokerages are participating in the *Tuccori* Settlement.

The *Tuccori* Class Counsel reached an opt-in settlement with Defendant Anywhere Real Estate Inc. ("Anywhere") through this process, and Judge Jenkins granted preliminary approval. The *Batton* Plaintiffs' counsel, frustrated that Anywhere did not settle with them instead, filed three unnecessary and meritless motions—all of which were denied—attempting to obstruct the *Tuccori* Settlement.[1] The *Batton* Plaintiffs' Motion to Appoint is now their *fourth* such attempt and, like the others, should also be rejected.

Put simply, there is no need to appoint interim class counsel in this case. *Batton I* is a single,

---

[1] Dkt. 294 (denying the *Batton* Plaintiffs' Motion for Reassignment and Motion for Preliminary Injunction); Order Denying Mot. to Intervene, *Tuccori*, No. 24-cv-00150 (N.D. Ill. Mar. 4, 2026), ECF No. 118, attached hereto as <u>Exhibit 1</u>.

five-year-old case brought by one group of plaintiffs' counsel who are already working together. Unlike consolidated cases and multi-district litigation, where appointment of interim class counsel can be helpful, an appointment here would serve no purpose whatsoever.

The *Batton* Plaintiffs contend that Anywhere's decision to opt into the *Tuccori* Settlement led to "massive disputes" that require "clarity" from the Court. (Mot. to Appoint at 2). Setting aside the fact that these "disputes" are entirely of the *Batton* Plaintiffs' own making, this Court and Judge Jenkins have already given the *Batton* Plaintiffs crystal clear guidance in their Orders denying the *Batton* Plaintiffs' Motion to Intervene, Motion to Reassign, and Motion for Preliminary Injunction.

As this Court instructed, if the *Batton* Plaintiffs wish to challenge any aspect of the *Tuccori* Settlement, there is already an established process for doing so: they can file an objection before Judge Jenkins as Rule 23 allows. (Tr. of Mar. 5, 2026 H'ng at 10:8-11, attached hereto as <u>Exhibit 2</u>) ("I understand the [Batton] plaintiffs disagree with [Judge Jenkins'] rulings and with the way that that settlement process is proceeding, but there will be an opportunity to raise all of those objections at the fairness hearing."). Judge Jenkins gave the same instructions when she denied the *Batton* Plaintiffs' Motion to Intervene. (Ex. 1 at 2) ("Batton's interests will not be impaired if intervention is denied. He may object to the settlement and will have the opportunity to be heard in connection with the final approval hearing.").

The *Batton* Plaintiffs have ignored this Court's and Judge Jenkins' guidance. Instead of raising their objections in due course, they now seek to circumvent the established class settlement approval process and obtain a wholly unnecessary appointment in a separate case. An appointment here would not fix any problems that exist in *Batton I*; it would only create new ones and lead to further disputes like the ones this Court already resolved when it denied the *Batton* Plaintiffs' Motion to Reassign and Motion for Preliminary Injunction. (Dkt. 294).

2

There is no authority that permits the *Batton* Plaintiffs to use an interim appointment *in this case* to circumvent the settlement structure established in *Tuccori* under Judge Jenkins' supervision and commandeer the responsibilities of the *Tuccori* Class Counsel who have already been appointed. *Stasi v. Inmediata Health Grp. Corp.*, No. 19cv2353 JM (LL), 2021 WL 5861563, at *3 (S.D. Cal. Mar. 10, 2021) (denying motion to appoint interim class counsel where "the timing of Plaintiffs' motion suggests the possibility that Plaintiffs' attorneys seek appointment as co-lead interim class counsel in order to exert greater control over a purportedly pending settlement in" a different case).

