**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

MYA BATTON, AARON BOLTON,
MICHAEL BRACE, DO YEON KIM,
ANNA JAMES, JAMES MULLIS,
THEODORE BISBICOS, and DANIEL
PARSONS, individually and on behalf of
all others similarly situated,

            Plaintiffs,

v.

THE NATIONAL ASSOCIATION OF
REALTORS, ANYWHERE REAL ESTATE, INC.
FORMERLY KNOWN AS REALOGY HOLDINGS
CORP., RE/MAX LLC, and KELLER WILLIAMS
REALTY, INC.,

            Defendants.

Case No. 1:21-cv-00430 (LAH)

**JOINT DECLARATION OF VINCENT BRIGANTI AND RANDALL EWING IN**
**SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Pursuant to 28 U.S.C. § 1746, I, Vincent Briganti and Randall Ewing, declare:

1. We are, respectively, attorneys from the law firms of Lowey Dannenberg, P.C. ("Lowey") and Korein Tillery, LLC ("Korein Tillery") (together, "Proposed Class Counsel"). We have been actively involved in prosecuting this Action, are familiar with its proceedings, and have personal knowledge of or have conferred with attorneys and staff from our firms with personal knowledge of the matters set forth herein.

2. We respectfully submit this Declaration in support of Plaintiffs' motion for a preliminary injunction restraining and enjoining Defendant National Association of REALTORS® ("NAR") from proceeding with their settlement with plaintiffs in *Tuccori, et al. v. At World Properties LLC, et al.*, No. 1:24-cv-00150 (N.D. Ill.) ("*Tuccori*").

## PLAINTIFFS' PROSECUTION OF HOMEBUYER CLAIMS

3. Plaintiffs and their counsel have spent the past five years vigorously prosecuting homebuyer claims in four different cases in three separate federal court districts, including opposing and defeating motions to dismiss in each case, engaging in voluminous and expensive discovery, and retaining world-class industry and economic experts to analyze classwide impact and damages. In litigating homebuyer claims, Plaintiffs' counsel have expended over $5,000,000 in expenses—including over $4 million on experts alone—and, based on a preliminary review of hours logged to date, approximately 34,000-37,000 hours totaling between $25 and $30 million in lodestar litigating these cases, which work is detailed below.

## I. The *Batton I* Litigation

4. On November 19, 2020, the Department of Justice ("DOJ") filed an antitrust complaint in the District of Columbia against the National Association of REALTORS® ("NAR") alleging that NAR's rules, policies, and practices "governing, among other things, the publication

and marketing of real estate, real estate broker commissions, and real estate broker access to lockboxes" were "widely adopted by NAR's members resulting in a lessening of competition among real estate brokers to the detriment of American home buyers[.]" Complaint, *United States v. Nat'l Ass'n of REALTORS®*, No. 1:20-cv-03356 (D.D.C.), ECF No. 1 at ¶ 1.

5.      While there were two lawsuits filed based on the same conduct on behalf of home sellers,[1] in light of the DOJ's announcement and findings, Proposed Class Counsel conducted their own investigation into claims on behalf of home buyers, who suffered equal, if not greater, harm from the alleged misconduct.

6.      In connection with their investigation, Proposed Class Counsel conducted legal and factual research and, with the assistance of in-house accountants, conducted a preliminary damages analysis accounting for home prices, commission prices, and potential pass-through damages.

7.      On January 25, 2021, Plaintiff Judah Leeder filed this case—the first class-action complaint alleging harm to home buyers as a result of a conspiracy among NAR, RE/MAX, LLC, Keller Williams Realty, Inc., Anywhere Real Estate, Inc., The Long & Foster Companies, Inc., HSF Affiliates, LLC, HomeServices of America, Inc., and BHH Affiliates, LLC violation of § 1 of the Sherman Act, 15 U.S.C. § 1. ECF No. 1. Leeder's 44-page complaint contained detailed allegations about the structure of the residential real estate industry, the pay structure for brokers, and how Defendants worked together to enforce NAR's rules, which allowed them to raise, set, and maintain broker commissions regardless of skill, experience, or services offered. Leeder alleged home sellers baked the artificial commissions into the home prices paid by home buyers.

---

[1] *Moehrl, et al. v. Nat'l Ass'n of REALTORS®, et al.*, 1:19-cv-01610 (N.D. Ill.) ("*Moehrl*"); *Burnett, et al. v. Nat'l Ass'n of REALTORS®, et al.*, 4:19-cv-00332 (W.D. Mo.) ("*Burnett*").

