**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| MYA BATTON, AARON BOLTON, MICHAEL BRACE, DO YEON IRENE KIM, ANNA JAMES, JAMES MULLIS, THEODORE BISBICOS, and DANIEL PARSONS, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>THE NATIONAL ASSOCIATION OF REALTORS, ANYWHERE REAL ESTATE, INC. FORMERLY KNOWN AS REALOGY HOLDINGS CORP., RE/MAX LLC, and KELLER WILLIAMS REALTY, INC.,<br><br>    Defendants. | Case No. 1:21-cv-00430 (LAH) |

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENTS WITH
<u>KELLER WILLIAMS REALTY, LLC AND RE/MAX, LLC</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................. 1

BACKGROUND .............................................................................................................. 1

ARGUMENT ................................................................................................................... 2

    I.      The Proposed Settlements Should Be Finally Approved Under Rule 23(e)(2). ...... 3

          A.      The Settlements Are Procedurally Fair Under Rules 23(e)(2)(A)-(B). ...... 3

          B.      The Settlements Are Substantively Fair. ...................................................... 6

    II.     The Court Should Finally Certify the Proposed Settlement Classes for Final Approval. ............................................................................................................... 12

    III.    The Class Notice Plan Is Being Implemented and Satisfied Rule 23 and Due Process Notice Requirements. .............................................................................. 14

CONCLUSION............................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Aztar Indiana Gaming Co., LLC,*
2023 WL 6536785 (S.D. Ind. Aug. 11, 2023) ...........................................................13

*In re Advoc. Aurora Health Pixel Litig.,*
740 F. Supp. 3d 736 (E.D. Wis. 2024)......................................................................13

*Amgen Inc. v. Conn. Ret. Plans and Tr. Funds,*
568 U.S. 455 (2013).................................................................................................12

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee,*
616 F.2d 305 (7th Cir. 1980) ...............................................................................3, 10

*In re AT&T Mobility Wireless Data,*
789 F. Supp. 2d 935 (N.D. Ill. 2011) .........................................................................9

*In re AT&T Mobility Wireless Data Servs. Sales Litig.,*
270 F.R.D. 330 (N.D. Ill. 2010)...........................................................................4, 15

*Beesley v. Int'l Paper Co.,*
2014 WL 375432 (S.D. Ill. Jan. 31, 2014)...............................................................12

*In re Brand Name Prescription Drugs Antitrust Litig.,*
1999 WL 639173 (N.D. Ill. Aug. 17, 1999) .............................................................11

*Burr v. Loadsmart, Inc.,*
2026 WL 892554 (N.D. Ill. Mar. 25, 2026)..............................................................12

*Charvat v. Valente,*
2019 WL 5576932 (N.D. Ill. Oct. 28, 2019)...............................................3, 6, 9, 12

*In re College Athlete NIL Litig.,*
2023 WL 8372787 (N.D. Cal. Nov. 3, 2023) ..............................................................4

*F.C.V., Inc. v. Sterling Nat'l Bank,*
652 F. Supp. 2d 928 (N.D. Ill. 2009) ........................................................................15

*Isby v. Bayh,*
75 F.3d 1191 (7th Cir. 1996) ...........................................................................3, 9, 10

*Kleen Prods. LLC v. Int'l Paper Co.,*
2017 WL 5247928 (N.D. Ill. Oct. 17, 2017).........................................................7, 11

*Kolinek v. Walgreen Co.*,
    311 F.R.D. 483 (N.D. Ill. 2015)..................................................................................8

*Leung v. XPO Logistics, Inc.*,
    326 F.R.D. 185 (N.D. Ill. 2018)..................................................................................9

*Lucas v. Vee Pak, Inc.*,
    2017 WL 6733688 (N.D. Ill. Dec. 20, 2017).............................................................11

*In re Mexico Money Transfer Litig.*,
    164 F. Supp. 2d 1002 (N.D. Ill. 2000), *aff'd*, 267 F.3d 743 (7th Cir. 2001) ............8

*Meyenburg v. Exxon Mobil Corp.*,
    2006 WL 5062697 (S.D. Ill. June 5, 2006)..............................................................8, 9

*Mullins v. Direct Digital, LLC*,
    795 F.3d 654 (7th Cir. 2015) ...............................................................................13, 14

*In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*,
    332 F.R.D. 202 (N.D. Ill. 2019), *aff'd sub nom. Walker v. Nat'l Collegiate
    Athletic Ass'n*, 2019 WL 8058082 (7th Cir. Oct. 25, 2019) .......................................3

*Nistra v. Reliance Trust Co.*,
    2020 WL 13645290 (N.D. Ill. Mar. 12, 2020).............................................................3

