**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| MYA BATTON, AARON BOLTON, MICHAEL BRACE, DO YEON IRENE KIM, ANNA JAMES, JAMES MULLIS, THEODORE BISBICOS, and DANIEL PARSONS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE NATIONAL ASSOCIATION OF REALTORS, ANYWHERE REAL ESTATE, INC. FORMERLY KNOWN AS REALOGY HOLDINGS CORP., RE/MAX LLC, and KELLER WILLIAMS REALTY, INC.,<br><br>Defendants. | Case No. 1:21-cv-00430 (LAH) |

**MEMORANDUM OF LAW IN SUPPORT OF
CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES
AND PAYMENT OF LITIGATION EXPENSES, AND
<u>PLAINTIFFS' REQUEST FOR SERVICE AWARDS</u>**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 4

    I.   Class Counsel's Attorneys' Fee Request Is Fair and Reasonable...................................... 4

    A.   The Awarded Fee Should Be a Percentage of the Fund ..................................................... 4

    B.   The Requested Fee is Reasonable Under the Percentage of the Fund Method .................. 5

        1.     The One-Third Attorneys' Fee Request Is Consistent With an Appropriate Market Rate as Evidenced by Similar Cases....................................................................... 5

        2.     One-Third of the Settlement Fund is Fair and Reasonable Given The Risk of Nonpayment, the Quality of Class Counsel's Representation, the Amount of Work Necessary, and the Stakes of the Case. .................................................................... 6

        3.     The Complexity of the Action Justifies the Fee Request....................................... 8

        4.     Class Counsel's Representation Supports Granting the Requested Fee ................. 8

        5.     The Attorneys' Fee Request Is Properly Calibrated to the Stakes of the Action.... 9

        6.     A Lodestar Cross-Check Confirms the Reasonableness of the Fee Request........ 10

    II.  The Request for Payment of Litigation Expenses is Reasonable and Should be Granted................................................................................................................... 11

    III. The Court Should Grant Plaintiffs' Request for Service Awards.................................... 13

CONCLUSION................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
  792 F. Supp. 2d 1028 (N.D. Ill. 2011) ....................................................................... 10

*Beesley v. Int'l Paper Co.*,
  No. 06-703, 2014 WL 375432 (S.D. Ill. Jan. 31, 2014) ........................................ 12, 15

*Boeing v. Van Gemert*,
  444 U.S. 472 (1980) ................................................................................................ 12

*Burr v. Loadsmart, Inc.*,
  No. 23 C 3708, 2026 WL 892554 (N.D. Ill. Mar. 25, 2026)..................................... 12

*Charvat v. Valente*,
  No. 12-cv-05746, 2019 WL 5576932 (N.D. Ill. Oct. 28, 2019).............................. 5, 14

*Cook v. Niedert*,
  142 F.3d 1004 (7th Cir. 1998) ....................................................................... 10, 13, 14

*Corzo v. Brown Univ.*, No. 22 C,
  00125, 2026 WL 881598 (N.D. Ill. Mar. 31, 2026) .................................................... 5

*Domann v. Summit Credit Union,*
  No. 18-CV-167-WMC, 2020 WL 1847868, at *2 (W.D. Wis. Apr. 13, 2020).......... 11

*Fishman v. Est. of Wirtz*,
  807 F.2d 520 (7th Cir. 1986) ...................................................................................... 7

*Florin v. Nationsbank of Georgia, N.A.*,
  34 F.3d 560 (7th Cir. 1994) ........................................................................................ 8

*Gaskill v. Gordon*,
  160 F.3d 361 (7th Cir. 1998) .................................................................................. 4, 6

*Greenville IL, et al. v. Syngenta Crop Protection, Inc.,*
  *et al.*, 904 F. Supp. 2d 902 (S.D. Ill. 2012) ............................................................ 12

*Heekin v. Anthem, Inc.*,
  No. 1:05–cv–01908, 2012 WL 5878032 (S.D. Ind. Nov. 20, 2012) ........................ 10

*Hirmer v. ESO Sols., Inc.*,
  No. 22 C 01018, 2025 WL 2048339 (N.D. Ill. Jan. 14, 2025) .............................. 4, 14

*In re Automatic Card Shufflers Litig.*,
No. 21-CV-01798, 2026 WL 892509 (N.D. Ill. Mar. 31, 2026) ................................................. 7

*In Re Broiler Chicken Antitrust Litigation*,
No. 16 C 8637, 2021 WL 5709250 (N.D. Ill. Dec. 1, 2021) ................................................. 6, 13

*In re Dairy Farmers of Am., Inc.*,
80 F. Supp. 3d 838 (N.D. Ill. 2015) ........................................................................................... 6

*In re Ky. Grilled Chicken Coupon Mktg. & Sales Pracs. Litig.*,
No. 09 C 7670, 2011 WL 13257072 (N.D. Ill. Nov. 30, 2011) ................................................. 4

