# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

CHRISTOPHER MOEHRL, MICHAEL )
COLE, STEVE DARNELL, )
JACK RAMEY, DANIEL )
UMPA, and JANE RUH, on behalf of )
themselves and all others similarly situated, )
                                                      )
      Plaintiffs, )
                                                      )    Case No: 1:19-cv-01610
                                                    )
                                                    )
v.                                              )    Judge Andrea Wood
                                                    )
THE NATIONAL ASSOCIATION OF )
REALTORS, REALOGY HOLDINGS )
CORP., HOMESERVICES OF AMERICA, )
INC., BHH AFFILIATES, LLC, HSF )
AFFILIATES, LLC, THE LONG & )
FOSTER COMPANIES, INC., )
RE/MAX LLC, and KELLER )
WILLIAMS REALTY, INC., )
                                                    )
      Defendants. )

## PLAINTIFFS' OPPOSITION TO THE NON-HOMESERVICES DEFENDANTS' MOTION TO COMPEL ARBITRATION

## TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................. 1

ARGUMENT .................................................................................................................... 1

I.    THE NON-HSA DEFENDANTS HAVE WAIVED ANY RIGHT TO COMPEL ARBITRATION ............................................................................ 1

II.    THERE IS NO CLEAR AND UNMISTAKABLE EVIDENCE THAT ANY HOMESELLER AGREED TO DELEGATE THE QUESTION OF NON-SIGNATORY ARBITRABILITY ................................................... 4

III.    THE NON-HSA DEFENDANTS CANNOT COMPEL ARBITRATION BASED ON EQUITABLE ESTOPPEL ................................... 5

    A.    Maryland – Long & Foster ............................................................... 6

    B.    Virginia – Long & Foster .................................................................. 7

    C.    District of Columbia – Long & Foster ............................................. 8

    D.    Florida – EWM, Florida Realty ....................................................... 8

    E.    Pennsylvania – Fox & Roach ........................................................... 9

    F.    Delaware – Fox & Roach .................................................................. 11

    G.    Arizona – Long Realty ...................................................................... 11

    H.    North Carolina – Preferred Carolinas ............................................. 13

IV.    NO STAY IS WARRANTED ................................................................... 14

CONCLUSION ................................................................................................................. 15

11475931v1/016286

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdurahman v. Prospect CCMC LLC,*
42 F. 4th 156 (3d Cir. 2022) ...................................................10

*Auto. Mechs. Loc. 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.,*
502 F.3d 740 (7th Cir. 2007) ...................................................2

*Beck Auto Sales, Inc. v. Asbury Jax Ford, LLC,*
249 So. 3d 765 (Fla. Dist. Ct. App. 2018) ...................................................9

*Benihana of Tokyo, LLC v. Benihana Inc.,*
73 F. Supp. 3d 238 (S.D.N.Y. 2014) ...................................................15

*Benson v. Casa De Capri Enterprises, LLC,*
502 P.3d 461 (Ariz. 2022) ...................................................12

*Big League Analysis, LLC v. Office of Comm'r of Baseball,*
2016 WL 4684670 (N.C. Sup. Ct. Wake Cty. Aug. 29, 2016) ...................................................14

*U.S. ex rel. Birckhead Elec., Inc. v. James W. Ancel, Inc.,*
2014 WL 2574529 (D. Md. June 5, 2014) ...................................................6

*BlackBerry Ltd. v. Nokia Corp.,*
2018 WL 1525797 (D. Del. Mar. 28, 2018) ...................................................11

*Blanton's v. Domino's Pizza Franchising LLC,*
962 F.3d 842 (6th Cir. 2020) ...................................................5

*Brickstructures, Inc. v. Coaster Dynamix, Inc.,*
952 F.3d 887 (7th Cir. 2020) ...................................................2

*Bultemeyer v. Sys. & Servs. Techs., Inc.,*
2012 WL 4458138 (D. Ariz. Sept. 26, 2012) ...................................................12

*Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.,*
50 F.3d 388 (7th Cir. 1995) ...................................................2

*Caytrans BBC, LLC v. Equip. Rental & Contractors Corp.,*
2010 WL 2293001 (S.D. Ala. June 4, 2010) ...................................................15

*CCC Intelligent Sols. Inc. v. Tractable Inc.,*
36 F. 4th 721 (7th Cir. 2022) ...................................................4

*Cheek v. United Healthcare of Mid-Atlantic, Inc.*,
835 A.2d 656,669 (Md. 2003) ........................................................................6

*Colon v. Conchetta*,
2017 WL 2572517 (E.D. Pa. June 14, 2017) ...............................................11

*Decisive Analytics Corp. v. Chikar*,
75 Va. Cir. 337 (Va. Cir. Ct., Fairfax Cty. 2008) .........................................8

*Dickerson v. Longoria*,
995 A.2d 721 (Md. 2010) ...............................................................................7

*Digisound-WIE, Inc. v. BeStar Techs., Inc.*,
2008 WL 11517597 (N.D. Ill. May 30, 2008) .............................................16

*DSMC, Inc. v. Convera Corp.*,
273 F. Supp. 2d 14 (D.D.C. 2002) .................................................................8

*Epes Logistics Servs., Inc. v. Marcuslund*,
861 S.E.2d 924 (N.C. Ct. App. 2021) ..........................................................14

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995) ........................................................................................4

*G&G Closed Circuit Events, LLC v. Castillo*,
2017 WL 1079241 (N.D. Ill. Mar. 22, 2017) ...............................................15

*Giron v. Subaru of Am., Inc.*,
2022 WL 17130869 (N.D. Ill. Nov. 21, 2022) ...............................................5

*Glass v. Kidder Peabody & Co.*,
114 F.3d 446 (4th Cir. 1997) ..........................................................................3

*GNH Grp. v. Guggenheim Holdings, LLC*,
2020 WL 4287358 (D. Del. July 27, 2020) ...............................................5, 11