Rather than explaining what actual benefits an appointment would serve in this case, the *Batton* Plaintiffs instead devote the bulk of their Motion to a perfunctory application of the Rule 23(g) factors. But because the appointment of interim counsel is completely inappropriate, there is no reason to conduct an unnecessary Rule 23(g) analysis. The *Batton* Plaintiffs' Motion to Appoint should be denied in its entirety.[2]

## II.    BACKGROUND

### A.    The *Tuccori* Homebuyer Class Settlement.

Although plaintiffs in many cases are pursuing antitrust claims against residential real estate brokerages, the *Tuccori* Plaintiffs are the first nationwide to have achieved a homebuyer class settlement. *Tuccori* was initiated in December 2023, and the *Tuccori* Plaintiffs' counsel reached the first-ever homebuyer antitrust settlement with At World Properties, LLC ("@properties") following a mediation conducted by Judge Holderman (Ret.) in May 2024. (Prelim. Approval Mot. at 5, *Tuccori*, 1:24-cv-00150 (N.D. Ill. Oct. 13, 2025), ECF No. 58).

---

[2] The *Batton* Plaintiffs filed a nearly identical motion for appointment in another homebuyer antitrust case pending in the Eastern District of Pennsylvania, and their motion was denied. *Davis v. Hanna Holdings, Inc.*, 2:24-cv-02374-WB (E.D. Pa. Mar. 20, 2026) (Beetlestone, C.J.), ECF No. 130.

*Tuccori* Class Counsel subsequently reached additional settlements with nine other real estate brokerage company defendants who agreed to join with @properties in a global settlement presented for approval before Judge Jenkins in October 2025. (*Id.* at 5-6). The negotiations that preceded these ten settlements spanned many months and numerous, separate mediation sessions. (*Id.* at 5-6, 20-21). Judge Jenkins granted approval to the *Tuccori* Settlement on October 16, 2025, finding the Settlement fair, reasonable, and adequate, and negotiated at arms' length by experienced counsel. (Preliminary Approval Order ¶ 3, *Tuccori*, 1:24-cv-00150 (N.D. Ill. Oct. 16, 2025), ECF No. 65, hereinafter the "*Tuccori* Preliminary Approval Order"). Judge Jenkins also appointed the *Tuccori* Plaintiffs as Class Representatives and their counsel as Class Counsel pursuant to Federal Rule 23(g). (*Id.* at 4).

Importantly, the *Tuccori* Settlement includes an opt-in mechanism—modeled off a similar opt-in structure approved in the NAR's settlement in *Burnett v. The Nat'l Ass'n of Realtors*, 4:19-cv-00332 (W.D. Mo.)—that allows other real estate brokerages and alleged co-conspirators to opt into the Settlement by agreeing to implement or maintain certain practice changes and contributing a payment to the Settlement's Global Settlement Fund, which increases the monetary relief available for distribution to the Settlement Class Members. (Class Settlement Agreement ¶¶ 35-36, *Tuccori*, 1:24-cv-00150 (N.D. Ill. Oct. 13, 2025), ECF No. 58-1, hereinafter "*Tuccori* Settlement Agreement"). Under the terms of the *Tuccori* Settlement Agreement, the amount of an opt-in settlor's contribution payment is determined either through application of a court-approved

4

formula or by negotiating a different amount through participation in an opt-in mediation.[3] Judge Jenkins is currently overseeing the *Tuccori* Settlement's opt-in process and appointed Judge Holderman as Special Master for Mediation to conduct, supervise, and oversee settlement negotiations and mediations with opt-in settlors. (*Tuccori* Preliminary Approval Order ¶ 15).

As noted above, this type of opt-in settlement structure was approved and implemented successfully in *Burnett*, the home seller litigation, where it led to additional settlements with more than two dozen non-party brokerages that agreed to join the NAR's settlement.[4] The opt-in mechanism has proven successful in *Tuccori* as well. The *Tuccori* Class Counsel recently sought approval of opt-in settlements with five additional brokerages, including Anywhere, following mediations conducted by Judge Holderman in his role as Special Master. (Plfs' Unopposed Mot. & Mem. for Prelim. Approval of Settlements with Brokerages Opting Into the Court Approved Class Settlement Agreement, *Tuccori*, 1:24-cv-00150 (N.D. Ill. Feb. 23, 2026), ECF No. 98). On March 4, 2026, Judge Jenkins preliminarily approved the settlements reached with these five opt-in settlors over the *Batton* Plaintiffs' opposition. (*Tuccori*, ECF Nos. 117-119).