8.     On April 20, 2021, Defendants filed a joint motion to dismiss for failure to state a claim arguing, among other things, that Plaintiff did not have antitrust standing, did not allege a valid antitrust market, and failed to adequately plead unjust enrichment. ECF No. 61. Proposed Class Counsel duly committed hours to researching and preparing an opposition to each of Defendants' motion to dismiss arguments. ECF No. 65. On May 2, 2022, the Court granted Defendants' motion to dismiss without prejudice. ECF No. 81. The Court found that home buyers were not direct purchasers of the allegedly inflated buyer-broker services and thus did not have standing to sue Defendants under the Sherman Act.

9.     Immediately following the Court's ruling, Proposed Class Counsel analyzed the Court's opinion, researched state law in every state to determine which states permitted indirect purchasers to recover damages, and vetted numerous individuals with potentially viable indirect purchaser claims. On July 6, 2022, Plaintiffs Mya Batton, Do Yeon Kim, Daniel Parsons, Anna James, Aaron Bolton, Theodore Bisbicos, Michael Brace, and James Mullis filed an amended complaint pleading claims under the antitrust, consumer protection, and/or unjust enrichment laws of more than 30 states that permit indirect purchasers to recover damages caused by anticompetitive agreements. ECF No. 84.

10.     Defendants once again moved to dismiss Plaintiffs' complaint for failure to state a claim. ECF No. 92. Additionally, a subset of Defendants moved to dismiss the complaint for lack of personal jurisdiction. ECF No. 93. Proposed Class Counsel again committed hours to researching and preparing oppositions to Defendants' motion to dismiss. On October 21, 2022, Plaintiffs filed 35-pages of briefing opposing both of Defendants' motions. ECF Nos. 97-98. On February 20, 2024, the Court largely denied Defendants' motion to dismiss for failure to state a claim. ECF No. 124. The Court dismissed The Long & Foster Companies, Inc., HSF Affiliates,

LLC, HomeServices of America, Inc., and BHH Affiliates, LLC as defendants for lack of personal jurisdiction. *Id.*

11.     On April 15, 2024, RE/MAX, Keller Williams, and Anywhere filed their own motions to dismiss for lack of personal jurisdiction. ECF Nos. 130, 138, 139-1. Plaintiffs, for the third time, committed hours to researching and drafting responses to the motions to dismiss. ECF No. 157. On November 22, 2024, the Court denied Defendants' motions. ECF No. 185.

12.     Between April and November 2024, Plaintiffs propounded on Defendants three sets of document requests. In July 2025, Plaintiffs served interrogatories.

13.     Plaintiffs received and reviewed approximately 526,000 documents, totaling approximately 4,150,000 pages, and 24 gigabytes of transaction data from Defendants. Plaintiffs received and reviewed approximately 80 transcripts of depositions of Defendants and third parties that were taken in *Burnett/Moehrl*.

14.     Between February 20, 2025 and July 16, 2025, Plaintiffs served approximately 68 third-party subpoenas. In response, the third parties produced and Plaintiffs reviewed and analyzed more than 40 gigabytes of transaction data and approximately 111,400 documents. Plaintiffs also purchased at considerable cost a nationwide database of property transaction information, which exceeds a terabyte.

15.     For their part, Plaintiffs Kim, James, Parsons, Brace, and Bolton (whose claims were not stayed) worked diligently with Proposed Class Counsel to keep apprised of the case and to search and collect hard copy and electronic documents from multiple sources, including their homes, emails, phones, and social media. These Plaintiffs responded to interrogatories and produced approximately 8,614 documents. Plaintiffs Kim, James, Parsons, Brace, and Bolton were deposed for more than 20 total hours on the record. Anywhere was the lead questioner on behalf

4

of all Defendants for all of those depositions except for the deposition of Aaron Bolton, which was led by NAR.

16.     Plaintiffs' Counsel also retained two world-renowned experts to provide class certification and merits opinions in this case: Professor Norman Miller, the Ernest W. Hahn Chair and Emeritus Professor of Real Estate Finance at the University of San Diego; and Dr. Rosa Abrantes-Metz, Managing Director at Berkeley Research Group, former Adjunct Associate Professor at the Leonard N. Stern School of Business at New York University, and former economist for the Federal Trade Commission.