*Palomar v. SMC Corp. of Am.*,
    2021 WL 5364150 (S.D. Ind. Sept. 27, 2021) ..........................................................14

*Reynolds v. Beneficial Nat'l Bank*,
    288 F.3d 277 (7th Cir. 2002) .......................................................................................8

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011) .......................................................................6, 8

*Shah v. Zimmer Biomet Holdings, Inc.*,
    2020 WL 5627171 (N.D. Ind. Sept. 18, 2020) .........................................................10

*In re Sw. Airlines Voucher Litig.*,
    2013 WL 4510197 (N.D. Ill. Aug. 26, 2013) ..............................................................8

*Swift v. DirectBuy, Inc.*,
    2013 WL 5770633 (N.D. Ind. Oct. 24, 2013)..............................................................8

*Synfuel Techs., Inc. v. DHL Express, Inc.*,
    463 F.3d 646 (7th Cir. 2006) .......................................................................................9

*In re Synthroid Marketing Litig.*,
    264 F.3d 712, 722 (7th Cir., 2001) ............................................................................12

*T.K., et al. v. Bytedance Tech. Co.,*
   2022 WL 888943 (N.D. Ill. Mar. 25, 2022)................................................................14

*In re TikTok, Inc., Consumer Priv. Litig.,*
   617 F. Supp. 3d 904 (N.D. Ill. 2022) .....................................................................12

*Toney v. Quality Res., Inc.,*
   323 F.R.D. 567 (N.D. Ill. 2018)..............................................................................13

*In re Turkey Antitrust Litig.,*
   2022 WL 122943 (N.D. Ill. Jan. 10, 2022) ...........................................................12

*Van v. Ford Motor Co.,*
   332 F.R.D. 249 (N.D. Ill. 2019)................................................................................5

*Wong v. Accretive Health, Inc.,*
   773 F.3d 859 (7th Cir. 2014) ...............................................................................5, 6

**Statutes**

Class Action Fairness Act, 28 U.S.C. § 1715(b) ...........................................................15

**Other Authorities**

Federal Rules of Civil Procedure Rule 23 ............................................................ *passim*

5 James Wm. Moore, MOORE'S FEDERAL PRACTICE § 23.164 (2026) ...........................................9

iv

## INTRODUCTION

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs, by and through Class Counsel, respectfully move for final approval of (1) the $20 million class settlement with Keller Williams Realty, LLC fna Keller Williams Realty, Inc. ("Keller Williams") and (2) the $8.5 million settlement with RE/MAX, LLC ("RE/MAX" and, together with Keller Williams, "Settling Defendants"). This Court previously granted preliminary approval of the Settlements, finding that the Court would likely be able to finally certify the Settlement Classes and approve the Settlements as "reasonable, fair, and adequate" after issuing notice. Notice has now been issued to the Settlement Classes, and its results strongly support granting final approval of the Settlements. The Claims Administrator has exceeded the goals of the approved notice plan and, to date, not a single Settlement Class Member has objected or opted out of the Settlements. For the reasons articulated below and in Plaintiffs' memoranda in support of their motions for preliminary approval of the Settlements (ECF Nos. 262, 310),[1] the Settlements are an excellent result for the Classes, and the Court should grant final approval.

## BACKGROUND

Plaintiffs' motions for preliminary approval detailed this case's factual and procedural background (ECF Nos. 262-1, 310-1).[2] As to the Settlements, the class definitions, releases, and distribution plans are unchanged. Accordingly, Plaintiffs set forth below only those key additional facts relevant to this motion.

***Service Awards.*** As separately briefed, Plaintiffs seek modest service awards of between

---

[1] Plaintiffs incorporate by reference the arguments made in their motions for preliminary approval, which similarly support this motion for final approval.

[2] With respect to the Keller Williams settlement, "Plaintiffs" refer to Plaintiffs Batton, Bolton, Brace, Kim, James, Mullis, Bisbicos, and Parsons. With respect to the RE/MAX settlement, "Plaintiffs" refer to Plaintiffs Bolton, Brace, Kim, James, and Parsons.

$2,000 and $5,000[3] for each class representative in recognition of their significant contributions to this Action, including providing essential facts regarding their transactions, keeping apprised of the case, collecting and producing over 8,000 documents, answering written interrogatories, and spending numerous hours preparing for and sitting for depositions. Joint Declaration of Vincent Briganti and Randall Ewing ("Joint Decl.") ¶ 25.

***Attorneys' Fees, Costs, and Expenses.*** In accord with the Settlement Agreements, and as briefed in their Fee and Expense Application,[4] Class Counsel request $4.5 million as reimbursement for litigation expenses incurred in prosecuting the case on behalf of the Settlement Classes, up to $500,000 for ongoing and future expenses, and $9,500,000 (one-third of the Settlement Fund) as an attorneys' fee award.