*In re Lithotripsy Antitrust Litig.*,
No. 98 C 8394, 2000 WL 765086 (N.D. Ill. June 12, 2000) ...................................................... 6

*In re Marsh ERISA Litig.*,
265 F.R.D. 128 (S.D.N.Y. 2010)................................................................................................ 9

*In re NCAA Student-Athlete Concussion Inj. Litig.*,
332 F.R.D. 202 (N.D. Ill. 2019) ............................................................................................... 11

*In re Southwest Airlines Voucher Litig.*,
No. 11-CV-8176, 2013 WL 4510197 (N.D. Ill. Aug. 26, 2013) .............................................. 14

*In re Synthroid Mktg. Litig.*,
264 F.3d 712 (7th Cir. 2001) ............................................................................... 5, 8, 12, 13

*In re Synthroid Mktg. Litig.*,
325 F.3d 974 (7th Cir. 2003) ..................................................................................................... 5

*In re TikTok, Inc., Consumer Priv. Litig.*,
617 F. Supp. 3d 904 (N.D. Ill. 2022)....................................................................................... 11

*In re Trans Union Corp. Privacy Litig.*,
No. 00 C 4729, 2009 WL 4799954 (N.D. Ill. Dec. 9, 2009)...................................................... 4

*In re Turkey Antitrust Litig.*,
No. 19-CV08318, 2022 WL 122943 (N.D. Ill. Jan. 10, 2022)................................................. 13

*Kaufman v. Am. Express Travel Related Servs., Co.*,
No. 07-cv-1707, 2016 WL 806546 (N.D. Ill. Mar. 2, 2016)...................................................... 5

*Kolinek v. Walgreen Co.*,
311 F.R.D. 483 (N.D. Ill. 2015) ......................................................................................... 5, 12

iii

*Koszyk v. Country Fin. a/k/a CC Servs., Inc.*,
   No. 16-cv-3571, 2016 WL 5109196 (N.D. Ill. Sept. 16, 2016)............................................. 6, 14

*Moehrl v. Nat'l Ass'n of Realtors,*
   No. 19-CV-01610, 2023 WL 2683199 (N.D. Ill. Mar. 29, 2023) ................................................. 7

*Schulte v. Fifth Third Bank*,
   805 F. Supp. 2d 560 (N.D. Ill. 2011).................................................................................... 7, 10

*Silverman v. Motorola Sols., Inc.*,
   739 F.3d 956 (7th Cir. 2013) ...................................................................................................... 6

*Spicer v. Chi. Bd. Options Exch., Inc.*,
   844 F. Supp. 1226 (N.D. Ill. 1993).................................................................................... 12, 13

*Standard Iron Works v. ArcelorMittal*,
   No. 08 C 5214, 2014 WL 7781572 (N.D. Ill. Oct. 22, 2014)...................................................... 11

*State of Illinois v. Harper & Row Publishers, Inc.*,
   55 F.R.D. 221 (N.D. Ill. 1972) .................................................................................................... 8

*Sutton v. Bernard*,
   504 F.3d 688 (7th Cir. 2007) ................................................................................................. 4, 6

*T.K. Through Leshore v. Bytedance Tech. Co.*,
   No. 19-CV-7915, 2022 WL 888943 (N.D. Ill. Mar. 25, 2022) ............................................. 4, 10

*Taubenfeld v. Aon Corp.*,
   415 F.3d 597 (7th Cir. 2005) ...................................................................................................... 6

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) .................................................................................................. 11

*Williams v. Rohm & Haas Pension Plan*,
   658 F.3d 629 (7th Cir. 2011) .................................................................................................... 10

**Rules**

Federal Rules of Civil Procedure 23 ............................................................................................. 12
Federal Rules of Civil Procedure 23(h) .......................................................................................... 1

**Other Authorities**

5 NEWBERG ON CLASS ACTIONS § 17:1 (5th ed. 2018) ................................................................. 13

Pursuant to this Court's orders preliminarily approving the Settlements with Defendants Keller Williams Realty, LLC ("Keller Williams") and RE/MAX LLC ("RE/MAX" and together with Keller Williams, the "Settling Defendants") (ECF Nos. 269, 314), and Rule 23(h) of the Federal Rules of Civil Procedure, Class Counsel respectively submit this memorandum in support of their motion for (1) an award of $9,500,000 as attorneys' fees; (2) reimbursement of $4,500,000 for the necessary and reasonable litigation costs and expenses already incurred in prosecuting this Action, and leave to withdraw $500,000 from the Keller Williams Settlement Fund for current and future litigation expenses; and (3) a service award of (a) $5,000 each to Plaintiffs Irene Kim, Michael Brace, Daniel Parsons, Anna James, Aaron Bolton, (b) $3,500 for Plaintiff James Mullis, and (c) $2,000 each to Theodore Bisbicos, and Mya Batton.