*Goergen v. Black Rock Coffee Bar, LLC*,
2023 WL 142911 (D. Or. Jan. 10, 2023) ........................................................5

*Gunson v. BMO Harris Bank, N.A.*,
43 F. Supp. 3d 1396 (S.D. Fla. 2014) ............................................................9

*Haynes v. TransUnion, LLC*,
2021 WL 7906567 (E.D.N.Y. Sept. 30, 2021) ............................................15

*In re Humana Inc. Managed Care Litig.*,
285 F.3d 971 (11th Cir. 2002) ........................................................................9

iv

*Isaak v. Mass. Indem. Life Ins. Co.*,
    623 P.2d 11 (Ariz. 1981).............................................................................13

*It Works Mktg., Inc. v. Melaleuca, Inc.*,
    2021 WL 1650266 (M.D. Fla. Apr. 27, 2021) ...........................................9

*Jackson v. Home Depot, USA, Inc.*,
    857 S.E.2d 321 (N.C. Ct. App. 2021) .......................................................14

*Janel Russel Designs, Inc. v. TPS Assocs, LLC*,
    2009 WL 3242023 (D. Minn. Oct. 1, 2009) .............................................15

*Johnson v. Parsley Energy Operations, LLC*,
    2022 WL 2027963 (W.D. Tex. May 3, 2022) ............................................5

*JTF Aviation Holdings Inc. v. CliftonLarsonAllen LLP*,
    472 P.3d 526 (Ariz. 2020).........................................................................12

*Judge v. Unigroup, Inc.*,
    2017 WL 3971457 (M.D. Fla. Sept. 8, 2017) .......................................7, 8

*K.F.C. v. Snap Inc.*,
    29 F. 4th 835 (7th Cir. 2022) ..................................................................4, 5

*Kennedy v. ADF MidAtlantic, LLC*,
    2015 WL 6596918 (D. Md. Oct. 27, 2015) ...............................................7

*Kipp v. Weyerhauser Co.*,
    354 F. Supp. 3d 622 (E.D. Pa. 2018) .......................................................10

*Klay v. PacificCare Health Sys., Inc.*,
    389 F.3d 1191 (11th Cir. 2004) ................................................................15

*Kramer v. Toyota Motor Corp.*,
    705 F.3d 1122 (9th Cir. 2013) ....................................................................5

*Kroma Makeup EU, LLC v. Boldface Licensing Branding, Inc.*,
    845 F.3d 1351, 1354 (11th Cir. 2017) .......................................................9

*Lavigne v. Herbalife, ltd.*,
    967 F.3d 1110 (11th Cir. 2020) ..................................................................5

*Leidel v. Coinbase, Inc.*,
    729 F. App'x 883 (11th Cir. 2018) .............................................................9

*Linda Constr., Inc. v. Republic Servs. Procurement, Inc.*,
    2017 WL 2619140 (N.D. Ill. June 16, 2017) .............................................2

*Lukis v. Whitepages Inc.*,
535 F. Supp. 3d 775 (N.D. Ill. 2021) ...............................................................2, 3

*Marie v. Allied Home Mortg. Corp.*,
402 F.3d 1 (1st Cir. 2005).....................................................................................3

*Morelli v. Alters*,
2020 WL 2306445 (S.D.N.Y. May 8, 2020) ......................................................15

*Morewitz v. W. of Eng. Ship Owners Mut. Prot. & Indem. Ass'n (Lux.)*,
62 F.3d 1356 (11th Cir. 1995) .............................................................................3

*Morsberger v. ATI Holdings, LLC*,
2023 WL 2711754 (N.D. Ill. Mar. 30, 2023)......................................................7

*Nat'l Oilwell Varco, L.P. v. Sadagopan*,
2018 WL 27634 (S.D. Tex. Jan. 3, 2018) ...........................................................5

*Newman v. Plains All Am. Pipeline, L.P.*,
23 F. 4th 393 (5th Cir. 2022) ...............................................................................4

*Nolan v. Nolan*,
568 A.2d 479 (D.C. 1990) ...................................................................................8

*Noohi v. Toll Brothers*,
708 F.3d 599 (4th Cir. 2013) ...............................................................................6

*O'Connor v. Ford Motor Co.*,
2023 WL 130522 (N.D. Ill. Jan. 9, 2023)...........................................................5

*Pa. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*,
2011 WL 210805 (N.D. Ill. Jan. 20, 2011).........................................................2

*Pogue v. Chisholm Energy Operating, LLC*,
2021 WL 979726 (D.N.M. Mar. 16, 2021)..........................................................5

*Raglani v. Ripken Pro Baseball*,
939 F. Supp. 2d 517 (D. Md. 2013).....................................................................7

*RFB Properties II, LLC v. Deutsche Bank Trust Co.*,
247 A.3d 689 (D.C. 2021) ...................................................................................8

*Royce v. Michael R. Needle P.C.*,
950 F.3d 939 (7th Cir. 2020) ...............................................................................2

*Sakyi v. Estée Lauder Cos.*,
308 F. Supp. 3d 366 (D.D.C. 2018).....................................................................8

vi

*SBMH Grp. DMCC v. Noadiam USA, LLC*,
   297 F. Supp. 3d 1321 (S.D. Fla. 2017) ...................................................................5

*Schoenfeld v. Mercedes-Benz USA, LLC*,
   532 F. Supp.3d 506 (S.D. Ohio 2021) ...................................................................5

*Schreiber v. Friedman*,
   2017 WL 5564114 (E.D.N.Y. Mar. 31, 2017) ....................................................15

*Smith Jamison Constr. v. APAC-Atl., Inc.*,
   811 S.E.2d 635 (N.C. Ct. App. 2018) .................................................................14

*Smith v. GC Servs. L.P.*,
   907 F.3d 495 (7th Cir. 2018) ...............................................................................2

*Sun Valley Ranch 308 Ltd. v. Robson*,
   294 P.3d 125 (Ariz. Ct. App. 2012) ...................................................................13