### B. The *Batton* Plaintiffs' Prior Unsuccessful Attempts To Obstruct The *Tuccori* Settlement.

The *Batton* Plaintiffs' Motion to Appoint is now their *fourth* attempt to impede the *Tuccori* Settlement. Their first motion, filed on February 24, 2026, sought leave to intervene in *Tuccori* to

---

[3] The *Tuccori* Settlement provides three pathways to opt-in: 1) option 1 involves attending a mediation before the Special Master for Mediation or another agreed upon mediator to negotiate an opt-in agreement; 2) option 2 is available only to entities that have already entered into a court-approved class settlement with home sellers and requires a payment based on a formula applied to the amount of the entity's home seller settlement; and 3) option 3 is available to non-settling real estate brokerages and allows them to opt in by making a payment calculated using a formula applied to their average transaction volume over a certain time period, as more fully defined in the Settlement Agreement.

[4] *See generally* Plfs' Mot. for Preliminary Approval of Settlements with Brokerages and Non-Realtor Multiple Listing Services Opting Into The National Association of Realtors Settlement, *Burnett*, 4:19-cv-00332-SRB (W.D. Mo. Sept. 30, 2024), ECF No. 1538.

oppose approval of the *Tuccori* Plaintiffs' opt-in settlement with Anywhere. (Mot. to Intervene, *Tuccori*, 1:24-cv-00150 (N.D. Ill. Feb. 24, 2026), ECF No. 100). Following briefing and oral argument, Judge Jenkins denied the *Batton* Plaintiffs' request to intervene, holding that they failed to meet the requirements for either intervention as of right under Rule 24(a) or permissive intervention under Rule 24(b). (Ex. 1 at 1-3). Judge Jenkins found that the *Batton* Plaintiffs' interests would "not be impaired if intervention is denied," because they have "the opportunity, vis-à-vis the settlement process, to object to the proposed settlement" and to be heard "in connection with the final approval hearing." (*Id.* at 1-2) (citations and quotation marks omitted).

Judge Jenkins also found that allowing the *Batton* Plaintiffs to impede the preliminarily approved settlement would prejudice the existing parties in *Tuccori* and "cause needless delay." (*Id.* at 2). As Judge Jenkins explained:

> Intervention at this point in litigation, after the court has approved the preliminary settlement agreement but before the fairness hearing, "would cause undue delay and prejudice by derailing the current settlement process at a point when [Batton] still has ample opportunity to protect his rights through the regular class action settlement process."

(*Id.* at 2-3). Following their motion to intervene, the *Batton* Plaintiffs also filed a motion to reassign *Tuccori* to this Court (Dkt. 271) and a motion to preliminarily enjoin Anywhere from proceeding with its settlement in *Tuccori* (Dkt. 273). This Court denied both motions. (Dkt. 294). With respect to the motion for reassignment, the Court found that there would be no basis to reassign *Tuccori* under L.R. 40.4(b) due to Judge Jenkins' greater familiarity with the *Tuccori* settlement and the cases' different procedural postures:

> The *Tuccori* cases have been around since 2024; and just recently in 2025, Judge Jenkins . . . granted preliminary approval of a settlement. And there was a whole process that went into that . . . . [T]hese cases are just in different places procedurally, and . . . there would be no efficiency gained by me taking over Judge Jenkins' cases, particularly given all of the work that she has put into it and the fact that the *Tuccori* cases are really at the point of settlement. . . . And so I don't find

6

that there's really any basis for me to take her cases away from her just because the case that is before me was pending for a longer period of time.