17.     On September 22, 2025, after months of obtaining, reviewing, cleaning, processing, and analyzing relevant data and documents, Plaintiffs filed their Motion for Class Certification and supporting expert reports. ECF Nos. 236, 239.

18.     In connection with Plaintiffs' Motion for Class Certification, Prof. Miller submitted a report extensively analyzing MLS rules, procedures and practices and their impact on the inner workings of the residential real estate market. Dr. Abrantes-Metz similarly extensively analyzed domestic and foreign residential real estate markets, documents, and nearly 64 gigabytes of transaction data, and submitted her report containing her methodology capable of demonstrating classwide impact and damages.

19.     On October 22, 2025, Defendant Anywhere moved to strike Plaintiffs' class certification materials and/or stay further class certification proceedings pending final resolution of appeals, discussed further below, arising from pending litigation on behalf of home sellers in *Burnett/Moehrl*. ECF No. 246. On November 13, 2025, the Court granted Defendant Anywhere's motion to stay class certification proceedings until final resolution of the *Burnett/Moehrl* appeals,

5

and struck Plaintiffs' class certification briefs and related expert reports without prejudice. ECF No. 257.

20. After five years of litigation, Proposed Class Counsel reached an icebreaker settlement with Defendant Keller Williams Realty, LLC of $20 million. On February 13, 2026, the Court preliminarily approved the settlement, finding "the Settlement was entered into at arm's length by experienced counsel, supervised by a neutral mediator, treats all class members equitably, and preliminarily appears to be reasonable, fair, and adequate." ECF No. 269 ¶ 5.

21. On March 13, 2026, the Court preliminarily approved the distribution plan in connection with the Keller Williams settlement. ECF No. 296.

22. Just weeks after the Keller Williams settlement was announced, Defendant Anywhere opted-in to a settlement with *Tuccori* for $9.6 million, which Plaintiffs' counsel immediately challenged. *See Tuccori*, Motion to Intervene, ECF No. 100; *Batton*, Motion to Reassign, ECF No. 271; *id.*, Motion for Preliminary Injunction, ECF No. 273; *id.*, ECF No. 328. Plaintiffs' motions were denied and Plaintiffs appealed the denial of their motions to intervene, reassign, and for a preliminary injunction to the Seventh Circuit. *Batton*, ECF No. 316; *Tuccori*, ECF No. 124. Plaintiffs also moved to stay *Tuccori* pending their Seventh Circuit appeals. *Tuccori*, ECF No. 130. That motion remains pending. In the meantime, Plaintiffs have defeated Anywhere's motion to dismiss their appeal for lack of jurisdiction, ensuring the appeal will be heard on the merits. *Aaron Bolton v. At World Properties, LLC, et al*, No. 26-1483 (7th Cir. Apr. 16, 2026). And on April 23, 2026, Plaintiffs moved to consolidate their appeal of this Court's denial of their motion for preliminary injunction as to Anywhere with their appeal of the *Tuccori* court's denial of their motion to intervene.

6

23.     On March 19, 2026, the Plaintiffs executed a settlement agreement with Defendant RE/MAX for $8.5 million to release the claims of homebuyers not impacted by ongoing seller litigation and to guard against the possibility of non-recovery in light of RE/MAX's declining financial position. On March 31, 2026, the Court preliminarily approved the settlement and its distribution plan.

24.     On April 10, 2026, NAR announced its *Tuccori* settlement for $52.25 million, just weeks after being provided, at their request, with Plaintiffs' settlement demand to settle the same class that Anywhere settled in *Tuccori*.

25.     On April 13, 2026, NAR moved to stay *Batton* pending final approval of its *Tuccori* settlement. ECF No. 323. On April 15, 2026, the Court granted in part NAR's motion to stay, staying discovery until further notice. ECF No. 328. During its hearing on NAR's motion to stay, the Court explained that it desires further guidance from the Seventh Circuit before moving forward in this case. Apr. 16, 2024 Hearing Tr. at 6:22-24 ("because the issue is now before the Seventh Circuit, it would not be proper for me to continue to try to figure all of this out.").

26.     The Court also denied Plaintiffs' counsel's motion to be appointed interim co-lead counsel (ECF No. 328), but made clear that it does not "have any questions or concerns at all about the competency" of Plaintiffs' counsel and that they "have done the bulk of the work here and done a tremendous job[.]" Apr. 16 Tr. at 13:20-24.