***Implementation of Notice Plan.*** A.B. Data has implemented the Notice Plan previously approved by the Court, comprised to date of (1) 144,888 email notices delivered to class members; (2) a paid media campaign that has generated 225.9 million impressions, more than the 200 million targeted; and (3) a website to provide information and submit claims, which has received 66,822 unique visits. Declaration of Julia Westphal ("Westphal Decl.") ¶¶ 13, 16, 21. To date, A.B. Data has received 9,451 claims, and no objections or opt-outs. *Id.* ¶¶ 25, 28.

## **ARGUMENT**

The Court previously found sufficient grounds to preliminarily approve both Settlements based on the likelihood that it could finally approve the Settlements as fair, reasonable, and adequate and certify the Settlement Classes after notice has occurred. ECF Nos. 269 ¶ 5; 314 ¶ 5.

---

[3] "Fee and Expense Application" refers to Class Counsel's Motion for an Award of Attorneys' Fees, Payment of Litigation Expenses, and Plaintiffs' Request for Service Awards submitted simultaneously herewith. The Joint Decl. is attached to the Fee and Expense Application.

[4] The "Settlement Fund" refers to the $20 million Keller Williams Gross Settlement Fund and the $8.5 million RE/MAX Gross Settlement Fund.

Now that notice has issued, the Court should find that the same rationale applies, bolstered by the reaction of the Settlement Classes and the absence of any objections or opt-out requests.

## I.  The Proposed Settlements Should Be Finally Approved Under Rule 23(e)(2).

Class action settlements are strongly encouraged. *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); *Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 313 (7th Cir. 1980).[5] The approval "inquiry is limited" to "whether the proposed settlement is lawful, fair, reasonable, and adequate." *Isby*, 75 F.3d at 1196. To make this determination, the Court considers the factors in Fed. R. Civ. P. 23 ("Rule 23"). *Nistra v. Reliance Trust Co.*, No. 1:16-cv-04773, 2020 WL 13645290, at *1 (N.D. Ill. Mar. 12, 2020). These factors are "(A) the class representatives and counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate []; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2).[6] The Settlements satisfy every factor.

### A. The Settlements Are Procedurally Fair Under Rules 23(e)(2)(A)-(B).

#### 1. The Classes have been vigorously represented.

Plaintiffs' interests are aligned with those of the Settlement Classes. *See In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*, 332 F.R.D. 202, 215 (N.D. Ill. 2019) ("A class is not fairly and adequately represented if class members have antagonistic or conflicting claims."), *aff'd sub nom. Walker v. Nat'l Collegiate Athletic Ass'n*, No. 19-2638, 2019 WL 8058082, at *1 (7th Cir. Oct. 25, 2019). The proposed Settlement Classes are defined

---

[5] All citations cleaned up unless otherwise indicated.

[6] These Rule 23(e) factors overlap with the factors historically considered in the Seventh Circuit to approve class settlements. *See Charvat v. Valente*, No. 12-cv-05746, 2019 WL 5576932, at *6 (N.D. Ill. Oct. 28, 2019) ("[T]he factors articulated by the Seventh Circuit subsume most of [the Rule 23(e)(2)(C)] factors."). Plaintiffs address both sets of factors together here.

as "all persons (including entities) who purchased residential real estate in the United States, from the beginning of the State Statutory Period through the date of class Notice, that was listed on a MLS." Keller Williams Settlement ¶ 4; RE/MAX Settlement ¶ 4. Each representative of the Settlement Classes purchased at least one home listed on an MLS during the relevant period. The RE/MAX settlement, unlike the Keller Williams settlement, excludes "any persons who are settlement class members with respect to RE/MAX's settlement in *Burnett, et al. v. National Ass'n of Realtors, et al.*, 4:19-cv-00332 (W.D. Mo.)." RE/MAX Settlement ¶ 4. Each named Plaintiff of the RE/MAX Settlement Class—Plaintiffs Kim, James, Parsons, Brace, and Bolton— is not a RE/MAX settlement class member in *Burnett*. ECF No. 162; Joint Decl. ¶ 25.