## INTRODUCTION

For more than five years, Class Counsel Korein Tillery LLC ("Korein Tillery") and Lowey Dannenberg, P.C. ("Lowey") have zealously prosecuted this Action to obtain compensation for homebuyers who paid inflated home prices and received lower quality buyer-broker services because of a decades-long conspiracy between the National Association of REALTORS® and the country's largest residential real estate brokerages to raise, fix, maintain, or stabilize residential real estate broker commissions. Joint Declaration of Vincent Briganti and Randall Ewing ("Joint Decl.") ¶¶ 15-34. Class Counsel invested thousands of hours and millions of dollars of resources into prosecuting claims on behalf of homebuyers. *Id.* ¶¶ 45-47. To put into context the enormity of their efforts, Class Counsel defeated three motions to dismiss and thereafter engaged in extensive discovery during which they obtained and analyzed 80 deposition transcripts from depositions in related litigation on behalf of home sellers; over 526,000 documents totaling approximately 4,150,000 pages from Defendants, along with more than 100,000 and 64 gigabytes of transaction data from third parties. *Id.* ¶ 24. Class Counsel worked alongside experts that spent

almost 6,000 hours analyzing the residential real estate market in nearly 20 countries, granular real estate transaction and tax data from the United States, and the liability evidence obtained in discovery to craft opinions concerning class and merits issues. *Id.* ¶¶ 26-27. These experts ultimately estimated $2.6 billion in damages for a subset of the class. *Id.* ¶ 27.

For their part, each of the named Plaintiffs devoted numerous hours of work towards this litigation, providing Class Counsel with important facts about their transactions and interactions with brokers and searching for and collecting documents relevant to the litigation. *Id.* ¶ 25. Plaintiffs Kim, Parsons, Brace, James, and Bolton, whose claims were not stayed,[1] produced over 8,000 documents, participated in at least six hours *each* of preparatory meetings with Class Counsel, and sat for depositions totaling more than 20 hours on the record. *Id.* When it became clear that home seller litigation may impair the rights of certain homebuyer class members, Plaintiff Mullis worked with Class Counsel to object to the settlements and appeal their final approval. *Id.* ¶¶ 30-31.

In the face of this extensive discovery and significant damages exposure, Plaintiffs and Settling Defendants agreed to discuss settlement with the assistance of renowned mediator Gregory Lindstrom of Phillips ADR Enterprises. *Id.* ¶¶ 35-38. Following their respective mediations, Plaintiffs continued to negotiate with Keller Williams and RE/MAX with the assistance of Mr. Lindstrom. *Id.* ¶¶ 37-38. Negotiations were hard-fought and informed based on

---

[1] On May 9, 2024, the court in *Burnett v. The National Association of Realtors*, No. 4:19-cv-00332 (W.D. Mo.) ("*Burnett*"), granted final approval of three class settlements involving Anywhere Real Estate, Inc., RE/MAX, and Keller Williams (ECF No. 1487 ("the Final Approval Order")). The Final Approval Order "enjoined from filing, commencing, prosecuting, intervening in, or pursuing as a plaintiff or class member any Released Claims against any of the Released Parties[.]" *Id.* ¶ 63. Although Plaintiffs disagreed that the injunction was in effect, in order to preserve judicial and party resources, Plaintiffs agreed to a joint motion for a partial stay of the claims of Plaintiffs Mullis, Batton, and Bisbicos, who were part of the *Burnett* settlement classes. ECF No. 162. The Court thereafter granted the motion and stayed these Plaintiffs' claims. ECF No. 179.

the robust discovery record and a complex legal landscape. *Id*. ¶ 36. After five years of litigation, Class Counsel reached an icebreaker settlement with Keller Williams for $20 million to settle all homebuyer claims ("Keller Williams Settlement Fund"). *Id*. ¶¶ 35, 37. Class Counsel further engaged allocation counsel to ensure the equitable allocation of the settlement funds among class members with differing litigation risks. *Id*. ¶ 39. On March 19, 2026, Plaintiffs executed a settlement agreement with RE/MAX for $8.5 million to release the claims of homebuyers not impacted by ongoing seller litigation and to guard against the possibility of non-recovery in light of RE/MAX's financial position ("RE/MAX Settlement Fund" and, together with Keller Williams Settlement Fund, "Settlement Fund"). *Id*. ¶¶ 35, 38. The Court preliminarily approved both Settlements and their distribution plans, finding that they were "entered into at arm's length by experienced counsel, supervised by a neutral mediator, treat[] all class members equitably, and preliminarily appear[] to be reasonable, fair, and adequate." ECF No. 314 at ¶ 5; ECF No. 269 at ¶ 5.