*In re Titanium Dioxide Antitrust Ligit.*,
   962 F. Supp. 2d 840 (D. Md. 2013) .......................................................................7

*Torres v. CleanNet, USA, Inc.*,
   90 F. Supp. 3d 369 (W.D. Pa. 2015) ...................................................................11

*Tuomala v. Regent Univ.*,
   477 S.E.2d 501 (Va. 1996) .....................................................................................7

*Vincent v. BMW of N. Am.*,
   2019 WL 8013093 (C.D. Cal. Nov. 26, 2019) ....................................................5

*VIPshop Int'l Holdings, Ltd. v. Transpacific Trade Ctr. LLC*,
   2022 WL 4119787 (N.D. Ill. Sept. 9, 2022) ........................................................2

*Volkswagen of Am., Inc. v. Sud's of Peoria, Inc.*,
   474 F.3d 966 (7th Cir. 2007) ...............................................................................15

*Westbard Apts., LLC v. Westood Joint Venture, LLC*,
   940 A.2d 470 (Md. Ct. App. 2007) .........................................................................7

*WMS Gaming, Inc. v. IGT*,
   31 F. Supp. 3d 974 (N.D. Ill. 2014) ...................................................................15

## INTRODUCTION

Keller Williams, RE/MAX, and Realogy (with NAR, the "non-HSA Defendants") seek to compel unspecified class members to arbitrate their claims on the theory that these defendants can enforce arbitration agreements to which they are not signatories based on allegations of concerted misconduct between them and the HomeServices Defendants, *who are also not signatories*. No case cited by Defendants has embraced this broad theory of equitable estoppel, much less when applied to arbitration clauses that specifically limit their scope to named parties to the contract. And the non-HSA Defendants do not analyze the language of the specific arbitration clauses with a view to each of the applicable states' laws. Nuances among these different states are critical, as explained in Plaintiffs' Opposition to the HomeServices Defendants' motions to compel (which is filed contemporaneously and incorporated by reference).

But the non-HSA Defendants' motion fails for a more fundamental reason: these Defendants have waited over four years to assert any ability to enforce the HSA subsidiary arbitration clauses. This is far longer than the typical threshold for finding waiver by litigation conduct within this Circuit, and the non-HSA Defendants have accordingly waived any ability to compel arbitration. Finally, the Court should reject the non-HSA Defendants' request for a stay in the event the Court sends some sellers' claims against HSA to arbitration. Those sellers' claims against the non-HSA Defendants are litigable, and there is no risk of inconsistent rulings because the arbitrators would be called to evaluate at most HomeServices' role in the conspiracy. And because the large majority of class members' claims are indisputably not subject to any arbitration clause, most (if not all) claims against all Defendants will proceed in this Court regardless.

## ARGUMENT

## I.   THE NON-HSA DEFENDANTS HAVE WAIVED ANY RIGHT TO COMPEL ARBITRATION

1

"[L]ike any other contractual right, the right to arbitrate can be waived." *Smith v. GC Servs. L.P.*, 907 F.3d 495, 499 (7th Cir. 2018); *see also, e.g.*, *Auto. Mechs. Loc. 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 746 (7th Cir. 2007) ("[T]he choice of an arbitral forum can be waived early in the proceedings, and generally is waived once the party who later wants arbitration chooses a judicial forum."). "A waiver can be express or implied through action. Either way, the question is whether based on all the circumstances, the party against whom the waiver is to be enforced has acted inconsistently with the right to arbitrate." *Brickstructures, Inc. v. Coaster Dynamix, Inc.*, 952 F.3d 887, 891 (7th Cir. 2020) (cleaned up). Courts in this Circuit have typically found that active participation in litigation of eight months or more constitutes a waiver of the right to arbitrate. *See, e.g.*, *Smith*, 907 F.3d at 500 (eight months); *Cabinetree*, 50 F.3d at 391 (eight months); *St. Mary's*, 969 F.2d at 589 (ten months); *Pa. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, 2011 WL 210805, at *2 (N.D. Ill. Jan. 20, 2011) (eight months); *Linda Constr., Inc. v. Republic Servs. Procurement, Inc.*, 2017 WL 2619140, at *6 (N.D. Ill. June 16, 2017) (year and a half); *VIPshop Int'l Holdings, Ltd. v. Transpacific Trade Ctr. LLC*, 2022 WL 4119787, at *3 (N.D. Ill. Sept. 9, 2022) (two years); *see also Royce v. Michael R. Needle P.C.*, 950 F.3d 939, 950 (7th Cir. 2020) ("A delay of over three-and-a-half years is alone sufficient to find waiver, particularly where [one party] actively participated in the litigation.").

And, while as explained below there is no evidence that any signatory homeseller intended to delegate *any* threshold questions to an arbitrator, the question whether a party waived the right to compel arbitration is squarely and indisputably for this Court. As the court explained in *Lukis*, this is required by Section 3 of the FAA, even where an arbitration clause states that "the arbitrator will decide all threshold questions." *Lukis v. Whitepages Inc.*, 535 F. Supp. 3d 775, 784 (N.D. Ill. 2021); *see also Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 13 (1st Cir. 2005) ("A 'default'

has generally been viewed by courts as including a 'waiver.'"); *Glass v. Kidder Peabody & Co.*, 114 F.3d 446, 455 n.62 (4th Cir. 1997) (stating that a "section 3 default" arises "when a party seeking arbitration has substantially utilized the litigation machinery before pursuing arbitration") (cleaned up); *Morewitz v. W. of Eng. Ship Owners Mut. Prot. & Indem. Ass'n (Lux.)*, 62 F.3d 1356, 1365 n.16 (11th Cir. 1995) ("Although the [FAA] uses the term 'default,' 9 U.S.C. § 3, the case law on this subject employs the term 'waiver.'").