(Ex. 2 at 6:19-7:23). As to the *Batton* Plaintiffs' preliminary injunction motion, the Court held that an injunction would be improper because there was no risk of irreparable injury to the *Batton* Plaintiffs. (*Id.* at 8:12-10:13). Consistent with Judge Jenkins' ruling denying the *Batton* Plaintiffs' motion to intervene, and Judge Wood's prior Order denying the *Batton* Plaintiffs' motion to enjoin Anywhere's participation in the *Burnett* settlement (Dkt. 154), the Court held that the *Batton* Plaintiffs already have an adequate remedy available to them: they can file an objection as Rule 23 allows. (Ex. 2 at 9:1-20) ("just as the . . . way things played out in the *Burnett* case, everybody gets to object; and if . . . the settlement is approved, after a fairness hearing where everyone has an opportunity to be heard and considered, then you appeal that. . . . [T]hat is the way this process should work, and it is working.").

Importantly, the Court also emphasized that the balance of harms weighed heavily against taking action that would impede or interfere with the settlement process ongoing in *Tuccori*:

> [T]he parties in . . . the *Tuccori* case, have already been working on that case. That case is moving along. Judge Jenkins has put a lot of time and effort into that case. Retired Judge Holderman has put a lot of time into that case as a special master. It really would be inefficient and a waste of judicial resources for me to step in and say that I should now take over and usurp what she decided should be done in the cases before her based on the information that had been presented to her. . . . And so again, I understand the [*Batton*] plaintiffs disagree with her rulings and with the way that that settlement process is proceeding, but there will be an opportunity to raise all of those objections at the fairness hearing.

(*Id.* at 9:22-10:11).

## C.     The Status Of The *Batton I* Case.

Although *Batton I* was filed in 2021, the parties have yet to complete discovery or proceed

7

to summary judgment.[5] And the *Batton* Plaintiffs' first and only attempt to move for class certification was stricken when they improperly moved to certify an overbroad class that included individuals who had already released their claims through the court-approved home seller settlements in *Burnett*. (Dkt. Nos. 257, 259) (staying class certification briefing and expert discovery "pending resolution of the appeal in *Burnett*"); (Tr. of Nov. 4, 2025 H'ng at 6:6-12, attached hereto as Exhibit 3) ("I don't quite see how the [*Batton*] plaintiffs could have filed a motion for class certification that includes the *Burnett* claims that were released. That's the [Missouri] district court's ruling, and it's in effect, and so that should have been honored. I don't know what the Eighth Circuit is going to do, but [the trial court's final approval order is] not stayed, and so I'm not sure why I got a class certification motion with a class that I can't really certify."). Accordingly, most proceedings and discovery in *Batton I* are currently stayed while the parties await a decision from the Eighth Circuit in the *Burnett* appeals.

Contrary to this Court's ruling striking the *Batton* Plaintiffs' class certification motion, the *Batton* Plaintiffs continue to pursue claims that have already been released in *Burnett*. In contrast, *Tuccori* is limited to homebuyers with unreleased claims in order to maximize the relief for those viable claims while expressly excluding any claims that are released in the home seller (direct purchaser) real estate brokerage antitrust litigation. (*Tuccori* Settlement Agreement ¶ 15, ECF No. 58-1).

## III.    **LEGAL STANDARD**

The decision to appoint interim class counsel is discretionary, and "[t]ypically, courts find

---

[5] The *Batton* Plaintiffs also hit multiple stumbling blocks early on in their case. All of their claims were initially dismissed under Rule 12(b)(6) in 2022. *Leeder v. The Nat'l Ass'n of Realtors*, 601 F. Supp. 3d 301 (N.D. Ill. 2022) (Wood, J.). And although they attempted to replead their claims, the *Batton* Plaintiffs received a mixed ruling after another round of motion to dismiss briefing. 2024 WL 689989 (N.D. Ill. Feb. 20, 2024) (Wood, J.) (dismissing the *Batton* Plaintiffs' Sherman Act claims under Rule 12(b)(6) and dismissing claims against another group of defendants under Rule 12(b)(2)).