## II.     The *Batton II* Litigation

27.     In November 2023, Plaintiffs' counsel learned that discovery in related seller litigation had revealed additional coconspirators. On November 2, 2023, Plaintiffs' counsel filed *Batton II* against defendants. *See Batton v. Compass et al.* ("*Batton II*"), ECF No. 1:23-cv-15618 (N.D. Ill.), ECF No. 1. On May 6, 2024, Plaintiffs filed an amended complaint.

28.     In addition to investigating and filing their pleadings, *Batton II* plaintiffs extensively briefed the defendants' motions to dismiss and to strike their class action allegations. Plaintiffs' counsel also carefully negotiated important discovery protocols with Defendants governing the handling of confidential information and the production of electronically stored information. *Batton II*, ECF Nos. 119, 158. 10.

29.      On June 21, 2024, *Batton II* defendants filed three motions to dismiss for lack of jurisdiction (*id.*, ECF Nos. 122-125), a motion to dismiss for failure to state a claim (*id.*, ECF No. 126), and a motion to strike class action allegations (*id.*, ECF No. 127). Plaintiffs' counsel committed numerous hours to researching and preparing opposition papers, submitting nearly 60 pages of responsive briefing. *Id.*, ECF Nos. 131-133.

30.     In November 2024, the *Batton II* plaintiffs filed a second amended complaint removing certain state-law claims and adding plaintiffs. ECF Nos. 160-63.

31.     On March 5, 2026, plaintiffs' counsel moved to be appointed interim co-lead class counsel in order to prevent the reverse-auction harms created by the *Tuccori* settlements from impacting the prosecution of homebuyer claims in that case. *Batton II*, ECF No. 182.

32.     On April 24, 2026, the Court denied defendants' motions to dismiss and motions to strike class allegations, dismissing only plaintiffs' Sherman Act claim for injunctive relief and some of plaintiffs' state law claims, all without prejudice. *Id.*, ECF No 190. The Court further held that plaintiffs plausibly alleged a horizontal conspiracy among the defendants. *Id.* at 28 n.12.

33.     Three days later, Compass, Inc. and United Real Estate Group announced their *Tuccori* settlements. *Batton II*, ECF No. 195.

### III.    The *Lutz* Litigation

34.    After the *Batton I* court dismissed HomeServices of America, Inc., BHH Affiliates, LLC, and HSF Affiliates, LLC (collectively, "HomeServices") from the *Batton I* case, Plaintiffs' counsel dismissed Douglas Elliman from *Batton II* because it had similar jurisdictional arguments to HomeServices. Plaintiffs' counsel thereafter filed against those defendants in the Southern District of Florida where jurisdiction could be found. *James Lutz v. HomeServices et al.* ("*Lutz*"), No. 4:24-cv-10040 (S.D. Fla. Apr. 29, 2024), ECF No. 1.

35.    Plaintiffs in *Lutz* have spent the past two years aggressively litigating against HomeServices and Douglas Elliman. In doing so, plaintiffs' counsel efficiently utilized and built upon the substantial work done in *Batton I*.

36.    On December 12, 2024, *Lutz* plaintiffs amended their complaint to add plaintiffs. *Lutz*, ECF No. 92. On December 23, 2024, the *Lutz* defendants moved to dismiss plaintiffs' complaint arguing, similarly to the *Batton I* and *II* defendants before them, that plaintiffs lacked antitrust and Article III standing and failed to adequately plead their state law antitrust and consumer protection claims. *Id.,* ECF No. 98. Defendants also argued that plaintiffs' claims were time-barred. *Id.* Plaintiffs and their counsel duly opposed the motion, including by providing a detailed state and plaintiff-specific analysis opposing Defendants' statute of limitations arguments. *Id.*, ECF No. 101.

37.    On July 15, 2025, the court granted defendants' motion to dismiss without prejudice, primarily deeming the complaint an impermissible "shotgun" pleading. *Id.*, ECF No. 144. The court directed plaintiffs to "amend their complaint in a manner that states a claim for relief against each Defendant on each count they seek to assert." *Id.* at 11.

9

38.     Plaintiffs' counsel immediately set to work to do so, and less than one month later, on August 5, 2025, they filed a 144-page complaint with 48 separate counts containing detailed allegations against each defendant with significant documentary evidence. *Id.*, ECF No. 145. The defendants again moved to dismiss on September 29, 2024 (*id.*, ECF No. 152), and the plaintiffs opposed.