Plaintiffs are seeking the same relief for the same injury experienced by Settlement Class Members: compensation for amounts they overpaid for homes as a result of Defendants' alleged conspiracy. *See In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 344 (N.D. Ill. 2010) (plaintiffs' claims are typical and they adequately represent class members "because they—like the other class members—seek relief from AT&T's allegedly-unlawful tax collections."). Plaintiffs' efforts to prosecute this Action by reviewing and initiating the complaint, providing information and documents to counsel, responding to interrogatories, producing documents, and sitting for depositions additionally warrant a finding of adequacy. *See In re College Athlete NIL Litig.*, No. 20-cv-03919, 2023 WL 8372787, at *7 (N.D. Cal. Nov. 3, 2023) (named plaintiffs "have significantly aided the prosecution of this litigation to date, which demonstrates that they will prosecute the action vigorously on behalf of the proposed classes.").[7]

---

[7] The claims of Keller Williams' Class Representatives Batton, Mullis, and Bisbicos were stayed following approval of the *Burnett* settlements pending appeal concerning the scope of the *Burnett* settlement releases and thus they did not produce documents to Defendants, respond to Interrogatories, or sit for depositions.

4

The Court also considers the adequacy of counsel by evaluating counsel's work in the case, experience, knowledge of the applicable law, and the resources counsel will commit to the case. *Van v. Ford Motor Co.*, 332 F.R.D. 249, 286 (N.D. Ill. 2019). Lowey and Korein Tillery have served as counsel in this Action from its inception, led the prosecution of the claims here, and negotiated the proposed Settlements. Both firms have decades of experience leading complex class actions and recovering billions for antitrust plaintiffs. ECF No. 310-1, Briganti-Ewing Decl., Firm Résumés, Exs. B & C. Indeed, this Court has noted Class Counsel's "tremendous job" representing homebuyers here. Apr. 16, 2026 Tr. at 13:20-24.

**2. The Settlements are the product of arm's length negotiations.**

Counsel engaged in settlement discussions only after litigating multiple motions to dismiss and completing significant discovery, such that the parties had a deep understanding of the strengths and weaknesses of their respective cases. ECF No. 262-1 and 310-1, Briganti-Ewing Decl. ¶¶ 18-48. They enlisted the assistance of experienced mediator Gregory Lindstrom, who is especially familiar with the relevant facts and issues as a result of mediating settlements in the seller cases. ECF No. 262-1, Briganti-Ewing Decl. ¶ 43; ECF No. 310-1, Briganti-Ewing Decl. ¶ 40; ECF No. 310-10, Lindstrom Decl. ¶¶ 1-6. As to both Keller Williams and RE/MAX, the initial mediation sessions did not result in settlement, and the parties continued to negotiate for many months before ultimately reaching agreement. ECF No. 262-1, Briganti-Ewing Decl. ¶¶ 44-45; ECF No. 310-1, Briganti-Ewing Decl. ¶ 41; ECF No. 310-10, Lindstrom Decl. ¶¶ 7, 9-11. These circumstances evidence good-faith negotiations. *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 864 (7th Cir. 2014) ("Finally, and importantly, the settlement was proposed by an experienced third-party mediator after an arm's-length negotiation where the parties' positions on liability and damages were extensively briefed and debated.").

### B. The Settlements Are Substantively Fair.

Rule 23(e)(2)(C) focuses on whether "the relief provided for the class is adequate," accounting for: "(i) the costs, risks, and delay of trial and appeal;" (ii) "the effectiveness of any proposed method of distributing relief to the class" and "the method of processing class-member claims;" (iii) attorneys' fees; and (iv) "any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). Courts in this Circuit additionally consider factors that overlap with Rule 23(e)(2)(C)(i): "(1) the strength of the plaintiffs' case compared against the amount of the defendants' settlement offer; (2) the complexity, length, and expense of continued litigation; (3) the amount of opposition to the settlement; (4) the opinion of experienced counsel; and (5) the stage of the proceedings and the amount of discovery completed." *Charvat*, 2019 WL 5576932, at *5 (citing *Synfuel Techs., Inc. v. DHL Express, Inc.*, 463 F.3d 646 (7th Cir. 2006)).

### 1. The substantial relief provided by the Settlements and the complexity, costs, risks, and delay of trial and appeal favor the Settlements.

The Settlements provide substantial relief to the Settlement Classes relative to the risks of continued litigation. If not for the Settlements, Plaintiffs would face the possibility of an adverse ruling on their upcoming motion for class certification. While Plaintiffs believe they would prevail, additional discovery, summary judgment, expert reports, and trial—each phase with its attendant risks—still lie ahead. As is apparent from the history of this case (ECF No. 310-1, Briganti-Ewing Decl. ¶¶ 33-37), "class certification … would … be hotly-contested." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011). Moreover, given that a central question is whether inflated commissions resulted in inflated home prices, this lawsuit largely focuses on competing expert testimony. This adds further uncertainty and costs. *See Wong*, 773 F.3d at 863 (expert battles are "lengthy and expensive … with the costs of such … battle[s] borne by the class").