Consistent with the Settlement Agreements and notice to the Settlement Classes, Class Counsel request one-third of the Settlement Fund ($9,500,000) for attorneys' fees, $4.5 million for reimbursement of expenses, authority to withdraw up to $500,000 from the Keller Williams Settlement Fund to defray ongoing and future litigation costs, and $32,500 (only 0.11% of the Settlement Fund) in total service awards for the Plaintiffs. In light of the above, and as described below, Class Counsel's one-third fee request is eminently reasonable and consistent with awards from similar complex class action settlements in this District. Similarly, the expenses for which Class Counsel seeks reimbursement were reasonably incurred in achieving this excellent result for the Classes and should be paid out of the Settlement Fund. In complex class action cases like this one, courts regularly allow for the creation of a litigation fund to offset ongoing case costs. Finally,

Plaintiffs devoted substantial time and effort to this litigation. The requested service awards are appropriate and consistent with service awards routinely granted by courts in this District to recognize the significant contributions of named plaintiffs in class action litigation.

## **ARGUMENT**

I.     **Class Counsel's Attorneys' Fee Request Is Fair and Reasonable**

   **A.  The Awarded Fee Should Be a Percentage of the Fund**

In common fund cases like this one, lawyers that secure recovery for the class are entitled to reasonable attorneys' fees. *See Sutton v. Bernard*, 504 F.3d 688, 691-92 (7th Cir. 2007) (the common fund doctrine "is based on the equitable notion that those who have benefited from litigation should share in its costs"); *Hirmer v. ESO Sols., Inc.*, No. 22 C 01018, 2025 WL 2048339, at *3 (N.D. Ill. Jan. 14, 2025) (Hunt, J.) ("Counsel who recover a common fund for the benefit for persons other than themselves for their client are entitled to a reasonable attorneys' fee from the fund as a whole."). Courts within this Circuit "have discretion to choose either the lodestar or the percentage method of calculating fees." *In re Trans Union Corp. Privacy Litig.*, No. 00 C 4729, 2009 WL 4799954, at *9 (N.D. Ill. Dec. 9, 2009). "The approach favored in the Seventh Circuit", however, "is to compute attorney's fees as a percentage of the benefit conferred upon the class." *In re Ky. Grilled Chicken Coupon Mktg. & Sales Pracs. Litig.*, No. 09 C 7670, 2011 WL 13257072, at *3 (N.D. Ill. Nov. 30, 2011); *see also Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) ("When a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund . . . in recognition of the fact that most suits for damages in this country are handled on the plaintiff's side on a contingent-fee basis."); *T.K. Through Leshore v. Bytedance Tech. Co.*, No. 19-CV-7915, 2022 WL 888943, at *24 (N.D. Ill. Mar. 25, 2022) ("the percentage method is employed by the vast majority of courts in the Seventh Circuit."). In contrast, courts have strongly criticized the lodestar method. *See In re Synthroid Mktg. Litig.*, 325 F.3d 974,

4

979-80 (7th Cir. 2003) (noting that the lodestar method may create a conflict of interest between the attorney and client and reward inefficiency); *Kaufman v. Am. Express Travel Related Servs., Co.*, No. 07-cv-1707, 2016 WL 806546, at \*13 n.19 (N.D. Ill. Mar. 2, 2016) ("[t]he use of a lodestar cross-check in a common fund case is unnecessary, arbitrary, and potentially counterproductive."). Accordingly, the Court should apply the percentage of the fund method in line with the majority of courts in this District and Circuit. Even applying the lodestar cross-check, however, the requested fee is justified.

### B. The Requested Fee is Reasonable Under the Percentage of the Fund Method

In this Circuit, the Court must do its "best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) ("*Synthroid I*"); *Corzo v. Brown Univ.*, No. 22 C 00125, 2026 WL 881598, at \*10 (N.D. Ill. Mar. 31, 2026) (same). Using the market rate as a guide, courts then adjust fee rates obtained in similar cases based on factors unique to the case at bar, including the risk of nonpayment, the quality of the firms' performance, the work required, and the stakes of the case. *Synthroid I*, 264 F.3d at 721; *Charvat v. Valente*, No. 12-cv-05746, 2019 WL 5576932, at \*11 (N.D. Ill. Oct. 28, 2019) (same). Here, each one of these considerations supports granting Plaintiffs' requested fee award of one-third of the total Settlement Fund.

### 1. The One-Third Attorneys' Fee Request Is Consistent With an Appropriate Market Rate as Evidenced by Similar Cases

"As the Seventh Circuit has held, attorney's fee awards in analogous class action settlements shed light on the market rate for legal services in similar cases." *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 501 (N.D. Ill. 2015) (citation omitted); *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 845 (N.D. Ill. 2015) ("As a barometer for assessing the reasonableness of a fee