The non-HSA Defendants have plainly waived any right to compel arbitration by waiting *over four years* to assert their purported arbitration rights. Plaintiffs filed their original complaint on March 6, 2019, and their amended complaint on June 14, 2019. *See* ECF Nos. 1, 84. Since then, the parties have litigated a motion to dismiss, engaged in years of fact and expert discovery (including related motion practice), and litigated class certification. The non-HSA Defendants have never asserted the right to compel arbitration based on HomeServices arbitration clauses during that time. Instead, every time the HSA Defendants invoked their arbitration rights—in the in the HSA motion to strike and in opposition to class certification—the HSA Defendants did so unilaterally and the non-HSA Defendants did not indicate any intention to avail themselves of the HSA arbitration clauses. *See* ECF Nos. 205-206 (motion to strike brought only on behalf of the HSA Defendants); 325, at 70-71 & n.131 (stating that "*HSoA* hereby incorporates by reference the affidavits it initially filed . . ." and "If the Court prefers that *HSoA* make a separate motion to reformulate the class definition or to compel arbitration, *HSoA* is of course willing to proceed in that manner") (emphasis added).[1] The Court's class certification order recognizes as much, inviting HomeServices—but not the other Defendants—to file a renewed arbitration motion: "[I]f

---

[1] The non-HSA Corporate Defendants made boilerplate recitations of arbitration rights in the motions to dismiss and in their answers, but did not invoke any specific arbitration clauses and did not join the HSA Defendants' later motion. *See* ECF Nos. 69, at 9 n.2; 116, at 9 n.1; 198, at 54; 199, at 65; 201, at 68.

*HomeServices* wishes to narrow one or both classes, it may do so by separate motion." ECF No. 403, at 53 (emphasis added). The non-HSA Defendants have plainly been aware of the HSA arbitration clauses for years, and have simply chosen not to take advantage of them until now following the adverse class certification ruling.

## II. THERE IS NO CLEAR AND UNMISTAKABLE EVIDENCE THAT ANY HOMESELLER AGREED TO DELEGATE THE QUESTION OF NON-SIGNATORY ARBITRABILITY

The non-HSA Defendants rely entirely on HomeServices' arguments regarding delegation, and do not offer any new arguments or analysis showing that there is "clear and unmistakable evidence" that sellers who signed listing agreements with HSA subsidiaries agreed to delegate questions about whether disputes with non-HSA-affiliated companies like Keller Williams, RE/MAX, or Realogy would be arbitrable. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944-45 (1995); *see* Non-HSA Defs.' Mot. 5. As Plaintiffs detail in their opposition to HSA's motions, the vast weight of authority from around the country, including within this Circuit, rejects the argument that delegation clauses necessarily preclude courts from deciding contract-formation issues, including whether a signatory has agreed with a non-signatory to delegate arbitrability. *See, e.g.*, *K.F.C. v. Snap Inc.*, 29 F. 4th 835, 837 (7th Cir. 2022); *CCC Intelligent Sols. Inc. v. Tractable Inc.*, 36 F. 4th 721, 723 (7th Cir. 2022); *Newman v. Plains All Am. Pipeline, L.P.*, 23 F. 4th 393, 398 (5th Cir. 2022); *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1127 (9th Cir. 2013); *Lavigne v. Herbalife, ltd.*, 967 F.3d 1110, 1118 (11th Cir. 2020).[2]

---

[2] *See also Pogue v. Chisholm Energy Operating, LLC*, 2021 WL 979726, at *7 (D.N.M. Mar. 16, 2021); *Giron v. Subaru of Am., Inc.*, 2022 WL 17130869, at *4 (N.D. Ill. Nov. 21, 2022); *O'Connor v. Ford Motor Co.*, 2023 WL 130522, at *6 (N.D. Ill. Jan. 9, 2023); *GNH Grp. v. Guggenheim Holdings, LLC*, 2020 WL 4287358, at *5 (D. Del. July 27, 2020); *Schoenfeld v. Mercedes-Benz USA, LLC*, 532 F. Supp.3d 506, 511 (S.D. Ohio 2021); *SBMH Grp. DMCC v. Noadiam USA, LLC*, 297 F. Supp. 3d 1321, 125 (S.D. Fla. 2017); *Johnson v. Parsley Energy Operations, LLC*, 2022 WL 2027963, at *3 (W.D. Tex. May 3, 2022); *Nat'l Oilwell Varco, L.P. v. Sadagopan*, 2018 WL 27634, at *3 (S.D. Tex. Jan. 3, 2018); *Vincent v. BMW of N.*

Clear and unmistakable evidence of delegation is especially lacking here because the language of each arbitration provision—which the non-HSA Defendants do not discuss—limits arbitrability to "the parties"; "Seller" and "Broker"; or, at most, "affiliates and parent company" of an HSA subsidiary. *See* Pltfs.' Opp. to HSA Mots. 14-15. There is no possible interpretation of this language that covers other brokerages with no corporate relationship to HomeServices. This limiting language necessarily means that clear and unmistakable evidence of delegation is lacking. *See, e.g.*, *Lavigne*, 967 F.3d at 1117-18; *Schoenfeld*, 532. F. Supp. 3d at 508; *Pogue*, 2021 WL 979726, at *8; *SMBH*, 297 F. Supp. 3d at 1126; *Vincent*, 2019 WL 8013093, at *4.[3]

## III. THE NON-HSA DEFENDANTS CANNOT COMPEL ARBITRATION BASED ON EQUITABLE ESTOPPEL

The non-HSA Defendants agree that the question whether they, as non-signatories, can enforce one of the HSA subsidiaries' arbitration clauses is a question of state law. Like the HSA Defendants, the non-HSA Defendants did not follow the Court's instruction to discuss the applicable state's law in the context of the applicable contractual language. Plaintiffs discuss each below, and incorporate by reference their opposition to the HSA Defendants' motion.[4] While there are state- and contract-specific reasons the non-HSA Defendants' claims fail, there are two overall

---

*Am.*, 2019 WL 8013093, at *4 (C.D. Cal. Nov. 26, 2019); *Goergen v. Black Rock Coffee Bar, LLC*, 2023 WL 142911, at *3 (D. Or. Jan. 10, 2023).