interim counsel necessary only 'where a large number of putative class actions have been consolidated or otherwise *are pending in a single court*.'" *Levey v. Concesionaria Vuela Compañía De Aviación, S.A.P.I. de C.V.*, 529 F. Supp. 3d 856, 867 (N.D. Ill. 2021) (emphasis in original) (quoting *Donaldson v. Pharmacia Pension Plan*, No. 06-3-GPM, 2006 WL 1308582, at *1 (S.D. Ill. May 10, 2006)). Conversely, courts will not appoint interim class counsel where, as here, only one group of attorneys is seeking appointment in a single case. *Donaldson*, 2006 WL 1308582, at *1 ("both the commentary to Rule 23 and the Manual for Complex Litigation (Fourth) indicate that appointment of interim counsel is not appropriate where, as here, a single law firm has brought a class action and seeks appointment as class counsel."); *Bailey v. OSF HealthCare Sys.*, No. 1:16–cv–01137, 2017 WL 1102739, at *6 (C.D. Ill. March 23, 2017) ("interim lead counsel is typically appointed only when multiple attorneys seek the role *in a single case*." (emphasis added)). In general, "absent special circumstances requiring appointment of interim counsel," courts "prefer[] to take up the matter of adequacy of representation and appointment of class counsel at such time as [the p]laintiffs may seek class certification." *Donaldson*, 2006 WL 1308582, at *2.

IV.   **ARGUMENT**

A.   **It Is Neither Necessary Nor Appropriate To Appoint Interim Class Counsel In *Batton I*.**

The *Batton* Plaintiffs' Motion fails to establish that there are any "special circumstances requiring appointment of interim counsel" here. *Id.* Again, *Batton I* is a single case brought by one group of attorneys who are already working together, so an appointment would serve no benefit whatsoever in this case. *Jacob Rieger & Co. v. Cincinnati Ins.*, No. 20-cv-681-CRB, 2020 WL 9421046, at *3 (W.D. Mo. Dec. 7, 2020) ("Overwhelmingly, requests to appoint interim class counsel were denied in cases where 'there [was] only a single putative class action before the Court in which only a single law firm [sought] appointment as class counsel.'" (quoting *Donaldson*, 2006

9

WL 1308582, at *2)) (collecting cases). Since the firms seeking appointment in this case already "represent all of the named plaintiffs," it "is akin to a single plaintiff's lawyer seeking appointment as interim class counsel, and is thus **clearly unnecessary**." *Durocher v. Ridell, Inc.*, No. 1:13-cv-01570-SEB-DML, 2014 WL 12979800, at *2 (S.D. Ind. Aug. 29, 2014) (emphasis added).

Likewise, there is no need to clarify which attorneys bear what responsibilities within this case. Because only one group of plaintiffs' counsel filed *Batton I*, there is no possibility of confusion as to who is responsible for handling discovery and motion practice on behalf of the *Batton I* Plaintiffs. *Bailey*, 2017 WL 1102739, at *6; *Mey v. Patriot Payment Grp., LLC*, No. 5:15-CV-27, 2016 WL 11501481, at *2 (N.D. W. Va. Jan. 5, 2016) (denying motion to appoint interim counsel despite pendency of another case asserting similar claims because "[t]his Court only has one case involving [the defendant] before it at this time, and there is no uncertainty as to [plaintiff's counsel's] responsibility for overseeing the putative class's interests pertaining thereto *in this Court*." (emphasis added)).

Indeed, the *Batton* Plaintiffs' Motion fails to explain what an appointment would enable them to do in this case that they cannot already do without an appointment. Nor do they articulate how an appointment in *Batton I*—a five-year-old case that is mostly stayed—would promote efficiency or judicial economy. Those objectives exist in every case, but they can be served here without appointment of interim class counsel, just as they can in most cases.