39.     While awaiting the court's decision on defendants' motion to dismiss, plaintiffs' counsel engaged in extensive discovery. Plaintiffs' counsel received, reviewed, and are in the process of analyzing over 430,000 documents, 7 terabytes of data, and 80 deposition transcripts of witness of defendants and their co-conspirators. They have met and conferred numerous times with defendants and appeared for five discovery hearings.

40.     In addition, the original deadline for expert disclosures was April 15, 2026. Plaintiffs' counsel undertook significant effort and expense in connection with preparing expert reports supporting both class certification and their claims on the merits before the schedule was extended on April 13, 2026.

41.     The *Lutz* Defendants also served requests for production, interrogatories, and requests for admissions on the 32 named plaintiffs in this case. In response, plaintiffs served interrogatory responses, supplemental interrogatory responses and have so far produced more than 40,000 documents to defendants.

42.     On March 26, 2026, Plaintiffs' counsel moved to be appointed interim co-lead class counsel in *Lutz*, as they had in *Batton I* and *II*, in order to prevent reverse-auction harms resulting from *Tuccori*. That motion remains pending.

43.     On April 9, 2026, Douglas Elliman informed the court that it opted-in to *Tuccori*, but did not disclose the amount of the settlement. *Lutz*, ECF No. 186.

10

44.     On April 17, 2026, the *Lutz* court largely denied defendants' motion to dismiss, finding, like this Court, that plaintiffs plausibly alleged a horizontal conspiracy. *Id.*, ECF No. 191.

45.     One business day later (and after the *Tuccori* opt-in period had already expired), defendant HomeServices announced, without disclosing the settlement amount, that it opted-in to a settlement in *Tuccori*. *Id.*, ECF No. 193.

46.     On April 22, 2026, plaintiffs filed a motion for preliminary injunction to enjoin Douglas Elliman and HomeServices from proceeding with their *Tuccori* settlements. ECF No. 195.

## IV.     The *Davis* Litigation

47.     Following jurisdiction rulings by the *Batton I* court, Plaintiffs' counsel dismissed defendant Hanna Holdings, Inc. from the *Batton II* litigation and filed an action against it in the Eastern District of Pennsylvania where jurisdiction could be found on June 3, 2024. *Davis v. Hanna Holdings, Inc.* ("*Davis*"), No. 2:24-cv-2374 (E.D. Pa.), ECF No. 1.

48.     In *Davis*, plaintiffs' counsel investigated and drafted three complaints, each totaling over 50 pages (*Davis*, ECF Nos. 1, 40, 104), and painstakingly analyzed myriad legal issues in order to draft and submit more than 130 pages of briefing to respond to Defendant's motions to dismiss and its opposition to Plaintiffs' motion to amend the complaint. Plaintiffs' counsel also prepared and appeared for two rounds of oral argument and coordinated with the Department of Justice, Antitrust Division for it to submit a statement in support of plaintiffs' allegations of a horizontal conspiracy, *Davis*, ECF No. 115 (Dec. 19, 2025), allegations the court credited in ultimately denying Hanna's motion to dismiss in relevant part.

49.     Plaintiffs' counsel in *Davis* further engaged in initial discovery, including serving initial disclosures, propounding document requests, responding to document requests, and meeting and conferring with Hanna regarding discovery.

11

50.    The *Davis* court ultimately denied each one of Hanna's motions to dismiss, finding, among other things, that plaintiffs have antitrust and Article III standing and have plausibly pleaded a horizontal conspiracy among Hanna and its co-conspirators. *Davis*, No. CV 24-2374, 2026 WL 654145, at *1 (E.D. Pa. Mar. 9, 2026). The *Davis* court ruled strongly in favor of plaintiffs. For example, the court found it "easy to understand how inflated commissions would result in inflated home prices" (*Davis*, 771 F. Supp. 3d 552, 578 (E.D. Pa. 2025)) and that "plaintiffs may plead adherence to a binding association rule as direct evidence of a defendant's concerted action", which plaintiffs did. *Davis*, 2026 WL 654145, at *16 (E.D. Pa. Mar. 9, 2026).

51.    On March 19, 2026, ten days after it lost its motion to dismiss, Hanna announced its opt-in *Tuccori* settlement in a responsive brief to plaintiffs' motion to appoint interim co-lead class counsel to protect the class from that exact type of *Tuccori* reverse auction settlement (*Davis*, ECF No. 12). *Id.*, ECF No. 128.