The RE/MAX Settlement Class consists of homebuyers who are not also members of the nationwide settlement class of home sellers approved by the court in *Burnett*. The *Burnett* court interpreted the direct-purchaser seller-side settlements to release those class members' indirect purchaser claims based on separate transactions in which they purchased homes. Plaintiff Mullis has appealed that decision, which appeal remains pending. Joint Decl. ¶¶ 31, 33. The RE/MAX Settlement Amount, which excludes the claims of these class members, properly accounts for the narrower scope of this release as compared to the Keller Williams Settlement Amount, which does not exclude these class members.

The relief provided for in the RE/MAX settlement is also fair and reasonable in light of the risk of non-recovery. ECF No. 310-1, Briganti-Ewing Decl. ¶¶ 46-48; ECF No. 310-10, Lindstrom Decl. ¶¶ 8, 10. RE/MAX's financial condition has diminished over the past five years, and risked further decline if the litigation had continued. ECF No. 310-1, Briganti-Ewing Decl. ¶ 47. In fact, the RE/MAX Settlement Amount constitutes 104.26% of its 2025 net income. *Id.* Moreover, RE/MAX is bound by debt covenants that significantly limit its ability to borrow to fund a settlement or satisfy a judgment. *Id.* The RE/MAX Settlement thus reflects an amount RE/MAX could reasonably pay. *Kleen Prods. LLC v. Int'l Paper Co.*, No. 1:10-cv-05711, 2017 WL 5247928, at *2 (N.D. Ill. Oct. 17, 2017) ("Defendants' ability to pay" is one factor courts in the Seventh Circuit consider when determining if a settlement is fair, reasonable, and adequate).

Plaintiffs' experts conservatively estimated actual damages to be around $2.6 billion for only four exemplar multiple listing services ("MLSs"). Plaintiffs' experts estimate that adding the remainder of the at-issue MLSs would easily result in damages in excess of $15 billion (Joint Decl. ¶ 27)—a staggering figure for even the highest-earning companies. Both Settlement Amounts must be considered in light of this reality. *Kleen Prods.*, 2017 WL 5247928, at *2.

Moreover, if Defendants successfully challenged the class-wide methodology developed by Plaintiffs' experts or if class certification were denied for another reason, Class Members would receive nothing.

In lieu of the complexity and risks of the litigation, the proposed Settlements provide certain and immediate financial recovery for the Settlement Classes. *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002) ("a dollar today is worth a great deal more than a dollar ten years from now.").[8] Accordingly, the "most important factor" in approving a class settlement—"the strength of plaintiff's case on the merits balanced against the amount offered in the settlement"—is satisfied. *Schulte*, 805 F. Supp. 2d at 579.

## 2. The lack of opposition to the Settlements supports final approval.

The Settlement Classes' clear support of the Settlements also supports final approval. *Meyenburg v. Exxon Mobil Corp.*, No. 3:05-CV-15-DGW, 2006 WL 5062697, at *6 (S.D. Ill. June 5, 2006) ("The settlement is strongly supported by class members as evidenced by the fact that so few potential class members sought to opt out or objected.").[9] As of June 9, 2026, the Settlement Administrator has received 9,451 claims. Westphal Decl. ¶ 28. No Class Member objected or opted out. *Id.* ¶ 25. The absence of objections is a strong indication of a settlement's fairness. *Swift v. DirectBuy, Inc.*, No. 2:11-cv-401, 2013 WL 5770633, at *2, 6 (N.D. Ind. Oct. 24, 2013) (noting that "limited opposition … favors settlement").[10]

---

[8] *See also Schulte*, 805 F. Supp. 2d at 583 ("a major benefit of the settlement is that Class Members may obtain these benefits much more quickly than had the parties not settled").

[9] *See also In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1021 (N.D. Ill. 2000) (finding that "99.9% of class members have neither opted out nor filed objections … is strong circumstantial evidence in favor of the settlement"), *aff'd*, 267 F.3d 743 (7th Cir. 2001).

[10] *In re Sw. Airlines Voucher Litig.*, No. 11 C 8176, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013) (opt-out and objection rate of less than 0.01% supports approval); *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d at 1021 (same); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 495 (N.D. Ill. 2015) (same).

**3. The stage of the proceedings and the amount of discovery completed confirm that the Settlements are appropriate.**

A court may approve settlements where "the discovery and investigation conducted by class counsel prior to entering into settlement negotiations was extensive and thorough[.]" *Isby*, 75 F.3d at 1200. This factor evaluates whether the class representatives and their counsel developed sufficient information over the course of their investigation and litigation to fairly assess the reasonableness and adequacy of the proposed settlement. If so, "[t]his factor weighs in favor of settlement." *Charvat*, 2019 WL 5576932, at *8.[11] Here, as discussed above and in Plaintiffs' preliminary approval motions, Plaintiffs and Class Counsel have engaged in substantial party and third-party discovery spanning more than five years, involving more than half a million documents, data exceeding a terabyte, written discovery responses, and Plaintiff depositions (ECF No. 310-1, Briganti-Ewing Decl. ¶¶ 29-35).