5

award in common-fund cases, courts look to the going market rate for legal services in similar cases."). In this Circuit, "[c]ourts routinely hold that one-third of a common fund is an appropriate attorneys' fees award in class action settlement[s.]" *Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, No. 16-cv-3571, 2016 WL 5109196, at *4 (N.D. Ill. Sept. 16, 2016); *see also Taubenfeld v. Aon Corp.*, 415 F.3d 597, 599-600 (7th Cir. 2005) (noting courts in this district have awarded fees of 30-39% of the settlement fund); *Gaskill*, 160 F.3d at 362-63 (affirming award of 38% of fund); *In re Opana ER Antitrust Litig.*, No. 1:14-cv-10150, ECF No. 1085 (N.D. Ill. Nov. 3, 2022) (awarding 36% of antitrust settlement fund). Indeed, one-third is the norm in complex antitrust class actions like this one. *In Re Broiler Chicken Antitrust Litigation*, No. 16 C 8637, 2021 WL 5709250, at *4 (N.D. Ill. Dec. 1, 2021) ("Most persuasive are the large number of antitrust cases in this circuit that have awarded one-third of the common fund as attorney's fees. . . . With the only real evidence of the 'market rate' being one-third, that is what the Court will award."); *In re Lithotripsy Antitrust Litig.*, No. 98 C 8394, 2000 WL 765086, at *2 (N.D. Ill. June 12, 2000) ("33.3% of the fund plus expenses is well within the generally accepted range of attorneys['] fees in class-action antitrust lawsuits.").

> **2. One-Third of the Settlement Fund is Fair and Reasonable Given the Risk of Nonpayment, the Quality of Class Counsel's Representation, the Amount of Work Necessary, and the Stakes of the Case.**

The risk of non-payment is a key consideration when determining the reasonableness of a fee award. "The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel." *See Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013); *Sutton*, 504 F.3d at 693 (when determining the reasonableness of a fee request, courts put a fair amount of emphasis on the severity of the risk that class counsel assumed).

As described in the Joint Decl., Class Counsel assumed substantial risk in prosecuting this case. This Action was the first action in the country on behalf of homebuyers who were uniquely

6

impacted by the alleged conspiracy and therefore required unique evidence of impact and damages. Joint Decl. ¶¶ 16-17. Adding further uncertainty, the Court held that homebuyers are indirect purchasers, which required Class Counsel to plead claims under numerous state statutes and, with the assistance of world-class experts, develop a model of class-wide impact, and damages that took account of each relevant state. *Id.* ¶¶ 19-20. Although class certification was eventually stayed, it is apparent from the history of this Action (Joint Decl. ¶ 28) that "class certification . . . would . . . be hotly-contested and followed by an inevitable appeal" by whichever party lost. *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011). While Plaintiffs believe they could have certified a class based on the robustness of their experts' model and the fact that similar benchmark (or "yardstick") analyses are widely accepted in antitrust cases,[2] Settling Defendants are represented by sophisticated attorneys and are armed with their own experts, who undoubtedly would have launched a substantial coordinated attack on Plaintiffs' motion for class certification.

The uncertainty was amplified with the purported release of portions of Plaintiffs' class claims, first in the Eighth Circuit, and then in *Tuccori et al. v. At World Properties et al.*, 1:24-cv-00150 (N.D. Ill.). While Plaintiffs categorically disagree that these settlements properly released any of Plaintiffs' claims, the preliminary and final approval of these other settlements led to greater uncertainty regarding recovery for Plaintiffs and Class Counsel in this Action.

Class Counsel also assumed the risk of this litigation, including the advancement of time, costs, and expenses necessary to prosecute this matter zealously on an entirely contingent basis.

---

[2] *Moehrl v. Nat'l Ass'n of Realtors,* No. 19-CV-01610, 2023 WL 2683199, at *8 (N.D. Ill. Mar. 29, 2023) ("the Court finds that 'the yardstick approach is a well-established methodology' in antitrust actions"); *Fishman v. Est. of Wirtz*, 807 F.2d 520, 551 (7th Cir. 1986) ("The concept of a 'yardstick' measure of damages, that is, linking the plaintiff's experience in a hypothetical free market to the experience of a comparable firm in an actual free market, is ... well accepted."); *In re Automatic Card Shufflers Litig.*, No. 21-CV-01798, 2026 WL 892509, at *8 (N.D. Ill. Mar. 31, 2026) ("Plaintiffs have chosen a recognized method—yardstick comparison—to approximate competitive prices").

Courts have long recognized that the attorneys' contingent risk is an important factor in determining the fee award. *See Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 565 (7th Cir. 1994) ("The lawyers for the class receive no fee if the suit fails, so their entitlement to fees is inescapably contingent."). This factor supports the requested fee award.

### 3. The Complexity of the Action Justifies the Fee Request

The requested one-third fee is also fair and reasonable given the complexity of the underlying claims in the Action. To prosecute these claims, Class Counsel studied the longstanding and complex residential real estate market as well as the text, application, and enforcement of several NAR rules across multiple Defendants, franchisees, subsidiaries, and MLSs. Joint Decl., ¶ 17. Class Counsel further researched and developed a comprehensive understanding of the antitrust and consumer protection laws of all 50 states to determine under which states' laws Plaintiffs could plead damages as indirect purchasers. *Id*. ¶ 20. Class Counsel then invested thousands of hours obtaining the necessary discovery, reviewing and analyzing information and data, working with their experts to develop a complex damages model, drafting complaints, opposing Defendants' multiple motions to dismiss on numerous grounds, and drafting their motion for class certification. *Id*. ¶¶ 15-34; 45. All of this led to a litigation posture that set the stage to achieve this positive resolution for the Classes. The complexity of the action confirms that Class Counsel's fee request is reasonable.