[3] The non-HSA Defendants cite only two cases addressing non-signatories and delegation. Non-HSA Defs.' Mot. 5. Neither applies. In *Blanton*, the court did not discuss any contractual language limiting arbitrable disputes to the signatories, and also declined to address the "antecedent question here—namely, whether [the non-signatory] has any right to enforce the *specific* provision of the agreement provision of the agreement in which [the plaintiff] purportedly agreed to arbitrate arbitrability." *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, n.1 (6th Cir. 2020). In *Grabowski*, which predated the Seventh Circuit's opinions in *K.F.C.* and *CCC Solutions*, the arbitration clause applied broadly to claims with "any vendor or third party providing services" for the transaction. 2021 WL 1962379, at *2 (N.D. Ill. May 17, 2021).

[4] The non-HSA Defendants do not discuss Minnesota, Wisconsin, or Texas law, and have accordingly waived any argument for those states. Plaintiffs rely on their discussion of those states' law in the opposition to the HSA motions.

and obvious flaws in the non-HSA Defendants' arguments. The first is that simply having a contract as a factual predicate for an antitrust conspiracy claim is not enough for equitable estoppel to apply. Rather, the plaintiff's claims must be based on a breach of a term or obligation of the contract, as the cases discussed below make clear. The second is that even in states that recognize the "concerted misconduct" theory of equitable estoppel, the non-HSA Defendants' argument fails because Plaintiffs allege concerted misconduct between the non-HSA Defendants and the HomeServices Defendants, *who are also non-signatories. See* Non-HSA Defs.' Mot. 8-9 (citing allegations of concerted misconduct between the various Defendants, none of whom is a signatory to any listing agreement). This theory therefore does not apply.

A.     **Maryland – Long & Foster**

The Long & Foster arbitration clause in the brokerage's form listing agreement is limited to Long & Foster Real Estate, Inc. and the home seller; the brokerage's form arbitration addendum permits unilateral arbitration election by a "[n]on-signatory parent or other affiliated companies of Broker/Licensee. ECF No. 206-12, at 11-12. The unilateral election is unenforceable under Maryland law. *See Noohi v. Toll Brothers*, 708 F.3d 599, 610-11 (4th Cir. 2013); *Cheek v. United Healthcare of Mid-Atlantic, Inc.*, 835 A.2d 656,669 (Md. 2003); *U.S. ex rel. Birckhead Elec., Inc. v. James W. Ancel, Inc.*, 2014 WL 2574529, at *2 (D. Md. June 5, 2014); *Raglani v. Ripken Pro Baseball*, 939 F. Supp. 2d 517, 523 (D. Md. 2013).

The non-HSA Defendants cannot rely on the listing agreement's arbitration clause under principles of equitable estoppel. Maryland law requires a party to show detrimental reliance in order to prevail on an equitable estoppel theory, including in the context of a non-signatory trying to compel arbitration. *See Morsberger v. ATI Holdings, LLC*, 2023 WL 2711754, at *3-4 (N.D. Ill. Mar. 30, 2023) ("Maryland law require[s] a party invoking equitable estoppel, including in the

arbitration context, to demonstrate detrimental reliance."); *Kennedy v. ADF MidAtlantic, LLC*, 2015 WL 6596918, at *5 (D. Md. Oct. 27, 2015); *Dickerson v. Longoria*, 995 A.2d 721, 742-43 (Md. 2010). The non-HSA Defendants have not made any showing of detrimental reliance here.

The non-HSA Defendants cite a single Maryland case, *Westbard Apts., LLC v. Westood Joint Venture, LLC*, 940 A.2d 470 (Md. Ct. App. 2007). *See* Non-HSA Defs.' Mot. 6-11.[5] The court in *Westbard* addressed a jury waiver, not an arbitration motion, and held that the non-signatory plaintiff entity could not bring suit derivatively on behalf of a signatory entity for claims based on the contract and then disclaim the jury waiver. 940 A.2d at 478. This has no bearing on the situation here, where a non-signatory who has *no* relationship to the signatories is trying to compel arbitration of non-contract-based claims without a showing of detrimental reliance.

## B. Virginia – Long & Foster

As with Maryland, the non-HSA Defendants cannot enforce the arbitration addenda as non-signatories because they have not shown detrimental reliance. *See Tuomala v. Regent Univ.*, 477 S.E.2d 501, 506 (Va. 1996); *Judge v. Unigroup, Inc.*, 2017 WL 3971457, at *5 (M.D. Fla. Sept. 8, 2017). The single, lower-court Virginia case the non-HSA Defendants cite, *Decisive Analytics Corp. v. Chikar*, 75 Va. Cir. 337 (Va. Cir. Ct., Fairfax Cty. 2008), is not to the contrary. There, the court did not analyze Virginia equitable estoppel law, and in any event the plaintiff's claims were dependent upon alleged breaches of the subject contract. *Id.* at *7. The plaintiff's claims also raised allegations of concerted misconduct by both signatories and non-signatories. *Id.* at *8. Here, on the other hand, Plaintiffs' claims do not rely on a breach of any listing agreement, and Plaintiffs

---

[5] The non-HSA Defendants also cite a District of Maryland case, but the contracts there did not apply Maryland law. *See In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d 840, 849 (D. Md. 2013).

do not allege that the non-HSA Corporate Defendants—the nonsignatories—engaged in "concerted misconduct" with HSA subsidiary brokerages.