Rather than articulating what benefits, if any, an appointment in *Batton I* would provide five years into this case, the *Batton* Plaintiffs instead point to *Tuccori*—a separate case that the *Batton* Plaintiffs have been aware of for over two years[6]—and argue that it suddenly created the

---

[6] *See* Dkt. 280 at 5-6. The *Batton* Plaintiffs also admit that they were aware of the *Tuccori* Settlement and Judge Jenkins' Preliminary Approval Order entered on October 16, 2025, including the *Tuccori* Settlement's opt-in structure. (Dkt. 271-1 at 1).

10

need for their appointment because the *Tuccori* Plaintiffs also assert homebuyer antitrust claims. (Mot. to Appoint at 2). However, the mere existence of parallel litigation does not create a need to appoint interim class counsel since *Tuccori* and *Batton* "are really on two very different tracks" and there is no possibility that *Tuccori* will be consolidated with *Batton*. (Ex. 2 at 6:18, 7:12-16) ("there would be no efficiency gained by me taking over Judge Jenkins' cases, particularly given all of the work that she has put into it and the fact that the *Tuccori* cases are really at the point of settlement."); *McFadden v. Nationstar Mortg. LLC*, No. 20-166 (EGS), 2022 WL 18542489, at *3 (D.D.C. Mar. 31, 2022) (declining to appoint interim class counsel even though there was another putative class action against the same defendant pending in another court); *Donaldson*, 2006 WL 1308582, at *1 (denying motion for appointment despite the existence of another competing class action pending in the same district).

Whatever similarities there are between *Batton I* and *Tuccori* do not warrant an unnecessary and untimely appointment in this case, especially given the strong likelihood that the *Batton* Plaintiffs will improperly attempt to use their appointment to interfere with the court-approved class settlement in *Tuccori* and the *Tuccori* Class Counsel's existing appointment. *Santos v. Carrington Morg. Servs., LLC*, No. 2:15-cv-864 (WHW-CLW), 2017 WL 215969, at * 3 (D.N.J. Jan. 18, 2017) (denying motion for appointment where "the timing of Plaintiff's motion, the circumstances surrounding the motion, and the justification offered may suggest that Plaintiff seeks appointment of interim class counsel to disrupt settlement discussions taking place in overlapping cases and gain leverage in settlement negotiations."); *Mey*, 2016 WL 11501481, at *2.

The *Batton* Plaintiffs argue that an appointment is needed to provide "clarity" due to "massive disputes" that arose following Anywhere's decision to opt into the *Tuccori* Settlement. (Mot. to Appoint at 2). But those "disputes" are of the *Batton* Plaintiffs' own making and wholly

unnecessary. Moreover, all of the *Batton* Plaintiffs' motions that gave rise to these "disputes" were denied as either procedurally improper, completely without merit, or both. (Dkt. 294). In denying the *Batton* Plaintiffs' motions, both Judge Jenkins and this Court gave the *Batton* Plaintiffs all the guidance and "clarity" they need.

As this Court explained, if the *Batton* Plaintiffs wish to challenge or oppose any part of the *Tuccori* Settlement or its opt-in procedure, there is already "a process in place" that gives them "an opportunity to raise their objection to th[e] settlement . . . based on whatever grounds they want to pursue." (Ex. 2 at 9:6-20). They will "have an opportunity to object at the fairness hearing," which is "an adequate remedy" for them. (*Id.* at 9:3-4). Because the *Batton* Plaintiffs already have an appropriate path to object to any aspect of the *Tuccori* Settlement before Judge Jenkins, they have no basis to attempt to circumvent that path through a superfluous appointment in an entirely different case pending before a different court. *White v. TransUnion, LLC*, 239 F.R.D. 681, 684 (C.D. Cal. 2006) ("Appointment of interim class counsel is not the proper vehicle by which to oppose [a class] settlement . . . . [T]he system provides ample mechanisms for dissatisfied class plaintiffs to object to a class action settlement."); (*see also* Ex. 2 at 10:2-5) ("It really would be inefficient and a waste of judicial resources for me to step in and say that I should now take over and usurp what [Judge Jenkins] decided should be done in the cases before her based on the information that had been presented to her.").