52.    Hanna moved to stay the case (*id.*, ECF No. 129) and plaintiffs moved to enjoin Hanna from proceeding with its settlement (*Id.*, ECF No. 132). The *Davis* court denied both motions and plaintiffs' motion to appoint lead counsel, all without prejudice. *Id.* ECF Nos. 130-31; 137.

## V.    The Seller Litigation

53.    *Batton* counsel has also fought for its class members impacted by earlier, related litigation on behalf of home-sellers damaged by the same conspiracy *Batton* challenges in the *Burnett* and *Moehrl* cases.

54.    The home-sellers' cases were successfully litigated to verdict by different class counsel against certain defendants in *Batton I and Lutz*, resulting in post-verdict settlements. Within days of the final fairness approval hearing of the first round of the home-seller

settlements, and weeks after class notice had been completed, the home-sellers took the position for the first time that the release they had negotiated with the settling defendants was meant to release not only the home-selling claims that had been litigated all along, but also any home-buying claims held by those same class members, including those prosecuted in *Batton*. *See Burnett*, ECF No. 1469; *see also Batton*, ECF No. 152.

55.     *Batton* counsel immediately objected on the grounds that the seller settlements released their claims in violation of the identical factual predicate doctrine and without additional compensation, let alone adequate notice and representation for the unique claims held by homebuyers. This was evidenced by numerous facts, including: (1) the seller cases did not allege any harm to homebuyers; (2) defendants' counsel stated their seller settlements would not impact the homebuying cases; (3) the initial class notice did not mention *Batton* or homebuyer claims; and (4) the claim form did not request any information relating to homebuying transactions. *Burnett*, ECF No. 1447 at 8-11.

56.     The district court overruled the objection in granting final approval of the settlements (id., ECF No. 1487) and the *Batton* plaintiffs appealed to the Eighth Circuit. *See Rhonda Burnett et al. v. James Mullis*, No. 24-2143 (8th Cir. Oct. 9, 2024). That appeal has been fully briefed and argued and awaits decision.

**NAR'S REVERSE AUCTION SETTLEMENT WITH *TUCCORI* PLAINTIFFS**

57.     NAR first approached Plaintiffs about settlement in March 2025. At that time, Plaintiffs sent NAR a settlement demand letter at NAR's request. NAR's only response was that talks would not be productive.

58.     Then, on January 7, 2026, NAR requested to set up a call with Plaintiffs to discuss settlement. Plaintiffs and NAR agreed to mediate, and they scheduled a mediation with Gregory

Lindstrom of Phillips ADR Enterprises, an experienced mediator who is deeply familiar with the facts and issues in *Batton*.

59. On March 9, 2026, just days after the hearing in which the *Tuccori* court denied Plaintiffs' motion to intervene, NAR withdrew from the mediation. NAR then requested to mediate with Judge Holderman. Plaintiffs agreed.

60. NAR subsequently told Plaintiffs that Judge Holderman was unavailable and suggested that Plaintiffs and NAR engage in bilateral discussions. Plaintiffs again agreed. On March 17, 2026, Plaintiffs and NAR had a phone call in which, at NAR's request, Plaintiffs confirmed that they were willing to negotiate a settlement that would release only the claims of homebuyers who are not impacted by the *Burnett* settlements, the same settlement class that Anywhere and Hanna settled in *Tuccori*. Plaintiffs also provided a settlement demand containing a specific amount.

61. Two days later, on March 19, 2026, NAR informed Plaintiffs that no further discussions would be worthwhile.

62. On April 10, 2026, NAR announced its opt-in *Tuccori* settlement, which it mediated with Judge Holderman, for $52.25 million.

I certify under penalty of perjury that the foregoing is true and correct. Executed on April 28, 2026 in White Plains, New York.

*/s/ Vincent Briganti*
Vincent Briganti
**LOWEY DANNENBERG, P.C**.
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
vbriganti@lowey.com

14

I certify under penalty of perjury that the foregoing is true and correct. Executed on April 28, 2026, in Fort Lauderdale, Florida.

/s/ Randall P. Ewing, Jr.
Randall P. Ewing, Jr.
**KOREIN TILLERY, LLC**
205 North Michigan Ave., Suite 1950
Chicago, IL 60601
(312) 641-9750
rewing@koreintillery.com

15