**4. Class Counsel endorse the Settlements.**

The opinion of competent counsel is also relevant to whether a settlement is fair, reasonable, and adequate under Rule 23. *Synfuel*, 463 F.3d at 653; *see also In re AT&T Mobility Wireless Data*, 789 F. Supp. 2d 935, 965 (N.D. Ill. 2011). Indeed, courts place "significant weight" on counsel's "unanimously strong endorsement" of the settlement. *Meyenburg*, 2006 WL 5062697, at *5.

Class Counsel are experienced and competent attorneys deeply familiar with facts of this litigation (*see*, p. 5, *supra*). *See* 5 James Wm. Moore, MOORE'S FEDERAL PRACTICE § 23.164 (2026) ("The more experience that class counsel possesses, the greater weight a court tends to

---

[11] *See also Leung v. XPO Logistics, Inc.,* 326 F.R.D. 185, 198 (N.D. Ill. 2018) (a case is at a "stage where the parties [could] appropriately value the litigation, and arrive at a fair settlement" when the "parties conducted early discovery on the merits and class certification, including taking fact and expert depositions, and seeking discovery from several non-parties").

attach to counsel's opinions on fairness, reasonableness, and adequacy."). Class Counsel concluded that the Settlements are in the best interest of the Classes after weighing the substantial benefits of the Settlements against the obstacles to obtaining a better recovery after continued litigation. Joint Decl. ¶ 42. Because of their experience, Class Counsel's assessment should be given its due weight. *See Isby*, 75 F.3d at 1200 (placing significant weight on the opinion of plaintiffs' well-respected attorneys); *Armstrong*, 616 F.2d at 325 ("While the court … should not abdicate its responsibility to review a [class settlement] because counsel support it, the court is entitled to rely heavily on the opinion of competent counsel.").

## 5. The allocation of funds will be reasonable and equitable.

As the Court previously held (ECF Nos. 296, 315), the proposed distribution plans, formulated by competent and experienced counsel with the assistance of world-class experts, are fair and reasonable. *See also Shah v. Zimmer Biomet Holdings, Inc.*, No. 3:16-cv-815, 2020 WL 5627171, at *6 (N.D. Ind. Sept. 18, 2020) (quoting *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 192 (S.D.N.Y. 2012) (finally approving "allocation model devised by plaintiffs' counsel and their retained experts")).[12] The Net Settlement Fund will be distributed to Settlement Class Members that file a timely and valid claim on a *pro rata* basis, proportionate to their alleged harm, using a formula that accounts for the price they paid for their home and the commission they paid to calculate what they would have paid for their homes in a world without artificially inflated commissions. ECF No. 276-2 at ¶¶ 8, 10-11, 15; ECF No. 310-5 at ¶¶ 8, 10-11, 13. Distribution of settlement proceeds according to an estimate of each class member's harm is reasonable. *Shah*, 2020 WL 5627171, at *6 (funds allocated according to each claimant's

---

[12] The only difference between the Keller Williams distribution plan and the RE/MAX distribution plan is that the RE/MAX plan does not include a legal risk discount. Since the RE/MAX Settlement Class consists only of homebuyers who are not also members of the settlement class approved by the court in *Burnett*, the legal risk discount provided for in the Keller Williams distribution plan is not applicable.

10

"recognized loss"); *Lucas v. Vee Pak, Inc.*, No. 12-cv-0672, 2017 WL 6733688, at *13 (N.D. Ill. Dec. 20, 2017) (noting "Federal courts have held that an allocation plan that reimburses class members based on the extent of their injuries is generally reasonable" and citing cases). Similarly, *pro rata* distribution of the Net Settlement Fund is consistent with distribution plans frequently approved in price-fixing litigation like this one. *See*, *e.g.*, *In re Ready-Mixed Concrete Antitrust Litig.*, No. 1:05-cv-00979-SEB-JMW (S.D. Ind. Mar. 31, 2009), ECF No. 732 at ¶ 8 (collecting cases); *Kleen Prods.*, 2017 WL 5247928, at *3 ("the proposed mechanism for distributing Settlement Funds, *pro rata* to all Allowed Claimants based on the Allowed Purchases, is recommended by experienced and competent Co-Lead Counsel, and has a reasonable rational basis having been approved for use by District Courts in this Circuit and elsewhere in similar cases."); *In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94 C 897, 1999 WL 639173, at *4 (N.D. Ill. Aug. 17, 1999) (same). The Keller Williams plan of allocation also accounts for the difference in litigation posture between those class members who are part of the *Burnett* settlement and those who are not. Counsel retained experienced independent allocation counsel to represent these Settlement Class Members, and the allocation counsel mediated the appropriate discount under the supervision of mediator Gregory Lindstrom to determine the fair allocation of the Keller Williams settlement amount between these two groups. This Court should grant final approval to the Distribution Plans that it has already preliminarily approved. ECF No. 296.