### 4. Class Counsel's Representation Supports Granting the Requested Fee

Fees "should be measured in relation to the benefits conferred upon the [class, and] there is no better test than this of the efficacy of the services rendered." *State of Illinois v. Harper & Row Publishers, Inc.*, 55 F.R.D. 221, 224 (N.D. Ill. 1972); *see also Synthroid I*, 264 F.3d at 721. The Court has already acknowledged the "tremendous job" Class Counsel has done representing homebuyers in this litigation. Hr'g Tr. dated Apr. 16, 2026 at 13:20-24 ("I don't have any questions

or concerns at all about the competency of your firm to serve as class counsel . . . . I think you've done the bulk of the work here and done a tremendous job."). The Court's statements are supported by the extensive time and work Class Counsel devoted to this Action—over five years and 20,000 hours—to achieve favorable settlements for the Classes. Joint Decl., ¶¶ 34, 45. Throughout these five years, Class Counsel conducted an extensive pre-suit investigation to develop complaints, researched the laws of all 50 states to vet viable indirect purchaser claims, engaged in extensive discovery, and prepared for and defended five depositions. *Id*. ¶¶ 15-34. Class Counsel additionally spent nearly $4 million on world-class experts to opine on complex issues regarding the market, impact and damages. *Id*. ¶ 25. Class Counsel then spent months negotiating the Settlements, including attending mediations, exchanging detailed and lengthy mediation briefs, and negotiating and finalizing the terms of the Settlements and the settlement papers. *Id*. ¶¶ 37-38.

Moreover, Class Counsel are experienced in litigating consumer class actions, including antitrust cases. ECF No. 310-1, Briganti-Ewing Decl., Firm Résumés, Exs. B & C. And because they were proceeding on a contingent fee basis, Class Counsel "had a strong incentive to keep expenses at a reasonable level[.]" *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 150 (S.D.N.Y. 2010).

The quality of Class Counsel's performance and time invested through substantial investigation, discovery, adversarial briefing, and hard-fought negotiations to achieve a $28.5 million Settlement Fund for the benefit of the Settlement Classes supports the requested fee award.

### 5. The Attorneys' Fee Request Is Properly Calibrated to the Stakes of the Action

In evaluating the stakes in the case in relation to the requested fee award, courts assess the overall importance of the case by reference to factors such as the scale of the challenged conduct, complexity and cost of the action, the potential amount of damages involved, and the risks of continued litigation to judgment. *See AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1038-39 (N.D. Ill. 2011) ("the stakes in the case are exceptionally large given the

scale of the challenged activity, the complexity and costs of the legal proceedings, the amount of money involved, and thus the potential loss to Class Counsel should they have litigated the case to judgment and not prevailed"); *Bytedance Tech.*, 2022 WL 888943, at \*25 (same).

This action seeks to compensate homebuyers across the country for harm they suffered from a decades-long nationwide conspiracy. Plaintiffs' experts estimated $2.6 billion in damages for just a subset of the class. Joint Decl. ¶ 27. Class Counsel also had a great deal at stake, taking the case on contingency, expending more than 20,000 hours totaling more than $20 million in uncompensated time to litigate the case, and advancing over $4.5 million in costs. *Id*. ¶¶ 46-47. *See, e.g.*, *Schulte*, 805 F. Supp. 2d at 598 (observing that "the stakes in the case are high given the size of the Class, the scale of the challenged activity, the complexity and costs of the legal proceedings, and the amount of money involved"); *Heekin v. Anthem, Inc.*, No. 1:05–cv–01908, 2012 WL 5878032, at \*5 (S.D. Ind. Nov. 20, 2012) (class counsel "had a great deal at stake, with the risk of non-payment, burden of advancing litigation costs of over $6 million, and the 'opportunity costs' of turning down other lucrative clients"). Prosecution of homebuyer claims against unfair practices that inflated home prices and that homebuyers were nearly powerless to resist also promotes market fairness and competition, confirming the important stakes at issue in the case. Accordingly, this factor supports Class Counsel's fee request here.