### C.     District of Columbia – Long & Foster

D.C. law too requires a showing of detrimental reliance, which the non-HSA Defendants have not shown. *See Nolan v. Nolan*, 568 A.2d 479, 484 (D.C. 1990); *RFB Properties II, LLC v. Deutsche Bank Trust Co.*, 247 A.3d 689, 695 (D.C. 2021). Equitable estoppel is likewise unavailable because Plaintiffs' claims do not seek to enforce terms of obligations of the listing agreement. *See DSMC, Inc. v. Convera Corp.*, 273 F. Supp. 2d 14, 29-30 (D.D.C. 2002) ("Regardless of the availability of the doctrine in this Circuit, none of the four remaining claims, for the misappropriation of trade secrets, civil conspiracy, and the federal copyright claims are 'inextricably intertwined' with contractual obligations . . . [Plaintiff's claims do not] arise out of that contract, but rather from state and federal statutes and common law."). The non-HSA Defendants' sole D.C. case does not hold otherwise, because there the court addressed a "broadly worded" arbitration agreement and "identical legal claims" brought against signatory and non-signatory defendants. *Sakyi v. Estée Lauder Cos.*, 308 F. Supp. 3d 366, 386 (D.D.C. 2018). The Long & Foster clause, by contrast, is limited to specific parties and Plaintiffs do not assert claims against any signatories.

### D.     Florida – EWM, Florida Realty

Both the EWM and Florida Realty listing agreements limit arbitrable disputes to those between "the Parties" or "Owner"/"Broker." ECF Nos. 206-7, at 6; 206-8, at 7; 404-7, at 7. Under Florida law, a non-signatory seeking to compel arbitration under a theory of equitable estoppel "must show both that [the plaintiff] is relying on the agreement to assert its claims against them and that the scope of the arbitration clause covers the dispute." *Kroma Makeup EU, LLC v.*

*Boldface Licensing + Branding, Inc.*, 845 F.3d 1351, 1354 (11th Cir. 2017). Any attempt by the non-HSA Defendants to invoke equitable estoppel fails on both counts. First, Florida law finds the first condition met only where the plaintiff is seeking to enforce the terms and obligations of the contract, and not where—as here—the plaintiff asserts statutory or non-contractual claims. *See, e.g.*, *In re Humana Inc. Managed Care Litig.*, 285 F.3d 971, 976 (11th Cir. 2002), *rev'd on other grounds sub nom. PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401 (2003); *Leidel v. Coinbase, Inc.*, 729 F. App'x 883, 887 (11th Cir. 2018); *It Works Mktg., Inc. v. Melaleuca, Inc.*, 2021 WL 1650266, at *4 (M.D. Fla. Apr. 27, 2021).

Second, Florida courts resoundingly hold that where an arbitration agreement limits its scope to the "parties" or similar language, non-signatories cannot compel arbitration. *See, e.g.*, *Kroma*, 845 F.3d at 1355; *It Works*, 2021 WL 1650266, at *3; *Beck Auto Sales, Inc. v. Asbury Jax Ford, LLC*, 249 So. 3d 765, 768 (Fla. Dist. Ct. App. 2018).

The non-HSA Defendants, like HomeServices, rely on a single, distinguishable Florida case. In *Gunson*, the dispute met both prongs of the Florida arbitrability test because the arbitration clause was "sweeping" and because the contracts had "more than a 'but-for' relationship" with the plaintiff's claims, because they contained the purportedly illegal terms that the defendants should not have enforced. *Gunson v. BMO Harris Bank, N.A.*, 43 F. Supp. 3d 1396, 1398 (S.D. Fla. 2014). Here, the non-HSA Defendants necessarily fail on both prongs, because of the limiting language in the arbitration clauses and the nature of Plaintiffs' claims.

### E.     Pennsylvania – Fox & Roach

The applicable Fox & Roach form listing agreements used in Pennsylvania have arbitration clauses limited to disputes between "Seller and Broker/Licensee." ECF No. 206-2, at 9-10, 14. Under Pennsylvania law, equitable estoppel "allows a non-signatory to bind a signatory where the

non-signatory establishes: (1) a close relationship between the entities involved; and (2) the claims against it are intimately founded in and intertwined with the underlying contractual obligations." *Kipp v. Weyerhauser Co.*, 354 F. Supp. 3d 622, 625 (E.D. Pa. 2018) (collecting cases). Notably, this is a conjunctive test. The non-HSA Defendants offer no evidence on the first prong, nor can they—there is no "close relationship" between, say, Keller Williams and Fox & Roach. And on the second prong, a mere factual or causal relationship between the plaintiff's claims and the contract are not enough; the plaintiff's claims must be seeking to enforce the terms or obligations of the contract. Where, as here, a plaintiff asserts claims related to extracontractual wrongdoing, equitable estoppel does not apply. *See, e.g.*, *Abdurahman v. Prospect CCMC LLC*, 42 F. 4th 156, 161-62 (3d Cir. 2022) (rejecting argument that employment discrimination claims were "intimately founded in and intertwined" with employment contract because "[t]hat argument borrows from common law causation, not contract"). Furthermore, equitable estoppel is particularly inappropriate here where the language of the contracts expressly limits arbitrable claims to those between "Seller" and "Broker/Licensee." *See Kipp*, 354 F. Supp. 3d at 627 (rejecting non-signatory's arbitration request when contract's arbitration provisions applied only to "Buyer" and "Seller").

Neither Pennsylvania case cited in the motion changes this result. The *Torres* plaintiff conceded that a "close relationship" existed between the signatory and non-signatory entities and the first prong of the equitable estoppel test was therefore met. *Torres v. CleanNet, USA, Inc.*, 90 F. Supp. 3d 369, 379 (W.D. Pa. 2015). And the plaintiff's claims arose out of the relevant agreement because he had to rely on the contract's terms to prove his claim, namely that "he should have been characterized as an employee rather than an independent contractor." *Id.* at 380. The same was true in *Colon*, where both prongs were met because the defendants were "a single and

joint employer" who had "separate corporate entities [solely] to limit the liability of each of the Defendants" and the plaintiff relied on the contract's terms classifying her employment. *Colon v. Conchetta*, 2017 WL 2572517, at *5-6 (E.D. Pa. June 14, 2017).