Nor should the *Batton* Plaintiffs be allowed to impede or obstruct the responsibilities that Judge Jenkins assigned to the *Tuccori* Class Counsel. In approving the *Tuccori* Settlement, Judge Jenkins expressly directed the *Tuccori* Class Counsel to pursue settlements with unnamed co-conspirators, and she appointed Judge Holderman (Ret.) as Special Master for Mediation to

oversee that process.[7] The *Batton* Plaintiffs' dissatisfaction with this court-approved process does not permit them to interfere with the *Tuccori* Class Counsel's duties. *See Mey*, 2016 WL 11501481, at *2 ("For the plaintiff's counsel to essentially commandeer another firm's case in another court when there is no apparent need and there has been no coordination pertaining thereto would be inappropriate."); *McFadden*, 2022 WL 18542489, at *4 (declining to appoint interim class counsel despite the plaintiffs' concern that the defendant might try to reach a settlement with attorneys in another case in which it was also named).

On reply, the *Batton* Plaintiffs will likely lob false accusations of a "reverse auction," as they have repeatedly done in other filings, and argue that their appointment is needed to guard against the risk of an unfair settlement. These accusations are completely baseless. The settlement framework in *Tuccori* is well-founded and mirrors the court-approved opt-in structure in *Burnett*, the direct-purchaser side of this litigation. (Ex. 2 at 6:19-25, 20:10-18). Judge Jenkins, with the assistance of Judge Holderman as Special Master, has at all times effectively managed and overseen implementation of the *Tuccori* Settlement and its opt-in procedures, ensuring that all settlement negotiations are subject to proper oversight. (*Id.* at 9:22-10:1) ("Judge Jenkins has put a lot of time and effort into that case. Retired Judge Holderman has put a lot of time into that case as a special master.").

Judge Jenkins already found that the *Tuccori* Class Counsel have—and will continue to— fairly and adequately represent homebuyer class members' interests (*Tuccori* Preliminary

---

[7] The *Tuccori* Settlement's court-approved opt-in structure allows "The National Association of REALTORS®, and any real estate brokerage, franchisor, or real estate company that is not a Party to th[e] Settlement Agreement" to elect to opt into the Settlement in exchange for fulfilling certain conditions and making a monetary contribution to the Settlement's Global Settlement Fund, among other things. (*Tuccori* Settlement Agreement ¶¶ 35-36). The *Tuccori* Settlement also directs the *Tuccori* Class Counsel to "use their best efforts to resolve Released Claims with the National Association of REALTORS®, and any real estate brokerage, franchisor, or real estate company that is not a Party to this Settlement Agreement during the Opt-In Period." (*Id.* ¶ 36).

Approval Order ¶¶ 8, 10-11), and the results achieved to date support this finding.[8] The *Batton* Plaintiffs have no basis whatsoever to challenge the *Tuccori* Class Counsel's adequacy. But even if they did, their challenge can—and must—be brought as an objection before Judge Jenkins. They may not use an improper request for an appointment in this case to contest a preliminarily approved settlement with a certified class pending before a different judge.

> **B. The *Batton* Plaintiffs' Request For Appointment Is Also Improper Because They Are Seeking To Represent Homebuyer Class Members Who Have Already Released Their Claims In The Home Seller Settlements.**

When the *Batton* Plaintiffs' previously moved for class certification and for appointment as interim class counsel in this case, they improperly sought to represent an overbroad class that included class members who had already released their claims through the settlements in the *Burnett* direct-purchaser litigation in the Western District of Missouri. (Dkt. 257). The Court found this improper, struck their motion, and stayed further class discovery pending the Eighth Circuit's decision. (*Id.*).

Despite this Court's unambiguous ruling, the *Batton* Plaintiffs are *still* seeking to represent individuals who have already released their claims in *Burnett*. (Mot. to Appoint at 2) (asserting that "[t]he proposed class [*in Batton I*] covers both of these sets of [homebuyers]," *i.e.*, both those that already released their claims in the home seller litigation and those that did not). The Court has already found this untenable for two reasons.