6. **The requested attorneys' fees and other awards are limited to ensure that the Settlement Class receives adequate relief.**

Class Counsel have separately moved for $9,500,000 in attorneys' fees, $4.5 million for expense reimbursement, $500,000 for ongoing and future expenses, and service awards between $2,000 and $5,000 for the Plaintiffs. Class Counsel's fee request represents one-third of the

11

Settlement Fund. As that motion demonstrates, this request falls well within the range of fees approved in cases of similar size and complexity. *See*, *e.g.*, *In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 941 (N.D. Ill. 2022) ("A one-third flat fee … is routine for class action settlements in similarly complex fields, such as antitrust litigation."); *Charvat*, 2019 WL 5576932, at *11 (collecting cases). As further discussed in their motion for attorneys' fees and expenses, Class Counsel's fee request is reasonable and accurately reflects market rates for their work. The requested service awards comprise just .11% of the Settlement Fund and fall well within the range typically awarded in this District where Class Representatives have conferred with counsel, provided information and documents, and sat for depositions. *Beesley v. Int'l Paper Co.*, No. 3:06-cv-703, 2014 WL 375432, at *4 (S.D. Ill. Jan. 31, 2014). Additionally, the expenses for which Class Counsel seeks reimbursement are of the type private clients would pay and were necessarily and reasonably incurred to prosecute this litigation. *In re Synthroid Marketing Litig.*, 264 F.3d 712, 722 (7th Cir., 2001); *Burr v. Loadsmart, Inc.*, No. 23 C 3708, 2026 WL 892554, at *2 (N.D. Ill. Mar. 25, 2026) (Hunt, J.). Finally, this District has previously created litigation funds to defray ongoing and future litigation costs. *In re Turkey Antitrust Litig.*, No. 19-CV08318, 2022 WL 122943, at *1 (N.D. Ill. Jan. 10, 2022).

7. **There are no unidentified agreements that impact adequacy of relief for the Settlement Classes.**

Parties must identify "any agreement made in connection with" the settlement. *See* Fed. R. Civ. P. 23(e)(3). None are present here. ECF No. 310-1, Briganti-Ewing Decl. ¶ 43.

II. **The Court Should Finally Certify the Proposed Settlement Classes for Final Approval.**

The proposed Settlement Classes must satisfy Rule 23(a)'s requirements: numerosity, commonality, typicality, and adequacy of representation, as well as predominance and superiority under Rule 23(b)(3). Fed. R. Civ. P. 23(a)-(b); *Amgen Inc. v. Conn. Ret. Plans and*

*Tr. Funds*, 568 U.S. 455, 460 (2013). In granting preliminary approval of the Settlements, the Court found that each of the Settlement Classes satisfied each of the Rule 23(a) and (b)(3) requirements. ECF No. 269 at 2; ECF No. 314 at 2. There have been no changes or developments that require the Court to change its preliminary finding that the Settlement Classes may be certified. *See In re Advoc. Aurora Health Pixel Litig.*, 740 F. Supp. 3d 736, 745 (E.D. Wis. 2024) (where neither the defendant nor class members object to certification of the settlement class, "[t]he Court has no independent basis to question whether final certification of the class as previously defined or appointment of Plaintiffs as class representatives … is appropriate. Accordingly, the Court does not disturb its earlier finding that the settlement class in this matter meets the requirements of Rule 23(a) and (b) and that Plaintiffs are appropriate class representatives."); *Adams v. Aztar Indiana Gaming Co., LLC*, No. 320CV00143MPBMJD, 2023 WL 6536785, at *3 (S.D. Ind. Aug. 11, 2023) (same). Several key liability issues present common questions that are central to the litigation and would predominate over any individual issues. Numerosity is easily satisfied because the Class contains millions of homebuyers. Further, a class action remains a superior device to resolve millions of claims in one swoop. ECF No. 262 at 18-19 of 24 (incorporated by reference and further addressing the Rule 23(b) requirements); ECF No. 310 at 18-19 of 24 (same). Consequently, the Court should again find that the Settlement Classes satisfy Rule 23's requirements for settlement class certification.