### 6. A Lodestar Cross-Check Confirms the Reasonableness of the Fee Request

The Seventh Circuit does not require a lodestar cross-check when using the percentage method. *See Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 636 (7th Cir. 2011) ("[C]onsideration of a lodestar check is not an issue of required methodology.") (citing *Cook v. Niedert*, 142 F.3d 1004, 1013 (7th Cir. 1998) ("[W]e have never ordered the district judge to ensure that the lodestar result mimics that of the percentage approach.")). Nevertheless, if considered, the lodestar multiplier supports the appropriateness of the fee request. Class Counsel, together with

allocation counsel and appellate counsel, worked 24,659.92 hours on this case through March 31, 2026, amounting to $20,190,535.20 in lodestar-based market rates.[3] Joint Decl. ¶ 45. A one-third fee award equals a lodestar multiplier of 0.47.[4] *Id*. ¶ 46. This multiplier falls well below the range routinely awarded by courts in this Circuit. *In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 943 (N.D. Ill. 2022) (stating "[i]n practice, most multipliers fall between one and four," and approving a multiplier of 2.04 for a $92 million fund), *appeal dismissed*, 2022 WL 19079999 (7th Cir. Oct. 12, 2022); *In re NCAA Student-Athlete Concussion Inj. Litig.*, 332 F.R.D. 202, 225 (N.D. Ill. 2019), *aff'd sub nom. Walker v. NCAA*, 2019 WL 8058082 (7th Cir. Oct. 25, 2019) (approving a multiplier of 1.5 for a $70 million settlement); *Standard Iron Works v. ArcelorMittal*, No. 08 C 5214, 2014 WL 7781572, at *2-3 (N.D. Ill. Oct. 22, 2014) (approving a fee award of one-third of the settlement fund, with a lodestar multiplier of approximately 1.97); *see also Domann v. Summit Credit Union,* No. 18-CV-167-WMC, 2020 WL 1847868, at *2 (W.D. Wis. Apr. 13, 2020) ("The fact that the lodestar method produces a 'negative multiplier' is also a factor supporting the reasonableness of the fee request"); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 & n.6 (9th Cir. 2002) (noting 83% of surveyed cases with a common fund use a lodestar multiplier between one and four).

## II.     The Request for Payment of Litigation Expenses is Reasonable and Should be Granted

"It is well-established that counsel who create a common fund are entitled to reimbursement of litigation costs and expenses." *Beesley v. Int'l Paper Co.*, No. 06-703, 2014 WL 375432, at *3 (S.D. Ill. Jan. 31, 2014) (citing Fed. R. Civ. P. 23; citing *Boeing v. Van Gemert*, 444

---

[3] Class Counsel used current rates for current employees and, for former employees, Class Counsel used the final billing rate of the employee's tenure.

[4] Even excluding allocation and appellate counsel's lodestar, the multiplier is 0.48.

U.S. 472, 478 (1980)); *see also Synthroid I*, 264 F.3d at 722 (vacating and remanding district court decision denying expenses incurred in creating common fund recovery). The Seventh Circuit has held that costs and expenses should be awarded based on the types of "expenses private clients in large class actions (auctions and otherwise) pay." *Synthroid I*, 264 F.3d at 722; *see also Spicer v. Chi. Bd. Options Exch., Inc.*, 844 F. Supp. 1226, 1256 (N.D. Ill. 1993) (noting that courts regularly award reimbursement of those expenses that are reasonable and necessarily incurred in the course of litigation).

As detailed in their accompanying declaration, Class Counsel and supporting counsel incurred $4,538,466.31 in expenses prosecuting this Action between January 2021 and March 31, 2026. Joint Decl. ¶ 47. About 95% of these total expenses ($4,320,004.15) were accrued in connection with mediation, consulting, and expert work, including approximately $3.97 million (about 88% of the total expenses) in work done by Plaintiffs' experts to analyze the data and evidence in the Action, develop a classwide damages model, draft opinions supporting class certification, and assist with developing the Distribution Plans. *Id.* ¶¶ 26, 47. A total of $104,324.60 (approximately 2.3%) was spent on computer research, which included fees directly related to legal research performed specifically in connection with the Action. *Id.* The remaining expenses related to photocopies, court costs, confirmatory discovery-related expenses, travel expenses and other charges routinely awarded by courts in the class action settlement context. *Id*; *see Kolinek*, 311 F.R.D. at 501; *Greenville IL, et al. v. Syngenta Crop Protection, Inc. et al.*, 904 F. Supp. 2d 902, 910 (S.D. Ill. 2012); *Burr v. Loadsmart, Inc.*, No. 23 C 3708, 2026 WL 892554, at *2 (N.D. Ill. Mar. 25, 2026) (Hunt, J.) (approving "out-of-pocket costs reasonably expended to prosecute the case, including fees for two mediations, computerized research, filing fees, *pro hac vice* admission fees, shipping costs, travel and related costs for mediation and depositions, and

court reporter and deposition transcript fees"). In light of the complexity of the litigation and the result achieved for the Settlement Classes, Class Counsel's request for payment of expenses is fair and reasonable.

As provided in the notice papers, Class Counsel also request leave to withdraw up to $500,000 from the Keller Williams Settlement Fund to pay for ongoing and future litigation expenses. An award to support litigation expenses is reasonable and this court has previously granted such requests. *See, e.g.*, *In re Turkey Antitrust Litig.*, No. 19-CV08318, 2022 WL 122943, at *1 (N.D. Ill. Jan. 10, 2022) (awarding class counsel over $1,000,000 to cover "ongoing litigation expenses"); *Spicer*, 844 F. Supp. at 1226 (awarding amount that "covers any future fees expended in the remaining administration of the [settlement] fund" and legitimate future expenses).