### F.      Delaware – Fox & Roach

From September 2018 to June 2022, Fox & Roach purportedly used listing agreements and an arbitration addendum in Delaware with the same language quoted above for Fox & Roach Pennsylvania. ECF No. 206-2, at 29, 34, 38. Here, too, the non-HSA Defendants cannot invoke equitable estoppel because the contracts limit the scope of the arbitration clause to disputes between "Seller" and "Broker/Licensee." *See, e.g.*, *BlackBerry Ltd. v. Nokia Corp.*, 2018 WL 1525797, at *3 (D. Del. Mar. 28, 2018) (where contract limited arbitrability to specific parties, "[b]y its terms, the Agreement thus does not compel Plaintiff to arbitrate disputes" with non-parties). In *GNH Grp.*, by contrast, the plaintiff "conceded" that equitable estoppel applied and the plaintiff's claims, which included breach of contract and intentional interference with contract, arose from contractual obligations themselves. *GNH Grp. v. Guggenheim Holdings, LLC*, 2020 WL 4287358, at *1, 7 (D. Del. July 27, 2020).

### G.      Arizona – Long Realty

Long Realty's form listing agreement for the relevant time period is governed by Arizona law and limits arbitration to disputes between "Listing Broker and Seller." ECF No. 404-9, at 11. The non-HSA Defendants contend they can rely on this language, despite being non-signatories excluded from the plain terms of the contract, based on an equitable estoppel theory. *See* Non-Delegation Mot. 5-13. The Arizona Supreme Court has never applied equitable estoppel to allow a non-signatory to compel arbitration, and has taken an extremely narrow view of equitable estoppel in other non-signatory contexts. *See Benson v. Casa De Capri Enterprises, LLC*, 502 P.3d

11

461, 465-66 (Ariz. 2022) (rejecting theory of direct benefits equitable estoppel "as an exception to the general rule that nonparties are not bound by the terms of a contract"); *JTF Aviation Holdings Inc. v. CliftonLarsonAllen LLP*, 472 P.3d 526, 527 (Ariz. 2020. In *JTF*, the court described the "closely related party doctrine" as a doctrine that "looks to the relationship between a nonparty and parties to the agreement, as well as the relationship between a nonparty and the agreement itself," and held that it was inconsistent with Arizona law. 472 P.3d at 527, 530. This doctrine is very similar to the theories of equitable estoppel that the non-HSA Defendants seek to invoke here, and there is therefore no reason to think that Arizona law endorses them.

Even if these forms of equitable estoppel were viable under Arizona law, the non-HSA Defendants could not compel arbitration. Plaintiffs do not allege any concerted action between the non-HSA Defendants and actual signatories to the contracts, and Plaintiffs are not seeking to enforce any terms or obligations of the listing agreements. *See Bultemeyer v. Sys. & Servs. Techs., Inc.*, 2012 WL 4458138, at *4 (D. Ariz. Sept. 26, 2012) (rejecting similar arguments). Moreover, the language of the Long Realty listing agreement expressly limits arbitration to disputes between "Seller" and "Listing Broker." The non-HSA Defendants are neither and therefore excluded from the scope of the arbitration clause. *See, e.g.*, *Isaak v. Mass. Indem. Life Ins. Co.*, 623 P.2d 11, 14 (Ariz. 1981) ("A clear and unambiguous contract must be interpreted according to its terms.").

*Sun Valley Ranch*, which predates the Arizona Supreme Court authority rejecting similar estoppel theories, does not support a different result. In *Sun Valley Ranch*, the arbitration clause did not limit its scope to specific parties, one non-signatory seeking to enforce the arbitration clause was the "alter ego" of a signatory, and claims against another non-signatory were "based, at least in part, on purported violations of the" contract. *Sun Valley Ranch 308 Ltd. v. Robson*, 294 P.3d 125, 134-35 (Ariz. Ct. App. 2012). The court did not adopt a more expansive theory of equitable

12

estoppel that would apply to Plaintiffs' non-contract-based claims here, asserted against corporate entities that have no relationship to the signatory brokerages.

### H. North Carolina – Preferred Carolinas

Preferred Carolinas is another subsidiary that uses both a form listing agreement and an addendum offered to agents who use their own listing agreements. The applicable form listing agreement limits its scope to disputes "between Seller and Broker"; the applicable arbitration addendum applies to disputes between the homeseller and the "Company," where "'Company' means Preferred Carolinas Realty, Inc. dba Berkshire Hathaway HomeServices Carolinas Realty, Berkshire Hathaway HomeServices York Simpson Underwood Realty, and Berkshire Hathaway HomeServices Yost & Little Realty, its affiliates and parent company." ECF Nos. 206-10, at 11-12, 40; 404-10, at 13.

The non-HSA Defendants cannot compel arbitration under either type of agreement. They are not signatories, and they are expressly excluded from the scope of the listing agreement language, which is limited to "Seller" and "Broker." An equitable estoppel argument does not change this result because under North Carolina law, a non-signatory cannot compel arbitration of statutory or other non-contract-based claims. *See Epes Logistics Servs., Inc. v. Marcuslund*, 861 S.E.2d 924 (N.C. Ct. App. 2021); *Jackson v. Home Depot, USA, Inc.*, 857 S.E.2d 321, 330 (N.C. Ct. App. 2021); *Smith Jamison Constr. v. APAC-Atl., Inc.*, 811 S.E.2d 635, 640 (N.C. Ct. App. 2018) ("Although the existence of the Subcontract between Jamison and APAC provides part of the factual foundation for Jamison's complaint, Jamison's claims against Yates are dependent on legal duties imposed by North Carolina statutory or common law rather than contract law. We

conclude that the doctrine of equitable estoppel does not require the Court, under these facts and allegations, to compel Jamison to arbitration its asserted claims against Yates.") (cleaned up).[6]