---

[8] In prior filings, the *Batton* Plaintiffs argued that their settlement with Keller Williams (Dkt. 269) demonstrates that they could have secured a better settlement with Anywhere. What the *Batton* Plaintiffs fail to mention, however, is that nearly **80%** of the claims in the Keller Williams settlement have *already been released* in *Burnett*. In other words, the *Batton* Plaintiffs made the questionable decision to provide superfluous payments to individuals who will already be compensated through another settlement. By contrast, the *Tuccori* Plaintiffs' Settlement Class is expressly limited to homebuyers with unreleased claims. (*Tuccori* Preliminary Approval Order ¶ 7). Under the *Batton* Plaintiffs' Distribution Plan filed on February 26, 2026, only half of the Keller Williams settlement funds ($10 million) will be allocated to those with unreleased claims, which is entirely consistent with the $9.6 million the *Tuccori* Plaintiffs negotiated from Anywhere.

*First*, the *Burnett* court's final approval order includes an injunction prohibiting the settling class members from litigating the released claims elsewhere. (Ex. 3 at 7:8-10) ("Everyone was aware once the *Burnett* injunction was entered that the release included the claims of home sellers and home buyers. That [order] was not stayed. It is still effective."). These settling class members thus cannot participate in *Batton I* without violating the *Burnett* court's injunction. (*Id.* at 12:22-25) ("the *Burnett* folks who settled their claims, can't be a part of . . . this class. That's . . . the district court's ruling.").

*Second*, a class definition that includes already-released claims is plainly overbroad. (*Id.* at 11:14-16) ("The *Burnett* home buyers, those sellers who were also home buyers, have agreed to release those claims. . . . And yet you don't have an exclusion from your class definition of any claims that were settled or released."); (*id.* at 31:3-7) ("[A]nd now you're coming before me with a motion for class certification . . . but you're not acknowledging that the class definition is overly broad."); (*id.* at 36:23-25) ("I don't think that it is appropriate for me to go forward with a class certification motion that includes these excluded claims. I don't.").

Because their Motion to Appoint is fatally flawed for the same reasons as their prior request for appointment in this case, the *Batton* Plaintiffs "cannot proceed with what has been filed." (Ex. 3 at 43:2-3).

## V.     <u>CONCLUSION</u>

For the foregoing reasons, the *Batton* Plaintiffs' Motion to Appoint Interim Co-Lead Class Counsel should be denied.

Dated: March 20, 2026

Respectfully submitted,

JAMES TUCCORI, COURTNEY FOREGGER, KEVIN CWYNAR, DAWID ZAWISLAK, MICHAEL D'ACQUISTO, and ALEJANDRO LOPEZ A/K/A

ALEANDRO LOPEZ, individually and on behalf of similarly situated individuals

By: */s/ Paul T. Geske*
One of Plaintiffs' attorneys

Myles McGuire
Evan Meyers
Paul T. Geske
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
mmcguire@mcgpc.com
emeyers@mcgpc.com
pgeske@mcgpc.com

Jonathan M. Jagher
FREED KANNER LONDON
& MILLEN LLC
923 Fayette Street
Conshohocken, PA 19428
Tel: (610) 234-6487
jjagher@fklmlaw.com

Matthew W. Ruan
FREED KANNER LONDON
& MILLEN LLC
100 Tri-State International, Ste. 128
Lincolnshire, IL 60069
Tel: (224) 632-4500
mruan@fklmlaw.com

*Counsel for the Tuccori Plaintiffs and Settlement Class Members*

16

## **CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on March 20, 2026 I caused the foregoing Tuccori *Plaintiffs' Memorandum in Opposition to* Batton *Plaintiffs' Motion to Appoint Interim Co-Lead Class Counsel* to be electronically filed with the Clerk of the Court using the CM/ECF system, which will cause a copy of said document to be electronically transmitted to all counsel of record.

/s/ *Paul T. Geske*