Finally, the Settlement Classes are defined by "clearly and based on objective criteria." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015). Whether a class is ascertainable depends on "the adequacy of the class definition itself" rather than whether "it would be difficult to identify particular members of the class." *Toney v. Quality Res., Inc.*, 323 F.R.D. 567, 581 (N.D. Ill. 2018). The Settlement defines the Settlement Classes as consisting of

persons who purchased homes in specific states during specific time periods, that were listed on any MLS within the United States, and, for the RE/MAX Settlement, individuals who are not settlement class members with respect to RE/MAX's settlement in *Burnett*. Because these criteria are objective, the Settlement Class is readily ascertainable.

### III. The Class Notice Plan Is Being Implemented and Satisfied Rule 23 and Due Process Notice Requirements.

"For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Class Notice plan meets these requirements. Email notice was successfully delivered to 144,888 class members based on information, where available, from the transaction records of the Settling Defendants and their co-conspirators. Westphal Decl. ¶ 13. Courts regularly find that issuing direct notice via email to settlement class members satisfies due process. *See Palomar v. SMC Corp. of Am.*, No. 1:19-cv-04693, 2021 WL 5364150, at *9 (S.D. Ind. Sept. 27, 2021) ("courts have relied on email to provide notice of class actions and class action settlements"). Further the Class Notice plan combined direct notice with supplemental forms of notice through paid media on numerous channels to inform Settlement Class Members that could not be individually identified. *See Mullins*, 795 F.3d at 665 (noting that actual notice to all class members is not a requirement because it may be impossible to identify some class members); *T.K., et al. v. Bytedance Tech. Co.*, No. 19-cv-7915, 2022 WL 888943, at *7 (N.D. Ill. Mar. 25, 2022) (approving media only notice plan that reached 72% of target audience as the best practicable under the circumstances). Additional notice was provided here through Google Display Networks, YouTube, Facebook, Instagram, and other programmatic platforms targeted to homeowners, which ran from April 14, 2026 to May 29, 2026, resulting in 225,996,699

14

impressions—exceeding the 200,000,000 impression goal. Westphal Decl. ¶ 16.

Moreover, the contents of the notice informed class members of important aspects of the settlement. *See In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. at 351. The notices, both posted to the Settlement Website, explained the proceedings, defined the scope of the class, informed class members of the binding effect of the class action, and explained what relief the Settlements provide. The notices further explained the opt-out procedure, the procedure for objecting to the settlement, and the date and locations of the final approval hearing. The long and short form notices also describe in plain language the RE/MAX Settlement Class definition and how it differs from the Keller Williams class definition. The direct notice and publication notice were written in clear and concise language, which reasonably conveyed the necessary information to the average class member. *See F.C.V., Inc. v. Sterling Nat'l Bank*, 652 F. Supp. 2d 928, 943 (N.D. Ill. 2009). No class member has expressed confusion about the notices. The Court should find that the class notice plan as implemented was reasonable under Rule 23(c) and satisfied due process.[13]

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court (i) grant Final Approval of the Settlements; (ii) certify the Settlement Classes; (iii) approve the application of the Distribution Plan to the Settlements; and (iv) provide other such relief required to effectuate the Settlements.[14]

---

[13] The claims administrator also provided the notice required under the Class Action Fairness Act, 28 U.S.C. § 1715(b) ("CAFA"), on behalf of Keller Williams and RE/MAX. Westphal Decl. ¶ 23.

[14] Plaintiffs will submit a Proposed Order and Final Judgment in connection with their Reply in Support of this Motion so that the order can address any objections or opt-outs should any be received by the deadline.

Dated: June 9, 2026

Respectfully submitted,

*/s/ Vincent Briganti*
Vincent Briganti (pro hac vice)
Margaret MacLean (pro hac vice)
Noelle Forde (pro hac vice)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
(914) 997-0500
vbriganti@lowey.com
mmclean@lowey.com
nforde@lowey.com

George A. Zelcs (Ill. Bar No. 3123738)
Randall P. Ewing, Jr. (Ill. Bar No. 6294238)
Ryan Z. Cortazar (Ill. Bar No. 6323766)
**KOREIN TILLERY, LLC**
205 North Michigan Avenue, Suite 1950
Chicago, IL 60601
(312) 641-9750
gzelcs@koreintillery.com
rewing@koreintillery.com
rcortazar@koreintillery.com

Steven M. Berezney (N.D. Ill. Bar No. 56091)
**KOREIN TILLERY, LLC**
505 North 7th Street, Suite 3600
St. Louis, MO 63101
(314) 241-4844
sberezney@koreintillery.com

*Counsel for Plaintiffs and the Proposed Class*

16

## CERTIFICATE OF SERVICE

I hereby certify that on June 9, 2026, a true and correct copy of the foregoing was filed electronically through the Court's CM/ECF system, which will send notification of the same to all counsel of record in this matter.

 */s/ Noelle Forde*
Noelle Forde