### III.     The Court Should Grant Plaintiffs' Request for Service Awards

Class Counsel also respectfully request that the Court grant service awards totaling $32,500, consisting of $5,000 to Plaintiffs Kim, Brace, Parsons, James, and Bolton, $3,500 to Plaintiffs Mullis, and $2,000 each to Plaintiffs Bisbicos and Batton.

"[I]ncentive awards are now paid in most class suits and average between $10-$15,000 per class representative." *In re Broiler Chicken Antitrust Litig.*, No. 1:16-cv-08637, 2021 WL 5709250, at *5 (N.D. Ill. Dec. 1, 2021) (quoting 5 NEWBERG ON CLASS ACTIONS § 17:1 (5th ed. 2018)). Service awards encourage individuals to take on the responsibility of bringing a representative suit. *Synthroid I*, 264 F.3d at 722 ("Incentive awards are justified . . . to induce individuals to become named representatives."); *Cook*, 142 F.3d at 1016 (recognizing that "because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit"). Service awards recognize that without the class representatives' commitment of efforts, the class would not have been able to recover anything. *Charvat*, 2019 WL 5576932, at *10 (class representatives "subject[]

13

[themselves] to various risks, including the burdens of discovery and potential responsibility for a defendant's costs or attorneys' fees should the suit fail."); *Koszyk*, 2016 WL 5109196, at *2 ("[i]ncentive awards serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred . . . and any other burdens sustained by the plaintiffs.").

Here, each and every one of the named plaintiffs spent significant time assisting counsel with facts, keeping apprised of the litigation posture and settlements, reviewing pleadings and motions, conferring with counsel, and collecting documents. Joint Decl. ¶ 25. Plaintiffs Kim, Brace, Parsons, James, and Bolton spent numerous additional hours preparing for, traveling to, and sitting for depositions. *Id.* In total, these five plaintiffs produced over 8,000 documents—a considerable amount for individual plaintiffs. *Id.* Plaintiff Mullis also served as the class's champion in challenging the purported release of his claims in related seller litigation, which efforts remain ongoing. *Id*. ¶¶ 30-33.

The service awards requested for each of these plaintiffs are less than other service awards to plaintiffs who demonstrated similar involvement in complex matters. *See, e.g.*, *Cook*, 142 F.3d at 1016  (awarding a $25,000 service award to named plaintiff in an ERISA action that settled for $13 million); *In re Southwest Airlines Voucher Litig.*, No. 11-CV-8176, 2013 WL 4510197, at *11 (N.D. Ill. Aug. 26, 2013) (approving service awards of $15,000 each for two named plaintiffs in a consumer class action); *Hirmer*, 2025 WL 2048339, at *3 (Hunt, J.) (awarding $10,000 incentive award from approximate $4 million settlement, and citing three Northern District of Illinois cases awarding $10,000 or more as incentive awards). Further, the proposed service awards comprise just 0.11% of the Settlements, well within the range of typical incentive awards. *See Beesley*, 2014 WL 375432, at *4 ("Awards of $15,000 to $25,000 for a Named Plaintiff award and total Named

14

Plaintiff awards of less than one percent of the fund are well within the ranges that are typically awarded in comparable cases."). The requested service awards are reasonable in light of Plaintiffs' efforts on behalf of Class.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court approve Class Counsel's motion for attorneys' fees and payment of litigation expenses, and Plaintiffs' request for service awards in the amounts set forth above.

15

Dated: June 9, 2026

Respectfully submitted,

*/s/ Vincent Briganti*
Vincent Briganti (*pro hac vice*)
Margaret MacLean (*pro hac vice*)
Noelle Forde (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
(914) 997-0500
vbriganti@lowey.com
mmclean@lowey.com
nforde@lowey.com

George A. Zelcs (Ill. Bar No. 3123738)
Randall P. Ewing, Jr. (Ill. Bar No. 6294238)
Ryan Z. Cortazar (Ill. Bar No. 6323766)
**KOREIN TILLERY, LLC**
205 North Michigan Avenue, Suite 1950
Chicago, IL 60601
(312) 641-9750
gzelcs@koreintillery.com
rewing@koreintillery.com
rcortazar@koreintillery.com

Steven M. Berezney (N.D. Ill. Bar No. 56091)
**KOREIN TILLERY, LLC**
505 North 7th Street, Suite 3600
St. Louis, MO 63101
(314) 241-4844
sberezney@koreintillery.com

*Counsel for Plaintiffs and the Proposed Class*

16

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 9, 2026, a true and correct copy of the foregoing was filed electronically through the Court's CM/ECF system, which will send notification of the same to all counsel of record in this matter.

*<u>/s/ Noelle Forde</u>*
Noelle Forde