## IV. NO STAY IS WARRANTED

Finally, the non-HSA Defendants (here including NAR) ask that, if the Court orders any sellers to arbitrate their disputes with the HSA Defendants, the Court stay those sellers' claims as to all Defendants. Non-HSA Defs.' Mot. 10-12. None of the factors considered in granting a stay favors one here. First, there is no risk of inconsistent results. This Court would decide the liability of each Defendant for its role in the conspiracy regardless, because each Defendant is jointly and severally liable and because the majority of class members are not affected by the arbitration agreements. The arbitrators would decide, at most, the merits of particular sellers' claims against the HomeServices Defendants, and would not be deciding anything with respect to the non-HSA Defendants. The non-HSA Defendants point to a risk of inconsistency in interpreting the "meaning and scope of the HomeServices listing agreements," Non-HSA Defs.' Mot. 11, but this Court would not have to interpret those agreements in relation to the other Defendants. *See Volkswagen of Am., Inc. v. Sud's of Peoria, Inc.*, 474 F.3d 966, 976 (7th Cir. 2007). Likewise, the non-HSA Defendants' assertion that "the arbitrator's interpretation of the listing agreements that contain arbitration clauses should be binding" has no bearing on Plaintiffs' claims against the non-HSA Defendants; if the Court rejects this motion, the Court would never interpret the listing agreements vis-à-vis the non-HSA Defendants. And finally, a stay pending arbitration would substantially prejudice sellers, who would be delayed in seeking vindication of their claims against the non-

---

[6] The non-HSA Defendants cite one North Carolina case, but it is a trial court case inconsistent with this appellate authority, addressed a contract governed by New York law, considered a forum selection rather than arbitration clause, and involved disputes arising "directly and indirectly, from rights and obligations created by" the contract. *Big League Analysis, LLC v. Office of Comm'r of Baseball*, 2016 WL 4684670, at *9 (N.C. Sup. Ct. Wake Cty. Aug. 29, 2016).

HSA Defendants—particularly where this litigation has been moving forward for years and any arbitration has yet to begin. *See, e.g.*, *Caytrans BBC, LLC v. Equip. Rental & Contractors Corp.*, 2010 WL 2293001, at *3 (S.D. Ala. June 4, 2010); *Haynes v. TransUnion, LLC*, 2021 WL 7906567, at *9-10 (E.D.N.Y. Sept. 30, 2021).

As noted above, even if the Court were to grant the full scope of HSA's motions, a minority of class claims would go to arbitration, and most claims against every Defendant would proceed in this Court. Non-arbitrable issues would therefore heavily predominate, and under such circumstances courts regularly deny motions to stay. *See, e.g.*, *Klay v. PacifiCare Health Sys., Inc.*, 389 F.3d 1191, 1204 (11th Cir. 2004); *Schreiber v. Friedman*, 2017 WL 5564114, at *22 (E.D.N.Y. Mar. 31, 2017); *Morelli v. Alters*, 2020 WL 2306445, at *6 (S.D.N.Y. May 8, 2020); *Benihana of Tokyo, LLC v. Benihana Inc.*, 73 F. Supp. 3d 238, 258 (S.D.N.Y. 2014); *Janel Russel Designs, Inc. v. TPS Assocs, LLC*, 2009 WL 3242023, at *4 (D. Minn. Oct. 1, 2009). The cases the non-HSA Defendants cite do not militate otherwise. *See* Non-HSA Defs.' Mot. 10-12. In each of those cases, the arbitrable claims required the arbitrators to decide issues that were "central" to the litigation, and created a substantial risk of inconsistent rulings. *See WMS Gaming, Inc. v. IGT*, 31 F. Supp. 3d 974, 977 (N.D. Ill. 2014); *G&G Closed Circuit Events, LLC v. Castillo*, 2017 WL 1079241, at *9 (N.D. Ill. Mar. 22, 2017); *Digisound-WIE, Inc. v. BeStar Techs., Inc.*, 2008 WL 11517597, at *3 (N.D. Ill. May 30, 2008). Notably, in *Digisound* the court did *not* stay claims pending against the non-arbitrating defendants. 2008 WL 11517597, at *4. The same result should obtain here, even if the Court does find that some class members' claims with HSA are arbitrable.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the non-HSA Defendants' motion.

Dated: May 8, 2023                 Respectfully submitted

By: /s/ *Beatrice Franklin*

Beatrice C. Franklin (*pro hac vice*)
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 336-8330
bfranklin@susmangodfrey.com

Matthew R. Berry (*pro hac vice*)
Floyd G. Short (*pro hac vice*)
Alexander W. Aiken (*pro hac vice*)
SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, Washington 98101
Telephone: (206) 516-3880
mberry@susmangodfrey.com
fshort@susmangodfrey.com
aaiken@susmangodfrey.com

Marc M. Seltzer (*pro hac vice*)
Steven G. Sklaver (*pro hac vice*)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 789-3100
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Rio S. Pierce (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
riop@hbsslaw.com

Steve W. Berman (Bar No. 3126833)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com
tedw@bhsslaw.com

Daniel Kurowski (Bar No. 6286656)
Jeannie Y. Evans (Bar No. 6296339)
Whitney K. Siehl (Bar No. 6313995)
HAGENS BERMAN SOBOL SHAPIRO LLP
455 North Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949
dank@hbsslaw.com

jeannie@hbsslaw.com
wsiehl@hbsslaw.com

Carol V. Gilden (Bar No. 6185530)
COHEN MILSTEIN SELLERS & TOLL PLLC
190 South LaSalle Street, Suite 1705
Chicago, IL 60603
Telephone: (312) 357-0370
cgilden@cohenmilstein.com

Kit A. Pierson (*pro hac vice*)
Benjamin D. Brown (*pro hac vice*)
Daniel Silverman (*pro hac vice*)
Robert A. Braun (*pro hac vice*)
Leonardo Chingcuanco (*pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
kpierson@cohenmilstein.com
bbrown@cohenmilstein.com
dsilverman@cohenmilstein.com
rbraun@cohenmilstein.com
lchingcuanco@cohenmilstein.com
dsilverman@cohenmilstein.com

*Attorneys for Plaintiffs*

17